## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re:<br>CFRA HOLDINGS, LLC<br><br>CFRA, LLC<br>CFRA TRI-CITIES, LLC<br><br>      Debtors. | Case No. 8:20-bk-03608-CPM<br>Chapter 11<br><br>*Jointly Administered with:*<br>Case No. 8:20-bk-03609-CPM<br>Case No. 8:20-bk-03610-CPM |

### OBJECTION OF IHOP RESTAURANTS LLC, IHOP FRANCHISOR LLC, AND IHOP LEASING LLC TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM ORDERS (A) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING AND (B) AUTHORIZING DEBTORS TO USE CASH COLLATERAL

IHOP Restaurants LLC, IHOP Franchisor LLC, and IHOP Leasing LLC (hereinafter collectively referred to as "IHOP") hereby submit this objection (the "Objection") to the *Emergency Motion for Entry of Interim Orders (A) Authorizing Debtors to Obtain Post-Petition Financing and (B) Authorizing Debtors to Use Cash Collateral* [Docket No. 47] (the "DIP Motion") filed by CFRA Holdings, LLC and its debtor affiliates (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"). In support of this Objection, IHOP respectfully states the following.

### Preliminary Statement

1.      The Debtors seek Court permission to obtain post-petition secured financing in the amount of $1,000,000 (the "DIP Financing"). In making this request, however, the Debtors fail to disclose material facts relating to their business (or the lack thereof). Incredibly, the Debtors failed to disclose the most critical fact in the cases to the Court; specifically, while

holding themselves out as franchisees of International House of Pancakes, LLC and its affiliates, they fail to mention that their 49 franchise agreements (as well as certain ancillary real property subleases and equipment leases for 29 of the restaurant locations) were terminated prior to the Petition Date. Accordingly, the Debtors have no business to support or sell.

2.     By this Objection, IHOP seeks to bring these relevant facts to the Court's attention and, in doing so, demonstrate why the proposed DIP Financing is not in the best interests of the Debtors' estates.   Rather, the proposed financing is merely a half-baked attempt by the Debtors' prepetition lenders to bolster their own positions at the expense of the Debtors' other creditors and to essentially provide funding for professional fees and costs, but not much else. The relief requested in the DIP Motion should therefore be denied.

**Background**

3.     Dine Brands Global Inc. ("DBGI") and its affiliates are the owners and franchisors of the Applebee's and IHOP restaurant brands. Prior to the commencement of these Chapter 11 Cases, the Debtors operated 49 franchised IHOP restaurants pursuant to independent franchise agreements with two wholly-owned subsidiaries of DBGI (as amended, the "Franchise Agreements").[1] A sample Franchise Agreement is attached hereto as Exhibit "A". In addition, the Debtors leased the restaurant equipment at 29 of their locations from IHOP Restaurants LLC and IHOP Franchisor LLC pursuant to equipment lease agreements (as amended, the "Equipment Leases").[2] Also, at the same 29 locations, the Debtors sublet the restaurant premises from IHOP Leasing LLC pursuant to certain sublease agreements (as amended, the "Restaurant

---

[1]   The franchisors under the subject Franchise Agreements include IHOP Restaurants LLC and IHOP Franchisor LLC.

[2]   The equipment lessors under the Equipment Leases include IHOP Restaurants LLC and IHOP Franchisor LLC.

Subleases").³ The rental payments owed to the IHOP lessor entities under the pertinent Equipment Leases and Restaurant Subleases exceeds $126,000.00 per week.

4. The Franchise Agreements gave IHOP the right to terminate the Debtors' franchises following a "Material Breach," such as the Debtors' failure to meet their payment obligations or failure to keep a restaurant open for more than three days. The Franchise Agreements also allowed IHOP to terminate the franchises if the franchisee voluntarily commenced an insolvency proceeding, such as an assignment for the benefit of creditors, or if it attempted to assign the Franchise Agreements without IHOP's consent. Likewise, the Equipment Leases allowed IHOP to terminate the leases if insolvency proceedings were commenced by or against the Debtors or if the Debtors ceased to operate the franchised restaurants. The Restaurant Subleases similarly provided that IHOP could terminate the subleases if the Debtors breached any of their other agreements with IHOP (i.e., the Franchise Agreements or Equipment Leases).

5. Beginning in March 2020, IHOP and the Debtors engaged in discussions concerning the future of the Debtors' franchises. These discussions included IHOP's offer to execute a payment deferral agreement pursuant to which the Debtors would have an additional twenty-eight days to make all payments owed under the agreements due to the disruption caused by the COVID-19 pandemic. On March 24, 2020, the Debtors' management, through Nicholas Peters, however, notified IHOP that it intended to permanently cease operations at 28 of the Debtors' locations. Following this initial communication, the Debtors' management repeatedly and unequivocally reiterated in subsequent conversations with IHOP that these 28 locations

---

³ The sublessor under the Restaurant Subleases is IHOP Leasing, LLC.

would not be reopening and further that the Debtors would be abandoning those franchises. See correspondence dated March 24, 2020, attached hereto as Exhibit "B".

6. Following confirmation that the Debtors had in fact permanently closed restaurants without consent and in violation of the applicable Franchise Agreements, IHOP terminated the Franchise Agreements. Specifically, on April 16, 2020, IHOP sent the Debtors a "Notice of Default and Termination," attached hereto as Exhibit "C", informing the Debtors that they were in default under the Franchise Agreements for the 28 closed locations. The notice further stated that IHOP was immediately terminating the 28 Franchise Agreements due to the Debtors' unauthorized closure and abandonment of those locations. That same day, IHOP a "Notice of Default," which is attached hereto as Exhibit "D", notifying the Debtors that IHOP would be terminating the remaining 21 franchises on account of the Debtors' failure to meet their financial obligations under the Franchise Agreements, subject to a seven day cure period. On April 17, 2020, IHOP, having learned that the 21 restaurants were now permanently closed and no longer subject to the cure period for simple monetary defaults identified in the previous day's letter, sent a third notice, which is attached hereto as Exhibit "E", notifying the Debtors that the remaining 21 Franchise Agreements had been terminated due to the Debtors' unauthorized closure and abandonment of those restaurants as well.

7. On April 22, 2020, after all 49 Franchise Agreements had been terminated, two of the Debtors, namely CFRA Holdings, LLC and CFRA, LLC, both effectuated assignments for the benefit of creditors under Fla. Stat. §§ 727, *et seq* before the state circuit court for Pinellas County, Florida (the "Florida ABC"). On April 24, 2020, CFRA Tri-Cities, LLC similarly filed an assignment for the benefit of creditors before the same court. The assignment agreements for all three Florida ABC proceedings stated that the purpose of the assignments was to "liquidate all

assets of the ESTATE" and "convert the ESTATE into money." The commencement of the Florida ABC proceedings was consistent with the Debtors' representations to IHOP that they intended to permanently cease operating all 49 IHOP franchises. All three sets of ABC Petitions and the assignment agreements themselves clearly state they are irrevocable.

8. On April 25, 2020, after learning of the Florida ABCs, IHOP sent a fourth notice to the Debtors informing them that the commencement of the Florida ABC proceedings constituted yet another incurable breach of the Franchise Agreements, further justifying IHOP's prior terminations of all 49 Franchise Agreements. The April 25, 2020 notice is attached hereto as Exhibit "F". The notice also provides that IHOP was terminating the Equipment Leases and Restaurant Subleases in accordance with the terms of those agreements. The DIP Motion is remarkably silent with respect to the timely and proper terminations by IHOP of the 49 Franchise Agreements, the 29 Equipment Leases, and the 29 Restaurant Subleases.

9. On May 6, 2020 (the "Petition Date"), the Debtors abruptly changed course and filed voluntary petitions for relief under chapter 11, thereby commencing these Chapter 11 Cases. As articulated in their *Consolidated Chapter 11 Case Management Summary* [Docket No. 7], the Debtors suddenly "intend to undertake a robust and expeditious sale process to market and sale [sic] their franchises through one or more transactions to maximize the value of their assets for the benefit of creditors." By the DIP Motion, the Debtors now wish to take on additional senior secured debt in order to fund this sale process. Because the Franchise Agreements were properly and timely terminated before the Petition Date, however, the Debtors have no franchises to sell.

10. Given that the Debtors cannot sell their franchises, the purported goal of the DIP Financing and these Chapter 11 Cases cannot possibly be achieved. The Debtors' proposed sale

process is merely a pretense intended to force IHOP to unravel the aforementioned terminations. Moreover, this pretense is being financed by the Debtors' pre-petition lenders with a paltry $1,000,000 senior secured DIP loan that will not come remotely close to making the Debtors' chapter 11 estates administratively solvent. Even if the Debtors (wrongfully) assume that all of their agreements with the IHOP entities were not terminated pre-petition, in order to keep IHOP's administrative expenses for rent under the Equipment Leases and Restaurant Subleases current, as well as to pay the royalties and advertising expenses incurred under the Franchise Agreements, the Debtors would have to pay IHOP in excess of $126,000.00 per week post-petition. Not only have no funds been paid to date, no funds have been proposed to be paid under the proposed DIP Financing budget. Hence, the budget attached to the DIP Motion merely confirms the Debtors' inability to demonstrate how the proposed DIP Financing would benefit the Debtors' estates or creditors in any meaningful way. In fact, the incurrence of additional secured debt in this instance serves no purpose except to make the Debtors' already insolvent estates more insolvent.

## **Objection**

11.     As an initial matter, IHOP questions the standing of the Assignee and Prometheus Franchise Holdings, LLC, as the sole managing member of CFRA Holdings LLC, to initiate the Chapter 11 Cases on behalf of the three corporate Debtors two weeks after they assigned all of their assets to Tim Pruban as Assignee and the Assignee accepted the assignments. Under Florida Statute 727, there is no authority for a company that voluntarily and intentionally files an ABC proceeding to revoke that filing in order to commence an insolvency proceeding in another forum. This is particularly true where the documents themselves do not provide any authority to either former management or the Assignee to subsequently revoke the assignments, which was a

conscientious decision made by former management when originally filed. Indeed, the Eleventh Circuit Court of Appeals in *Ullrich v. Welt (In re Nica Holdings, Inc.)*, 810 F.3d 781 (11th Cir. 2015) held that an assignee under a Florida assignment for the benefit of creditors could not initiate a chapter 7 bankruptcy proceeding in the absence of explicit and plain authorization by the assignor. Citing to *In re Al-Wyn Food Distributors, Inc.*, 8 B.R. 42 (Bankr. M.D. Fla. 1980), the Eleventh Circuit noted that the power to file a bankruptcy petition cannot be implied, but rather is "a special act requiring special authorization." *Nica Holdings*, 810 F.3d at 790. In the case at bar, bankruptcy is never mentioned in the ABC petitions or assignment agreements. Perhaps more importantly, there is no authority to file for bankruptcy provided in the form language of the Florida statute, which was specifically incorporated in the ABC documents.

12.     Setting the standing issue aside, the Court should deny the DIP Motion because it is not in the interest of the Debtors' estates and creditors. A court should only approve proposed debtor-in-possession financing if such financing "is in the best interest of the general creditor body." *In re Roblin Indus., Inc.*, 52 B.R. 241, 244 (Bankr. W.D.N.Y. 1985) (citing *In re Vanguard Diversified, Inc.*, 31 B.R. 364, 366 (Bankr. E.D.N.Y. 1983)); *see also In re Chief Executive Officers Clubs*, 359 B.R. 527, 540 n.6 (Bankr. S.D.N.Y. 2007) (a debtor cannot excuse its fiduciary duties to its chapter 11 estate and its creditors for the sake of prompt DIP financing); *In re Tenney Village Co., Inc.*, 104 B.R. 562, 569 (Bankr. D.N.H. 1989) ("The debtor's prevailing obligation is to the bankruptcy estate and, derivatively, to the creditors who are its principal beneficiaries"). Furthermore, the proposed financing must be "fair, reasonable, and adequate." *In re Crouse Group, Inc*., 71 B.R. 544, 546 (Bankr. E.D. Pa. 1987).

13.     In this case, the proposed DIP Financing provides no benefit whatsoever to the Debtors' estates and their creditors. The alleged purpose for the DIP Financing is to facilitate the

sale of the Debtors' franchises.  Under well-established bankruptcy law, however, the Debtors are precluded from selling their franchises or assigning the Franchise Agreements to a buyer for several reasons.

14.     <u>First</u>, the Franchise Agreements were terminated prepetition.  Bankruptcy Code section 363(b) allows a debtor to sell "property of the estate" outside the ordinary course of business with court approval.  11 U.S.C. § 363(b).  This section, by its terms, provides "that only 'property of the estate' may be sold pursuant to its authority."  *Hey v. Silver Beach LLC (In re Silver Beach LLC)*, 2009 Bankr. LEXIS 4587, *18 (9th Cir. BAP Nov. 3, 2009); *In re Forty-Eight Insulations, Inc.*, 133 B.R. 973, 978 (Bankr. N.D. Ill. 1991) ("Another party's interests do not become property of the estate, and therefore cannot be sold under section 363, which deals with sales of only property of the estate.").

15.     A franchise agreement that is terminated before a bankruptcy filing is not property of the estate.  *See In re Levine*, 22 B.R. 16, 18 (Bankr. S.D. Fla. 1982) (finding that, because "Franchise and Sublease Agreements were terminated prior to the filing of the bankruptcy petition," those "agreements never became property of the estate"); *cf. In re ERA Cent. Reg'l Servs., Inc.*, 39 B.R. 738, 740 (Bankr. C.D. Ill. 1984) ("a franchise agreement is property of the bankruptcy estate *if it has not been effectively terminated prior to debtor's bankruptcy*") (emphasis added).  Because the Franchise Agreements in this case were properly terminated before the Petition Date, they are not property of the estate and, therefore, cannot be sold by the Debtors.

16.     <u>Second</u>, even if the Franchise Agreements were not terminated prior to the Petition Date, the Debtors are still unable to sell their franchises insofar as the Franchise Agreements are non-assignable contracts.  Section 365(c)(1) of the Bankruptcy Code prevents a

debtor from assigning a contract in bankruptcy without the non-debtor counterparty's consent if "applicable law" prevents the contract from being assigned outside bankruptcy without consent. *See* 11 U.S.C. § 365(c)(1). The reference to "applicable law" in section 365(c)(1)(A) covers a variety of situations in which state or federal law bars assignment. 3 Collier on Bankruptcy ¶ 365.07[1][c] (16th ed. 2020). For purposes of section 365(c)(1), "trademark law is applicable law." *In re XMH Corp.*, 647 F.3d 690, 695 (7th Cir. 2011).

17. Under federal trademark law, the grant of a non-exclusive trademark license is "personal to the assignee and thus not freely assignable to a third party." *In re Travelot Co.*, 286 B.R. 447, 455 (Bankr. S.D. Ga. 2002); *see also In re XMH Corp.*, 647 F.3d 690, 695 (7th Cir. 2011) ("the universal rule is that trademark licenses are not assignable in the absence of a clause expressly authorizing assignment"); *Tap Publ'ns, Inc. v. Chinese Yellow Pages (New York), Inc.*, 925 F. Supp. 212, 218 (S.D.N.Y. 1996) ("unless the license states otherwise, the licensee's right to use the licensed mark is personal and cannot be assigned to another") (quoting 2 McCarthy on Trademarks and Unfair Competition § 18.14[2] (3d ed. 1996)). Accordingly, "a licensor need not accept performance from or render performance to an entity other than the licensee." *Travelot*, 286 B.R. at 455.

18. Because trademark licenses are non-assignable, when a franchise agreement contains a non-exclusive license to use the franchisor's trademarks, the entire franchise agreement becomes non-assignable under section 365(c)(1). *See, e.g.*, *Wellington Vision, Inc. v. Pearle Vision, Inc. (In re Wellington Vision, Inc.)*, 364 B.R. 129, 135 (S.D. Fla. 2007) ("The agreement in this case clearly granted [the debtor] a license to use trademarks belonging to [the franchisor], and therefore the Lanham Act is the 'applicable law' by which the exception to assumption and assignment is triggered via section 365(c)."); *In re Kazi Foods of Michigan, Inc.*,

473 B.R. 887, 890 (Bankr. E.D. Mich. 2011) (because assignment of KFC franchise agreements would necessarily include assignment of non-exclusive licenses granted by the franchise agreement to use KFC's trademarks, debtors could not assign the agreements without KFC's consent); *In re XMH Corp.*, 647 F.3d 690, 695 (7th Cir. 2011) ("if the contract still included a trademark sublicense . . . it was not assignable").

19.  The Franchise Agreements in this case provide the Debtors with a non-exclusive license to use and display the IHOP trademarks. These trademark licenses are an integral part of the Franchise Agreements; indeed, the Franchise Agreements would be worthless without the franchisee's ability to use IHOP's trademarks. IHOP does not and will not consent to any assignment of the Franchise Agreements and the non-exclusive license of IHOP's trademarks contained therein. Therefore, the Franchise Agreements are not assignable under section 365(c)(1).

20.  Because section 365(c)(1) prevents the Debtors from assigning the Franchise Agreements with IHOP to a third party, it is impossible for the Debtors to sell their 49 IHOP franchises in these Chapter 11 Cases. Consequently, the Debtors' sole rationale for filing the Chapter 11 Cases and seeking DIP Financing is hopelessly flawed. Moreover, there is no reason to believe that the proceeds of the Debtors' remaining assets will be anywhere near sufficient to pay the $19.5 million that the Debtors allegedly owe to their pre-petition lenders. Therefore, the proposed DIP Financing—by adding an additional $1 million in secured debt to the Debtors' balance sheet—will serve only to prejudice unsecured creditors by further diluting their recoveries.

21.  Finally, even if none of the forgoing were true, the DIP Motion should still be denied. The Debtors are obligated to pay IHOP in excess of $126,000.00 each week on account

of the Equipment Leases and Restaurant Subleases. Assuming these agreements had not been terminated prepetition, the Debtors would be required under Bankruptcy Code section 365(d) to continue performing under their executory contracts and unexpired leases until they are rejected. *See* 11 U.S.C. § 365(d)(3) (for nonresidential real property); 11 U.S.C. § 365(d)(5) (for personal property with a brief 60-day deferral). What is more, "from the date of the petition to the date of rejection, the non-debtor party is entitled to an administrative expense claim for any unpaid rent or other obligations." Ginsberg & Martin on Bankruptcy § 7.03 (5th Ed. 2020); *see also* 2 Norton Bankr. L. & Prac. 3d § 46:42 ("all claims arising from a debtor's nonperformance of postpetition, prerejection lease obligations are entitled to administrative expense priority"); *In re Sturgis Iron & Metal Co.*, 420 B.R. 716 (Bankr. W.D. Mich. 2009) (granting administrative claim status for personal property rental payments that became due before lease was rejected).

22. Thus, even assuming the Debtors' agreements with IHOP had not been terminated pre-petition, the Debtors would be incurring administrative expenses under those agreements until those agreements were rejected. Taking these administrative expenses into account, the full $1.0 million commitment in DIP Financing would be exhausted within weeks of being approved. The proposed DIP Financing is therefore woefully inadequate and should not be authorized for this reason as well. *See In re Crouse Group, Inc.*, 71 B.R. 544, 546 (Bankr. E.D. Pa. 1987) (explaining that debtor-in-possession financing must be "fair, reasonable, and *adequate*") (emphasis added).

23. To the extent the Court approves on an interim or final basis, the DIP Financing, IHOP reserves all of its rights under the Franchise Agreements, Equipment Leases and Restaurant Subleases and further objects to the use or pledge of any assets owned or controlled by IHOP as collateral for such DIP Financing.

## **Conclusion**

WHEREFORE, for the foregoing reasons, IHOP respectfully requests that the Court deny the DIP Motion and the relief requested therein.

Dated: May 21, 2020
       Miami Florida

Respectfully submitted,

**MCDERMOTT WILL & EMERY LLP**

*/s/ Craig V. Rasile*
Craig V. Rasile (FBN 613691)
333 SE 2nd Avenue
Suite 4500
Miami, FL 33131-4336
Telephone: (305) 358-3500
Facsimile: (305) 347-6500
Email: crasile@mwe.com

- and -

**PACHULSKI STANG ZIEHL & JONES LLP**

Laura Davis Jones, Esq.
*Admitted pro hac vice*
919 North Market Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 778-6401
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com

David M. Bertenthal, Esq.
*pro hac vice pending*
150 California Street, 15th Floor
San Francisco, CA 94111-4500
Telephone: (415) 263-7000
Facsimile: (415) 263-7010
Email: dbertenthal@pszjlaw.com

*Attorneys for Dine Brands Global Inc.,
IHOP Restaurant LLC,
IHOP Franchisor LLC and
IHOP Leasing LLC*

DM_US 168722636-7.089762.0025

## **CERTIFICATE OF MAILING**

THE UNDERSIGNED HEREBY CERTIFIES that a true and correct copy of the foregoing *Objection of IHOP Restaurants LLC, IHOP Franchisor LLC and IHOP Leasing LLC to Debtors' Emergency Motion for Entry of Interim Orders (A) Authorizing Debtors to Obtain Post-Petition Financing and (B) Authorizing Debtors to Use Cash Collateral* was served on all counsel of record and all interested parties identified on the attached Service List on May 21, 2020 via transmission of Notices of Electronic Filing generated by CM/ECF and via First Class U.S. Mail, postage prepaid, as indicated thereon.

Dated: May 21, 2020

**McDermott Will & Emery LLP**

*/s/ Craig V. Rasile*
Craig V. Rasile (FBN 613691)
333 SE 2nd Avenue
Suite 4500
Miami, FL 33131-4336
Telephone: (305) 358-3500
Facsimile: (305) 347-6500
Email: crasile@mwe.com

*Attorneys for Dine Brands Global, Inc., IHOP Restaurants, LLC, IHOP Franchisor, LLC, and IHOP Leasing, LLC*

**Electronic Service List**

Aaron S. Applebaum on behalf of Debtors CFRA Holdings, LLC, et al.
aaron.applebaum@saul.com

Carmen D. Contreras-Martinez on behalf of Debtors CFRA Holdings, LLC, et al.
carmen.contreras-martinez@saul.com; aida.mclaughlin@saul.com; mia-ctdocs@saul.com; aaron.applebaum@saul.com

David S Catuogno on behalf of Creditor Raymond James Bank, N.A.
david.catuogno@klgates.com

David S Catuogno on behalf of Creditor Valley National Bank
david.catuogno@klgates.com

Herbert R Donica on behalf of Interested Party CFRA Holdings, LLC
ecf-hrd@donicalaw.com, ecf-cd@donicalaw.com; hrdecf@gmail.com; r63937@notify.bestcase.com

Daniel Eliades on behalf of Creditor Raymond James Bank, N.A. and Valley National Bank
daniel.eliades@klgates.com

Alberto F Gomez, Jr. on behalf of Creditor Elliston Place Limited Partnership
al@jpfirm.com, al@jpfirm.com; andrenaw@jpfirm.com;  katherineb@jpfirm.com

Camille J Iurillo on behalf of Creditor SmartVision Construction, LLC
ciurillo@iurillolaw.com, nhawk@iurillolaw.com; khing@iurillolaw.com

Jeffrey T Kucera on behalf of Creditor Raymond James Bank, N.A. and Valley National Bank
jeffrey.kucera@klgates.com, etna.medina@klgates.com; docketing.east@klgates.com

David S Kupetz on behalf of Interested Party 6851 Lennox, LLC
dkupetz@sulmeyerlaw.com

Robert L. LeHane on behalf of Creditor SITE Centers Corp.
KDWBankruptcyDepartment@kelleyDrye.com; MVicinanza@ecf.inforuptcy.com

Dana L Robbins on behalf of Creditor Ballantyne Property Group, LLC
drobbins@burr.com, jmorgan@burr.com

J Ellsworth Summers, Jr. on behalf of Creditor Ballantyne Property Group, LLC
esummers@burr.com, sguest@burr.com

United States Trustee – TPA
USTPRegion21.TP.ECF@USDOJ.GOV

Nathan A Wheatley on behalf of U.S. Trustee United States Trustee – TPA
nathan.a.wheatley@usdoj.gov

**Via U.S. Mail**

6851 Lennox, LLC/Moss Group
6345 Balboa Blvd., Suite 310
Encino, CA 91316
Attn: Richard Moss

Beltram Edge Tool Supply Inc.
6800 North Florida Avenue
Tampa, FL 33604

BrightRidge
2600 Boones Creek Road
Johnson City, TN 37615

Bristol Virginia Utilities
15022 Lee Hwy
Bristol, VA 24202

Broadway Lights LLC
1085 Thousand Oaks Blvd.
Greenville, SC 29607

CaptiveAire Systems
4641 Paragon Park Road
Raleigh, NC 27616

Casual Dining Smyrna, LLC
c/o Richard Nasano
26 Knights Court
Saddle River, NJ 07458

Cigar City Marketing, LLC
1228 E. 7th Avenue, Suite 200
Tampa, FL 33605

City of Kingsport
225 West Center Street
Kingsport, TN 37660

Commercial Kitchen Specialist
1850 Indian Ridge Drive
Kingsport, TN 37660

Dan's Professional Plumbing
1558 Fuller Street
Kingsport, TN 37664

David Nakahara
415 Oneida Ct.
Danville, CA 94526

DDR Cotwold LP
Dept 328818 21089
41909
PO Box 83400
Chicago, IL 60691

Etheridge Roofing, Inc.
1211 Tarboro Street, SW
Wilson, NC 27893

Ford & Harrison LLP
Attn: P. Maxwell Smith
271 17th Street NW, Suite 1900
Atlanta, GA 30363

HPI Direct, Inc.
785 Goodard Court
Alpharetta, GA 30005

Interface Security Sys. LLC
8339 Solutions Center
Chicago, IL 60677

Johnson City Utility System
601 E. Main Street
Johnson City, TN 37601

MS Park
Dallas Lockbox
P.O. Box 848499
Dallas, TX 75284

National Tax Credit Holdings
10499 W. Bradford Rd., #102
Littleton, CO 80127

Performance Food Group
7420 Ranco Rd.
Henrico, VA 23228

Performance Foodservice
12500 West Creek Parkway
Henrico, VA 23238

Premier Fire Protection Inc.
1338 TN-126
Bristol, TN 37620

Putnam Mechanical
131 Crosslake Park Dr., #202
Mooresville, NC 28117

Raymond James Bank, N.A.
710 Carillon Parkway
St. Petersburg, FL 33716

Rosnet Technology
8500 NW River Park Dr.
Kansas City, MO 64152

Rustic Ridge Landscaping
205 Pickens Bridge Rd.
Johnson City, TN 37615

S&D Coffee
300 Concord Parkway South
Concord, NC 28027

Smartvision Construction, LLC
1155 East Isle of Palms Ave.
Myrtle Beach, SC 29579

The Wasserstrom Company
4500 E. Broad Street
Columbus, OH 43213

Trane Technologies
800-E Beaty Street
Davidson, NC 28036

Trilogy, Inc.
1220 Richmond Road
Williamsburg, VA 23185

Valassis Direct Mail, Inc.
90469 Collection Center Drive
Chicago, IL 60693

Valley National Bank
4790 140th Avenue North
Clearwater, FL 33762

Internal Revenue Service
1111 Constitution Avenue, NW
Washington, DC 20224

Internal Revenue Service
Centralized Insolvency Operation
Post Office Box 7346
Philadelphia, PA 19101-7346

Office of Attorney General
State of Florida
The Capitol PL-01
Tallahassee, FL 32399-1050

Maria Chapa Lopez
United States Attorney for
the Middle District of Florida
400 North Tampa Street, Suite 3200
Tampa, FL 33602

Office of Attorney General
State of North Carolina
114 W. Edenton Street
Raleigh, NC 27603

Office of Attorney General
State of South Carolina
1000 Assembly St., #501
Columbia, SC 29201

Office of Attorney General
State of Virginia
202 North 9th Street
Richmond, VA 23219

Office of Attorney General
State of Tennessee
P.O. Box 20207
Nashville, TN 37202-0207