Exhibit 4—Typical Real Property Sublease

## INTERNATIONAL HOUSE OF PANCAKES

### SUBLEASE

This Sublease is made and entered into as of October 15 /7, 2002, by and between CAROLINA FAMILY RESTAURANT ASSOCIATES LIMITED PARTNERSHIP III, a North Carolina limited liability partnership ("Subtenant") and IHOP PROPERTIES, INC., a California corporation ("Sublandlord").

### WITNESSETH

### I
### DESCRIPTION OF PREMISES; CONDITION OF PREMISES; TERM

1.1  **Premises**. Sublandlord does hereby sublease to Subtenant on the terms and conditions hereinafter set forth, subject to and incorporating herein the terms, conditions and covenants of that certain Lease dated July 27, 1998 and Addendum to Lease dated July 8, 1999 by and between I HO SPARTANBURG SC LLC, a South Carolina limited liability company ("Landlord") and Sublandlord and related document consisting of that certain Assignment and Assumption of Lease dated June 11, 1999 (collectively, the "Master Lease"), true and correct photocopies of which have been separately provided to Subtenant, the receipt of which is hereby acknowledged, those certain premises described in the Master Lease and the rights appurtenant thereto together with the INTERNATIONAL HOUSE OF PANCAKES building on said premises (the "Premises"). Subtenant agrees (i) to be bound by all of the provisions of the Master Lease, except to the extent those provisions have been expressly modified herein, (ii) that all of the obligations and all sums required to be paid as provided in the Master Lease which are the obligations of the tenant thereunder shall be the obligations of Subtenant, except to the extent those obligations have been expressly modified herein, and (iii) that all such obligations run from Subtenant to Sublandlord as well as to Landlord. Anything contained in this Sublease to the contrary notwithstanding, Subtenant's duties and obligations hereunder shall not be less than that of the tenant under the Master Lease.

1.2  **Condition of Premises**. Sublandlord makes no warranties or representations of any kind concerning the condition of the Premises. Subtenant acknowledges that Subtenant has had an opportunity to inspect the Premises and accepts same "AS IS," in its present condition without any warranty of Sublandlord whatsoever, express or implied, in fact or by law.

1.3  **Term**. The term of this Sublease shall commence on the date of possession of the Premises by Subtenant (the "Commencement Date"), and shall expire on April 29, 2024 (the "Term"); provided, however, that notwithstanding any provision of this Sublease to the contrary, the Term of this Sublease shall not extend beyond one (1) day prior to the termination of the Master Lease. It is expressly understood and agreed that this Sublease may be terminated, at the option of Sublandlord, in

the event of any termination, for any cause, of the Franchise Agreement (as defined in Section 4.1 below).

## II
## RENT

2.1 **Weekly Rent**. Subtenant shall pay to Sublandlord on Monday of each week following the week that Subtenant takes possession of the Premises as follows:

From the commencement date hereof to and until April 30, 2004, the sum of $3,230.00 per week or a percentage rental of eight percent (8%) of Subtenant's gross sales for the preceding week, whichever is greater;

Effective May 1, 2004 to and until April 30, 2009, the sum of $3,375.00 per week or a percentage rental of eight percent (8%) of Subtenant's gross sales for the preceding week, whichever is greater;

Effective May 1, 2009 to and until April 30, 2014, the sum of $3,540.00 per week or a percentage rental of eight percent (8%) of Subtenant's gross sales for the preceding week, whichever is greater;

Effective May 1, 2014 to and until April 30, 2019, the sum of $3,735.00 per week or a percentage rental of eight percent (8%) of Subtenant's gross sales for the preceding week, whichever is greater;

Effective May 1, 2019 through the end of the term hereof, the sum of $3,950.00 per week or a percentage rental of eight percent (8%) of Subtenant's gross sales for the preceding week, whichever is greater.

Weekly rent shall be paid to Sublandlord at 450 N. Brand Boulevard, 7th Floor, Glendale, California 91203 or such other address as Sublandlord may from time to time designate to Subtenant in writing. "Gross sales" shall mean the total revenues derived by Subtenant in and from the Premises, whether for cash sales of food and other merchandise or otherwise, or charge sales thereof, or revenues from any source arising out of the operation of the Premises, deducting therefrom: (a) all refunds and allowances, if any; (b) any sales or excise taxes which are separately stated and which Subtenant collects from customers and pays to any federal, state or local taxing authority; and (c) any amounts deposited in any vending machines or pay telephones which are located in or about the Premises, if said vending machines and/or pay telephones are leased and not owned by Subtenant, in which case Gross Sales shall include only the commissions Subtenant receives therefrom. Each sale, and the amount thereof, shall be recorded when the sale is made. The books and records of Subtenant shall be made available for inspection by Sublandlord and its affiliates or agents at any time during business hours. Such books and records, including cash register tapes, shall be preserved by Subtenant for a period of 36 months after the end of each year.

2.2     **Additional Rent**. Subtenant shall pay to Sublandlord as additional rent, when billed therefor, all real and personal property taxes (including assessments) which are levied or assessed against the Premises and the personal property and equipment located on the Premises. Sublandlord may designate a third person, from time to time hereafter, as the direct recipient of payment by Subtenant of said real property taxes, such third person to be either the taxing authorities, the Landlord, or such other person that Sublandlord may designate, by advance periodic impoundment or otherwise. Further, Subtenant shall pay to Sublandlord or Sublandlord's designee as additional rent as required under the Master Lease, when billed therefor, all charges, fees, costs, expenses, contractual undertakings and the expense of the performance of all covenants which Sublandlord may be required to expend or make under the Master Lease including, without limitation, all common area maintenance expenses and all merchant's association fees and dues as required under the Master Lease.

2.3     **No Deduction or Set-Off**. All rent required hereunder shall be paid without deduction or set-off, and Subtenant shall not be entitled to any credit against any rent notwithstanding anything contained in the Master Lease.

2.4     **Inspection and Verification**. Sublandlord and its affiliates or agents shall have the right at any time to enter the Premises to inspect (including the right to take readings of all registers, documenters, pre-checkers and point of sale systems at any time), audit, verify sales and make or request copies of books of account, bank statements, documents, records, tax returns, papers and files of Subtenant relating to gross sales and business transacted and, upon request by Sublandlord, Subtenant shall make any such materials available for inspection by Sublandlord and its affiliates or agents or Landlord and its affiliate or agents at the Premises. Such audit and/or sales verification may include the on-site presence of one or more personnel of Sublandlord and its affiliates or agents or Landlord and its affiliate or agents for seven (7) full consecutive days. If Sublandlord should cause an audit to be made and the gross sales and business transacted as shown by Subtenant's statements should be found to be understated by any amount, Subtenant shall immediately pay to Sublandlord the additional amount payable as shown by such audit, plus interest thereon at the highest rate of interest allowed by law, and if they are found to be understated by two percent (2%) or more, Subtenant shall also immediately pay to Sublandlord the cost of such audit; otherwise, the cost of the audit shall be paid by Sublandlord. If Subtenant should at any time cause an audit of Subtenant's business to be made by a public accountant, Subtenant shall furnish Sublandlord with a copy of said audit, without any cost or expense to Sublandlord. Subtenant also agrees to allow Sublandlord access to the state, federal and local income tax returns of Subtenant and Subtenant hereby waives any privilege pertaining thereto.

2.5     **Utilities**. Subtenant, at Subtenant's sole cost, shall, as due, post all deposits and pay all bills for utilities delivered to the Premises during the Term (including, without limitation by specification, gas, electric, fuel, water, sewer, telephone and trash). Sublandlord shall not be liable in any way for any payment, deposit or other charges for utilities delivered during the term of this Sublease.

## III
## REPAIRS AND MAINTENANCE; LIENS

3.1     **Repairs and Maintenance**.  Subtenant agrees to, at its own cost and expense, keep and maintain in good condition and repair the Premises including, without limitation, the interior of the building, windows and other glass, and all of the exterior of the Premises including, without limitation, the roof and exterior walls, the parking area and exterior lighting, all signs, landscaping and exterior doors, at all times during the Term.  Should the Master Lease provide for maintenance of any or all of the Premises, common areas and/or the parking area by the Landlord (which maintenance may include, but need not be limited to, taxes, snow removal, lighting, insurance and other facilities) at Sublandlord's cost, Subtenant shall pay, as additional rent, the amounts required by the Master Lease.

If at any time during the Term it shall be required by any governmental agency that certain improvements be made to the Premises or fixtures or equipment be furnished or replaced as may be prescribed by such agency, Subtenant shall bear the cost of making the improvements and/or furnishing or replacing such equipment without reimbursement from Sublandlord.

Landlord, Sublandlord, and their respective agents may at any time enter and inspect the Premises to determine the manner in which they are being used, maintained and repaired.

Should the Subtenant at any time during the Term fail to maintain or repair the Premises as required herein, or should Subtenant fail to pay any amounts required by this Sublease, Sublandlord may, at its sole option, perform the repairs or pay such amounts and demand reimbursement thereof from Subtenant within seven (7) days after Subtenant has been notified in writing of the nature and amount of such expenditure by Sublandlord.

Upon expiration or earlier termination of this Sublease, Subtenant shall promptly return the Premises to Sublandlord in as good condition as when received, reasonable wear and tear excepted.

3.2     **Liens**.  If, at any time during the Term, the Premises becomes subject to a lien for labor or materials furnished to Subtenant, within twenty (20) days after Subtenant's receipt of written notice informing Subtenant of the lien, Subtenant shall cause the lien to be bonded or discharged, and shall otherwise save Sublandlord and Landlord harmless on account thereof.

## IV
## USE OF PREMISES

4.1     **Permitted Use**.  The Premises shall be used only for the purpose of conducting thereon an INTERNATIONAL HOUSE OF PANCAKES restaurant franchised by International House of Pancakes, Inc., a Delaware corporation ("Franchisor"), and shall be used solely in conformity with the provisions of the Master Lease and that certain franchise agreement (the "Franchise Agreement") made and entered into between Subtenant and Franchisor pertaining to the Premises.

# V
# INSURANCE

5.1 **Liability Insurance**. In addition to any other requirement set forth in the Franchise Agreement with Franchisor or that certain equipment lease (the "Equipment Lease") made and entered into as of the date hereof between Subtenant and IHOP Restaurants, Inc., a Delaware corporation, Subtenant agrees that on or before the Commencement Date it will obtain and maintain, for the mutual benefit of Landlord, Sublandlord and Subtenant, commercial general liability insurance covering the Premises from an insurance company authorized or admitted to do business in the state in which the Premises are located. Such insurance shall provide coverage of at least Two Million Dollars ($2,000,000) combined single limit for death or injury to one or more persons and property damage and shall name Landlord and Sublandlord as additional insureds.

5.2 **Property Insurance**. In addition to any other requirement set forth in the Franchise Agreement with Franchisor or the Equipment Lease, Subtenant agrees that on or before the Commencement Date it will obtain and maintain, for the mutual benefit of Landlord, Sublandlord, Subtenant and Landlord's mortgagee, if any, so-called "All Risk" property insurance with a code upgrade endorsement covering the Premises from an insurance company authorized or admitted to do business in the state in which the Premises are located in an amount equal to at least one hundred percent (100%) of the full replacement cost thereof, excluding foundation and excavation costs.

5.3 **Business Interruption Insurance**. Notwithstanding any damage or destruction of the Premises, all rent, taxes and additional rent and charges payable hereunder shall not abate even though the Premises may be closed for restoration. In order to assure the payment of all rent, taxes and additional rent and charges payable hereunder, Subtenant agrees to obtain and maintain business interruption insurance coverage naming Sublandlord as a co-insured and loss payee, in an amount sufficient to cover all of Subtenant's continuing obligations including but not limited to the rent, taxes and additional rent and charges payable hereunder for at least the minimum period required by Sublandlord which as of the date hereof is eight (8) months. In connection therewith, Subtenant hereby assigns to Sublandlord the proceeds of any proof of loss under such business interruption policy to the extent of the rent, taxes and additional rent and charges payable hereunder for the period of the loss, together with any and all arrearages hereunder at any time.

5.4 **Other Insurance; Higher Coverage**. In addition to the insurance required hereunder, Subtenant agrees to obtain and maintain, at its sole cost and expense, such other insurance or higher coverage amounts as may be required by the Master Lease or by Sublandlord including, without limitation, higher amounts of coverage for the liability, property or business interruption insurance required above, earthquake or flood insurance.

5.5 **Policy Standards**. All insurance required hereunder shall (a) be maintained in full force and effect during the entire Term at Subtenant's sole cost and expense; (b) be carried and maintained with insurance companies satisfactory to and approved by Sublandlord; and (c) be cancelable only upon at least ten days' prior written notice by the insurance carrier to Sublandlord. Subtenant shall provide evidence of coverage required hereunder to Sublandlord annually and at any other time as Sublandlord

may request same. Subtenant may, at its option, bring its obligations to insure under this Article 5 within the coverage of a "blanket" policy of insurance which it may now or hereafter carry, by appropriate amendment, rider, endorsement, or otherwise; provided, however, that the interest of Landlord (and its mortgage, if any) and Sublandlord shall thereby be as fully protected as if Subtenant obtained individual policies of insurance.

## VI
## DAMAGE AND DESTRUCTION; CONDEMNATION

6.1     **Damage and Destruction**. Notwithstanding any statute or rule of law of the state in which the Premises are located, in the event of damage or destruction to the Premises, or any portion thereof, at any time during the Term, this Sublease shall continue in full force and effect and Subtenant shall continue to pay all rent, additional rent and other charges payable hereunder by Subtenant. Subtenant shall proceed as soon as possible but no later than thirty (30) days after the date of the occurrence of any damage or destruction to repair, replace and restore the Premises to its condition prior to such damage or destruction. Subtenant shall have available to it the proceeds, if any, from the policy or policies of insurance maintained by Subtenant pursuant to Article 5 above to pay for such repair, replacement and restoration of the Premises, subject to the provisions of the Master Lease. In the event the proceeds from such insurance are insufficient or not available to pay for any repair, replacement or restoration of the Premises, Subtenant shall, at its sole cost and expense, complete the repair, replacement and restoration of the Premises, and provide to Sublandlord, within fifteen (15) days of a request by Sublandlord, such written assurances as Sublandlord may require, in its sole and absolute discretion, that Subtenant will pay for the cost of such repair, replacement and restoration. In the event Subtenant shall fail to provide Sublandlord with satisfactory assurances that Subtenant shall pay for the total cost of any repair, replacement or restoration of the Premises, Sublandlord may, in its sole and absolute discretion, in writing delivered to Subtenant within ninety (90) days after such damage or destruction, terminate this Sublease as of the date of such damage or destruction. In the event Sublandlord shall terminate this Sublease pursuant to the foregoing sentence, Subtenant hereby assigns to Sublandlord all proceeds which may be available from insurance policies maintained by Subtenant to repair, replace or restore the Premises.

6.2     **Condemnation**. In the event that the Premises or any portion thereof or interest therein is taken by any governmental authority under power of eminent domain or a sale by Landlord or Sublandlord of the Premises or any portion thereof or any interest therein to or as directed by any authority having the power of eminent domain either under the threat of condemnation or while condemnation proceedings are pending, then subject to the provisions of the Master Lease and unless the purpose of this Sublease is frustrated by said taking or sale of a portion of the Premises, (a) this Sublease shall terminate as and only as to the Premises or any portion thereof or interest therein so taken or sold as to the date of such taking or sale, (b) the rental due hereunder shall be reduced as of the date of the taking or sale so that for the remainder of the Term, Subtenant shall pay (i) only such portion of the fixed weekly rent referred to in Section 2.1 above as the rental value of the part of the Premises remaining after the taking bears to the rental value of the Premises at the date of the taking, or (ii) the percentage rental referred to in Section 2.1 above, whichever is greater, and (c) Sublandlord shall be exclusively entitled to any and all compensation, damages, income, rent, awards and any other interest

thereon whatsoever which may be paid or made in connection therewith and Subtenant shall have no claim whatsoever against Sublandlord for the value of the unexpired term or otherwise; provided, however, that Subtenant shall be exclusively entitled to any award made expressly for and only for the unamortized portion of any improvement costs to the Premises paid by Subtenant, subject to the terms of the Master Lease.

## VII
## ASSIGNMENT; SUBLETTING

7.1 **Assignment or Subletting**. Subtenant shall not voluntarily or involuntarily, by operation of law or otherwise, assign or hypothecate this Sublease or any interest therein, or any portion thereof, nor shall Subtenant sublet any portion of the Premises nor permit any other person to occupy or use the Premises or any part thereof, without first having obtained the written consent of Sublandlord, subject to the terms of Article XI of the Franchise Agreement.

## VIII
## REMEDIES OF SUBLANDLORD IN THE EVENT OF DEFAULT

8.1 **Remedies**. In the event of any breach by Subtenant of this Sublease, the Franchise Agreement, the Equipment Lease or the promissory note(s) in favor of Sublandlord executed by Subtenant in connection with the Franchise Agreement, then Sublandlord, besides any other rights or remedies it may have at law or in equity, may:

(A) Reenter the Premises with or without process of law and take possession of the same and of all equipment and fixtures of Subtenant therein, and expel or remove Subtenant and all other parties occupying the Premises, using such force as may be reasonably necessary to do so, without being liable for any prosecution for such reentry or for the use of such force, and without terminating this Sublease, may at any time and from time to time relet the Premises or any part thereof for the account of Subtenant, for such term, upon such conditions and at such rental as Sublandlord may deem proper. In such event Sublandlord may receive and collect the rent from such reletting and apply it against any amounts due from Subtenant hereunder (including, without limitation, such expenses as Sublandlord may have incurred in recovering possession of the Premises, placing the same in good order and condition, altering or repairing the same for reletting, and all other expenses, commissions and charges, including attorneys' fees, which Sublandlord may have paid or incurred in connection with such repossession and reletting). Sublandlord may execute any sublease made pursuant hereto in Sublandlord's name or in the name of Subtenant, as Sublandlord may see fit, and the subtenant thereunder shall be under no obligation to see to the application by Sublandlord of any rent collected by Sublandlord, nor shall Subtenant have any right to collect any rent thereunder. Whether or not the Premises are relet, Subtenant shall pay Sublandlord all amounts required to be paid by Subtenant up to the date of Sublandlord's reentry, and thereafter Subtenant shall pay Sublandlord, until the end of the Term hereof, the amount of all rent and other charges required to be paid by Subtenant hereunder, less the proceeds of such reletting during the Term hereof, if any, after payment of Sublandlord's expenses as provided above. Such payments by Subtenant shall be due at such times as are provided elsewhere in this Sublease, and Sublandlord need not wait until the termination of this Sublease to recover them

by legal action or otherwise. Sublandlord shall not, by any reentry or other act, be deemed to have terminated this Sublease or the liability of Subtenant for the total rent hereunder unless Sublandlord shall give Subtenant written notice of Sublandlord's election to terminate this Sublease.

(B) Give written notice to Subtenant of Sublandlord's election to terminate this Sublease, reenter the Premises with or without process of law and take possession of the same and of all equipment and fixtures therein, and expel or remove Subtenant and all other parties occupying the Premises, using such force as may be reasonably necessary to do so, without being liable for any prosecution for such reentry or for the use of such force. In such event, Sublandlord shall thereupon be entitled to recover from Subtenant:

(1) the worth at the time of award of any unpaid rent which had been earned at the time of such termination; plus

(2) the worth at the time of award of the amount by which (a) the unpaid rent which would have been earned after termination until the time of award exceeds (b) the amount of such rental loss that Subtenant proves could have been reasonably avoided; plus

(3) the worth at the time of award of the amount by which (a) the unpaid rent for the balance of the Term after the time of award exceeds (b) the amount of such rental loss that Subtenant proves could be reasonably avoided; plus

(4) any other amount necessary to compensate Sublandlord for all the detriment proximately caused by Subtenant's failure to perform its obligations under this Sublease or which, in the ordinary course of things, would be likely to result therefrom.

As used in subsections (1) and (2) above, the "worth at the time of award" is computed by allowing interest at the rate of ten percent (10%) per annum. As used in subsection (3) above, the "worth at the time of award" is computed by discounting such amount at the discount rate of the Federal Reserve Bank of San Francisco at the time of award, plus one percent (1%).

The remedies herein stated shall not be deemed to be exclusive, but are cumulative of and in addition to all other remedies Sublandlord may have at law or in equity, hereunder or under the Master Lease or under any other agreement between Subtenant and Sublandlord or any affiliate of Sublandlord.

## IX
## SUBORDINATION

9.1 **Subordination**. This Sublease and the rights of Subtenant hereunder are expressly subordinate and subject to the lien of the Master Lease and any mortgage, deed of trust, or other voluntary hypothecation now or hereafter encumbering the Premises or any land, building, or improvements included therein, or of which the Premises are a part, or any portions thereof. Subtenant hereby covenants and agrees without the necessity of any further action whatsoever to subordinate in writing all of its beneficial and legal right, title and interest in and to this Sublease to any deed of trust

or mortgage encumbrance at any time now or in the future in any way affecting the Premises or any portion thereof, provided, however, that the beneficiary or mortgagee agree in writing delivered to Sublandlord to recognize all of Sublandlord's beneficial and legal right, title and interest in and under the Master Lease (and, thus, the Sublease) so long as Sublandlord performs and complies with each and all of its covenants, agreements, terms and conditions of the Master Lease. Subtenant shall execute and deliver to Sublandlord such documents and take such further action as Sublandlord in its sole and absolute discretion deems necessary or advisable to effect or maintain such subordination within ten (10) days after written request of Sublandlord or such beneficiary or mortgagee to do so. If applicable, upon Subtenant's failure to execute any such documents, at Sublandlord's request, Sublandlord shall be, and hereby is, appointed Subtenant's attorney-in-fact to do so. This power of attorney granted by Subtenant is a special power of attorney coupled with an interest and is irrevocable and shall survive the death or disability of Subtenant.

Subtenant also hereby covenants and agrees, without the necessity of any further action whatsoever, to subordinate all of its beneficial and legal right, title and interest in and to this Sublease to any new lease ("New Lease") made by Sublandlord, as landlord thereunder, in substitution of, or in addition to, the Master Lease in connection with any sale, sale/leaseback or lease/leaseback transaction of the Premises; provided, however, that the New Lease shall not change the weekly rent by Subtenant under Section 2.1 of this Sublease or materially increase any of Subtenant's other obligations under this Sublease. Subtenant shall execute and deliver to Sublandlord such documents and take such further action as Sublandlord in its sole and absolute discretion deems necessary or advisable to effect such substitution of the Master Lease or additional New Lease and effect or maintain such subordination within ten (10) days after written request of Sublandlord to do so. Upon the substitution of the New Lease for the Master Lease, all references in this Sublease to "Master Lease" shall be deemed a reference to the New Lease.

## X
## NOTICES AND DEMANDS

10.1  **Notices; Demands**. Any notice, demand or other communication required or permitted by law or any provision of the Lease to be given or served on either party shall be in writing, addressed (a) to Sublandlord in duplicate, with one copy addressed to Sublandlord at 450 North Brand Boulevard, 7th Floor, Glendale, California 91203, Attention: Legal Department, and the other copy addressed to Sublandlord at the regional office of Sublandlord closest to the Premises, and (b) to Subtenant at the address of the Premises, and (i) deposited in the United States mail, registered or certified, return receipt requested, postage prepaid, (ii) delivered by an overnight private mail service which provides delivery confirmation such as; without limitation, Federal Express, Airborne or UPS, or (iii) personally delivered at such addresses. Either party may designate additional addresses for the receipt of notices or demands at any time by written notice to the other.

# XI
# ATTORNEYS' FEES

11.1 **Paid to Prevailing Party**. If any action or proceeding, whether judicial or non-judicial, is commenced with respect to any claim or controversy arising from a breach of this Sublease or seeking the interpretation or enforcement of this Sublease, including any exhibits attached hereto, in addition to any and all other relief, the prevailing party or parties in such action or proceeding shall receive and be entitled to recover all costs and expenses, including reasonable attorneys' fees and costs, incurred by it on account of or related to such action or proceeding.

# XII
# INDEMNITY

12.1 **Subtenant's Indemnity**. Subtenant agrees to protect, defend (with counsel satisfactory to Sublandlord), indemnify and hold Sublandlord harmless from and against all claims, losses, costs, expenses, damages and liabilities of any kind and nature, including attorneys' fees, costs and expenses, arising out of Subtenant's (a) possession, use, control or management of the Premises), (b) failure to comply with the obligations and responsibilities set forth herein, or (c) failure to comply with the obligations and responsibilities of the tenant under the Master Lease.

# XIII
# MERCHANTS' ASSOCIATION

Where required or provided for in the Master Lease, Subtenant shall become and remain a member in good standing of the Merchants' Association presently existing or which may be formed or organized hereafter for the purpose of promoting and/or advertising the shopping facility of which the Premises comprises a component part in accordance with terms and conditions contained therein. Subtenant shall abide by any rules or regulations promulgated by such Association, provided the same are not inconsistent with any other terms of the Master Lease or the Franchise Agreement. Subtenant shall pay to the Merchants' Association, each year during the term hereof, dues and/or assessments for promotional and/or advertising purposes provided in said Master Lease.

# XIV
# GENERAL PROVISIONS

14.1 **Binding Effect**. This Sublease shall inure to the benefit of and bind the parties hereto and their respective heirs, successors, representatives and assigns.

14.2 **Severability**. If any term or provision of this Sublease or the application thereof to any person or circumstance shall be invalid or unenforceable, to any extent, the remainder of this Sublease, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Sublease shall be valid and enforceable to the maximum extent permitted by law.

14.3 **Captions**. The captions used in this Sublease are inserted as a matter of convenience only, in no way define, limit or described the scope of this Sublease or the intentions of the parties hereto, and shall not in any way affect the interpretation or construction of this Sublease.

14.4 **No Waiver**. A waiver by Sublandlord of any breach of any provision of this Sublease shall not be deemed a waiver of any breach of any other provision hereof or of any subsequent breach by Subtenant of the same or any other provision.

14.5 **Holdover**. If Subtenant holds over after the Term with the consent, express or implied, of Sublandlord, such holding over shall be construed to be a tenancy from week to week only, and Subtenant shall pay the rent, taxes, additional rent and other sums as herein required for such further time as Subtenant continues its occupancy. The foregoing provision shall not affect Sublandlord's right of reentry or any rights of Sublandlord hereunder or as otherwise provided by law.

14.6 **Time of Essence**. Time is of the essence with regard to every provision of this Sublease and the exhibits attached hereto.

14.7 **No Third Party Rights**. The terms and provisions of this Sublease shall not be deemed to confer any rights upon, nor obligate any party hereto to, any person or entity other than the parties hereto.

14.8 **Designee**. Sublandlord may direct Subtenant to pay any sums required to be paid hereunder directly to a third party, including without limitation, an affiliate of Sublandlord, and Subtenant agrees to do so.

**IN WITNESS WHEREOF**, the parties have executed this Sublease as of the date first written above.

| SUBTENANT: | SUBLANDLORD: |
|---|---|
| CAROLINA FAMILY RESTAURANT ASSOCIATES LIMITED PARTNERSHIP III, a North Carolina limited partnership | IHOP PROPERTIES, INC. |
| By: CAROLINA FAMILY RESTAURANT MANAGEMENT, INC., General Partner | By: _____<br>It: Vice President - Franchise<br>By: _____<br>Its: Vice President - Legal |
| By: _____<br>Kevin Belverd, President | |

302

11