Exhibit 7—Addendum to Franchise Agreement

IHOP #476

## ADDENDUM TO FRANCHISE AGREEMENT

THIS ADDENDUM is made and entered into as of the __13__ of May, 2005 (the "Effective Date") by and between INTERNATIONAL HOUSE OF PANCAKES, INC. ("Franchisor") and CFRA, INC., a Delaware corporation ("Franchisee").

### INTRODUCTION

Franchisee and CFRA Restaurant Holdings, Inc. ("Parent Company") entered into agreements with ~~California~~ Carolina Family Restaurants Associates III L.P. and Fairfield Dining, ~~Inc.~~ LLC (collectively, "CFRA"), whereby Franchisee will acquire certain assets of CFRA, including the franchise for the International House of Pancakes ("IHOP") restaurant located at 2219 Gallatin Pike North, Madison, Tennessee 37115 (the "Restaurant"). Under CFRA's agreements with Franchisor, Franchisor's approval to such acquisition is required. In connection with such approval, Franchisor and Franchisee agreed to enter into a new form of franchise agreement on the standard form currently used by Franchisor in the offer and sale of franchises, subject to amendments to that form of agreement as more fully set forth in this Addendum.

NOW, THEREFORE, in consideration for Franchisee entering into a Franchise Agreement with Franchisor of even date herewith (the "Agreement") for the operation of the Restaurant under the IHOP name and systems, and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged by each party, Franchisor and Franchisee hereby agree to amend the provisions of the Agreement as follows:

1.) <u>Definition</u> - The following shall be added at the end of Paragraph 1.02 of the Agreement:

   "Notwithstanding the foregoing, for this transaction only, Franchisor will permit the ownership of the Franchise to be as follows:

   The Franchisee is a wholly-owned subsidiary of Parent Company; Windward V, L.P., a Delaware limited partnership, and its Affiliates, owns fifty-one percent (51%) or more of Parent Company; Prometheus V, LLC, a Delaware limited liability company, is the general partner of Windward V, L.P.; Nick Peters owns fifty-one percent (51%) or more of Prometheus V, LLC, and Nick Peters is currently the Majority Owner of Franchisee.

2.) <u>Financial Statements</u> - The following shall be added as new Paragraph 6.04:

   6.04   <u>Financial Statements</u>.

   Within sixty (60) days after the end of Franchisee's fiscal year, Franchisee shall provide to Franchisor unaudited financial statements of Franchisee and Parent Company (which may be consolidated financial statements, or separate financial statements for each entity), prepared in accordance with generally accepted accounting principles, for such previous 12-month period. Within forty-five (45) days after the end of the second quarter of Franchisee's fiscal year, Franchisee shall provide to Franchisor unaudited financial statements of Franchisee and Parent Company for such previous 6-month period.

3.) <u>Required Purchases of Proprietary Products</u> - The following is added at the end of Paragraph 10.02(b) of the Agreement:

"Notwithstanding the foregoing, Franchisee shall have the right to purchase all of its requirements for coffee from S & D Coffee and its successors; provided, however, that if Franchisor develops a new coffee recipe and Franchisor requires all of its franchisees to purchase such new coffee recipe from an approved supplier, then Franchisee will purchase all of its requirements for coffee from such approved supplier. Franchisee acknowledges that Franchisor is in the process of developing a new coffee recipe for use in the operation of all restaurants under the IHOP name and systems."

4.) <u>Participation In Operation of Franchised Business</u> - Notwithstanding the language of Paragraph 10.08 of the Agreement, for this transaction only, the Designated Franchisee Representative shall have responsibility for the management of Franchisee and he or the Majority Owner shall be the President of Franchisee. It is agreed that the initial Designated Franchisee Representative shall be Kevin Belverd." In the event the Majority Owner becomes the President, he shall either successfully complete the IHOP training program (and pay the applicable fee) or appoint a Director of Operations who has successfully completed the IHOP training program and is otherwise approved by IHOP. Franchisor further agrees that notwithstanding the last sentence of the third paragraph of Paragraph 10.08, for this transaction only, employees of Franchisee may, directly or indirectly, become an Owner of Franchisee, provided such person's ownership of the Franchisee does not exceed five percent (5%). Franchisor further agrees that the ownership interest of Kevin Belverd and his Affiliates in Franchisee may exceed such five percent (5%) threshold; provided such ownership by Kevin Belverd and his Affiliates does not change control of Franchisee.

5.) <u>Assignment by Franchisee</u> - Notwithstanding the provisions of Paragraph 11.02(a) of the Agreement, the parties agree as follows:

(01) Subparagraph 11.02(a) is further amended by adding the following at the end thereof:

"The reference to "management control" in clause (i) above, shall refer only to changes in the Majority Owner or in the Designated Franchisee Representative. The parties acknowledge that a change in the Majority Owner does constitute an Assignment and is subject to all restrictions on Assignments provided for in this Agreement. However, the parties further acknowledge that a change in the Designated Franchisee Representative shall not be considered an Assignment for any purpose under this Agreement if, within ninety (90) days of such change, Franchisee provides a substitute Designated Franchisee Representative reasonably acceptable to Franchisor."

(02) Subparagraph 11.02(a)(vi) is clarified and amended by the addition of the following:

"; provided, however, that any merger, stock redemption, consolidation, reorganization, recapitalization or other transfer of Stock of the Franchisee that does not result in a change in the Franchisee, the Majority Owner of Franchisee, the Majority Owner as defined in this Agreement, and the controlling person of the majority shareholder of the majority shareholder of the Franchisee, shall not be considered an Assignment for any purpose under the Agreement;

(03) any transaction that occurs solely in connection with a refinancing of the business of Franchisee that is approved by Franchisor, whether the approval occurs in an agreement with

Franchisee or through an agreement between Franchisor and a lender or financial institution that is not an Affiliate of Franchisee but who provides financing to Franchisee, shall not require the payment of any transfer fee (provided Franchisee agrees to reimburse Franchisor for any of its out-of-pocket costs in connection with its approval of the transaction), and shall not be subject to the provisions of Paragraph 11.04 of this Agreement (providing Franchisor a right of first refusal);

(04) a pledge or mortgage of the stock of Franchisee in a refinancing transaction approved by Franchisor shall be considered an Assignment under the Agreement; however, such action shall not be subject to Franchisor's right of first refusal contained in Paragraph 11.04; and

(05) Franchisor shall not unreasonably withhold its consent to Franchisee's pledge, encumbrance, hypothecation, or otherwise granting to any lender or financial institution that is not an Affiliate of Franchisee, a security interest in the Agreement or any of the rights of Franchisee under the Agreement, or in the operation of the Restaurant, or a pledge or mortgage of the Stock of Franchisee; provided, however, Franchisor has the right to condition its consent on Franchisee reimbursing Franchisor for its out-of-pocket expenses incurred in connection with such consent.

6.) <u>Conditions to Assignment by Franchisee</u> - The condition set forth in clause 11.03(a)(ii)(6), requiring an assignee's Owner(s) and/or spouse to execute a guaranty in form satisfactory to Franchisor, shall be waived if (i) the net worth of the assignee immediately following the date of execution of a new franchise agreement equals or exceeds the amount of rents, royalties, national and local advertising fees, and other periodic continuing fees due to Franchisor from Franchisee for the preceding six (6) months with respect to all IHOP restaurants transferred to the assignee in such transaction, and (ii) the assignee agrees to provide to Franchisor a letter of credit in an amount equal to the last four (4) weeks of such payments (determined as of the date notice of the proposed assignment is provided to Franchisor), on terms similar to those set forth in that certain Master Agreement by and between Franchisor, Franchisee and Parent Company dated the _____ day of May, 2005.

7.) <u>Right of Termination After Notice of Default</u> - Notwithstanding the provisions of Paragraph 12.01, if a Material Breach occurs that does not relate to the payment of money, Franchisee shall have ten (10) business days to cure such breach, unless (i) the Material Breach endangers the health or safety of patrons of the Restaurant, jeopardizes any license the Restaurant may have to continue operating, involves the closing of the Restaurant, or could reasonably be expected to result in the closing of the Restaurant; or (ii) the breach cannot by its nature be cured within such ten (10) business day period, in which case Franchisee must commence to cure within such ten (10) business days, and thereafter diligently continue to cure such default during such additional reasonable period of time as Franchisor deems is necessary to cure the Material Breach.

8.) <u>Noncompetition</u> - Franchisor agrees that the provisions of Paragraph 14.01 of the Agreement shall not apply to the operation of a quick service restaurant, such as Wendy's, Burger King, McDonald's, or KFC, where less than twenty-five percent (25%) of the system-wide sales of such restaurants is derived from breakfast items, even if one restaurant in which Franchisee or any Owner of Franchisee may have an interest does exceed that threshold, and nothing contained in the Agreement shall restrict Franchisee or any Owner of Franchisee from being involved in any manner with such a business.

9.) <u>Miscellaneous</u> - All capitalized terms not otherwise defined in this Addendum shall have the meaning ascribed thereto in the Agreement. Each of the parties agrees that, except as modified by this

Addendum, they remain bound by the provisions of the Agreement. If there is any conflict between the terms of the Agreement and the terms of this Addendum, the provisions of this Addendum shall prevail.

IN WITNESS WHEREOF, Franchisor and Franchisee have caused this Addendum to be executed as of the day and year first above written.

FRANCHISOR:

FRANCHISEE:

INTERNATIONAL HOUSE OF PANCAKES, INC., a Delaware corporation

CFRA, INC., a Delaware corporation

By: _____
      Mark D. Weisberger
Its:    Vice President - Legal

By: _____
      Tom Conforti
Its:    Chief Financial Officer

By: _____

Its: _____