**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CFRA HOLDINGS, LLC | ) | Case No. 8:20-bk-03608-CPM |
| | ) | |
| | ) | *Jointly Administered with* |
| | ) | |
| CFRA LLC | ) | Case No. 8:20-bk-03609-CPM |
| CFRA TRI-CITIES, LLC | ) | Case No. 8:20-bk-03610-CPM |
| | ) | |
| Debtors. | ) | |

**OBJECTION AND RESERVATION OF RIGHTS OF IHOP RESTAURANTS LLC,
IHOP FRANCHISOR LLC, AND IHOP LEASING LLC TO
DEBTORS' MOTION FOR ENTRY OF (I) AN ORDER APPROVING BIDDING
PROCEDURES, ASSUMPTION AND ASSIGNMENT PROCEDURES, AND THE FORM
AND MANNER OF NOTICE THEREOF; AND (II) ORDER(S) (A) APPROVING THE
SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS,
(B) AUTHORIZING THE SALES FREE AND CLEAR OF
ALL ENCUMBRANCES, AND (C) AUTHORIZING ASSUMPTION
AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

IHOP Restaurants LLC, IHOP Franchisor LLC, and IHOP Leasing LLC (collectively, "IHOP") hereby make their objections and reservation of rights (the "Objection") in connection with the *Debtors' Motion for Entry of (I) an Order Approving Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof; and (II) Order(s) (A) Approving the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Sales Free and Clear of All Encumbrances, and (C) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. 53] (the "Sale and Bid Procedures Motion") filed by CFRA Holdings, LLC and its debtor affiliates (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"). In support of the Objection, IHOP states the following.

**Preliminary Statement**

Notwithstanding the fact that, prior to the Petition Date,[1] IHOP terminated its Franchise Agreements and Leases with the Debtors, leaving them with little to sell and nothing to manage, the Debtors have nevertheless proposed a sale process that implicates the sale of property in which the Debtors have no interest and could neither sell nor assume and assign without the consent of IHOP, even if they did have an interest in the former assets. The Debtors have not explained how they will circumvent this legal barrier or provided a budget beyond two weeks, on an interim basis, that demonstrates any capacity to satisfy existing administrative expenses, adequately maintain or secure the closed restaurants, or carry these Chapter 11 Cases to an efficient conclusion, even if the Franchise Agreements and Leases were determined by the Court to be assumable and assignable. While the Debtors have informed IHOP's counsel that they expect to address the issues with respect to value, termination, and assignment, the record is presently incomplete as to these critical matters. IHOP has no capacity to respond to unknown positions and therefore reserves all rights to respond as the Debtors' position develops. In this context, the Chapter 11 Cases, as well as the Sale and Bid Procedures Motion, are futile. At best, the Chapter 11 Cases are being financed and administered solely for the benefit of the lenders. The Sale and Bid Procedures Motion should be denied.

**Background**

1.     On May 6, 2020 (the "Petition Date"), each of the Debtors filed a petition under Chapter 11 of the Bankruptcy Code in this Court. Prior to the Petition Date, the Debtors were parties to 49 separate franchise agreements (the "Franchise Agreements") with IHOP, pursuant to which the Debtors operated IHOP restaurants in four states. At 29 of those locations, the

---

[1] Capitalized terms not previously defined shall have the meaning given them later in this Objection.

Debtors were also parties to real-property subleases and equipment leases with IHOP (collectively, the "Leases").

2.  As detailed more fully in the *IHOP Restaurants LLC, IHOP Franchisor LLC, and IHOP Leasing LLC's Motion for Relief from the Automatic Stay* and the *Declaration of Nicole Durham-Mallory in Support of IHOP Restaurants LLC, IHOP Franchisor LLC, and IHOP Leasing LLC's Motion for Relief from the Automatic Stay* filed therewith filed therewith [Docket No. 65] (collectively, the "Stay Relief Motion") incorporated herein by reference in their entireties, the Debtors closed and abandoned all of the restaurants implicated by the Franchise Agreements in April 2020, without the consent of IHOP. In response, IHOP immediately terminated the Franchise Agreements and the Leases. Notwithstanding the effective terminations, the Debtors have continued to deny IHOP access to the restaurants, causing continuing and ongoing harm to the IHOP brand and its interests, while accruing in excess of $126,000 a week in unpaid obligations under the Leases. IHOP has not even been granted access to the restaurants that it subleased to the Debtors in order to insure the restaurants are properly secured, that utilities have been safely turned off, that food is not rotting, that the properties are properly secured from any trespassers, and that rodent or insect infestations have not begun in the absence of attendance. Moreover, the limited budget provided to date contains no funding for the Debtors to perform these critical functions.

3.  Notwithstanding the effective terminations of the Franchise Agreements and the Leases, the Debtors continue to behave as if they have property interests in these former assets that can now be somehow liquidated in the Chapter 11 Cases, as evidenced by the Sale and Bid Procedures Motion; however, the Sale and Bid Procedures Motion does account for, much less address, the termination of the Franchise Agreements and the Leases, the legal barriers to an

assignment even if they were not properly terminated prepetition, or the funding mechanism to satisfy the administrative claims that continue to accrue, or the substantial cure costs that would exist *if* the agreements could be assumed and assigned.

4. On May 18, 2020, the Debtors filed their *Emergency Motion for Entry of Interim Orders (A) Authorizing Debtors to Obtain Post-Petition Financing and (B) Authorizing Debtors to Use Cash Collateral* (the "DIP Motion") [Docket No. 47]. On that same date, the Debtors filed the Sale and Bid Procedures motion.

5. On May 21, 2020, IHOP filed their *Objection of IHOP Restaurants LLC, IHOP Franchisor LLC, and IHOP Leasing LLC to Debtors' Emergency Motion for Entry of Interim Orders (A) Authorizing Debtors to Obtain Post-Petition Financing and (B) Authorizing Debtors to Use Cash Collateral* (the "Initial DIP Objection") [Docket No. 62]. The Initial DIP Objection is incorporated herein by reference as if fully set forth herein.

6. On May 21, 2020, the Court conducted a hearing with respect to the DIP Motion.

7. IHOP and the Debtors have not agreed upon the final form of the *Interim Order (I) Authorizing the Debtors to Obtain Post-Petition Financing from Pre-Petition Lenders Pursuant to 11 U.S.C. § 364; (II) Granting Liens and Superpriority Claims Pursuant to 11 U.S.C. § 364; (III) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, and 363; and (IV) Granting Such Other and Further Relief that this Court Finds Equitable* (the "Interim DIP Order"), and the Interim DIP Order has not been submitted to the Court as of the date of this Further Objection. IHOP reserves all rights with respect to the Interim DIP Order as it is eventually submitted but believes that it will, *inter alia*, reserve the Initial Objection and schedule a further continued interim hearing with respect to requested relief for May 29, 2020, at 2:30 p.m.

8. On May 27, 2020, IHOP filed their *Further Objection and Reservation of Rights of IHOP Restaurants LLC, IHOP Franchisor LLC, and IHOP Leasing LLC to Debtors' Emergency Motion for Entry of Interim Orders (A) Authorizing Debtors to Obtain Post-Petition Financing and (B) Authorizing Debtors to Use Cash Collateral* (the "Further DIP Objection"). The Further DIP Objection is incorporated herein by reference as if fully set forth herein.

## Objections and Reservations

9. The Sale and Bid Procedures Motion defines the Debtors' "primary assets" as "forty-nine (49) currently closed IHOP restaurants, including certain equipment, inventory, franchise agreements and certain leasehold and sub-leasehold interests in non-residential real property in North Carolina, South Carolina, Tennessee and Virginia." Sale and Bid Procedures Motion ¶ 13. The core issue before the Court is whether the bulk of those allegedly primary assets are the Debtors' to sell or to assume and assign.

10. Apart from the particular considerations identified below, the Sale and Bid Procedures Motion has one glaring and serious omission. It fails to even mention that IHOP maintains that the Franchise Agreements and the Leases were terminated prior to the Petition Date, which leaves CFRA unable to sell the core assets that are the subject of the Sale and Bid Procedures Motion. Moreover, the Sale and Bid Procedures Motion fails to mention that the Franchise Agreements—even if they had not been terminated—cannot be assumed and assigned without the consent of IHOP *either* as a matter of contract law and/or as a matter of state franchise law and federal trademark law. As a matter of bedrock bankruptcy law, the Debtors cannot sell under 11 U.S.C. § 363(b) anything that is not "property of the estate." The Debtors have not— and cannot—cross this initial threshold with respect to the Franchise Agreements and the Leases. The Sale and Bid Procedures Motion is fundamentally flawed in its basic premise and entirely

fails to advise potential bidders of the risks associated with bidding upon assets that the Debtors cannot transfer.

11.     Here, conducting a robust marketing and sale process before the foregoing critical issues are resolved is a futile waste of time and resources.  Furthermore, insofar as no filings by the Debtors make any statements about the termination of the Franchise Agreements and Leases or explain the Debtors' purported ability to assume and assign the agreements, IHOP's ability to address unknown contentions is limited.  Discovery between the Debtors and IHOP is taking place this week on an expedited basis.  While the Debtors have told IHOP that they intend to address issues with respect to value, terminations, and assignments, IHOP is not presently aware of those arguments and therefore reserves the right to address any and all arguments or positions put forth by the Debtors as they become clear.

12.     While IHOP has incorporated by reference the facts and law set forth in the Stay Relief Motion, the Initial DIP Objection, and the Further DIP Objection, it reiterates certain key arguments here, in greater or lesser detail, before proceeding to specific issues in connection with the proposed bid procedures.

13.     First, the Franchise Agreements and the Leases were unquestionably terminated prior to the Petition Date.  *See* Exhibits 11, 12, & 14 to the Declaration in Support of the Stay Relief Motion.  An agreement properly terminated prior to the bankruptcy filing never becomes property of the estate.  For example, in *In re Levine*, 22 B.R. 16, 18 (Bankr. S.D. Fla. 1982), the court concluded that "[b]ased on the express language of the Franchise and Sublease Agreements, the uncontested evidence of default, and proper notice to the franchisees of such default, the Court finds that the Franchise and Sublease Agreements were terminated prior to the filing of the bankruptcy petition that precipitated this action. These agreements never became property of the

estate and are therefore not subject to the automatic stay provisions of 11 U.S.C. § 362." *See also, e.g., In re Gainesville P-H Properties*, 77 B.R. 285, 295 (Bankr. M.D. Fla. 1987) (concluding that "[w]hen the termination process has been completed and has been effective prior to the date of the filing of the bankruptcy petition . . . there is nothing left to become part of the estate under 11 U.S.C. §§ 365 and 541"). In the absence of a property interest in the Franchise Agreements or the Leases, there is nothing for the Debtors to sell apart from any surviving real property leases it holds with parties other than IHOP, any equipment leases it holds with parties other than IHOP, and any assets it owns outright that are not labeled with IHOP trademarks.

14. Second, even if the Franchise Agreements had not terminated prior to the Petition Date, the Debtors are still unable to sell their franchises insofar as the Franchise Agreements are non-assignable contracts. Section 365(c)(1) of the Bankruptcy Code prevents a debtor from assigning a contract in bankruptcy without the non-debtor counterparty's consent if "applicable law" prevents the contract from being assigned outside bankruptcy without consent. *See* 11 U.S.C. § 365(c)(1). For purposes of section 365(c)(1), "trademark law is applicable law." *In re XMH Corp.*, 647 F.3d 690, 695 (7th Cir. 2011).

15. Under federal trademark law, the grant of a non-exclusive trademark license is "personal to the assignee and thus not freely assignable to a third party." *In re Travelot Co.*, 286 B.R. 447, 455 (Bankr. S.D. Ga. 2002); *see also In re XMH Corp.*, 647 F.3d 690, 695 (7th Cir. 2011) ("the universal rule is that trademark licenses are not assignable in the absence of a clause expressly authorizing assignment"). Because trademark licenses are non-assignable, when a franchise agreement contains a non-exclusive license to use the franchisor's trademarks, the entire franchise agreement becomes non-assignable under section 365(c)(1). *See, e.g.*, *Wellington Vision, Inc. v. Pearle Vision, Inc. (In re Wellington Vision, Inc.)*, 364 B.R. 129, 135 (S.D. Fla.

2007) ("The agreement in this case clearly granted [the debtor] a license to use trademarks belonging to [the franchisor], and therefore the Lanham Act is the 'applicable law' by which the exception to assumption and assignment is triggered via section 365(c).").

16.     The Franchise Agreements in this case provide the Debtors with a non-exclusive license to use and display the IHOP trademarks as well as to use IHOP trade secrets. These trademark licenses are an integral part of the Franchise Agreements; indeed, the Franchise Agreements would be worthless without the franchisee's ability to use IHOP's trademarks and IHOP's trade secrets. IHOP does not and will not consent to any assignment of the Franchise Agreements and the non-exclusive license of IHOP's trademarks contained therein. Therefore, the Franchise Agreements are not assignable under section 365(c)(1).

17.     Third, because of, among other reasons, IHOP's interest in protecting its brand and trademarks and the necessarily personal relationships between IHOP and its franchisees, the Franchise Agreements provide numerous restrictions upon and conditions to any attempt by the franchisee to assign the agreement. Among several other restrictions, a franchisee may not assign a franchise agreement without the consent of IHOP, must provide prior written notice of the proposed assignment, and may not assign an agreement where it is not otherwise in compliance with all obligations of the agreement (or related agreement) owed to IHOP. *See* Franchise Agreement ¶ 11.03(a)(i), (ii), & (iv). The Debtors have failed to comply with the requirements under the Franchise Agreements to effectuate assignment and make no provisions pursuant to the Sale and Bid Procedures Motion for bidders to satisfy those contractual conditions. Absent satisfaction of those contractual conditions, and absent IHOP's consent, the Debtors cannot effectuate an assignment as a matter of contract law. Consequently, the relief sought in connection with the Sale and Bid Procedures Motion is unnecessary and futile.

18. Fourth, as noted in the Further DIP Objection, IHOP has not seen a further interim or final debtor-in-possession financing budget. Absent a budget line item to address and pay accruing and accumulating administrative claims—including but not limited to $14,179.00 a week under the Leases with respect to the leased equipment and $112,539.38 a week under the Leases with respect to the leased real property, if such Leases are deemed continuing and available for sale as the Debtors' seem to suggest—the proposed process is doomed to failure. Moreover, IHOP has seen no DIP budget that appears to address payment of cures in connection with the Franchise Agreements and Leases, even if they are found to be assumable and assignable, which are substantial and ongoing. In addition, the budget does not appear to provide funds for ongoing health, safety, or maintenance obligations to ensure that IHOP's property and its brand are protected.

19. In addition to the foregoing objections, which constitute a complete barrier to the Debtors' purported course of action in connection with the Sale and Bid Procedures Motion, IHOP identifies the following specific issues with respect to the proposed bid procedures (the "Bid Procedures").

20. First, nothing in the Bid Procedures puts potential bidders on notice of the foregoing issues or that they may be bidding upon assets that the Debtors are either unable to sell or are unable to assume and assign without the consent of IHOP. Absent other and final resolution of these issues, the notice with respect to Bid Procedures should, at a minimum include some reference to these critical issues and clearly state that IHOP asserts that the Franchise Agreements and Leases were properly terminated prepetition and therefore cannot be assumed and assigned by the Debtors. Moreover, if these agreements are assumable, they cannot be assigned without IHOP's consent.

21. In addition to the foregoing relief, to the extent the sale process is permitted to proceed, and without prejudice to IHOP's rights, Paragraph 7 or 8 of the Bid Procedures should be modified to ensure that IHOP and, to the extent warranted, the Consultation Parties, receive copies of bids and supporting documents.

22. In addition, to the extent the sale process is permitted to go forward, and without prejudice to IHOP's rights, Paragraph 10(d) of the Bid Procedures should be modified to expressly permit IHOP and its counsel to attend the auction.

23. Moreover, the Bid Procedures appear to contemplate the possibility of a secured creditor making a credit bid, which shall be deemed a Qualifying Bidder. *See* Sale and Bid Procedures Motion p.8 fn. 4. The qualifying amount of such bid, and the assets to which any credit bid may extend, may be the subject of further objection of IHOP in connection with a hearing on the proposed sale, if scheduled..

24. Furthermore, to the extent that any information shared in connection with the proposed Bid Procedures and Data Room described therein contains any confidential or proprietary information belonging to IHOP, including without limitation trade secrets, IHOP reserves all rights with respect thereto.

25. Finally, IHOP reserves all rights with respect to the sufficiency of any adequate assurance of future performance to be provided to it in connection with the Bid Procedures and any proposed sale. In addition to the issues discussed above (including as to termination and consent), IHOP specifically reserves its right to demand that the conditions set forth in the Franchise Agreements for assignment be satisfied.

[*remainder of page intentionally left blank*]

WHEREFORE, IHOP respectfully requests that the Court deny the relief requested in the Sale and Bid Procedures Motion or otherwise limit it in connection with the foregoing.

Dated: May 27, 2020

PACHULSKI STANG ZIEHL & JONES LLP
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
       dbertenthal@pszjlaw.com

-and-

MCDERMOTT WILL & EMERY LLP

 /s/ Craig V. Rasile
Craig V. Rasile (FBN 613691)
333 SE 2nd Avenue, Suite 4500
Miami, FL 33131-4336
Telephone: (305) 358-3500
Facsimile: (305) 347-6500
Email: crasile@mwe.com

*Counsel to IHOP*

## CERTIFICATE OF MAILING

THE UNDERSIGNED HEREBY CERTIFIES that a true and correct copy of the foregoing *Objection and Reservation of Rights of IHOP Restaurants LLC, IHOP Franchisor LLC, and IHOP Leasing LLC to Debtors' Motion for Entry of (I) an Order Approving Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof; and (II) Order(s) (A) Approving the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Sales Free and Clear of All Encumbrances, and (C) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases* was served on all counsel of record and all interested parties identified on the attached Service List on May 27, 2020 via transmission of Notices of Electronic Filing generated by CM/ECF and via First Class U.S. Mail, postage prepaid, as indicated thereon.

Dated: May 27, 2020                                                **MCDERMOTT WILL & EMERY LLP**

*/s/ Craig V. Rasile*
Craig V. Rasile (FBN 613691)
333 SE 2nd Avenue
Suite 4500
Miami, FL 33131-4336
Telephone: (305) 358-3500
Facsimile: (305) 347-6500
Email: crasile@mwe.com

*Attorneys for IHOP Restaurants, LLC, IHOP Franchisor, LLC, and IHOP Leasing, LLC*

**Electronic Service List**

Aaron S. Applebaum on behalf of Debtors CFRA Holdings, LLC, et al.
aaron.applebaum@saul.com

Carmen D. Contreras-Martinez on behalf of Debtors CFRA Holdings, LLC, et al.
carmen.contreras-martinez@saul.com; aida.mclaughlin@saul.com; mia-ctdocs@saul.com; aaron.applebaum@saul.com

David S Catuogno on behalf of Creditor Raymond James Bank, N.A.
david.catuogno@klgates.com

David S Catuogno on behalf of Creditor Valley National Bank
david.catuogno@klgates.com

Herbert R Donica on behalf of Interested Party CFRA Holdings, LLC
ecf-hrd@donicalaw.com, ecf-cd@donicalaw.com; hrdecf@gmail.com; r63937@notify.bestcase.com

Daniel Eliades on behalf of Creditor Raymond James Bank, N.A. and Valley National Bank
daniel.eliades@klgates.com

Alberto F Gomez, Jr. on behalf of Creditor Elliston Place Limited Partnership
al@jpfirm.com, al@jpfirm.com; andrenaw@jpfirm.com; katherineb@jpfirm.com

Camille J Iurillo on behalf of Creditor SmartVision Construction, LLC
ciurillo@iurillolaw.com, nhawk@iurillolaw.com; khing@iurillolaw.com

Jeffrey T Kucera on behalf of Creditor Raymond James Bank, N.A. and Valley National Bank
jeffrey.kucera@klgates.com, etna.medina@klgates.com; docketing.east@klgates.com

David S Kupetz on behalf of Interested Party 6851 Lennox, LLC
dkupetz@sulmeyerlaw.com

Robert L. LeHane on behalf of Creditor SITE Centers Corp.
KDWBankruptcyDepartment@kelleyDrye.com; MVicinanza@ecf.inforuptcy.com

Dana L Robbins on behalf of Creditor Ballantyne Property Group, LLC
drobbins@burr.com, jmorgan@burr.com

J Ellsworth Summers, Jr. on behalf of Creditor Ballantyne Property Group, LLC
esummers@burr.com, sguest@burr.com

United States Trustee – TPA
USTPRegion21.TP.ECF@USDOJ.GOV

Nathan A Wheatley on behalf of U.S. Trustee United States Trustee – TPA
nathan.a.wheatley@usdoj.gov

Stuart Wilson-Patton on behalf of Creditor TN Dept of Revenue
Stuart.Wilson-Patton@ag.tn.gov

**Via U.S. Mail**

6851 Lennox, LLC/Moss Group
6345 Balboa Blvd., Suite 310
Encino, CA 91316
Attn: Richard Moss

Beltram Edge Tool Supply Inc.
6800 North Florida Avenue
Tampa, FL 33604

BrightRidge
2600 Boones Creek Road
Johnson City, TN 37615

Bristol Virginia Utilities
15022 Lee Hwy
Bristol, VA 24202

Broadway Lights LLC
1085 Thousand Oaks Blvd.
Greenville, SC 29607

CaptiveAire Systems
4641 Paragon Park Road
Raleigh, NC 27616

Casual Dining Smyrna, LLC
c/o Richard Nasano
26 Knights Court
Saddle River, NJ 07458

Cigar City Marketing, LLC
1228 E. 7th Avenue, Suite 200
Tampa, FL 33605

City of Kingsport
225 West Center Street
Kingsport, TN 37660

Commercial Kitchen Specialist
1850 Indian Ridge Drive
Kingsport, TN 37660

Dan's Professional Plumbing
1558 Fuller Street
Kingsport, TN 37664

David Nakahara
415 Oneida Ct.
Danville, CA 94526

DDR Cotwold LP
Dept 328818 21089
41909
PO Box 83400
Chicago, IL 60691

Etheridge Roofing, Inc.
1211 Tarboro Street, SW
Wilson, NC 27893

Ford & Harrison LLP
Attn: P. Maxwell Smith
271 17th Street NW, Suite 1900
Atlanta, GA 30363

HPI Direct, Inc.
785 Goodard Court
Alpharetta, GA 30005

Interface Security Sys. LLC
8339 Solutions Center
Chicago, IL 60677

Johnson City Utility System
601 E. Main Street
Johnson City, TN 37601

MS Park
Dallas Lockbox
P.O. Box 848499
Dallas, TX 75284

National Tax Credit Holdings
10499 W. Bradford Rd., #102
Littleton, CO 80127

Performance Food Group
7420 Ranco Rd.
Henrico, VA 23228

Performance Foodservice
12500 West Creek Parkway
Henrico, VA 23238

Premier Fire Protection Inc.
1338 TN-126
Bristol, TN 37620

Putnam Mechanical
131 Crosslake Park Dr., #202
Mooresville, NC 28117

Raymond James Bank, N.A.
710 Carillon Parkway
St. Petersburg, FL 33716

Rosnet Technology
8500 NW River Park Dr.
Kansas City, MO 64152

Rustic Ridge Landscaping
205 Pickens Bridge Rd.
Johnson City, TN 37615

S&D Coffee
300 Concord Parkway South
Concord, NC 28027

Smartvision Construction, LLC
1155 East Isle of Palms Ave.
Myrtle Beach, SC 29579

The Wasserstrom Company
4500 E. Broad Street
Columbus, OH 43213

Trane Technologies
800-E Beaty Street
Davidson, NC 28036

Trilogy, Inc.
1220 Richmond Road
Williamsburg, VA 23185

Valassis Direct Mail, Inc.
90469 Collection Center Drive
Chicago, IL 60693

Valley National Bank
4790 140th Avenue North
Clearwater, FL 33762

Internal Revenue Service
1111 Constitution Avenue, NW
Washington, DC 20224

Internal Revenue Service
Centralized Insolvency Operation
Post Office Box 7346
Philadelphia, PA 19101-7346

Office of Attorney General
State of Florida
The Capitol PL-01
Tallahassee, FL 32399-1050

Maria Chapa Lopez
United States Attorney for
the Middle District of Florida
400 North Tampa Street, Suite 3200
Tampa, FL 33602

Office of Attorney General
State of North Carolina
114 W. Edenton Street
Raleigh, NC 27603

Office of Attorney General
State of South Carolina
1000 Assembly St., #501
Columbia, SC 29201

Office of Attorney General
State of Virginia
202 North 9th Street
Richmond, VA 23219

Office of Attorney General
State of Tennessee
P.O. Box 20207
Nashville, TN 37202-0207