IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: <br><br> CFRA HOLDINGS, LLC, <br><br><br><br> CFRA, LLC <br> CFRA TRI-CITIES, LLC <br><br> Debtors. | Case No. <br> 20-03608-CPM <br><br> *Jointly Administered with* <br><br> 20-03609-CPM <br> 20-03610-CPM <br><br> Chapter 11 |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DEBTORS' MOTION FOR ENTRY OF (I) AN ORDER APPROVING BIDDING PROCEDURES, ASSUMPTION AND ASSIGNMENT PROCEDURES, AND THE FORM AND MANNER OF NOTICE THEREOF; AND (II) ORDER(S) (A) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) AUTHORIZING THE SALES FREE AND CLEAR OF ALL ENCUMBRANCES, AND (C) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the cases of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through its proposed undersigned counsel, hereby submits its objection (the "Objection") to the *Debtors' Motion for Entry of (I) an Order Approving Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof; and (II) Order(s) (A) Approving the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Sales Free and Clear of All Encumbrances, and (C) Authorizing Assumption and Assignment of Executory*

*Contracts and Unexpired Leases* [Docket No. 53] (the "<u>Sale Motion</u>").[1]  In support of the Objection, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Debtors are asking this Court to approve a **less than four (4) week sale process** (the "<u>Sale Process</u>") for substantially all of their assets (the "<u>Assets</u>").  Overhanging the sale are the IHOP Objections, which this Court, during yesterday's status conference, recognized may negatively impact the marketability and value of the Assets.  The Debtors' fiduciary duty requires them to create a competitive bidding process in order to maximize value for the benefit of all stakeholders.  The Sale Process, as currently proposed, fails to achieve this goal and will prejudice the rights and interests of unsecured creditors.

2. The Committee submits that, unless material changes are made to the Bid Procedures, the Sale Motion must be denied for the reasons set forth below.

## BACKGROUND

**A.     General Background**

3. On May 6, 2020 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are continuing to operate and maintain their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these chapter 11 cases.

---

[1] Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them below or in the Sale Motion.

4.  A brief description of the Debtors' businesses and the events leading to the commencement of these cases is set forth in the *Consolidated Chapter 11 Case Management Summary* (the "Case Management Summary") [Docket No. 7].

5.  On May 21, 2020, IHOP Restaurants LLC, IHOP Franchisor LLC, and IHOP Leasing LLC (collectively, "IHOP") filed the *Objection of IHOP Restaurants LLC, IHOP Franchisor LLC, and IHOP Leasing LLC to Debtors' Emergency Motion for Entry of Interim Orders (A) Authorizing Debtors to Obtain Post-Petition Financing and (B) Authorizing Debtors to Use Cash Collateral* [Docket No. 62] (the "IHOP Objection").

6.  On May 27, 2020, the United States Trustee for Region 21 (the "U.S. Trustee") appointed the Committee pursuant to section 1102 of the Bankruptcy Code. [Docket No. 74]. The Committee consists of the following three (3) members: Performance Food Group, Inc. (Chair of the Committee); Interface Security Systems, LLC; and Putnam Mechanical. On May 28, 2020, the Committee selected Squire Patton Boggs (US) LLP ("SPB") as its bankruptcy counsel.[2]

7.  The Committee represents a broad constituency that includes unsecured noteholders, trade claimants, landlords, and contract counterparties  According to the Debtors' schedules and statement of financial affairs filed yesterday [Docket Nos. 108, 109, 110, 111, 112, and 113], **the Debtors have a total of $4,783,630.37 in unsecured claims** and $44,670.11 in priority claims.

**B.  The Sale Motion**

8.  On May 18, 2020, the Debtors filed the Sale Motion, pursuant to which the Debtors seek, *inter alia*, approval of bidding procedures for the sale of the Assets (the "Bidding

---

[2] The Committee anticipates filing an application seeking this Court's approval of SPB's retention as its counsel next week.

Procedures"). The Bidding Procedures contemplate a closing by the end of June, in less than four weeks. It is unclear what, if any, prepetition marketing was done for the Assets.

**C.    The IHOP Objection**

9. The IHOP Objection raises a critical issue in these chapter 11 cases. Specifically, the IHOP Objection claims that the Debtors' 49 franchise agreements (the "Franchise Agreements") and lease agreements with IHOP (collectively, the "IHOP Agreements") were terminated prior to the Petition Date, and that the IHOP Agreements are therefore not property of the Debtors' estates and cannot be assumed and assigned. IHOP also argues that the Franchise Agreements cannot be assumed and assigned pursuant to section 365(c)(1) of the Bankruptcy Code because the agreements all contain non-exclusive trademark licenses.

**OBJECTION**

**A.    Applicable Legal Standards.**

10. The principal goal in any proposed sale of property under section 363 of the Bankruptcy Code is to maximize the proceeds received by the estate, thereby providing the greatest value for creditors. *See In re Mushroom Transp. Co. Inc.*, 382 F.3d 325, 339 (3d Cir. 2004) (noting the trustee's duty to maximize benefit to the estate); *In re Gulf States Steel*, 285 B.R. 497, 517 (Bankr. N.D. Ala. 2002) (same); *In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) (same). To ensure that the estate yields the maximum benefit from a sale, courts must safeguard the bidding and sale process and approve only those procedures that will not chill bidders' participation in the process. *See In re Atlanta Packaging Products, Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988) (noting that "the objective is to maximize the bidding, not to restrict it.") (citation omitted). Courts will not approve bidding procedures that undermine the principles of fair play because, unless the

4

sale process remains open and fair, competing bidders will refrain from participating. *See In re Jon J. Peterson, Inc.*, 411 B.R. 131, 137 (Bankr. W.D.N.Y. 2009).

11. It is indisputable that a debtor-in-possession owes a fiduciary duty to its creditors and other stakeholders in its estate. *Commodity Futures Trading Com v. Weintraub*, 471 U.S. 343, 355 (1985) ("[T]he fiduciary duty of the trustee runs to shareholders as well as to creditors."); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996) ("[A] trustee has a fiduciary relationship with *all* creditors of the estate."). The debtor's fiduciary duty requires that proposed bidding procedures provide a controlled, fair and open process that will encourage participation in the auction. To that end, courts should examine proposed procedures to ensure that they do not hamper the competitive bidding process. *See generally Calpine Corp. v. O'Brien Envtl. Energy Inc. (In re O'Brien Envtl. Energy Inc.)*, 181 F.3d 527, 535-37 (3d Cir. 1999) (noting the importance of competitive bidding in bringing value to the estate). Ensuring that the sale process remains fair and open necessarily requires the court to reject procedures that do not provide adequate time for marketing or for potential buyers to conduct diligence and analyses of the assets.

**B.    The Sale Milestones and Overall Timing of the Sale Process are Too Aggressive, Given the Lack of any Prepetition Marketing Process and Must be Revised.**

12. The Sale Motion proposed a timeline (the "Sale Milestones") that contemplates a sale hearing on June 29, 2020 and a closing within two (2) days of the entry of the order approving the sale. Assuming that the Bidding Procedures are approved during the next hearing in these cases—today, June 5, 2020—the Sale Milestones contemplate a lightning-speed twenty-four (24) day sale process, with bids due in eighteen (18) days, on June 22, 2020. This timeline would be overly aggressive even under normal circumstances. However, considering the COVID-19 pandemic and "safer at home" restrictions, the current economic climate, the overhang of the IHOP Objections and the lack of prepetition marketing of the Assets, **the proposed 24-day sale**

**process—from entry of bid procedures to a closing—is patently unreasonable**. This timeline simply cannot be expected to maximize the value of the Assets.

13.     A sale process must provide enough time to adequately expose the assets to the market because the best test for ensuring that value is being maximized is a full and fair market test. *See, e.g., Official Comm. Of Unsecured Creditors of Champion Enters. v. Credit Suisse (In re Champion Enters.),* 2012 Bankr. LEXIS 4009, *93-94 (Bankr. D. Del. Aug. 30, 2012) ("A market test is the best evidence of a company's value at a given point in time"). As noted by the bankruptcy court in *Champion Enters.*, a sale process provides a true market test when it is thorough, conducted at arm's length, and "[takes] place over many months pre-and post-petition." *Id*.

14.     The timeline proposed here is far too short to properly expose the Assets to the market. First, it is questionable if prospective bidders will devote the necessary resources even to begin due diligence given the pendency of the IHOP Objection. Second, even if prospective bidders immediately begin their review, those bidders will likely not have sufficient time to conduct the necessary due diligence and resolve all financing and other contingencies in time to submit a bid by the June 22, 2020 deadline (which is, again, only eighteen (18) days away). The proposed timeline must be modified to lengthen the marketing process so as to encourage competitive bidding.

15.     It is undisputed that the Debtors and the Lenders are pushing for an end of June closing because they do not wish to pay for July rent. They will also argue that the extremely fast-track sale timeline is reasonable because potential buyers will come from the pool of existing IHOP franchisees who are familiar with the Assets.[3]  However, no evidence whatsoever has been

---

[3] IHOP has also advanced this argument.

presented to support these contentions. Moreover, it is not the role of the Committee simply to take the Debtors' and Lenders' assertions at face value. Without a thorough marketing process and a sufficient market-test, the Debtors simply cannot know whether a higher and better purchase price could be obtained.

16.     Furthermore, the argument that a closing in June is in the interest of the Debtors' estates because the Debtors would not have to pay July rent is flawed. It is too simplistic to think that just because the Debtors close the sale by the end of June and thus no longer have obligations to pay rent in July, that the Debtors' estates will be enriched by the dollar amount of the total rent due in July. Any potential buyer will be aware that they are not buying a currently operating business, but instead restaurants that have been shuttered for months due to the ongoing Covid-19 pandemic. Thus, the potential buyers will no doubt recognize that time and expenses, including rent, must be expended to restock inventory, re-hire employees, and potentially allow time for State-ordered "safer at home" restrictions to ease before they can reopen the restaurants. It is therefore unlikely that a buyer would simply pay the Debtors' obligations for July rent—a period during which the restaurants will still be closed. Instead, potential buyers will likely reduce their proposed purchase price by the amount of rent due, as well as other operational costs that will be expended before the restaurants can be opened again. Thus, avoiding the payment of July rent is an illusory benefit at best.

17.     In order to ensure that the highest and best price is obtained for the Assets, the sale process should be extended by at least thirty (30) days. After all, "[t]he need for expedition ... is not a justification for abandoning proper standards." *See In re Lionel*, 722 F.2d 1063, 1071 (2d Cir. 1983) (citations omitted). Accordingly, the Committee requests that the Sale Milestones be modified as follows:

- <u>Closing</u> – July 31, 2020

- <u>Sale Hearing</u> – July 27, 2020

- <u>Auction</u> – July 24, 2020

- <u>Bid Deadline</u> – July 22, 2020

18.     Absent such modifications, it is highly questionable whether the Sale Process will maximize value.  An extension of the Sale Milestones is certainly in the best interests of the Debtors' estates, including the interests of the unsecured creditors, whose chances for any recovery may be entirely dependent upon the sale price obtained for the Assets.

**C.     Other Objectionable Provisions of the Sale Motion.**

19.     In addition to the objections and necessary modifications discussed above, there are several additional provisions of the Sale Motion to which the Committee objects:

20.     <u>Cure Costs</u>.  All cure costs associated with assuming and assigning unexpired leases and executory contracts must be paid by either the Debtors or the successful purchasers.  There must be clarity as to who will pay these outstanding amounts.

21.     <u>Asset Purchase Agreement</u>.  A form of the agreement has not been provided for analysis.  As such, it is unclear if a bid will be subject to adjustments (*e.g.*, accounts receivable assumption).  The Debtors must immediately provide potential bidders, and the Committee, with a form asset purchase agreement.

22.     <u>Bid Protections</u>.  The amount of any break-up fee, expense reimbursement, or other bid protections has not been disclosed.  Details of bid protections must be included in any order granting the Bid Procedures (as proposed to be modified herein).

23. <u>Access to Information</u>.  The Committee must have full access to the Data Room and other diligence materials concerning the assets and the sale, must be designated a "Consultation Party" and granted full Consultation Rights.

**WHEREFORE**, the Committee respectfully requests that the Court deny the Sale Motion unless the modifications as set forth herein are made and grant the Committee such other and further relief as the Court deems just and proper.

Dated:  June 5, 2020

*/s/ Mark A. Salzberg*_____
**SQUIRE PATTON BOGGS (US) LLP**
Mark A. Salzberg, Esq. (Florida Bar No. 965741)
2550 M Street, N.W.
Washington, DC 20037
(202) 457-600 (Phone)
(202) 457-6315 (Fax)
mark.salzberg@squirepb.com

— and —

Norman N. Kinel (admitted *pro hac vice*)
1211 Avenue of the Americas, 26th Floor
New York, New York 10036
(212) 872—9800 (Phone)
(212) 872—9815 (Fax)
norman.kinel@squirepb.com

*Proposed Counsel for the Official*
*Committee of Unsecured Creditors*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on June 5, 2020, a true and correct copy of the foregoing was served through the Court's Case Management/Electronic Case Filing ("CM/ECF") system, which sent automatic email notices of electronic filing to all parties indicated on the electronic filing receipt.

*/s/ Mark A. Salzberg*
Mark A. Salzberg
Florida Bar No. 965741
