**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA - DIVISION**

In re:                                                           Chapter 11

CFRA HOLDINGS, LLC, CFRA, LLC and
CFRA TRI-CITIES, LLC                                    Case No. 8:20-bk-03608-CPM
                                                                      Jointly Administered with
                                                                      Case No. 8:20-bk-03609-CPM and
                                                                      Case No. 8:20-bk-03610-CPM


                              Debtors.

_____/

**REPLY OF VALLEY NATIONAL BANK AND RAYMOND JAMES BANK, N.A. TO**
**OBJECTIONS OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO**
**DEBTORS' MOTIONS**

      Valley National Bank ("VNB") and Raymond James Bank, N.A. ("RJB," and collectively

with VNB, the "Lenders"), by and through their undersigned counsel, hereby respectfully submit

this reply to the objections (collectively, the "Objections," and each individually, an "Objection")

[*see* Case No. 8:20-bk-03608-CPM at ECF Doc. Nos. 120 and 121] of the Official Committee of

Unsecured Creditors (the "Committee") to: (i) the *Emergency Motion for Entry of Interim Orders*

*(A) Authorizing Debtors to Obtain Post-Petition Financing and (B) Authorizing Debtors to Use*

*Cash Collateral* (the "DIP Financing Motion") [*see* Case No. 8:20-bk-03608-CPM at ECF Doc.

No. 47]; and (ii) *Debtors' Motion for Entry of (I) an Order Approving Bidding Procedures,*

*Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof; and (II)*

*Order(s) (A) Approving the Sale of Substantially all of the Debtors' Assets, (B) Authorizing the*

*Sales Free and Clear of all Encumbrances, and (C) Authorizing Assumption and Assignment of*

*Executory Contracts and Unexpired Leases* (the "Sale Procedures Motion").  *See* Case No. 8:20-

bk-03608-CPM at ECF Doc. No 53.

## ARGUMENT

### I.    Committee's Objection to the Sale Motion.

The gravamen of the Committee's Objection to the Sale Procedures Motion is that the truncated timeline therein is insufficient to maximize the value that may be realized from such a sale. As such, the Committee asserts that the milestones set forth in the Sale Procedures Motion must be increased by at least thirty (30) days - to July 31, 2020. However, the Committee's Objection ignores that "[m]any times § 363 asset sales occur on a very expedited basis in Chapter 11, and, at times, the court authorizes a sale by auction. Purchasers often are willing to purchase only if the sale can be closed with lightning speed." *Union Food & Comm. Workers Union, Local 211 v. Family Snacks, Inc. (In re Family Snacks, Inc.)*, 257 B.R. 884, 897 (8th Cir. B.A.P. 2001); *see also In re Tex. Rangers Baseball Partners*, 431 B.R. 706 (Bankr. N.D. Tex. 2010) (holding the three weeks between issuance of bid procedures order and sale of debtor's assets was appropriate).

As a preliminary matter, the Committee's argument ignores the fact that the proposed sale process is the result of intense negotiations between the Debtors, Lenders and IHOP Restaurants LLC, IHOP Franchisor LLC, and IHOP Leasing LLC (collectively, "IHOP") - which negotiations have spanned more than two months. For reasons it has articulated in pleadings filed and at hearings in these cases, IHOP is unwilling to extend the sale date to July 31, 2020.

Next, extending the sale process through July 31, 2020 would result in an increase of administrative claims against the Debtors' estates by *at least* $800,000 for items such as insurance, security, utilities, lease cure costs and professional fees. The Debtors do not have the funds to carry these cases through July and the Committee has identified no source of funding. Other than additional borrowing from Lenders (including borrowing beyond that authorized in the current DIP Loan), extending the sale process through July 31, 2020 is not feasible.

Finally, the Committee proffers no evidence supporting the proposition that the sale price would be enhanced by extending the sale process through July 31, 2020 and that the increase in the purchase price would exceed the cost of such extension.  As noted, the Lenders would necessarily bear the cost of delay by way of increased cure costs being drained from the value of Lenders' Collateral and increased loan funding to the Debtors.  Lenders are understandably unwilling to incur that additional cost without evidence that the cost of extending the sale process would be outweighed by the increased return to the banks.

## II.    <u>Committee's Objection to the DIP Financing Motion</u>.

The crux of its Objection to the DIP Financing Motion, is that the sale process funded by the DIP Financing Motion provides no benefit to unsecured creditors.  As conceded at the hearing on June 5, the Committee has no viable alternative.[1]  The Committee Objection fails to recognize the benefits that the sale process funded by the DIP Loan provide to unsecured creditors or acknowledge that the proposed sale is the best available course of action.  Notwithstanding the position of the Committee, unsecured creditors fare far better under the funded consensual sale process than in the absence of same:

1.    The proposed consensual sale process contemplates sale by the Debtors of property related to all forty-nine (49) restaurants - including property that was alleged not to be property of the Debtors' estates.

2.    The proposed consensual sale provides for satisfaction of the cure claims of IHOP and resulting reduction in the unsecured creditor body of nearly $1,400,000.

3.    The proposed consensual sale provides for satisfaction of the cure claims of the Debtors' landlords and personal property lessors - providing direct and significant benefit to these unsecured creditors and further reducing the unsecured creditor body by a substantial amount.

4.    The landlords of the twenty (20) restaurants which are not subleased by IHOP have an opportunity to enter in lease extensions or new leases that are co-terminus with the new twenty

---

[1] At one point during the June 5 hearing, proposed counsel for the Committee mentioned abandoning the proffered sale process and immediate conversion of these cases to chapter 7.  There is no apparent value to unsecured creditors to that process.

(20) year franchise agreements being offered by IHOP as part of the consensual sale process funded by the DIP Loan. As several of these leases are scheduled to expire soon, this financial benefit is significant.

5.      The consensual sale process provides a mechanism for satisfaction of $245,000 in mechanics lien claims - that could otherwise become unsecured claims.

6.      Unsecured creditors that provided pre-petition goods and/or services at the forty-nine (49) restaurants will have an opportunity to do business with the new owners of those locations as soon as July 1.

7.      Employees who worked at the forty-nine (49) restaurants will have an opportunity to resume employment with the new owners of those locations as soon as July 1.

8.      Lenders are amenable to a carve out of funds received by Lenders from the proceeds of the consensual sale -- which funds would be unavailable to the Debtors' estates absent agreement of Lenders.

The aforementioned benefits are the direct result of the DIP Loan. Absent the DIP Loan, these benefits may not be available to unsecured creditors, may be reduced, or may be delayed.

The Committee Objection to the DIP Financing Motion also complains about the lack of a post-sale exit strategy, even though three such strategies were discussed with the Committee prior its filing the Objection - a structured dismissal, a liquidating plan, or a funded conversion to chapter 7. As discussed at the June 5 hearing, at this point a post-sale conversion of the Debtors' cases to chapter 7 seems most cost effective and beneficial to creditors. A chapter 7 trustee can efficiently administer an agreed carve out, conduct necessary claims review and reconciliation, and investigate and prosecute causes of action of the estates -- including avoidance actions of the estate.

Additional points raised in the Committee Objection to the DIP Financing Motion are equally unmoving.

The Committee asserts that the Debtors should not be authorized to waive the ability to surcharge the Lenders for the costs of preserving their collateral under 11 U.S.C. § 506(c). Where, as here, a secured lender funds a debtor's case, it "should not be surcharged for the privilege of doing so." *In re Metaldyne Corp.*, No. 09-13412 (MG), 2009 WL 2883045, at *5 (Bankr. S.D.N.Y.

Jun. 23, 2009).  Furthermore, waiver of 11 U.S.C. § 506(c) is among the building blocks upon which successful estate administration is based," and secured lenders would be far less likely to provide debtor-in-possession financing or allow the post-petition use of cash collateral without such a waiver. *InteliQuest Media Corp. v. Miller (In re InteliQuest Media Corp.)*, 326 B.R. 825, 831 (10th Cir. B.A.P. 2005). Accordingly, since the proposed financing by the Lenders is the primary, and indeed sole, economic force that will allow the Debtors' to sell their assets and provide a recovery to general unsecured creditors the Debtors' waiver of 11 U.S.C. § 506(c) is appropriate.

The Committee further asserts that the Debtors' proposed waiver of the "equities of the case" exception under 11 U.S.C. § 552 is inappropriate, however, a waiver of 11 U.S.C. § 552 is appropriate where, as here, prepetition lenders have agreed to a carve out from their collateral to fund the Debtors' operations and fees and expenses of other parties, such as U.S. Trustee fees and the committee's professional fees. *See, e.g., In re Stacy's, Inc.*, 508 B.R. 370, 380–81 (Bankr. D.S.C. 2014) (declining to apply equities of the case exception where secured lender had already agreed to carve-out and estate was only able to continue operating through the use of the lender's cash collateral).

Additionally, although the Committee objects to the Debtors waiver of the equitable doctrine of marshalling, the Committee's Objection fails to acknowledge that "an unsecured creditor may not utilize the doctrine of marshaling." *In re Mesa Intercontinental, Inc.*, 79 B.R. 669, 672 (Bankr. S.D. Tex. 1987) (collecting cases and holding that an unsecured creditor "falls outside the class of creditors able to request [marshaling]"); *see also In re Gen. Dev. Corp.*, 124 B.R. 376, 377 (Bankr. S.D. Fla. 1991) ("Inasmuch as the members of the Bondholders' Committee are unsecured claimants in this case, the implicit assertion of the principles of marshalling is

inappropriate."); *In re Craner*, 110 B.R. 111, 123 (Bankr. N.D.N.Y. 1988), *rev'd on other grounds* ("[A]n unsecured creditor may not avail himself of the doctrine of marshalling assets as it is basically a protection for junior secured creditors . . . .").

Finally, the Committee demands that the Lenders loan the Debtors $125,000 per month to pay for counsel fees of the Committee. See Objection at p. 8. This amount exceeds the funding being provided to counsel for the Debtors. Lenders contend that such amount is excessive given the circumstances of this case. Moreover, the Committee requests that the proposed lien investigation budget be increased to $75,000 but offers no basis for seeking to increase this line item from the amount set forth in the First Interim DIP Financing Order. Indeed, courts have approved investigation budgets in amounts much lower than that requested by the Committee in chapter 11 cases of substantially larger breadth and scope. *See, e.g., In re Barneys New York, Inc.*, *et al.*, Case No. 19-36300 (CGM) (Bankr. S.D.N.Y.) ($25,000); *In re Charming Charlie Holdings Inc.*, *et al.*, Case No. 19-11534 (CSS) (Bankr. D.Del.) ($25,000); *In re Charlotte Russe Holdings, Inc., et. al.*, Case No. 19-10210 (LSS) (Bankr. D. Del. ($50,000). Here, there are two (2) Promissory Notes, a Loan Agreement, a Security Agreement and corresponding filed UCC financing statements. These cases do not involve tremendously complex or involved loan transactions.

### III.    Proposed Counsel to the Committee Has a Concurrent Conflict of Interest.

The Objections were filed on behalf of the Committee by Squire Patton Boggs (US) LLP ("Squire"), as "proposed counsel" for the Committee. While the Committee was formed on May

27, 2020, no application has yet been filed seeking Court authorization for the Committee to retain Squire.[2]

VNB was surprised to see the Objections filed by Squire on behalf of the Committee given that Squire currently represents VNB -- albeit in other matters apart from the Debtors' bankruptcy cases.[3]  VNB contends that by advancing the Objections -- which seek to delay or prevent the liquidation of the Lenders' collateral -- Squire has a concurrent conflict of interest in the representation of the Committee, its prospective client, that is directly adverse to the interests of VNB, an existing client of the firm.

Rule 4-1.7 of the Florida Rules of Professional Conduct, which is closely modeled after Rule 1.7 of the Model Rules of Professional Conduct, states,

> A lawyer *must not* represent a client if . . . (1) the representation of 1 client will be directly adverse to another client; or . . . (2) there is a substantial risk that the representation of 1 or more clients will be materially limited by the lawyer's responsibilities to another client, former client or a third person or by a personal interest of the lawyer.

F.S.A. Bar Rule 4-1.7(a) (emphasis added).

Such prohibition against representation may be excused in limited circumstances:

> Notwithstanding the existence of a conflict of interest under subdivision (a), a lawyer may represent a client if:
>
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>
> (2) *the representation is not prohibited by law;*

---

[2] Lenders reserve the right to object to any application filed by the Committee for authorization to retain professionals, including Squire.

[3] Squire's representation of VNB existed prior to the formation of the Committee and has continued thereafter.

> (3) the representation does not involve the assertion of a position adverse to another client when the lawyer represents both clients in the same proceeding before a tribunal; **and**
>
> (4) *each affected client gives informed consent, confirmed in writing or clearly stated on the record at a hearing.*

F.S.A. Bar Rule 4-1.7(b) (emphasis added).

VNB has not agreed to waive what it believes is a concurrent conflict of interest. As a result, VNB contends that the concurrent representation by Squire of VNB and the Committee is barred by F.S.A. Bar Rule 4-1.7(b)(4).

VNB submits that the concurrent representation by Squire of VNB and the Committee is also barred by F.S.A. Bar Rule 4-1.7(b)(2), as same is prohibited by 11 U.S.C. § 1103(b). Section 1103(b) provides that:

> An attorney or accountant employed to represent a committee appointed under section 1102 of this title may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case. Representation of one or more creditors of the same class as represented by the committee shall not *per se* constitute the representation of an adverse interest.

11 U.S.C. § 1103(b).

Though 11 U.S.C. § 1103(b) contains a congressionally created exception for the employment of a law firm that represents a creditor of the same class as an unsecured creditors' committee (*i.e.*, unsecured creditors), "that exception, by its plain language, does not apply to the attorney's continued representation of creditors not of the same class, *i.e., secured creditors*." *In re Calabrese*, 173 B.R. 61, 63 (Bankr. D.Conn. 1994) (emphasis added) (disqualifying proposed counsel to the unsecured creditors' committee based on counsel's concurrent representation of the debtor's secured lender in other matters). Here, as a secured creditor, VNB is a creditor of a different class than the general unsecured creditors. Hence, the exception set forth in § 1103(b) does not apply in this case.

In appropriate cases, a disabling concurrent conflict of interest in the representation of an unsecured creditors committee and secured lenders might be remedied by retention of conflicts counsel by the committee.  Lenders submit that this is not one of those cases.  To begin with, the Lenders will not agree to fund two sets of law firms for the Committee given the economics of these cases[4] and will not agree to loan money to the estates that may be used to fund action(s) adverse to the Lenders.  Secondly, there is insufficient time for any conflicts counsel to get up to speed in light of the expedited sale process being proposed.

## **CONCLUSION**

For the reasons set forth herein, the Lenders respectfully request that this Court enter an Order overruling the Objections and approving the DIP Financing Motion and Sale Procedures Motion.

Respectfully Submitted,

Dated: June 8, 2020                          By:    */s/ David S. Catuogno*
                                                    **K&L GATES LLP**
                                                    David S. Catuogno (*pro hac vice*)
                                                    Daniel M. Eliades (*pro hac vice*)
                                                    One Newark Center, 10th Floor
                                                    Newark, New Jersey 07102
                                                    Telephone: (973) 848-4000
                                                    Facsimile: (973) 848-4001
                                                    Email: david.catuogno@klgates.com
                                                    Email: daniel.eliades@klgates.com

                                                    Jeffrey T. Kucera
                                                    Florida Bar No. 68233
                                                    Southeast Financial Center – Suite 3900
                                                    200 South Biscayne Boulevard
                                                    Miami, Florida 33131
                                                    Telephone: (305) 539-3300
                                                    Facsimile: (305) 358-7095
                                                    Email: jefrey.kucera@klgates.com

---

[4] Lenders' contend that unsecured creditors would be better served having additional carve out proceeds available for distribution as opposed to being used for another law firm.

*Counsel to Valley National Bank and*
*Raymond James Bank*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 8, 2020, a true and correct copy of the foregoing was served through the Court's Case Management/Electronic Case Filing ("CM/ECF") system, which sent automatic email notices of electronic filing to all parties indicated on the electronic filing receipt.

/s/ *David S. Catuogno*

David Catuogno (*pro hac vice*)