ORDERED.

**Dated:  June 09, 2020**

_(signature: Catherine M. Ewen)_

Catherine Peek McEwen
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION
www.flmb.uscourts.gov

In re:
CFRA HOLDINGS, LLC

Case No. 8:20-bk-03608-CPM
Chapter 11

*Jointly Administered with:*

CFRA, LLC
CFRA TRI-CITIES, LLC

Case No. 8:20-bk-03609-CPM
Case No. 8:20-bk-03610-CPM

Debtors.

_____/

**SECOND INTERIM ORDER
(I) AUTHORIZING THE DEBTORS TO
OBTAIN POST-PETITION FINANCING
FROM PRE-PETITION LENDERS PURSUANT
TO 11 U.S.C. § 364; (II) GRANTING LIENS AND
SUPERPRIORITY CLAIMS PURSUANT TO 11 U.S.C.
§ 364; (III) GRANTING ADEQUATE PROTECTION PURSUANT
TO 11 U.S.C. §§ 361, 362, AND 363; AND (IV) GRANTING SUCH
OTHER AND FURTHER RELIEF THAT THIS COURT FINDS EQUITABLE**

**THIS MATTER** came on for hearing on June 5, 2020 and June 8, 2020, on the Motion

(the "DIP Financing Motion")[1] [Docket No. 47] of CFRA Holdings, LLC ("CFRA Holdings"),

---

[1]     The Debtors filed a combined Motion for (i) Authority to Obtain Post-petition Financing; and (ii) Authority to use Lenders' Cash Collateral. This Interim Order addresses the request for Authority to incur Post-petition Financing. The request for Authority to use Lender's Cash Collateral is addressed in a separate Interim Order. For purposes of this Interim Order the motion is defined as the DIP Financing Motion.

CFRA, LLC ("CFRA"), and CFRA Tri-Cities, LLC ("CFRA Tri-Cities")[2] in the above-captioned chapter 11 cases (the "Cases") pursuant to Sections 105, 362, 363, 364, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*. (the "Bankruptcy Code"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2018-1(g)(2) of the Local Rules of the United States Bankruptcy Court for the Middle District of Florida (the "Local Rules"), for entry of this second interim consent order (the "Second Interim Order") seeking, among other things:

(i)      authorization for the Debtors to obtain a secured post-petition loan (the "DIP Loan") in the aggregate principal amount of up to One Million Dollars ($1,000,000), together with interest, costs, fees and other expenses and amounts pursuant to the terms and conditions set forth in that certain Debtor-in-Possession Loan Agreement (the "DIP Loan Agreement"), attached as Exhibit A to the First Interim Order[3], and  the notes, agreements and loan documents identified and referenced therein (collectively, the "DIP Loan Documents") by and between the Debtors, as borrowers, and Valley National Bank ("VNB") and Raymond James Bank, N.A. ("RJB," and collectively with VNB, the "Lenders") as lenders;

(ii)     authorization for the Debtors to execute and deliver the DIP Loan Documents to the Lenders and to perform such other and further acts as may be required in furtherance of the DIP Loan and the DIP Loan Documents;

(iii)    authorization for the Debtors to draw on the DIP Loan, subject to the terms and conditions precedent as set forth in the DIP Loan Documents, and to use proceeds of the DIP Loan only in accordance with (a) this Second Interim Order, any prior interim orders granted by the Court with respect to the DIP Financing Motion, and/or a Final DIP Order (defined below)

---

[2]      CFRA Tri-Cities and CFRA are referred to collectively as the "Operating Company Debtors".

[3]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Loan Agreement.

authorizing entry of the DIP Loan Documents; (b) the then-applicable Approved DIP Budget (as defined in the DIP Loan Documents), the Interim Approved DIP Budget is attached hereto as **Exhibit A** (the "Second Interim Approved DIP Budget");  and (c) any interim and/or final order authorizing Debtors' use of Lenders' cash collateral (the "Cash Collateral Order(s)");

(iv)     subject to the Carve-Out (defined below), the granting of allowed superpriority administrative expense claim status to Lenders in each of the Debtors' jointly administered cases herein for all amounts which become due and outstanding to Lenders under the DIP Loan and DIP Loan Documents (collectively, the "DIP Obligations");

(v)     subject to the Carve-out (as defined below) and exclusive of Avoidance Actions (as defined below), the granting to Lenders automatically perfected first-priority security interests in and liens on all of the property, assets or interests in property of each Debtor and each Debtor's "estate" (as defined in the Bankruptcy Code), in each case of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all accounts, inventory, goods, contract rights, instruments, documents, chattel paper, real property leases, personal property leases, intellectual property, patents, trademarks, copyrights and licenses therefor, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, letter-of-credit rights, supporting obligations, machinery and equipment, real property, fixtures, all proceeds of leases of real property, all of the issued and outstanding capital stock of each subsidiary of such Debtor, money, investment property, deposit accounts, all commercial tort claims and other causes of action, all cash and cash equivalents of the Debtors and all cash and non-cash proceeds, rents, products, substitutions, accessions and profits of any of the collateral described above (collectively, with respect to all such entities, the "DIP Loan Collateral") to secure all DIP Obligations;

3

(vi)     subject to and effective upon the entry of this Second Interim Order, the waiver by the Debtors of any right to surcharge against the Collateral pursuant to 11 U.S.C. § 506(c) or otherwise;

(vii)     modification of the automatic stay imposed by 11 U.S.C. § 362 to the extent necessary to provide Lenders with the relief necessary to implement and effectuate the terms and provisions of the DIP Loan Documents;

(viii)     scheduling a final hearing (the "Final Hearing") to consider entry of a final order (the "Final DIP Order") authorizing the balance of the credit available under the DIP Loan Documents and/or consideration of a modified and extended Approved DIP Budget and any requested relief not granted under the Second Interim Order on a final basis, all as set forth in the DIP Financing Motion and in the DIP Loan Documents.

**NOW THEREFORE**, the Court having considered the DIP Financing Motion, the DIP Loan Documents, and the evidence proffered at the hearing held on May 21, 2020 and the further hearings held on June 5, 2020 and June 8, 2020 (collectively, the "Hearings"); and due and appropriate notice of the DIP Financing Motion, the relief requested therein, and the Hearings having been given in accordance with Bankruptcy Rules 2002, 4001 and 9014; and the Court having entered a first interim order with respect to the relief requested through the DIP Financing Motion on May 27, 2020 (the "First Interim Order") [Docket No. 81] and hearings to consider the relief requested in the DIP Financing Motion and granted through this Second Interim Order having been held and concluded; and all objections to the relief requested in the DIP Financing Motion having been withdrawn, resolved, addressed or overruled by the Court; and it appearing to the Court that granting the relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, their creditors and equity holders; and it

further appearing, that the Debtors' estates are unable to obtain unsecured credit for money borrowed allowable as an administrative expense under Bankruptcy Code Section 503(b)(1); and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**THE COURT FINDS AS FOLLOWS:**

A.      _Petition Date_.  On May 6, 2020, (the "_Petition Date_") each of the Debtors filed a separate voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida (the "_Court_").

B.      _Debtors-in-Possession_.  The Debtors continue to maintain dominion and control over their assets and business operations as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

C.      _Jurisdiction and Venue_.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over the Debtors' chapter 11 cases, and over the persons and property affected hereby.  Consideration of the DIP Financing Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for these Cases is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      _Official Committees_.  The Office of the United States Trustee for Region 21 appointed an Official Committee of Unsecured Creditors in the Cases on May 27, 2020.

E.      _Notice_.  The notice given by the Debtors of the DIP Financing Motion, the relief requested therein and the Hearings constitutes appropriate, due and sufficient notice thereof and complies with the Bankruptcy Rules and Local Rules, and no further notice of the relief sought through the DIP Financing Motion and the relief granted herein is necessary or required.

F.      _Debtors' Stipulations_.  The Debtors admit, stipulate, and agree that:

a.      _The Pre-Petition Loan_.

i.        Prior to the Petition Date, Lenders, as lenders, extended certain loans to the Operating Company Debtors, as borrowers, which loans are guaranteed by CFRA Holdings and are secured by property of the Operating Company Debtors as set forth below. These loans are evidenced by various agreements and documents that are collectively referred to as the "Bank Credit Agreements."

ii.        Pursuant to the terms of the Bank Credit Agreements, the Lenders made available to the Operating Company Debtors a revolving line of credit in the principal amount of up to Twenty-Six Million ($26,000,000) (the "Prior Loan").

iii.        The Prior Loan comprises (i) a Revolving Line of Credit Promissory Note dated September 8, 2016 (the "VNB Note") made by the Operating Company Debtors and held by VNB in the principal amount of $11,000,000; and (ii) a Revolving Line of Credit Promissory Note dated September 8, 2016 (the "RJB Note," and collectively with the VNB Note, the "Prepetition Notes") made by the Operating Company Debtors and held by RJB in the principal amount of $15,000,000. CFRA Holdings guaranteed payment and performance of the Operating Company Debtors under the Bank Credit Agreements, including the Prepetition Notes, pursuant to a Guaranty of Payment and Performance dated September 8, 2016 (the "Guaranty").

iv.        As of the Petition Date, the Debtors were jointly and severally indebted (i) to VNB in the amount of at least $8,269,315.85, exclusive of legal fees and costs due under the Bank Credit Agreements prior to the Petition Date and exclusive of amounts which accrue under the Bank Credit Agreements after the Petition Date; (ii) to RJB in the amount of at least $11,276,339.75, exclusive of legal fees and costs due under the Bank Credit Agreements prior to the Petition Date and exclusive of amounts which accrue under the Bank Credit Agreements after the Petition Date; (together, the "Prepetition Indebtedness").

b.        *The Prepetition Collateral*.

i.      The Operating Company Debtors' payment of the Prepetition Indebtedness and performance under the Bank Credit Agreements, including the Prepetition Notes, are secured by the property identified in that certain Security Agreement dated September 9, 2016 (the "<u>Prepetition Security Agreement</u>"), wherein Operating Company Debtors granted Lenders valid, binding, perfected security interests and liens (the "<u>Prepetition Liens</u>") in certain of their property (the "<u>Prepetition Collateral</u>").

ii.      The Prepetition Indebtedness constitutes the legal, valid and binding obligations of the Debtors, enforceable against them in accordance with the terms of the Bank Credit Agreements and/or the Guaranty (other than in respect of the stay of enforcement pursuant to 11 U.S.C. § 362), and no portion of the Prepetition Indebtedness is subject to avoidance, re-characterization, reduction, setoff, offset, counterclaim, cross-claim, recoupment, defenses, disallowance, impairment, recovery, subordination or any challenges pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity.  The Debtors are jointly and severally liable to the respective Lenders in the amount of the Prepetition Indebtedness as identified herein.

iii.      The Prepetition Liens constitute legal, valid, binding, enforceable (other than in respect of the stay of enforcement pursuant to 11 U.S.C. § 362) and perfected security interests and liens on the Prepetition Collateral, were granted to, or for the benefit of, the Lenders, as applicable, for fair consideration and reasonably equivalent value, and are not subject to defense, counterclaim, re-characterization, subordination or avoidance pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity.

G.      *<u>Findings Regarding the Post-Petition Financing and Use of Cash Collateral</u>*.

a.      *<u>Cause</u>*.  Good cause has been shown for entry of this Second Interim Order.

b.      *<u>Need for Post-Petition Financing and Use of Cash Collateral</u>*.  The Debtors

have an immediate and critical need to obtain the DIP Loan to preserve property of the estates and maximize the distribution to creditors of the estate. The Debtors contend that they require immediate authority to use cash collateral of Lenders and obtain the DIP Loan from Lenders in order to pursue a sale of all or substantially all of the property of the estates and the Debtors do not have sufficient unencumbered cash or other assets to fund the necessary activities to be performed during the marketing period.   As noted, *supra,* the DIP Financing Motion also incorporates the Debtors' request for authority to use cash collateral of Lenders in these Cases (the "Cash Collateral Motion") and the Debtors have also filed a separate motion to approve bidding procedures and the sale of property of the estate e (the "Sale Motion"), including property and property interests utilized in connection with operation of the Debtors' forty-nine (49) restaurants (the "Restaurants") as specifically identified in the Sale Motion.   The Debtors contend that the Sale Motion, DIP Financing Motion and Cash Collateral Motion are inextricably intertwined. Lenders' agreement to provide the DIP Loan as set forth herein is contingent upon the Debtors' prosecution and the Court's approval of the Cash Collateral Motion and the Sale Motion.

      c.    *No Credit Available on More Favorable Terms.*  The Debtors are unable to obtain financing on terms more favorable than those offered by the Lenders under the DIP Loan and are unable to obtain unsecured credit allowable under 11 U.S.C. § 503(b)(1) as an administrative expense.  The Debtors are also unable to obtain secured credit under 11 U.S.C. § 364(c) on equal or more favorable terms than those offered by the Lenders under the DIP Loan.

      d.    *Use of Proceeds of the DIP Loan*.  The Debtors have agreed that the proceeds of the DIP Loan and any Advance shall be used only in accordance with then current approved budget(s) approved by Lenders (the "Approved DIP Budgets") and each advance shall be used solely in a manner consistent with the terms of the DIP Loan, the DIP Loan Documents,

this Second Interim Order, any Final DIP Financing Order and any order granting the Cash Collateral Motion (a "Cash Collateral Order").  Lenders' consent and approval of any budget for use of proceeds of the DIP Loan and any Advance shall be in the sole and absolute discretion of Lenders.

i.        *Interim Use(s)*: Per this Second Interim Order, the Debtors shall be authorized to use the proceeds of the DIP Loan for the designated expenditures and miscellaneous expense line items set forth in the Second Interim Approved DIP Budget.

ii.        *Use(s) upon Final DIP Order:*  Lenders' agreement to fund the DIP Loan beyond the Second Interim Approved DIP Budget is contingent upon the entry of an order approving bidding procedures in connection with the Sale Motion, and entry of the Final DIP Order, and entry of a final order approving the Cash Collateral Motion, in their entirety and without amendment, and pursuant to Approved DIP Budgets, as may be approved by Lenders in their sole discretion.

H.        *Good Faith of the Lenders*.

a.        *Willingness to Provide Financing*.  The Lenders have indicated a willingness to provide financing to the Debtors subject to: (i) the entry of this Second Interim Order, including the grant to Lenders of the liens herein; (ii) the approval of the terms and conditions of the DIP Loan and the DIP Loan Documents; (iii) the entry of an interim order granting the Cash Collateral Motion; and (iv) entry of an order approving bidding procedures in connection with the Sale Motion.

b.        *Good Faith Pursuant to 11 U.S.C. § 364(e)*.  Lenders are extending credit to the Debtors in good faith and, therefore, the security interests, liens, DIP Superpriority Claims (defined below) and other protections granted pursuant to this Second Interim Order and the DIP

Loan Documents to the Lenders will have the protections provided in 11 U.S.C. § 364(e) and will not be affected by any subsequent reversal, modification, vacatur, amendment, re-argument or reconsideration of this Second Interim Order or any other order.

Based upon the foregoing findings and conclusions, the DIP Financing Motion, and the record before the Court with respect to the DIP Financing Motion, and good and sufficient cause appearing therefor, **IT IS HEREBY ORDERED that**:

1.    *Financing Approved*.  Subject to entry of a further consent order for the interim use of cash collateral submitted by the Debtors and the Lenders contemporaneously herewith (the "Second Interim Cash Collateral Order"), the DIP Financing Motion is granted on an interim basis in accordance with the terms of this Second Interim Order.  Entry of a Final DIP Order authorizing DIP Financing shall be further conditioned upon the Court's entry of an order approving bidding procedures in connection with the Sale Motion, and entry of a final order granting the Cash Collateral Motion, each in their entirety and without amendment.

2.    *Objections Overruled*.  All objections to entry of this Second Interim Order, to the extent not withdrawn or resolved, and all reservations of rights included therein, are hereby overruled.  All objections to the approval of the balance of the DIP Loan are reserved.  The objection to the DIP Financing Motion [Docket No. 62] and the further objection and reservation of rights [Docket No. 78] filed by IHOP Restaurants LLC, IHOP Franchisor LLC, and IHOP Leasing LLC (collectively, the "IHOP Entities") have been withdrawn pursuant to the settlement among the Debtors, Lenders and the IHOP Entities as documented in connection with the order approving bidding procedures in connection with the Sale Motion, the terms and conditions of which are incorporated herein by reference.  The objection to the DIP Financing Motion filed by the Official Committee of Unsecured Creditors (the "Committee") [Docket No. 120] is overruled. For avoidance of doubt, entry of this Second Interim Order is without prejudice to any

and all rights of Smartvision Construction, LLC to assert, supplement and/or amend the objections raised in its Objection to the DIP Financing Motion [Docket No. 91] in connection with any final hearing on the DIP Financing Motion, as well as with respect to any proposed sale of any and/or all of the assets of the Debtors, and/or with respect to any plan(s) of reorganization in these Cases.

3.      _Authorization of the DIP Loan_.   The Debtors are expressly and immediately authorized to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Second Interim Order, the DIP Loan Documents, which are expressly approved and incorporated herein by reference, the Second Interim Approved DIP Budget, and the Second Interim Cash Collateral Order.

4.      _Authorization to Execute Documentation_.   The Debtors are hereby authorized to execute any additional documents and instruments as may be reasonably required by the Lenders to implement the terms or effectuate the purposes of this Second Interim Order.

5.      _Authorization to Borrow_.   The Debtors are hereby authorized to request one or more Advances under the DIP Loan, subject to the terms, conditions, limitations on availability set forth in this Second Interim Order, the DIP Loan Documents, Second Interim Approved DIP Budget and the Second Interim Cash Collateral Order.

6.      _No Obligation to Extend Credit_.  The Lenders shall have no obligation to make any loan or Advance under the DIP Loan Documents, unless all of the conditions precedent to the making of such extension of credit under the DIP Loan Documents, the Second Interim Cash Collateral Order and this Second Interim Order have been satisfied in full or waived by the Lenders in their sole discretion.

7.      _Budget; Use of DIP Loan Proceeds_.   From and after the entry of this Second Interim Order, the Debtors shall use advances under the DIP Loan only for the purposes

specifically set forth in this Second Interim Order, the DIP Loan Documents, and/or the Second Interim Cash Collateral Order, and solely for expenses included in the Second Interim Approved DIP Budget.

8.     *Superpriority Claims*.    Pursuant to 11 U.S.C. § 364(c)(1), all of the DIP Obligations shall collectively constitute an allowed superpriority administrative expense claim against the Debtors (the "DIP Superpriority Claims") in each of these Cases with priority over any and all administrative expense claims, adequate protection claims, diminution claims, and all other claims against the Debtors or their estates, at any time existing or arising, of any kind or nature whatsoever, including without limitation, administrative expenses of the kinds specified in or ordered pursuant to 11 U.S.C. §§ 105, 326, 328, 330, 331, 364(c), 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114, and any other provision of the Bankruptcy Code, as provided under 11 U.S.C. § 364(c)(1); and which shall at all times be senior to the rights of the Debtors and their estates and any creditor or other party in interest to the extent permitted by law.

9.     *DIP Liens*.

a.     As security for the DIP Obligations, effective and perfected upon the date of this Second Interim Order and without the necessity of the execution or recordation of filings by the Lenders of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the Lenders over any collateral, the following security interests and liens are hereby granted by the Debtors to the Lenders (the "DIP Liens"):

i.     a first priority, perfected security interest in, and lien, under 11 U.S.C. § 364(c)(2) upon: (A) all DIP Loan Collateral to the extent same is not subject to valid,

perfected and non-avoidable liens which are entitled to priority over the DIP Liens; and (B) the Prepetition Collateral; and

    ii.  a junior lien, under 11 U.S.C. § 364(c)(3), upon all of the DIP Loan Collateral to the extent same is not subject to valid, perfected and non-avoidable liens (other than the Prepetition Liens) in favor of third parties which are entitled to priority over the DIP Liens.

    b.  The DIP Liens shall be senior priming liens on all Prepetition Collateral senior to all Prepetition Liens thereon and any Adequate Protection Liens (as defined below) thereon, but subject only to (i) the Carve-Out, and (ii) liens that are valid, binding, perfected and unavoidable as of the Petition Date (other than the Prepetition Liens) and which are entitled to priority over the DIP Liens.

    c.  The DIP Loan Collateral shall not include any claims or causes of action arising under 11 U.S.C. §§ 542, 544, 545, 547, 548, 550, 551, 553(b) or 724(a) (collectively, "Avoidance Actions"); and shall not apply to any proceeds of Avoidance Actions.

    d.  For the avoidance of doubt and notwithstanding anything to the contrary contained herein, unless otherwise expressly permitted by the terms of the applicable lease and subject to the rights of all landlords and sublessors therein, any liens granted under this Order shall not include the Debtors' real property leases (including, for the avoidance of doubt, any ground leases), but shall include the proceeds from the disposition of all such leases.

    e.  For the avoidance of doubt, and notwithstanding anything to the contrary contained herein, the DIP Loan Collateral shall not include the franchise agreements and development agreements by and between any of the Debtors, as franchisee, and IHOP Franchising, LLC, a Delaware limited liability company, and its successors and assigns, as franchisor ("IHOP") (the "Franchise Agreements"), or the equipment, machinery, furniture, fixtures and other personal property leased by any of the Debtors from IHOP or any affiliate of

IHOP (the "IHOP Leases"), but the DIP Loan Collateral shall include the proceeds from the disposition of any or all of the Franchise Agreements and IHOP Leases.[4]

10. *Pre-Petition Secured Parties' Adequate Protection*.

a. The Lenders are entitled, pursuant to 11 U.S.C.§§ 361, 363(e) and 364(d)(1), to adequate protection to the extent and priority of their liens in the Prepetition Collateral, including cash collateral, for any diminution in the value of their interests in the Prepetition Collateral, including, without limitation, any such diminution that may result from the sale, lease or use by the Debtors (or other actual consumption) of cash collateral and any other Prepetition Collateral, and the imposition of the automatic stay pursuant to 11 U.S.C. § 362 (each, a "Diminution Claim"). As adequate protection for such Diminution Claims, the Lenders are granted, *nunc pro tunc* to the Petition Date, the following adequate protection (collectively, the "Adequate Protection Provisions"):

b. *Adequate Protection Liens*. Subject to paragraph 9.e.n.4, the Lenders are hereby granted valid and perfected replacement security interests in and liens on any of the DIP Loan Collateral in which the Lenders did not have valid, perfected liens and security interests as of the Petition Date (the "Adequate Protection Liens"); provided, that the Adequate Protection Liens shall not attach to the Avoidance Actions or the proceeds of the Avoidance Actions.

11. *Repayment of DIP Loan*. All DIP Obligations shall be due and payable in full, as set forth in the DIP Loan Documents. Unless otherwise agreed in writing by Lenders, the first proceeds from any sale, assignment, or disposition of DIP Loan Collateral shall be disbursed to Lenders up to the outstanding amounts due under the DIP Loan Documents at the time of each such sale, assignment, or disposition of DIP Loan Collateral.

---

[4]    However, for purposes of this Interim Order, such proceeds shall not include proceeds from the disposition of personal property under any of the IHOP Leases that are not true leases.

12.    _Reservation of Rights of Lenders_. Notwithstanding any other provision hereof, the grant of adequate protection to the Lenders in the form of the Adequate Protection Provisions is without prejudice to the right of any Lender to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, upon proper notice and without prejudice to the right of the Debtors or any other party to contest such modification.

13.    _Perfection of DIP Liens and Adequate Protection Liens_. The DIP Liens and the Adequate Protection Liens shall be and hereby are fully perfected liens and security interests, effective and perfected upon the date of this Second Interim Order.  This Second Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens.

14.    _Payments of Debtors' Professionals - Carve Out_.

a.    Advances under the DIP Loan shall be used for payment of allowed fees and expenses of: (i) Debtors' counsel, Saul Ewing Arnstein & Lehr LLP ("Debtors' Counsel"); (ii) any chief restructuring officer, and his/her firm, that may be retained in the Cases (collectively the "CRO,"); and (iii) proposed counsel for the Official Committee of Unsecured Creditors, Squire Patton Boggs (US) LLP ("Committee's Counsel" and, collectively with the Debtors' Counsel and the CRO, the "Retained Professionals"), in the amounts set forth on the Second Interim Approved Budget (collectively, the "Second Interim Professional Fee Payments"

and, collectively with all amounts set forth in any prior Interim Approved DIP Budgets, the "Professional Fee Payments").

b.      The Second Interim Professional Fee Payments have and/or shall be funded from Lenders' Cash Collateral (as defined in the Cash Collateral Motion) and/or the proceeds of the DIP Loan as, when, and to the extent set forth in the Second Interim Approved DIP Budget and subject to the terms and conditions of the DIP Loan Documents, this Second Interim Order and the Second Interim Cash Collateral Order.  The Debtors shall wire transfer funds to the Saul Ewing Arnstein & Lehr LLP Client Trust Account (to the extent of such funds actually deposited, the "Carve-Out Reserve Account") in the amounts equal to, but not to exceed, the amounts budgeted for the Retained Professionals set forth in the Second Interim Approved DIP Budget for each such week.  Debtors' Counsel shall release to itself, the CRO or Committee's Counsel, as the case may be, such amounts as are payable pursuant to an applicable Order of this Court, including, without limitation, an order approving the CRO Retention Motion (defined below), any order approving interim compensation procedures in the Cases and any order granting interim or final fee applications in the Cases.  In making payments from the Carve-Out Reserve Account, Debtors' Counsel shall be entitled to rely on written certifications from the CRO as to the amount the CRO is due and owing from the Carve-Out Reserve Account and in no circumstance shall Debtors' Counsel be obligated to pay any party other than from the funds held, from time to time, in the Carve-Out Reserve Account.

c.      The entitlement of Debtors' Counsel and Committee's Counsel to retain their portion of the Second Interim Professional Fee Payments is contingent upon (i) entry of Orders, respectively, by the Bankruptcy Court approving the retention of Debtors' Counsel and Committee's Counsel pursuant to 11 U.S.C. §§ 105, 327, 328, 1103, or 363, Bankruptcy Rule 2016(b), and Local Rule 2016-1; and (ii) entry of an Order by the Bankruptcy Court allowing and

approving compensation and/or reimbursement to said professional pursuant to 11 U.S.C. §§ 330 and 331, and shall be further limited to the amount(s) allowed and approved pursuant to such Order(s) (an "Allowed Fee Order").

   d.  The entitlement of the CRO and his/her firm to retain their portion of the Initial Professional Fee Payments is contingent upon compliance with the terms and conditions of the Order approving the CRO's retention in these cases [Docket No. 71].

   e.  Pursuant to 11 U.S.C. § 364(c)(1), the Second Interim Professional Fee Payments are and shall be included in the allowed DIP super priority claims awarded to Lenders under this Second Interim Order; provided that each of the liens and claims, including the DIP super priority claims granted to the Lenders in connection with the DIP Loan, shall be subject only to a "Carve-Out"[5] from the Lenders' Collateral for: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to section 1930(a)(6) of title 28 of the United States Code and (ii) any unpaid portion of the Professional Fee Payments, awarded by entry of an Allowed Fee Order or pursuant to the terms and conditions set forth in the Order approving the CRO's retention, which fees and charges have not been otherwise paid with unencumbered estate funds. Any Carve Out obligations shall be paid from any unencumbered funds of the Debtors' estates before being paid from any collateral

---

[5]  The "Carve Out" shall mean (a) the unpaid fees and expenses incurred by Retained Professionals that were incurred (i) on and after the Petition Date and before the Termination Date (as defined in the DIP Loan Agreement) (both only if the Lenders terminate the Debtors' use of proceeds of the DIP Loan and Lenders' cash collateral as a result of the occurrence of a Termination Event (as defined in the DIP Loan Agreement) and the Agent delivers notice to counsel for the Debtors that the Agent has exercised its right to terminate the Debtors' use of cash collateral as a result of the occurrence of a Termination Event) but not in excess of the total aggregate amount set forth in the Interim Approved DIP Budgets, and (ii) provided that, in each case, such fees and expenses are ultimately allowed on a final basis by this Court and are not excluded from the Carve Out under the later provisions hereof; and (b) any unpaid fees payable to the U.S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code. All prepetition retainers and any other unencumbered property of the estate shall be used to pay any allowed fees and expenses of the Retained Professionals before any payment of such fees or expenses are made from the Carve Out.

of Lenders. No part of the Carve Out shall be available to pay professional fees incurred by any other party in the Cases.

      f.      Nothing herein shall constitute a cap on the amount of professional fees and expenses that may be incurred or allowed in the Cases; _provided_ that no payments of such fees and expenses shall be made from Lenders' Cash Collateral, Lenders Collateral and/or the DIP Loan proceeds except as, when, and to the extent set forth in Approved DIP Budgets, and subject to the terms and conditions of the DIP Loan Documents, this Second Interim Order and the Second Interim Cash Collateral Order. Moreover, nothing herein shall be construed as consent to the allowance of any fees or expenses of the Retained Professionals or shall affect the rights of Lenders to object to such amount.

      g.      In exchange for the consideration afforded by Lenders under this Second Interim Order, none of the Lenders' respective interests in property of the Debtors' estates shall be, with respect to any fees, expenses or charges incurred by the Retained Professionals or any other professional retained by any of the Debtors, subject to the surcharge provisions of section 506(c) of the Bankruptcy Code, the enhancement of collateral provisions of section 552 of the Bankruptcy Code, or any other legal or equitable doctrine (including unjust enrichment).

      h.      No portion of the Lenders' Cash Collateral, Lenders' Collateral, the DIP Loan proceeds or Carve Out may be used to pay any fees or expenses incurred by any entity in connection with any claim, actions or services adverse to Lenders, Agent or their affiliates (direct or indirect), or any of their respective directors, officers, members (direct or indirect), partner, equity owner, agent, servant, employees, counsel, consultants or other representative (collectively, the "Lender Parties"), including (i) preventing, hindering or delaying Agent's or Lenders' enforcement or realization upon any collateral upon the occurrence of the Termination Date, (ii) using or seeking to use Cash Collateral or selling other Collateral without Lenders'

consent, (iii) incurring indebtedness with a priority equal or senior to Lenders' interest in property of the estate, (iv) objecting to or contesting in any manner, or raising any defense to, the validity, extent, amount, perfection, priority or enforceability of Lenders' claims or security interests, or (v) commencing and continuing any adversary proceeding against any of the Lender Parties, provided, however, that up to $7,500 of the Carve-Out may be used by professionals retained by the Official Committee of Unsecured Creditors to investigate the validity, extent, amount, perfection, priority and/or enforceability of Lenders' claims and security interests.

i.      Upon the Termination Date, and with the exception of the accrued but unfunded portion of the Carve Out incurred in accordance with any Interim Approved Budget prior to the Termination Date, Lenders shall have no obligation to fund any Carve Out for amounts incurred in excess of the aggregate of the weekly line items for the period prior to the Termination Date.

15.     _Termination_.  As and when set forth in the DIP Loan Agreement, Lenders may terminate the Debtors' ability to draw upon the DIP Loan or receive Advances, including at any time, for any reason or no reason, in the sole and absolute discretion of Lenders. As of the Termination Date, Debtors shall no longer have any ability to access or draw upon the DIP Loan, except that the Termination Event shall not impact draws and disbursements already made or in process under the DIP Loan, nor shall it impact the Lenders' obligations with respect to the Carve-Out and the Post-Termination Carve-Out (defined below), subject to the condition for payment thereof as set forth herein. For purposes herein, "Post-Termination Carve-Out" shall mean reasonably necessary fees and expenses incurred by Debtors' Counsel and the CRO following the Termination Date in order to conclude the Cases, including with respect to seeking dismissal and/or conversion of the Cases, up to a cap of $35,000. With the exception of the $35,000 limit on the Post-Termination Carve Out, the Post-Termination Carve Out shall be subject to the same

terms and conditions as the Carve Out.   In addition, the Debtors may draw upon the DIP Loan after the Termination Date for the sole express purpose of paying for essential Utility Services[6] incurred after the Petition Date and through the Termination Date, which amounts shall be included on subsequent Approved DIP Budgets, subject to the approval of the Lenders.

16.     *Good Faith Under 11 U.S.C. § 364(e); No Modification or Stay of this Second Interim Order.*  Lenders are extending credit to the Debtors pursuant to the DIP Loan Documents and  in good faith and, therefore, the security interests, liens, DIP Superpriority Claims, and other protections granted pursuant to this Second Interim Order and the DIP Loan Documents to the Lenders will have the protections provided in 11 U.S.C. § 364(e) and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Second Interim Order or any other order.

17.     *Proofs of Claim.*  Lenders shall not be required to file proofs of claim in the Cases for any claim allowed herein in relation to the DIP Loan or the Prepetition Indebtedness.  The Lenders are hereby authorized and entitled, in their sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim in these cases for any claim allowed herein in relation to the DIP Loan or the Prepetition Indebtedness.

18.     *Limitations on the DIP Loan and the DIP Loan Collateral.*  The DIP Loan and the DIP Loan Collateral may not be used in connection with: (a) preventing, hindering, or delaying any of the Lenders' enforcement or realization upon any of the DIP Loan Collateral or Prepetition Collateral; (b) objecting to or challenging in any way any claims or, liens of the Lenders; (c) the pursuit of any affirmative claims of recovery against either of the Lenders; or (d)

---

[6]     "Utility Services," as used herein, means the limited, post-petition utility services, including but not limited to electricity, water, telephone and/or internet services actually provided at each of the Debtors' locations required to preserve the value of the Debtors' assets, as set forth more fully in the *Debtors' Motion for Entry of Conditional Order: (A) Prohibiting Utilities from Altering, Refusing or Discontinuing Service on Account of Pre-Petition Invoices; and (B) Establishing Procedures for Additional Adequate Assurances* being filed contemporaneously herewith.

prosecuting an objection to, or contesting in any manner, or raising any defenses to (but not the investigation of), the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Liens, the Prepetition Indebtedness, the DIP Obligations, the DIP Liens, or any other rights or interests of the Lenders.

19.     _Prohibition on Liens/Subordination_.   Except as otherwise provided in the DIP Loan Documents or this Second Interim Order, the Debtors shall not seek to have the DIP Liens be: (i) made subject or subordinated to, or made _pari passu_ with, any other lien, security interest or claim existing as of the Petition Date, or created under 11 U.S.C. §§ 363 or 364(d) or otherwise; or (ii) made subject to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estates under 11 U.S.C. § 551.

20.     _Modification of the Automatic Stay_.   The automatic stay imposed under 11 U.S.C. § 362(a) is hereby modified to the extent necessary (i) to authorize the Debtors to pay, and Lenders to retain and apply, payments made in accordance with the terms of this Second Interim Order and consistent with the DIP Loan Documents including, without limitation, payments of accrued interest and payments of principal amounts outstanding under the DIP Loan; and (ii) upon the occurrence of a Termination Event as defined in the DIP Loan Documents, to authorize Lenders to pursue any and all rights under the DIP Liens and as to the DIP Collateral without further court order.   Notwithstanding anything to the contrary contained herein, upon the occurrence and continuance of an event of default, the Lenders may enter upon leased premises only as provided by (i) any separate agreement by and between the applicable landlord and the Lenders (the terms of which shall be reasonably acceptable to the parties thereto), (ii) applicable non-bankruptcy law, or (iii) an order from the Bankruptcy Court on no less than five (5) days' notice to the applicable landlord.

21.     _Limitation on Charging Expenses Against Collateral._  Except to the extent of the Initial Carve-Out, the Debtors hereby waive any rights they may have to charge against or to recover from the DIP Loan Collateral expenses of administration of these Cases or any future proceeding that may result therefrom, including a case under chapter 7 of the Bankruptcy Code, pursuant to 11 U.S.C. § 506(c), the enhancement of collateral provisions of 11 U.S.C. § 552, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) or any similar principle of law, without the prior written consent of the Lenders.  In no event shall the Lenders be subject to the "equities of the case" exception contained in 11 U.S.C. § 552(b) or any other similar doctrine with respect to the DIP Loan Collateral.

22.     _No Waiver by Failure to Seek Relief_. The failure of the Lenders to seek relief or otherwise exercise their rights and remedies under this Second Interim Order, the DIP Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise.

23.     _Binding Effect of Second Interim Order_. Immediately upon execution by this Court, the terms and provisions of this Second Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the Lenders, all other creditors of the Debtors, and all other parties in interest and their respective successors and assigns, including upon dismissal of the Cases.

24.     _Priority of Terms_.  To the extent of any specific conflict between or among (a) the DIP Financing Motion, the DIP Loan Documents, or any other agreements, on the one hand, and (b) the terms and provisions of this Second Interim Order, on the other hand, the terms and provisions of this Second Interim Order shall govern.

25.     _No Modification of Second Interim Order_. The Debtors irrevocably waive the right to seek and shall not, without the Lenders' prior written consent, seek or consent to, directly

or indirectly: (a) any modification, stay, vacatur or amendment to this Second Interim Order; or (b) the granting of any lien on any of the DIP Loan Collateral with priority equal or superior to the DIP Liens, except as specifically provided herein or in the DIP Loan Documents.

26.     _Modifications of DIP Loan Documents, and Approved DIP Budget_.  The Debtors are hereby authorized, without further order of this Court, to enter into agreements with the Lenders providing for any non-material modifications to the DIP Loan Documents or the Second Interim Approved DIP Budget necessary to conform the terms of this Second Interim Order.

27.     _Headings_. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Second Interim Order.

28.     _Survival_.  The terms and provisions of this Second Interim Order, including the claims, liens, security interests and other protections granted to the Lenders pursuant to this Second Interim Order and/or the DIP Loan Documents, notwithstanding the entry of any such order, shall continue in the Cases, or following dismissal of the Cases, and shall maintain their priority as provided by this Second Interim Order until all the DIP Obligations, pursuant to the DIP Loan Documents and this Second Interim Order, have been indefeasibly paid in full (such payment being without prejudice to any terms or provisions contained in the DIP Loan which survive such discharge by their terms), and all commitments to extend credit under the DIP Loan are terminated.

29.     _Bankruptcy Rule 7052_. This Second Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  Any finding of fact shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is stated as a finding of fact.

30.    _Further Hearing_.  The Court shall hold a further hearing to consider the relief requested in the Motion on **June 19, 2020 at 2:00 p.m. (ET)**.

31.    _Retention of Jurisdiction_. The Court has and will retain jurisdiction to enforce this Second Interim Order and DIP Loan Documents according to their terms.

AGREED AS TO FORM, ENTRY AND CONTENT:

**SAUL EWING ARNSTEIN & LEHR LLP       K&L GATES LLP**


By: _/s/  Aaron S. Applebaum____          By: _/s/  Daniel M. Eliades_____
    Carmen Contreras-Martinez              Daniel M. Eliades, Esq.
    Florida Bar No. 093475              David S. Catuogno, Esq.
    701 Brickell Avenue, 17th Floor              One Newark Center, 10th Floor
    Miami, FL 33131              Newark, New Jersey 07102
    Telephone: (305) 428-4500              Tel: (973) 848-4000
    Facsimile: (305) 374-4744              Facsimile: (973) 848-4001
    Carmen.Contreras-Martinez@saul.com              Email: daniel.eliades@klgates.com
                  Email: david.catuogno@klgates.com
    -and-

    Stephen B. Ravin          _Counsel to Valley National Bank and_
    Florida Bar No. 293768 (_inactive status_)          _Raymond James Bank, N.A,_
    Aaron S. Applebaum
    1037 Raymond Boulevard
    Suite 1520
    Newark, NJ 07102
    Telephone: (973) 286-6700
    Facsimile:  (973) 286-6800
    Stephen.Ravin@saul.com
    Aaron.Applebaum@saul.com


_Counsel for Debtors and  Debtors-in-Possession_


# # #


(_Carmen Contreras-Martinez, Esq. is directed to serve a copy of this Order on interested parties who are non-CM/ECF users and to file a proof of service within three days of entry of this Order._)

**<u>EXHIBIT A</u>**
**SECOND INTERIM APPROVED DIP BUDGET**

**CFRA, LLC; CFRA Holdings, LLC; CFRA Tri-Cities, LLC**
**1-Week Budget & Cash Flow**

| ($ thousands)<br>Week Ending Date | | 1<br>Projected<br>6/6/2020 | | Week<br>1<br>Total |
|---|---|---|---|---|
| **Cash Receipts** | | | | |
| DIP Draws | $ | 117 | $ | 117 |
| A/R Collections (Gross) | | - | | - |
| Less Discount | | - | | - |
| A/R Collections (Net) | $ | - | $ | - |
| Equipment Sales | | - | | - |
| Franchise Sales | | - | | - |
| Total Cash Receipts | $ | 117 | $ | 117 |
| | | | | |
| Cash Disbursements | | | | |
| Rents (1) | $ | - | $ | - |
| Utilities (2)(3) | | 25 | | 25 |
| Insurance | | 32 | | 32 |
| Debtors Counsel | | 25 | | 25 |
| Debtors CRO | | 25 | | 25 |
| Appraisal | | - | | - |
| Miscellaneous | | 5 | | 5 |
| US Trustee Fees | | - | | - |
| Contingency | | 5 | | 5 |
| Creditors Committee Counsel | | - | | - |
| Secured Lender Fees and Interest | | - | | - |
| Total Cash Disbursements | $ | 117 | $ | 117 |
| **Net Weekly Cash Flow** | $ | - | $ | - |
| Beginning Cash Balance | | - | | - |
| **Ending Cash Balance** | $ | - | $ | - |

**Notes:**

1. Monthly rent of $715,000, though IHOP subleases require weekly payments. Assumes June rent is paid out of sales proceeds.
2. Site utilities and security are maintained. Assumes $25,000 for security with utilities later in the month.
3. No site landscaping or other maintenance included.