ORDERED.

**Dated:  June 09, 2020**

Catherine M. Ewen

Catherine Peek McEwen
United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re:<br>CFRA HOLDINGS, LLC | Chapter 11<br>Case No. 8:20-bk-03608-CPM |
| | *Jointly Administered with:* |
| CFRA, LLC<br>CFRA TRI-CITIES, LLC | Case No. 8:20-bk-03609-CPM<br>Case No. 8:20-bk-03610-CPM |
| Debtors. | |

_____ /

## ORDER APPROVING BIDDING PROCEDURES,
## ASSUMPTION AND ASSIGNMENT PROCEDURES,
## AND THE FORM AND MANNER OF NOTICE THEREOF

Upon consideration of the motion (the "**Motion**")[1] [Docket No. 53] of the Debtors in the

above-captioned chapter 11 cases for the entry of:

(A)     an order, (i) scheduling a hearing (the "**Sale Hearing**") on approval of one or

more sales of or other acquisition transactions (each a "**Sale**") of substantially all of the Debtors'

personal property and other related interests (the "**Assets**"), either individually or in lots, free and

clear of all liens, claims, encumbrances, and other interests (collectively, the "**Encumbrances**"),

---

[1]     Capitalized terms used but not defined herein shall have the meanings given in the Motion or the Bidding
Procedures (as defined below), as applicable.

other than those Encumbrances permitted by the applicable asset purchase agreement or other agreement for the applicable Sale (each a "**Transaction Agreement**"), though a section 363 Sale, and authorizing the assumption and assignment of certain executory contracts and unexpired leases (each, an "**Assumed Contract**," and collectively, the "**Assumed Contracts**") in connection therewith, (ii) authorizing and approving certain proposed bidding procedures for the Sales in the form attached as **Exhibit 1** (collectively, the "**Bidding Procedures**"), certain proposed assumption and assignment procedures (collectively, the "**Assumption and Assignment Procedures**"), and the form and manner of notice thereof; and (iii) granting related relief; and

(B)     an order (or orders) (each a "**Sale Order**"),[2] (i) authorizing and approving the Debtors' entry into the Transaction Agreement(s) with Successful Bidder(s) (which may be the Stalking Horse Purchaser) or Back-Up Bidder(s), as applicable; (ii) authorizing and approving the Sale of Assets, free and clear of all Encumbrances other than those permitted by the applicable Transaction Agreement; (iii) authorizing and approving the assumption and assignment of the Assumed Contacts in connection therewith; and (iv) granting related relief;

and due and proper notice of the Motion having been given as provided in the Motion; and it appearing that no other or further notice need be provided; and the Bidding Procedures Hearing (as defined below) having been held; and upon all of the proceedings had before the Court; and the Court having reviewed the Motion; and the Court having found and determined that the relief sought in the Motion and set forth herein is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth

---

[2]     The Debtors shall file the applicable form(s) of Sale Order as soon as practicable after such document is negotiated with the applicable transaction party or parties.

in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

### FOUND AND DETERMINED THAT:[3]

A.    This Court has jurisdiction to consider the Motion in accordance with 28 U.S.C. §§ 157 and 1334.

B.    Venue of this proceeding and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

C.    The statutory and legal predicates for the relief requested in the Motion and provided for herein are sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), and Rules 2002, 6004, 6006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

D.    Through the Motion and at the hearing on the Motion (the "**Bidding Procedures Hearing**"), the Debtors demonstrated that good and sufficient notice of the relief granted by this Order has been given and no further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 2002 and all other interested parties.

E.    The Sale Notice (as defined below) is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of this Order, the Bidding Procedures, the Auction, the Sale, and the Sale Hearing, and any and all objection deadlines related thereto, and no other or further notice is required of the foregoing.

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

F.      The Bidding Procedures are fair, reasonable, and appropriate and are designed to maximize recovery with respect to any Sale.

G.      The Assumption and Assignment Procedures provided for herein and in the Assumption Notice (as defined below) are reasonable and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.  The Assumption and Assignment Procedures and the Assumption Notice have been tailored to provide an adequate opportunity for all Counterparties (as defined below) to assert any Contract Objections (as defined in the Assumption and Assignment Procedures).

H.      The Debtors; IHOP Restaurants LLC,  IHOP Franchisor LLC, and IHOP Leasing LLC (collectively, "**IHOP**"); Valley National Bank ("**VNB**") and Raymond James Bank, N.A. ("**RJB**," and collectively with VNB, the "**Lenders**" and, collectively with the Debtors and IHOP, the "**Parties**") have agreed to the terms of *Addendum A to Order Approving Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof* (the "**Addendum**") in the form attached hereto as **Exhibit 4** and incorporated herein by reference.

I.      Entry of this Order is in the best interests of the Debtors, their estates and creditors and all other interested parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      Those portions of the Motion seeking approval of (a) the Assumption and Assignment Procedures, (b) the Bidding Procedures, (c) the date, time and place of the Auction and Sale Hearing, and (d) the noticing and objection procedures related to each of the foregoing, including, without limitation, the Sale Notice, substantially in the form attached hereto as **Exhibit 2** (the "**Sale Notice**"), and the Assumption Notice, substantially in the form attached hereto as **Exhibit 3** (the "**Assumption Notice**"), are hereby GRANTED as provided herein.

2.      The Addendum attached hereto as **Exhibit 4** is hereby approved in all respects and shall be deemed a part hereof.  Any inconsistency between the terms of this Order and the Addendum shall be resolved in favor of the Addendum.

3.      The *Objection of IHOP Restaurants LLC, IHOP Franchisor LLC, and IHOP Leasing LLC to Debtors' Emergency Motion for Entry of Interim Orders (A) Authorizing Debtors to Obtain Post-Petition Financing and (B) Authorizing Debtors to Use Cash Collateral* [Docket No. 62], (b) *Further Objection and Reservation of Rights of IHOP Restaurants LLC, IHOP Franchisor LLC, and IHOP Leasing LLC to Debtors' Emergency Motion for Entry of Interim Orders (A) Authorizing Debtors to Obtain Post-Petition Financing and (B) Authorizing Debtors to Use Cash Collateral* [Docket No. 78], and (c) *Objection and Reservation of Rights of IHOP Restaurants LLC, IHOP Franchisor LLC, and IHOP Leasing LLC to Debtors' Motion for Entry of (I) an Order Approving Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof; and (II) Order(s) (A) Approving the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Sales Free and Clear of All Encumbrances, and (C) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. 79] are all withdrawn, without prejudice and subject to the satisfaction of the terms of the Addendum.  Entry of this Bidding Procedures Order is without prejudice to any and all rights of Smartvision Construction, LLC ("**Smartvision**") to assert, supplement and/or amend the objections raised in its objection [Docket No. 90] in connection with any Sale Hearing, including (a) the right to object to the implementation of the Assumption and Assignment Procedures with respect to any properties for which Smartvision asserts an interest, (b) the right to assert that it is entitled to receive Assumption Notices and Adequate Assurance Information, and (c) the right to assert that Smartvision is entitled to have any or all of

its claims included as Cure Amounts that should be cured as a condition precedent to the assumption and assignment of any executory contracts or unexpired leases, and all rights of all other parties are expressly reserved with respect to any and all such objections that may be raised by Smartvision. The objection filed by the Committee [Docket No. 121] is overruled. Any further objections to the relief granted by this Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits with prejudice.

**Approval of Bidding Procedures; Auction**

4.      The Bidding Procedures are hereby approved.  The failure to specifically include or reference any particular provision of the Bidding Procedures in the Motion or this Order shall not diminish or otherwise impair the effectiveness of such procedures, it being this Court's intent that the Bidding Procedures are approved in their entirety, as if fully set forth in this Order.  The Debtors are hereby authorized to conduct the Auction of the Assets pursuant to the terms of the Bidding Procedures and this Order.  The Bidding Procedures shall govern the actions of the Potential Bidders and the Qualifying Bidders (each as defined in the Bidding Procedures), as well as the conduct of the Auction.

5.      Notwithstanding any limitations provided for in any due diligence information, including, without limitation, any non-disclosure, confidentiality or similar provisions, the Debtors and their estates shall be authorized to provide due diligence information to Potential Bidders or Qualifying Bidders, provided that such Potential Bidders or Qualifying Bidders have delivered an executed confidentiality agreement in form and substance acceptable to the Debtors. The Debtors and their estates are not responsible for, and shall have no liability with respect to, any information obtained by, or provided to, any Potential Bidders or Qualifying Bidders in connection with the Bidding Procedures and the Sale, provided that the information was

provided in accordance with this Order and except as otherwise provided for in any Transaction Agreement that is authorized and approved by the Court.

6.      For the avoidance of doubt, and notwithstanding anything to the contrary in the Motion, this Order or the Bidding Procedures, the requirement that a party execute a confidentiality agreement to obtain access to the Data Room and other due diligence information shall not restrict, prohibit or alter the right that any party has under any applicable agreement, including loan agreements, to receive, or the Debtors' obligation to provide, any information, which rights and obligations are intended to remain unchanged by this Order and the Bidding Procedures.

7.      A Qualifying Bidder that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Debtors, with a copy to the Consultation Parties (as defined below) so as to be received on or **June 22, 2020 at 12:00 p.m. (ET)** (the "**Bid Deadline**"); provided that the Debtors may extend the Bid Deadline without further order of the Court, after consulting with the applicable Consultation Parties.  Any party that does not submit a bid by the Bid Deadline will not be allowed to:  (a) submit any offer after the Bid Deadline or (b) participate as a bidder in the Auction.  The term "**Consultation Parties**" as used in the Bidding Procedures and this Order shall mean, with respect to any Asset: (i) counsel to the Committee, (ii) counsel to the Lenders and (iii) counsel to IHOP.

8.      All Qualifying Bidders submitting a Qualifying Bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Auction and the terms and conditions of the sale of, or transaction related to, the Assets identified under any Transaction Agreement.

9.      In the event that the Debtors timely receive two or more Qualifying Bids for the same Assets, the Debtors shall include such Assets in the Auction.  If there is only one Qualifying Bid submitted for a particular Asset or set of Assets on or before the Bid Deadline, the Debtors may not include such Asset or Assets in the Auction and, instead, may request at the Sale Hearing that this Court approve the Qualifying Bid (if any) applicable to such Assets and the transactions contemplated thereunder.  If there are no Assets for which at least two Qualifying Bids have been timely submitted, the Auction will be cancelled.

10.     The Auction shall be held virtually as determined by the Gordon Brothers and the Debtors, in consultation with the Consultation Parties, beginning at **10:00 a.m. (ET) on June 24, 2020**.  Each Auction Bidder (as defined in the Bidding Procedures) shall confirm in writing that: (a) it has not engaged in any collusion with respect to the submission of any bid, the bidding, or the Auction and (b) its Qualifying Bid is a good faith *bona fide* offer that it intends to consummate if selected as a Successful Bidder.  All proceedings at the Auction shall be transcribed.

11.     All Assets may be offered individually and in groupings at the Auction.  The Debtors shall have the ability to determine the order in which the Assets will be subjected to bidding during the Auction and what Asset or Assets will be auctioned either individually or in each grouping.  The Debtors shall announce which Asset or Assets will be in the first grouping and which bid is the Baseline Bid (as defined in the Auction and Bidding Procedures), which may include the aggregation of a combination of Qualifying Bids of separate Qualifying Bidders.  The Debtors, in consultation with the Consultation Parties, shall assess each bid to determine whether it is the highest and best bid for an Asset or Assets, considering, among other things: (a) the transaction structure and execution risk, including conditions to, timing of and certainty of

closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval; (b) variations between competing bids and any incremental execution risk that the Debtors reasonably determine, in consultation with the Consultation Parties, exist as a result of those variations; (c) the time needed to close a Sale or other transaction compared with other Qualifying Bids and the cost to the Debtors and their estates of any incremental delay; (d) the total consideration to be received by the Debtors and their estates; (e) the ability to obtain a higher or better offer for an Asset when sold individually or in combination with other Assets; (f) existing funding available or proposed to be provided by the Qualifying Bidder during the period necessary to close the Sale or other transaction; (g) the net benefit to the Debtors' estates, taking into account any Stalking Horse Purchaser's rights to any break-up fee, expense reimbursement, or similar bid protection; (h) the proposed treatment of existing secured interests in the subject Assets, including any senior indebtedness in the case of a credit bid; (i) the impact on employees, Counterparties (including claims that may be asserted related to rejection and objections to adequate assurance), and other creditors; and (j) any other factors the Debtors may reasonably deem relevant, all in consultation with the Consultation Parties.

12.     The Debtors shall have the right as they may reasonably determine to be in the best interests of their estates to carry out the Bidding Procedures, including, without limitation, to: (a) determine which bidders are Qualifying Bidders, provided that no bidder shall be deemed a Qualifying Bidder without IHOP's consent, which consent shall be provided consistent with the terms of the Franchise Agreements (as defined in the Addendum) and IHOP's normal business practices; (b) determine which bids are Qualifying Bids; (c) determine which Qualifying Bid is a Baseline Bid (as defined in the Bidding Procedures) in consultation with the

Consultation Parties, (d) permit Qualifying Bidders to bid on less than all of the Assets that were included in their Qualifying Bid, if applicable; (e) subject to the terms of the Bidding Procedures, determine which bids are the Successful Bid and Back-Up Bid, each as it relates to the Auction; (f) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the Bankruptcy Code, or (iii) contrary to the best interests of the Debtors and their estates; (g) adjourn or cancel an Auction and/or the Sale Hearing in open court without further notice or as provided in this Order and in the Bidding Procedures; (h) modify the Bidding Procedures consistent with their fiduciary duties and the Bankruptcy Code; and (i) withdraw the Motion with respect to entry of the Sale Order for any Assets at any time with or without prejudice, all in consultation with the Consultation Parties.

**Assumption and Assignment Procedures; Contract Objections**

13.     The following "Assumption and Assignment Procedures" are hereby approved:

(a)     Within three (3) business days after entry of this Order (the "**Assumption Notice Deadline**"), the Debtors shall file with the Court and serve on each counterparty (each, a "**Counterparty**," and collectively, the "**Counterparties**") to an Assumed Contract an assumption notice (an "**Assumption Notice**").  In the event that the Debtors identify any Assumed Contract that a potential purchaser may potentially seek to acquire by assumption or assumption and assignment or modify the Cure Amount (as defined herein) after the Assumption Notice Deadline, the Debtors shall promptly file and serve a supplemental Assumption Notice (a "**Supplemental Assumption Notice**").

(b)     The Assumption Notice (or Supplemental Assumption Notice, if applicable) shall include, without limitation, the cure amount (each, a "**Cure Amount**"), if any, that the Debtors believe is required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code for each of the Assumed Contracts. If a Counterparty objects to (i) the Debtors' ability to assume and/or assign the Assumed Contract **or** (ii) the Cure Amount for its Assumed Contract through the Contract Objection Deadline (as defined below), the Counterparty must file with the Court and serve on the counsel to the Debtors and the Consultation Parties a written objection (a "**Contract Objection**").

(c)     Any Contract Objection shall:  (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (iii) be filed with the Clerk of the Court, 555 N. Florida Avenue, Suite 555, Tampa, FL 33602, together with proof of service, **on or before 4:00 p.m. (ET) on June 23, 2020** (the "**Contract Objection**

**Deadline**"), <u>provided</u> that if the Debtors file any Supplemental Assumption Notice, such notice shall provide that the Contract Objection Deadline shall be at least 10 days after service of such notice; (iv) be served, so as to be actually received on or before the Contract Objection Deadline, upon the counsel to the Debtors and the Consultation Parties; and (v) state with specificity the grounds for such objection, including, without limitation, the fully liquidated cure amount and the legal and factual bases for any unliquidated cure amount that the Counterparty believes is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code for the Assumed Contract, along with the specific nature and dates of any alleged defaults, the pecuniary losses, if any, resulting therefrom, and the conditions giving rise thereto.  Any objections to adequate assurance of future performance by a Successful Bidder shall be filed in accordance with this Order.

(d)     Within twelve hours after conclusion of the Auction, the Debtors shall also provide that Adequate Assurance Information to any Counterparty that submits a written request to receive the Adequate Assurance Information by email that specifically identifies the Assets for which such Counterparty would like to receive Adequate Assurance Information in accordance with the terms of the Bidding Procedure Order, and agrees to be bound by the confidentiality provisions set forth in the Bidding Procedures Order.

(e)     Promptly after the conclusion or cancellation of the Auction, the Debtors shall file with the Court one or more notices identifying the Successful Bidder or Successful Bidders for the Assets (a "**Notice of Successful Bidder**"), which shall set forth, among other things, (i) the Successful Bidder and Back-Up Bidder (as defined in the Bidding Procedures), if any, (ii) the Assumed Contracts included in the Successful Bid or Back-Up Bid (as defined in the Bidding Procedures); (iii) the proposed assignee(s) of such Assumed Contracts; and (iv) instructions for contacting the Successful Bidder to obtain Adequate Assurance Information, which shall be provided to each affected Counterparty on a confidential basis; <u>provided</u> that if the Auction is cancelled and the Debtors choose to proceed with a transaction with one or more Stalking Horse Purchasers, the Notice of Successful Bidder shall set forth such information for the Stalking Horse Purchaser(s), as the Successful Bidder.

(f)     Counterparties may submit objections <u>solely</u> on the basis of adequate assurance of future performance by a Successful Bidder **<u>at the Sale Hearing</u>**.

(g)     If no Contract Objection is timely received with respect to an Assumed Contract: (i) the Counterparty to such Assumed Contract shall be deemed to have consented to the assumption by the Debtors and (if applicable) assignment of such Assumed Contract, and will be forever barred from asserting any objection with regard to such assumption and assignment (including, without limitation, with respect to adequate assurance of future performance); (ii) upon receipt by the Counterparty of any Cure Amount, any and all defaults under such Assumed Contract and any and all pecuniary losses related thereto shall be deemed cured and compensated pursuant to section 365(b)(1)(A) and (B) of the Bankruptcy Code; and (iii) the Cure Amount included in the Assumption Notice or Supplemental Assumption Notice, if applicable, for

such Assumed Contract shall be controlling, notwithstanding anything to the contrary in such Assumed Contract, or any other related document, and the Counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Assumed Contract against the Debtors and (if applicable) the Debtors' assignee, or the property of any of them, that existed prior to the entry of the Sale Order.

(h)     To the extent that the parties are unable to consensually resolve any Contract Objection prior to the commencement of the Sale Hearing, including, without limitation, any dispute with respect to the Cure Amount required to be paid to the applicable Counterparty under section 365(b)(1)(A) and (B) of the Bankruptcy Code (any such dispute, a "**Cure Dispute**"), such Contract Objection will be adjudicated at the Sale Hearing or at such other date and time as may be mutually agreed to by the Debtors and the objecting Counterparty or scheduled by the Court; provided, however, that if the Contract Objection relates solely to a Cure Dispute, such Assumed Contract may be assumed by the Debtors and assigned, provided that the cure amount that the Counterparty asserts is required to be paid under section 365(b)(1)(A) and (B) of the Bankruptcy Code (or such lower amount as agreed to by the Counterparty) is deposited in a segregated account by the proposed assignee pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

14.     As part of its bid, each Qualifying Bidder (including any Stalking Horse Purchaser) must make available, for review by the Consultation Parties and Counterparties to Assumed Contracts of which such Qualified Bidder may seek to take assignment, information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code (the "**Adequate Assurance Information**"), including (a) the Qualifying Bidder's financial wherewithal and willingness to perform under any contracts that are assumed and assigned to such Qualifying Bidder; (b) a contact person for the proposed assignee that the applicable Counterparty may directly contact in connection with the adequate assurance of future performance; and (c) the actual assignee's identity.  To the extent available, the Adequate Assurance Information shall also include, to the extent requested:  (x) a corporate organization chart or similar disclosure identifying ownership and control of the proposed assignee and (y) financial statements, tax returns and annual reports.  Adequate Assurance Information shall

be provided on a confidential basis and must be kept confidential and shall only be used and disclosed as agreed to by the Qualifying Bidder that provided such Adequate Assurance Information or as ordered by the Court.  This Order authorizes the filing of any Adequate Assurance Information under seal, and on the docket with such non-public information redacted, without further order of the Court; provided that unredacted versions of such pleadings shall be served upon the Debtors, with a copy to the Court's chambers.  Any Representative receiving Adequate Assurance Information shall be notified and shall agree to be bound by the restrictions set forth in this Order.

15.     The Assumption and Assignment Procedures are appropriate and fair to all Counterparties and comply in all respects with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

16.     The inclusion of a contract, lease or other agreement on an Assumption Notice shall not constitute or be deemed a determination or admission by the Debtors, their estates, or any other party in interest that such contract, lease or other agreement is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and any and all rights with respect thereto shall be reserved.

**Sale Hearing and Objections to the Sale**

17.     The Sale Hearing shall be held in this Court on **June 26, 2020 at 9:30 a.m. (ET)**, unless otherwise determined by this Court.  The Debtors may adjourn or reschedule the Sale Hearing without notice or with limited and shortened notice to parties, including by: (a) an announcement of such adjournment at the Sale Hearing or at the Auction or (b) the filing of a notice of adjournment with the Court prior to the commencement of the Sale Hearing.

18.     Any objections to the Sale or the relief requested in connection with the Sale (a "**Sale Objection**"), other than a Contract Objection, which shall be governed by the Assumption

and Assignment Procedures, must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; (c) set forth the specific basis for the Sale Objection; (d) be filed with the Clerk of this Court, 801 N. Florida Avenue, Suite 555, Tampa, FL 33602, together with proof of service, **on or before 4:00 p.m. (ET) on June 23, 2020** (the "**Sale Objection Deadline**"); and (e) be served, so as to be actually received on or before the Sale Objection Deadline, upon the counsel to the Debtors and the Consultation Parties; <u>provided</u> that solely with respect to an objection to the conduct of the Auction, the designation of any Successful Bidder or Bid or Back-Up Bidder or Bid, the terms (including price) of such bids, and the Debtors' inability to satisfy the conditions of section 363(f) of the Bankruptcy Code with respect to a Successful Bid or Back-Up Bid (an "**Auction Objection**"), the deadline to file an Auction Objection shall be **at the Sale Hearing** (the "**Auction Objection Deadline**").

19. Failure to file a Sale Objection on or before the Sale Objection Deadline and failure to file an Auction Objection on or before the Auction Objection Deadline (a) shall forever bar the assertion, whether at any Sale Hearing or thereafter, of any objection to the Motion, to entry of the Sale Order, and/or to the consummation and performance of the Sale contemplated by a Stalking Horse Agreement or any Transaction Agreement with a Successful Bidder or Back-Up Bidder, and (b) for purposes of section 363(f) of the Bankruptcy Code, shall constitute "consent" to the entry of the Sale Order and consummation of the Sale and all transactions related thereto.

20. The Debtors shall have until commencement of the Sale Hearing to file and serve a reply to any objection filed in connection with the Sale.

**Form and Manner of Notice of Sale Hearing**

21. The Sale Notice, the Assumption Notice, the Notice of Successful Bidder, the Bidding Procedures, and the Assumption and Assignment Procedures and the objection periods

associated with each of the foregoing are reasonably calculated to provide sufficient and effective notice to any affected party and to afford the affected party the opportunity to exercise any rights affected by the Motion as it relates to the Bidding Procedures, Auction, Sale, Sale Hearing, and the assumption and assignment of the Assumed Contracts pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006, and such notices and objection periods are hereby approved.

22.    Within three (3) business days of entry of the Bidding Procedures Order, the Debtors will serve the Sale Notice by first class mail on:  (1) the Office of the United States Trustee; (2) counsel to the Committee; (3) counsel to the Lenders; (4) all parties known by the Debtors to assert a lien on any of the Assets; (5) all known creditors of the Debtors; (6) all non-Debtor parties to any of the Assumed Contracts; (7)  all persons known to have expressed an interest in acquiring all or any portion of the Assets or making an equity or other investment in the Debtors within the twelve (12) months prior to the Petition Date; (8) the Office of the Attorney General in each state in which the Debtors operate; (9) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (10) all other parties that had filed a notice of appearance and demand for service of papers in these chapter 11 cases as of the date of service (collectively, the "**Sale Notice Parties**").

**Miscellaneous**

23.    The Debtors' right to seek this Court's approval of one or more Stalking Horse Purchasers, with notice and a hearing, is hereby preserved.

24.    The Debtors are authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

25.    In the event that there is a conflict between this Order or the Bidding Procedures, on the one hand, and the Motion, a Transaction Agreement, or a Stalking Horse Agreement, on the other hand, this Order and the Bidding Procedures shall control and govern, and this Order

shall control in the event of any conflict with the Bidding Procedures. Notwithstanding the foregoing, if there is a conflict between the Addendum and this Order and/or the Bidding Procedures, the Addendum shall control.

26.     Prior to mailing the Sale Notice and the Assumption Notice, as applicable, the Debtors may fill in, or cause to be filled in, any missing dates and other information, correct any typographical errors, conform the provisions thereof to the provisions of this Order, and make such other, non-material changes as the Debtors deems necessary or appropriate.

27.     All persons or entities that participate in the bidding process shall be deemed to have knowingly and voluntarily:  (a) consented to the entry of a final order by this Court in connection with the Motion or this Order (including any disputes relating to the bidding process, the Auction and/or any Sale) to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution and (b) waived any right to a jury trial in connection with any disputes relating to the any of the foregoing matters.

28.     This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004(h) or 6006(d) or any other provision of the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules is expressly waived.  The Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and may, in their sole discretion and without further delay, take any action and perform any act authorized or approved under this Order.

29.     The requirements set forth in Local Rules 6004-1, 9006-1 and 9013-1 are hereby satisfied or waived.

30.     This Court shall retain exclusive jurisdiction with respect to all matters arising

from or related to the implementation or interpretation of the Order.

# # #

(*Carmen Contreras-Martinez, Esq. is directed to serve a copy of this Order on interested parties who are non-CM/ECF users and to file a proof of service within three days of entry of this Order.*)

## **Exhibit 1**

**Bidding Procedures**

# BIDDING PROCEDURES

On May 6, 2020, CFRA Holdings, LLC, CFRA, LLC and CFRA Tri-Cities, LLC, as debtors and debtors in possession (collectively, the "**Debtors**"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

On **June __**, 2020, the United States Bankruptcy Court for the Middle District of Florida (the "**Court**") entered an order **[Docket No. _____]** (the "**Bidding Procedures Order**"), which, among other things, authorized the Debtors to solicit bids and approved these procedures (collectively, the "**Bidding Procedures**"), which are to be employed by the Debtors in connection with the proposed sales of or other acquisition transactions (each a "**Sale**") of the Debtors' assets (the "**Assets**"), either individually or in groupings, free and clear of all liens, claims, encumbrances, and other interests (collectively, the "**Encumbrances**"), other than those Encumbrances permitted by a Transaction Agreement (as defined below), on an AS-IS, WHERE-IS with ALL FAULTS basis.

If, and to the extent that prior to the Bid Deadline (as defined below), the Debtors receive one or more acceptable offers that seek stalking-horse status, the Debtors reserve the right to seek Court approval, with notice and an opportunity for hearing, of one or more parties to serve as a stalking horse purchaser (each a "**Stalking Horse Purchaser**") to serve as an agent for, or acquire one or more of, the Debtors' Assets pursuant to a Transaction Agreement between the applicable Debtor(s) and the Stalking Horse Purchaser (each a "**Stalking Horse Agreement**"). Notwithstanding the selection of any Stalking Horse Purchaser, the Debtors will continue to solicit bids and accept bids through the Bid Deadline.

**ANY PARTY INTERESTED IN BIDDING ON THE ASSETS SHOULD CONTACT:**

> **Gordon Brothers Real Estate ("Gordon Brothers"):**
> **James Avallone, Senior Managing Director**
> **516-682-4224**
> **javallone@gordonbrothers.com**

**Summary of Important Dates**

| Deadline to Serve Sale Notice | June 12, 2020 |
|---|---|
| Deadline to Serve Assumption Notice | June 12, 2020 |
| Deadline to Object to Assumption Notice | June 23, 2020 at 4:00 p.m. (ET) |
| Deadline to Object to Sale (other than with respect to the conduct of the Auction and designation of a Successful Bidder) | June 23, 2020 at 4:00 p.m. (ET) |
| Bid Deadline | June 22, 2020 at 12:00 p.m. (ET) |
| Auction | June 24, 2020 at 10:00 a.m. (ET) |
| Deadline to Object to Conduct of Auction, Designation of Successful Bidders, and Adequate Assurance | At Sale Hearing |
| Sale Hearing | June 26, 2020 at 9:30 a.m. (ET) |

## 1.     Assets to be Sold

The Debtors shall offer for sale all of the Assets.  Potential Bidders may bid on all or any number or combination of the Assets.

## 2.     Participation Requirements

Any person or entity that wishes to conduct due diligence and gain access to the Debtors' confidential electronic data room concerning the Assets (the "**Data Room**" and such person or entity, a "**Potential Bidder**") must submit to the Debtors and their advisors an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors, which by its terms will inure to the benefit of the Successful Bidders, to the extent of confidential information relating to the Assets.

Any Potential Bidder that wishes to participate in the bidding process for the Assets must first become a "**Qualifying Bidder**."  Parties may be qualified as a Qualifying Bidder up to the Bid Deadline, but **parties interested in submitting a bid are encouraged to qualify as soon as possible because the Bidding Procedures do not permit any due diligence or financing conditions in Qualifying Bids**.  To become a Qualifying Bidder, Potential Bidders must submit sufficient information, as determined by the Debtors, to allow the Debtors, after consultation with the Consultation Parties (as defined herein), to determine that the interested party (i) has, or can obtain, the financial wherewithal and any required internal corporate, legal or other authorizations to close a transaction, including, but not limited to, current audited financial statements of the interested party (or such other form of financial disclosure acceptable to the Debtors in their discretion) and (ii) can provide adequate assurance of future performance under any executory contracts and unexpired leases to be assumed by the Debtors and assigned to such bidder pursuant to section 365 of the Bankruptcy Code (where applicable).  No bidder shall be deemed a Qualifying Bidder without IHOP's consent, which consent shall be provided consistent with the terms of the Franchise Agreements and IHOP's normal business practices.  IHOP shall provide its consent to a bidder within three (3) business days of receipt of the bid and supporting documents, subject to any prequalification pursuant to paragraph 3(f) of the Addendum.

Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder to consummate its contemplated transaction, as well as with all reasonable requests for information from IHOP to facilitate IHOP's consideration of whether to consent to such bidder being deemed a Qualified Bidder.

Notwithstanding anything to the contrary herein, and for the avoidance of doubt, for all purposes under the Bidding Procedures, if and when there is one or more Stalking Horse Purchaser designated by the Debtors and consented to by IHOP, any such designated Stalking Horse Purchasers shall be considered a Qualifying Bidder and any Stalking Horse Agreement shall be a Qualifying Bid (as defined below).

To the extent that a bid is proposed by a group or committee to which Bankruptcy Rule 2019 applies, such parties must promptly file the statement required by such rule as a condition to becoming a Qualifying Bidder.

### 3.    <u>Bankruptcy Court Jurisdiction</u>

In conjunction with any actions or proceedings arising from or relating to the Bidding Procedures, the Sale, the Auction (as defined below), the acts or omissions of the Debtors, Gordon Brothers, and their respective representatives and/or the construction and enforcement of the contemplated transaction documents of such parties, any Potential Bidders and Qualifying Bidders shall: (a) be deemed to have waived any right to a jury trial and consented and submitted to the exclusive jurisdiction of the Court, (b) bring any such action or proceeding in the Court, and (c) be deemed to have consented to the Court entering a final judgment determining any such action or proceeding and that such final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by applicable law.

### 4.    <u>Form of Agreement</u>

Each Qualifying Bidder, must include with its bid:

(a)    an executed asset purchase agreement or other agreement for the applicable Sale or other transaction (each a "**Transaction Agreement**"), which must include the following:

i.    a bid for all forty-nine (49) of the Debtors' Restaurants, which shall also include the related IHOP leases, which include both subleases and equipment leases, at twenty-nine (29) locations;

ii.    full disclosure of the identity of the bidder and whether such party is an insider (as defined in section 101 of the Bankruptcy Code) of any Debtor, along with the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors wish to discuss the bid submitted by the Qualifying Bidder;

3

iii.     the purchase price to be paid by such Qualifying Bidder, including what amount is being paid as cash and what amount constitutes a credit bid, as well as any liabilities proposed to be paid or assumed by such Qualifying Bidder;

iv.     (a) identify whether the Qualifying Bidder or the Debtors shall be responsible for any transfer or similar taxes that arise from the Sale and (b) a statement that the bidder shall be responsible for any cure costs required to be paid to assume and assign executory contracts and unexpired leases that are included in the bid - which cure costs shall include all outstanding amounts due under said executory contracts and unexpired leases (before and after the filing of the Debtors' bankruptcy cases) through the closing of the applicable Sale and be payable at closing by each Successful Bidder directly to the non-debtor parties to said executory contracts and unexpired leases unless otherwise agreed to by the non-debtor parties to said executory contracts and unexpired leases;

v.     a commitment to close the transactions contemplated by the Transaction Agreement within two (2) business days after entry of the order approving the Sale and not later than the end of June 2020;

vi.     contain a written acknowledgement and representation that the bidder (i) has had an opportunity to conduct any and all due diligence regarding the Assets, (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and other information in making its bid, (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any documents or other information provided in connection with the Bidding Procedures and the Sale, and (iv) has not entered into any agreement with any other potential bidder concerning the Auction or the Sale or discloses any agreement with any other potential bidder concerning the Auction or Sale;

vii.     a statement that the Transaction Agreement is not subject to contingencies of any kind, including, including without limitation, contingencies related to financing, due diligence or third party, regulatory or internal approval; and

viii.     a statement that the Qualifying Bidder has obtained any required internal corporate, legal or other authorizations to close a sale transaction and to provide adequate assurance of future performance as required under section 365 of the Bankruptcy Code.

**5.     <u>Due Diligence</u>**

Subject to the execution of a confidentiality agreement by a Potential Bidder or Qualifying Bidder, the Debtors will provide any Potential Bidder or Qualifying Bidder with reasonable access to the Data Room and any other additional information that the Debtors

37042416.4

believe to be reasonable and appropriate under the circumstances.  All additional due diligence requests shall be directed to Gordon Brothers at the contact information provided above.

All due diligence materials provided to Potential Bidders and Qualifying Bidders shall be subject to the limitations on use and disclosure included in any confidentiality agreement entered into pursuant to the Bidding Procedures.

Notwithstanding any limitations provided for in any due diligence materials in the Debtors' possession, including, without limitation, any non-disclosure, confidentiality or similar provisions, the Debtors and their estates shall be authorized to provide due diligence information to Potential Bidders that have executed a confidentiality agreement.

**6.**    **Bid Requirements**

To be deemed a "**Qualifying Bid**," a bid must be received from a Qualifying Bidder on or before the Bid Deadline and must satisfy each of the following requirements (each, a "**Bid Requirement**"):

(a)    be in writing;

(b)    fully disclose the identity of the Qualifying Bidder and whether such party is an insider (as defined in section 101 of the Bankruptcy Code) of any Debtor, and provide the contact information of the specific person(s) whom the Debtors or their advisors should contact in the event that the Debtors have any questions or wish to discuss the bid submitted by the Qualifying Bidder;

(c)    be accompanied by a clean, **executed** copy of a Transaction Agreement that satisfies the requirements of Section 4 of these Bidding Procedures, along with a marked copy of the Transaction Agreement that reflects any variations from the Debtors' form of Transaction Agreement, if any;

(d)    set forth the purchase price to be paid by such Qualifying Bidder, including what amount is being paid as cash and what amount constitutes a credit bid, and identify the liabilities proposed to be paid or assumed by such Qualifying Bidder;

(e)    provide a bid for all forty-nine (49) of the Debtors' Restaurants, and, to the extent a Stalking Horse Purchaser is designated, state that such Qualifying Bidder offers to purchase those Assets included in the applicable Stalking Horse Agreement upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in the applicable Stalking Horse Agreement;

(f)    state that such Qualifying Bidder's offer is formal, binding and unconditional and is irrevocable until the conclusion of the Sale Hearing unless such party is the Successful Bidder or Back-Up Bidder (both as defined below) in which case such offer is formal, binding and unconditional and is irrevocable until two (2) business days after the closing of the Sale of the subject Assets;

(g)     state that such Qualifying Bidder is financially capable of consummating the transactions contemplated by the Transaction Agreement and contain such financial and other information to allow the Debtors to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to close the transactions contemplated by its proposed Transaction Agreement, including, without limitation, (i) written evidence satisfactory to the Debtors, in consultation with the Consultation Parties, that the Qualifying Bidder has a commitment for financing or other evidence of the ability to close the transactions contemplated by the Transaction Agreement, and (ii) such financial and other information supporting the Qualifying Bidder's ability to comply with the requirements of adequate assurance of future performance under section 365(f)(2)(B) of the Bankruptcy Code, including the Qualifying Bidder's financial wherewithal and willingness to perform under any contracts that are assumed and assigned to the Qualifying Bidder, in a form that allows the Debtors to make available such information to any counterparties to any contracts or leases being assumed and assigned in connection with the Sale that have requested, in writing, such information;

(h)     identify with particularity each and every executory contract, unexpired lease and unexpired sublease the assumption and assignment of which is a condition to close the transactions contemplated by the proposed Transaction Agreement;

(i)     a commitment to close the transactions contemplated by the Transaction Agreement within two (2) business days after entry of the order approving the sale and not later than the end of June 2020;

(j)     not request or entitle such Qualifying Bidder (other than a Stalking Horse Purchaser) to any break-up fee, termination fee, expense reimbursement or similar type of fee or payment;

(k)     in the event that there is a Stalking Horse Purchaser, and the Qualifying Bidder wishes to bid on the same Assets that are included in the Stalking Horse Agreement, the aggregate consideration proposed by the Qualifying Bidder must equal or exceed the sum of the amount of (A) the purchase price under the Stalking Horse Agreement, plus (B) any break-up fee, expense reimbursement, or other bid protection provided under the Stalking Horse Agreement, plus (C) $100,000;

(l)     not contain any contingencies of any kind, including, including without limitation, contingencies related to financing, due diligence or third party, regulatory or internal approval;

(m)     provide for the Qualifying Bidder to serve as a backup bidder (the "**Back-Up Bidder**") if the Qualifying Bidder's bid is the next highest and best bid (the "**Back-Up Bid**") after the Successful Bid (as defined below), in accordance with the terms of the Transaction Agreement and these Bidding Procedures;

(n)     include written evidence of authorization and approval from the Qualifying Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of the Transaction Agreement;

6

(o)     provide a good faith cash deposit (the "**Deposit**") in an amount equal to the greater of (a) $25,000 or (b) ten percent (10%) of the total consideration provided under the proposed Transaction Agreement; provided, that the Debtors may alter the Deposit requirement for any party selected as a Stalking Horse Purchaser with leave of the Court;

(p)     provide for liquidated damages in the event of the Qualifying Bidder's breach of, or failure to perform under, the Transaction Agreement equal to the amount of the Deposit; and

(q)     provide for the direct payment to IHOP at closing of $2,450,000.00 on account of the issuance of the new franchise agreements to the purchaser(s) and specifically set forth this payment as a separate portion of the bid.

Subject to the next sentence, a bid from a Qualifying Bidder satisfying all of the above requirements, as determined by the Debtors, in consultation with the Consultation Parties, shall constitute a Qualifying Bid.  The Debtors both reserve the right and are authorized to work with any Qualifying Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualifying Bid.

Each Qualifying Bidder submitting a bid shall be deemed to:  (a) acknowledge and represent that it is bound by all of the terms and conditions of the Bidding Procedures; and (b) have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its bid, the Bidding Procedures, and the Sale.

7.      **Bid Deadline**

A Qualifying Bidder that desires to make a bid shall deliver a written and electronic copy of its bid in both PDF and MS-WORD format to the Debtors, with a copy to the Consultation Parties, so as to be received on or before **June 22, 2020 at 12:00 p.m. (ET)** (the "**Bid Deadline**"); provided that the Debtors may extend the Bid Deadline without further order of the Court, after consulting with the applicable Consultation Parties.  All parties wishing to submit a Qualifying Bid shall submit the bid materials required by Section 6 (including the **executed** Transaction Agreement and a certified check or wire transfer for the Deposit amount) to Gordon Brothers at the contact information provided above with a copy to counsel to the Debtors' counsel, Saul Ewing Arnstein & Lehr LLP, 1037 Raymond Boulevard, Suite 1520, Newark, NJ 07102, Attn: Stephen B. Ravin and Aaron S. Applebaum (Stephen.Ravin@saul.com and Aaron.Applebaum@saul.com). Gordon Brothers shall deliver to counsel for the Debtors, the Lenders, the Committee, and IHOP all bids and supporting documents by electronic mail immediately after receipt.

Subject to the agreements set forth in the Addendum, at the time that IHOP consents to a bidder as a Qualified Bidder pursuant to either paragraph 3(b) or 3(f) of the Addendum, IHOP will send to the Qualified Bidder the 2020 franchise disclosure document (the "FDD") along with the 2020 form franchisee agreement (to the extent that bidder has not previously acknowledged the 2020 FDD).  The Qualified Bidder must then return the acknowledgments to

the FDD no later than fifteen (15) days (eight (8) days for existing franchisees) prior to the closing of the Sale. In connection with this process, IHOP will (i) offer new 20 year franchise agreements, in the form currently used by IHOP, to potential buyers that are satisfactory to IHOP in accordance with IHOP's right of consent to assignee in pursuant to the terms of the Franchise Agreements, in lieu of selling, transferring, or assuming and assigning the Debtors' prior Franchise Agreements or franchise rights and (ii) execute said new agreements with the approved buyers, with any prior IHOP franchise agreements with the Debtors deemed terminated. Potential bidders are subject to prequalification as Qualified Bidders by IHOP, which qualification shall be consistent with and not materially differ from the criteria for obtaining IHOP's consent to the transfer of a Franchise Agreement as set forth in the Franchise Agreements. Upon any such prequalification, IHOP will send to the Qualified Bidder the 2020 FDD (to the extent that bidder has not previously acknowledged the 2020 FDD) along with the 2020 form franchisee agreement as set forth in paragraph 3(f) above.

**Any party that does not submit a bid by the Bid Deadline will not be allowed to (a) submit any offer after the Bid Deadline, or (b) participate in the Auction. Consistent with the terms of any confidentiality agreements executed by them, all Potential Bidders and Qualifying Bidders shall maintain as confidential, up until the Auction, the fact that they have submitted a bid and the terms and conditions of such bid.**

## 8.     Evaluation of Qualifying Bids

The Debtors, in consultation with the Consultation Parties, shall make a determination regarding whether a timely submitted bid from a Qualifying Bidder is a Qualifying Bid, and shall notify all Qualifying Bidders whether their bids have been determined to be a Qualifying Bid. In the event that a bid is determined not to be a Qualifying Bid, the Qualifying Bidder shall be notified by the Debtors and shall have an opportunity to modify its bid so as to become a Qualifying Bid; provided that any Qualifying Bid may be improved at the Auction as set forth herein.

Prior to the commencement of the Auction, the Debtors shall determine, in consultation with the Consultation Parties, which of the Qualifying Bids, at such time, is the highest and best bid for purposes of constituting the opening bid of the Auction (the "**Baseline Bid**" and the Qualifying Bidder submitting the Baseline Bid, the "**Baseline Bidder**"), and shall promptly notify all Qualifying Bidders with Qualifying Bids of the Baseline Bid. The Baseline Bid may be comprised of any combination of Assets, and the Debtors may determine that different Baseline Bids exist for different lots of the Assets. The Debtors shall have the discretion to determine how to proceed when auctioning the Assets in lots that do not include all of Debtors' Assets so as to maximize the value of the Assets.

## 9.     One Qualifying Bid

If only one Qualifying Bid is submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and shall have the right to request at the Sale Hearing (as defined in the Bidding Procedures Order) that the Court approve the Transaction Agreement with the Qualifying Bidder and the transactions contemplated thereunder.

37042416.4

10. <u>**Auction**</u>

In the event that the Debtors timely receive more than one Qualifying Bid, the Debtors shall conduct an auction (the "**Auction**").  Following the Auction, the Debtors will determine, in consultation with the Consultation Parties, which Qualifying Bid is the highest and best bid for the Assets, which will be determined by considering, among other things, the following non-binding and non-exclusive factors: (a) the transaction structure and execution risk, including conditions to, timing of and certainty of closing, termination provisions, availability of financing and financial wherewithal to meet all commitments, and required governmental or other approval; (b) variations between competing bids and any incremental execution risk that the Debtors reasonably determine, in consultation with the Consultation Parties, exists as a result of such variations; (c) the time needed to close a Sale or other transaction compared with other Qualifying Bids and the cost to the Debtors and their estates of any incremental delay; (d) the total consideration to be received by the Debtors and their estates; (e) the ability to obtain a higher or better offer for an Asset when sold individually or in combination with one or more other Assets; (f) existing funding available or proposed to be provided by the Qualifying Bidder during the period necessary to close the Sale or other transaction; (g) the net benefit to the Debtors' estates, taking into account any Stalking Horse Purchaser's rights to any break-up fee, expense reimbursement, or similar bid protection; (h) the proposed treatment of existing secured interests in the subject Assets, including any senior indebtedness in the case of a credit bid; (i) the impact on employees, Counterparties (including claims that may be asserted related to rejection and objections to adequate assurance), and other creditors; and (j) any other factors the Debtors may reasonably deem relevant.

Notwithstanding anything to the contrary contained herein, the Debtors reserve the right to determine that no Qualifying Bid was received and/or to not select a Successful Bidder if the Debtors determine, in their sole discretion, it is not in the best interests of the Debtors' estates and their creditors to do so.

The Auction shall be governed by the following procedures:

(a)    the Auction shall be held virtually, as determined by Gordon Brothers and the Debtors, in consultation with the Consultation Parties, on **<u>June 24, 2020 at 10:00 a.m. (ET)</u>** (the "**Auction Date**");

(b)    only Qualifying Bidders with Qualifying Bids (together, the "**Auction Bidders**") shall be entitled to make any subsequent bids at the Auction;

(c)    the Auction Bidders shall appear virtually in person at the Auction, or through a duly authorized representative.  In the event that a Qualifying Bidder becomes a Successful Bidder or Back-up Bidder, then whomever is attending the Auction on behalf of a Qualifying Bidder must have the authority, immediately after the conclusion of the Auction, to complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which a Successful Bid or Back-up Bid was made;

9

(d)      only the Debtors, the Auction Bidders, the Consultation Parties, and all creditors of the Debtors, together with the professional advisors to each of the foregoing parties, may attend the Auction. **Parties who intend to attend the Auction must provide counsel for the Debtors at least one (1) business day's written notice of their intent to attend the Auction so that the Debtors can make appropriate arrangements**;

(e)      the Debtors and their professional advisors shall direct and preside over the Auction, which shall be transcribed;

(f)      the Auction Bidders shall confirm that they have not engaged in any collusion with respect to the Bidding Procedures, the Auction, or the Sale;

(g)      bidding on any of the Assets shall commence at the amount of the Baseline Bid, and the Auction Bidders may submit successive bids in increments, with minimum increment amounts to be determined by the Debtors in consultation with the Consultation Parties, <u>provided</u> that:  (i) each such successive bid must be a Qualifying Bid; (ii) if the then-highest and best bid was made by any Stalking Horse Purchaser, such bid shall be deemed to include the sum of the amount of any break-up fee, expense reimbursement, or other bid protections available to such Stalking Horse Purchaser; (iii) any bid made by any Stalking Horse Purchaser, including in each and every round of bidding, shall be deemed to include the sum of the amount of any break-up fee, expense reimbursement, or other bid protection available to such Stalking Horse Purchaser in addition to the cash and other consideration provided for in its bid; and (iv) the Debtors shall retain the right to modify the bid increment requirements at the Auction, in consultation with the Consultation Parties;

(h)      the Auction may include individual negotiations with any of the Auction Bidders, but all bids shall be made on the record and in the presence of all of the Auction Bidders;

(i)      all material terms of the bid that is deemed to be the highest and best bid for each round of bidding shall be fully disclosed to the Auction Bidders, and the Debtors shall use reasonable efforts to clarify any and all questions that the Auction Bidders may have regarding the Debtors' announcement of the then-current highest and best bid;

(j)      the Debtors and their professional advisors, in consultation with the Consultation Parties, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make subsequent bids) for conducting the Auction, <u>provided</u> that such rules are (i) not inconsistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court for the Middle District of Florida, or any applicable order of the Court entered in connection with these Chapter 11 Cases, including, without limitation, the Bidding Procedures Order, and (ii) disclosed to the Auction Bidders;

37042416.4

(k)      the Auction Bidders shall have the right to make additional modifications to their Transaction Agreement in conjunction with each Qualifying Bid submitted in each round of bidding during the Auction, <u>provided</u> that (i) any such modifications on an aggregate basis and viewed in whole, shall not, in the Debtors' discretion, in consultation with the Consultation Parties, be less favorable to the Debtors and their estates than the terms of any Qualifying Bid that was announced as the then-current highest and best bid for the Assets that are the subject of the bids, and (ii) each Qualifying Bid (unless superseded by a subsequent Qualifying Bid at the Auction) shall constitute an irrevocable offer and shall be binding on the Auction Bidder submitting such bid until the conclusion of the Sale Hearing, unless such bid is selected as a Successful Bid or Back-Up Bid, which shall remain binding as provided for herein;

(l)      the Debtors shall have the right to request any additional financial information that will allow the Debtors to make a reasonable determination, in consultation with the Consultation Parties, as to an Auction Bidder's financial and other capabilities to consummate the transactions contemplated by the Transaction Agreement, as may be amended during the Auction, and any further information that the Debtors may believe is reasonably necessary to clarify and evaluate any bid made by an Auction Bidder during the Auction;

(m)      upon the conclusion of the Auction, the Debtors shall determine, in consultation with the Consultation Parties, subject to Court approval, the offer or offers for the Assets that is or are the highest and best from among the Qualifying Bids submitted at the Auction (each a "**Successful Bid**").  The bidder submitting a Successful Bid shall be the "**Successful Bidder**" for such Assets and shall have such rights and responsibilities of the purchaser as set forth in the Transaction Agreement.  The Debtors shall designate a "**Back-Up Bid (or Bids)**" (and the corresponding "**Back-Up Bidder (or Bidders)**") in the event that a Successful Bidder does not close a Sale or the Court does not approve the Successful Bid.  Promptly after the conclusion of the Auction, the Successful Bidder(s) and any Back-Up Bidder(s) shall deliver an additional Deposit payment so that each such bidder's total Deposit amount equal to ten percent (10%) of the cash amount of the Successful Bid or Back-Up Bid, as applicable; and

(n)      immediately after the conclusion of the Auction and without undue delay, each Successful Bidder and Back-Up Bidder shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid or Back-Up Bid was made.

**EACH SUCCESSFUL BID AND ANY BACK-UP BID SHALL CONSTITUTE AN IRREVOCABLE OFFER AND BE BINDING ON THE APPLICABLE SUCCESSFUL BIDDER AND BACK-UP BIDDER, RESPECTIVELY, FROM THE TIME THE BID IS SUBMITTED UNTIL THE TIME PERIOD SPECIFIED IN THESE BIDDING PROCEDURES.  EACH QUALIFYING BID THAT IS NOT A SUCCESSFUL BID OR BACK-UP BID SHALL BE IRREVOCABLE UNTIL THE CONCLUSION OF THE SALE HEARING, AT WHICH POINT THEY SHALL BE DEEMED WITHDRAWN AND TERMINATED.**

11.    **Sale Hearing**

The Successful Bid (which, if no Auction is held, may be the Staking Horse Agreement) and any Back-Up Bid will be subject to approval by the Court.  The Sale Hearing to approve the Successful Bid(s) and any Back-Up Bid(s) shall take place on **June 26, 2020 at 9:30 a.m. (ET)**.  The Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or by filing a notice on the docket of the Debtors' chapter 11 cases.

12.    **Backup Bidder**

Notwithstanding any of the foregoing, in the event that a Successful Bidder fails to close the applicable Sale within two (2) days after the Court enters an order approving of the Successful Bid by (or such date as may be extended by the Debtors in consultation with the Consultation Parties), (i) the Back-Up Bid for that Sale will be deemed to be the Successful Bid, (ii) the Back-Up Bidder will be deemed to be the Successful Bidder, and (iii) the Debtors will be authorized, but not directed, to immediately close that Sale to the Back-Up Bidder subject to the terms of the Back-Up Bid without the need for further order of the Court and without the need for further notice to any interested parties.

13.    **Return of Deposits**

All Deposits shall be returned to each bidder not selected by the Debtors as a Successful Bidder or Back-Up Bidder for any Sale no later than three (3) business days following the conclusion of the Sale Hearing.  The deposit of a Back-Up Bidder shall be returned within three (3) business days after the closing of the applicable Sale to the Successful Bidder; the deposit of the Successful Bidder or, if the Sale is closed with the Back-Up Bidder, the deposit of the Back-Up Bidder, shall be applied to the purchase price for the Sale.  If the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) fails to consummate the Sale because of a breach or failure to perform on the part of such bidder, then the Debtors and their estates shall be entitled to retain the Deposit of the Successful Bidder (or, if the Sale is to be closed with the Back-Up Bidder, then the Back-Up Bidder) as liquidated damages resulting to the Debtors and their estates for such breach or failure to perform.

14.    **Consultation Parties**

The term "**Consultation Parties**" as used in these Bidding Procedures shall mean, with respect to any Assets, unless such party is a potential bidder for such Assets:  (i) counsel to the Committee;  (ii) counsel to Valley National Bank and Raymond James Bank, N.A.; and (iii) counsel to IHOP.

For the avoidance of doubt, and subject to the Addendum, any consultation rights provided to the Consultation Parties by these Bidding Procedures shall not limit the Debtors' discretion in any way and shall not include the right to veto any decision made by the Debtors in the exercise of their business judgment.

37042416.4

In the event that any Consultation Party, any member of an official committee or an affiliate of any of the foregoing participates as a potential purchaser in the sales process, any obligation of the Debtors to consult with the bidding party established under these Bidding Procedures will be waived, discharged and released without further action, until such party advises the Debtors that they are irrevocably withdrawing as a potential purchaser in the sale process at which time such party's consultation rights will be reinstated; <u>provided</u> that the bidding party will have the same rights as any other Qualifying Bidder set forth above.

If a member of an official committee submits a Qualifying Bid, such committee will continue to have consultation rights as set forth in these Bidding Procedures; <u>provided</u> that the committee shall exclude such member from any discussions or deliberations regarding the sale of the Assets in question and shall not provide any information regarding the sale of the Assets to such member.

### 15.    <u>Reservation of Rights</u>

Notwithstanding any of the foregoing, the Debtors and their estates reserve the right to, after consultation with the Consultation Parties, modify these Bidding Procedures at or prior to the Auction, including, without limitation, to extend the deadlines set forth herein, to allow for bidding on only a portion of the Assets and not all of them, modify bidding increments, to waive terms and conditions set forth herein with respect to any or all potential bidders (including, without limitation, the Bid Requirements), to impose additional terms and conditions with respect to any or all Potential Bidders, to adjourn or cancel the Auction at or prior to the Auction, and to adjourn or cancel the Sale Hearing.

Additionally, the Debtors, in consultation with the Consultation Parties, have the right to terminate the sale and auction process with respect to any or all of the Assets at any time.

### 16.    <u>Buyer's Brokers/Indemnity</u>

Each Potential Bidder or Qualifying Bidder warrants and represents that it is a principal acting on its own behalf, and not as a broker, finder, or agent acting on another's behalf. Each Potential Bidder or Qualifying Bidder understands that the Debtors and Investment Banker and their respective representatives have not agreed to pay any brokerage commissions, finder's fee or other compensation in connection with a Potential Bidder's or Qualifying Bidder's possible purchase. In addition, each Potential Bidder or Qualifying Bidder hereby agrees to indemnify, defend and hold the Debtors, Investment Banker, and their respective representatives harmless from and against any and all claims, damages, losses and liabilities, costs and expenses (including reasonable attorneys' fees and disbursements) arising out of any such claims made by third-party brokers on account of or related to such Potential Bidder or Qualifying Bidder.

### 17.    <u>Disclaimer</u>

By submitting a bid, each Potential Bidder and Qualifying Bidder agrees to and acknowledges the following terms and conditions with respect to any information received from the Debtors related to the Assets ("**Information**"):

(a)    The Assets are being offered AS-IS, WHERE-IS, with ALL FAULTS.

37042416.4

(b)      The Information has been prepared:

i.      for informational purposes only;

ii.      from materials supplied by the Debtors, local municipalities, and other sources commonly accepted as reliable sources for such type of Information; and

iii.      to assist Potential Bidders and Qualifying Bidders in making their own evaluation of the offering and does not purport to be all-inclusive or to contain all of the information that interested parties may desire. The Debtors, Investment Banker and their respective officers, directors, employees, affiliates, agents, advisors and representatives (such parties, collectively, "**Representatives**") have not assumed responsibility for independent verification of any of the information contained herein and have not in fact in any way audited such Information.  In all cases, Potential Bidders and Qualifying Bidders should conduct their own investigation and analysis of the offering, conduct site inspections, and scrutinize the Information.  Potential Bidders and Qualifying Bidders should engage legal counsel, accountants, engineers, and/or such other professional advisors as Potential Bidders and Qualifying Bidders deem appropriate for evaluating the Assets.

(c)      None of Potential Bidders, Qualifying Bidders or their respective Representatives are entitled to rely on the accuracy or completeness of the Information except as provided for in a Transaction Agreement that is authorized and approved by the Court.

(d)      Although the Debtors and Investment Banker have endeavored for the Information to contain data which they believe to be relevant for the purpose of any Potential Bidder's or Qualifying Bidder's investigation, except as expressly set forth in a Transaction Agreement accepted by the Debtors and approved by the Court, none of the Debtors, Investment Banker or any of their respective Representatives:

i.      have made or make and expressly disclaim making any written or oral statements, representations, warranties, promises or guarantees, whether express or implied or by operation of law or otherwise, with respect to the Assets or with respect to the accuracy, reliability or completeness of the Information;

ii.      to the fullest extent permitted by law, shall have any liability whatsoever to Potential Bidders, Qualifying Bidders or their Representatives on any basis (including, without limitation, in contract, tort, under federal, foreign or state securities laws or otherwise) as a result of, relating or pertaining to, or resulting or arising from (i) any Potential Bidder's, any Qualifying Bidder's, or any of their Representative's reliance on the Information, (ii) Potential Bidder's, Qualifying Bidder's, or their Representatives' use or non-use of the Information, or (iii) any alleged acts or omissions of Debtors, Investment Banker or any of their respective Representatives, or any errors or omissions in the Information;

14

iii.    shall have any liability or responsibility for any decisions made by any Potential Bidder, Qualifying Bidder or any of their Representatives in reliance on any Information;

iv.    will be under any obligation or duty (express or implied) to make available any Information to any Potential Bidders, any Qualifying Bidders, or any of their Representatives; and

v.    will be under any duty or obligation (express or implied) to update, supplement, revise or correct any Information disclosed under these Bidding Procedures, regardless of the circumstances.

(e)    No contract or agreement providing for any transaction shall be deemed to exist between a Potential Bidder or Qualifying Bidder and any Debtor unless and until a Qualifying Bidder and the applicable Debtor or Debtors execute and deliver a Transaction Agreement that is authorized and approved by the Court, and Potential Bidders and Qualifying Bidders hereby waive, in advance, any claims (including, without limitation, breach of contract) in connection with any transaction unless and until a Potential Bidder or Qualifying Bidder and the Debtors shall have executed and delivered a Transaction Agreement, which has been authorized and approved by the Court. The Debtors reserve the right, in their discretion, to reject any and all proposals made by any Potential Bidder or Qualifying Bidder with regard to a transaction, and to terminate discussions and negotiations with a Potential Bidder or Qualifying Bidder at any time. Subject to the terms of these Bidding Procedures, the Debtors shall be free to establish and change any process or procedure with respect to a transaction as the Debtors in their sole discretion shall determine (including, without limitation, negotiating with any other interested party and entering into a final definitive agreement relating to a transaction with any other party without prior notice to any Potential Bidder, Qualifying Bidder or any other person. Notwithstanding the foregoing, the Bidding Procedures shall not be modified without the consent of IHOP.

(f)    Each Debtor, Gordon Brothers and the Debtors' other advisors, individually and collectively, have not made any representations or warranties except as expressly set forth in any Transaction Agreement executed by the applicable Debtor, which has been authorized and approved by the Court. Potential Bidders and Qualifying Bidders may rely only on the representations and warranties expressly set forth in a Transaction Agreement executed by the applicable Debtor, which has been authorized and approved by the Court.

## Exhibit 2

**Sale Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| CFRA HOLDINGS, LLC | Case No. 8:20-bk-03608-CPM |
| | *Jointly Administered with:* |
| CFRA, LLC | Case No. 8:20-bk-03609-CPM |
| CFRA TRI-CITIES, LLC | Case No. 8:20-bk-03610-CPM |
| Debtors. | |
| _____/ | |

## NOTICE OF SALE OF ASSETS

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), are seeking to sell substantially all of their assets (the "**Assets**"). The Debtors will consider proposals to acquire some or all of the Assets through a sale under section 363 of the Bankruptcy Code. **The Debtors have reserved the right to seek Court approval, with notice and an opportunity for hearing, of one or more parties to serve as a stalking horse purchaser (each a "Stalking Horse Purchaser") to acquire some or all of the Assets pursuant to a Transaction Agreement between the applicable Debtor(s) and the Stalking Horse Purchaser.**

By order, dated June __, 2020 **[Docket No. ___]** (the "**Bidding Procedures Order**"), the Bankruptcy Court approved certain "**Bidding Procedures**" that govern the sale(s) of, or other transaction(s) to acquire, the Assets by the highest and best bidders. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

The Debtors have requested that the Bankruptcy Court enter an order or orders (the "**Sale Orders**"), providing, among other things, for the sale of the Assets free and clear of all liens, claims, encumbrances and other interests, to the extent permissible by law, and the assumption of certain liabilities. A separate notice will be provided to counterparties to executory contracts and unexpired leases with the Debtors that may be assumed and assigned in connection with the Sale Orders.

**Any interested bidder should contact the Debtors' advisor, Gordon Brothers Real Estate, James Avallone, 516-6824224, javallone@gordonbrothers.com**

37042416.4

**PLEASE TAKE NOTE OF THE FOLLOWING INFORMATION AND IMPORTANT DEADLINES:**

- The deadline to file an objection with the Bankruptcy Court to the proposed sale of the Assets (the "**Sale Objection Deadline**") is **June 23, 2020 at 4:00 p.m. (ET)**; provided that, solely with respect to an objection to the conduct of the Auction, the designation of any Successful Bidder or Bid or Back-Up Bidder or Bid, the terms (including price) of such bids, or the Debtors' inability to satisfy the conditions of section 363(f) of the Bankruptcy Code with respect to a Successful Bid or Back-Up Bid (an "**Auction Objection**"), the deadline to file an Auction Objection **shall be at the Sale Hearing (as defined below)**.

- Objections must be filed and served in accordance with the Bidding Procedures Order.  In connection with the proposed sale process, interested bidders may be subject to an expedited discovery process.

- The deadline to be qualified as a Qualifying Bidder and to submit a Qualifying Bid is **June 22, 2020 at 12:00 p.m. (ET)**.  All Qualifying Bids must be accompanied with a deposit in an amount equal to the greater of (a) $25,000 or (b) ten percent (10%) of the total consideration provided under the proposed Transaction Agreement; provided however, that the Debtors may alter the Deposit requirement for any party selected as a Stalking Horse Purchaser with leave of the Court.

- A virtual auction, as determined by Gordon Brothers and the Debtors, in consultation with the Consultation Parties, for the Assets will commence on **June 24, 2020 at 10:00 a.m. (ET)**.

- A hearing (the "**Sale Hearing**") to consider the proposed Sales on will be conducted on: **June 26, 2020 at 9:30 a.m. (ET)** before the Honorable Catherine Peek McEwen, in the United States Bankruptcy Court for the Middle District of Florida, 801 North Florida Avenue, Courtroom 8B (8th Floor), Tampa, Florida 33602, or such other date as determined by the Debtors in accordance with the terms of the Bidding Procedures Order.

    **THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION BY THE APPLICABLE OBJECTION DEADLINE SHALL BE DEEMED CONSENT TO, AND A BAR TO THE ASSERTION BY SUCH PERSON OR ENTITY OF ANY OBJECTION TO, THE MOTION, SALE ORDERS, THE PROPOSED TRANSACTIONS, OR THE DEBTORS' CONSUMMATION AND PERFORMANCE OF THE TRANSACTION AGREEMENT(S) (INCLUDING, WITHOUT LIMITATION, THE DEBTORS' TRANSFER OF ANY OF THE ASSETS AND ASSUMPTION AND ASSIGNMENT OF ANY ASSUMED CONTRACTS, FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS).**

Dated: June __, 2020                        **SAUL EWING ARNSTEIN & LEHR LLP**
                                            *Counsel for Debtors and Debtors-in-Possession*
                                            701 Brickell Avenue, 17th Floor
                                            Miami, FL 33131
                                            Telephone: (305) 428-4500
                                            Facsimile: (305) 374-4744

                                            *By:*     */s/ Carmen Contreras-Martinez_____*
                                                    Carmen Contreras-Martinez
                                                    Florida Bar No. 093475
                                                    Carmen.Contreras-Martinez@saul.com

                                                    -and-

                                                    Stephen B. Ravin (*pro hac vice*)
                                                    Florida Bar No. 293768 (*inactive status*)
                                                    Aaron S. Applebaum (*pro hac vice*)
                                                    1037 Raymond Boulevard
                                                    Suite 1520
                                                    Newark, NJ 07102
                                                    Telephone: (973) 286-6700
                                                    Facsimile:  (973) 286-6800
                                                    Stephen.Ravin@saul.com
                                                    Aaron.Applebaum@saul.com

3

## Exhibit 3

**Assumption Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| CFRA HOLDINGS, LLC | Case No. 8:20-bk-03608-CPM |
| | |
| | *Jointly Administered with:* |
| | |
| CFRA, LLC | Case No. 8:20-bk-03609-CPM |
| CFRA TRI-CITIES, LLC | Case No. 8:20-bk-03610-CPM |
| | |
| Debtors. | |

_____/

**NOTICE OF ASSUMPTION, ASSIGNMENT AND CURE AMOUNT WITH RESPECT**
**TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTORS**

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), are seeking to sell substantially all of their assets (the "**Assets**"). The Debtors will consider proposals to acquire some or all of the Assets through a sale under section 363 of the Bankruptcy Code. **The Debtors have reserved the right to seek Court approval, with notice and an opportunity for hearing, of one or more parties to serve as a stalking horse purchaser (each a "Stalking Horse Purchaser") to acquire some or all of the Assets pursuant to a Transaction Agreement between the applicable Debtor(s) and the Stalking Horse Purchaser.**

The Debtors have requested that the Bankruptcy Court enter an order or orders (the "**Sale Orders**"), which provide, among other things, for the sale of the Assets free and clear of all liens, claims, encumbrances and other interests, to the extent permissible by law, and the assumption by the applicable purchaser of certain liabilities. In connection with this marketing and sale process, the Debtors are seeking to assume or assume and assign certain of their executory contracts and unexpired leases related to the Assets (collectively, the "**Assumed Contracts**").

By order, dated June __, 2020 **[Docket No. __]** (the "**Bidding Procedures Order**"), the Bankruptcy Court approved certain "**Bidding Procedures**" that govern the sale of all of the Assets to the highest and best bidders. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order.

**You are receiving this Notice because you may be a party to an Assumed Contract. A list of the Assumed Contracts is attached hereto as <u>Exhibit A</u>.** The Debtors have determined the current amounts owing (the "**Cure Amounts**") under each Assumed Contract and have listed the applicable Cure Amounts on <u>**Exhibit A**</u>. The Cure Amounts are the only amounts proposed to be paid upon any assumption or assumption and assignment of the Assumed Contracts, in full satisfaction of all amounts outstanding under the Assumed Contracts.

**To the extent that a non-Debtor party to an Assumed Contract objects to (i) the assumption and assignment of such party's Assumed Contract or (ii) the applicable Cure Amounts, the non-Debtor counterparty must file and serve an objection in accordance with the Bidding Procedures Order, so as to be received by the undersigned counsel for the Debtors and the other parties specified therein by June 23, 2020 at 4:00 p.m. (ET).**

A virtual auction, as determined by Gordon Brothers and the Debtors, in consultation with the Consultation Parties, (the "**Auction**") for the Assets, including the Assumed Contracts, will be conducted on **June 24, 2020 at 10:00 a.m. (ET)**. After the Auction occurs (or after the cancellation of the Auction, if applicable), the Debtors will file and serve a notice that identifies the proposed acquirers of the Assets, and the proposed assignees of any Assumed Contracts.

The Bidding Procedures Order requires that each Qualifying Bidder provide Adequate Assurance Information along with a Bid. Any counterparty to a lease or executory contract that would like to receive such Adequate Assurance Information must submit a written request to Debtors' counsel to receive the Adequate Assurance Information by email (a) that specifically identifies the Assets for which you would like to receive Adequate Assurance Information in accordance with the terms of the Bidding Procedure Order, and (b) that you agree to be bound by the confidentiality provisions set forth in the Bidding Procedures Order. **The deadline to object to adequate assurance of future performance with respect to such proposed assignees, shall be at the Sale Hearing (as defined below).**

**If no objection is timely received with respect to Cure Amounts or the assumption of an Assumed Contract, (i) a non-Debtor party to a Contract shall be forever barred from objecting to the Cure Amounts and from asserting any additional cure or other amounts with respect to such Contract, (ii) the Cure Amounts set forth on Exhibit A attached hereto shall be controlling, notwithstanding anything to the contrary in any Assumed Contract, or any other document, and the non-Debtor party to an Assumed Contract shall be deemed to have consented to the Cure Amounts, (iii) the non-Debtor party to a Contract shall be forever barred and estopped from asserting any other claims related to such Contract against the Debtors or the applicable transferee, or the property of any of them; and (iv) the Counterparty shall be deemed to consent to, and the Debtors shall be permitted to proceed with, the assumption and assignment of the applicable Assigned Contract.**

The Debtors will seek to assume and assign the Assumed Contracts that have been selected by a Successful Bidder or the Stalking Horse Purchaser, if applicable, at a hearing before the Honorable Catherine Peek McEwen, in the United States Bankruptcy Court for the Middle District of Florida, 801 North Florida Avenue, Courtroom 8B (8th Floor), Tampa, Florida 33602 (a "**Sale Hearing**") on **June 26, 2020 at 9:30 a.m. (ET)**, or such other date as determined by the Debtors in accordance with the terms of the Bidding Procedures Order. A hearing regarding the Cure Amounts, if any, may be adjourned by agreement of the Debtors and applicable objection party or by order of the Court.

37042416.4

Dated: June __, 2020                    **SAUL EWING ARNSTEIN & LEHR LLP**
                                        *Counsel for Debtors and Debtors-in-Possession*
                                        701 Brickell Avenue, 17th Floor
                                        Miami, FL 33131
                                        Telephone: (305) 428-4500
                                        Facsimile: (305) 374-4744


                            By:      */s/ Carmen Contreras-Martinez*_____
                                        Carmen Contreras-Martinez
                                        Florida Bar No. 093475
                                        Carmen.Contreras-Martinez@saul.com

                                        -and-

                                        Stephen B. Ravin (*pro hac vice*)
                                        Florida Bar No. 293768 (*inactive status*)
                                        Aaron S. Applebaum (*pro hac vice*)
                                        1037 Raymond Boulevard
                                        Suite 1520
                                        Newark, NJ 07102
                                        Telephone: (973) 286-6700
                                        Facsimile:  (973) 286-6800
                                        Stephen.Ravin@saul.com
                                        Aaron.Applebaum@saul.com

**Exhibit 4**

**Addendum**

**ADDENDUM A**
**TO ORDER APPROVING BIDDING PROCEDURES,**
**ASSUMPTION AND ASSIGNMENT PROCEDURES,**
**AND THE FORM AND MANNER OF NOTICE THEREOF**

This Addendum and the  following terms (the "Addendum") of the proposed Sale[1] (and

related Bidding Procedures) of the Debtors' assets are agreed to among the Debtors; IHOP

Restaurants LLC,  IHOP Franchisor LLC, and IHOP Leasing LLC (collectively, "IHOP"); and

Valley National Bank ("VNB") and Raymond James Bank, N.A. ("RJB," and collectively with

VNB, the "Lenders" and, collectively with the Debtors and IHOP, the "Parties"), and shall be

valid and binding upon the Parties upon entry of the *Order Approving Bidding Procedures,*

*Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof* (the

"Bidding Procedures Order").  In the event of any inconsistency between the Bidding Procedures

and this Addendum or between the Bidding Procedures Order and this Addendum, this

Addendum shall control.

1.       Withdrawal of Objections: Upon entry of the Bidding Procedures Order

incorporating the terms of this Addendum, the (a) *Objection of IHOP Restaurants LLC, IHOP*

*Franchisor LLC, and IHOP Leasing LLC to Debtors' Emergency Motion for Entry of Interim*

*Orders (A) Authorizing Debtors to Obtain Post-Petition Financing and (B) Authorizing Debtors*

*to Use Cash Collateral* [Docket No. 62], (b) *Further Objection and Reservation of Rights of*

*IHOP Restaurants LLC, IHOP Franchisor LLC, and IHOP Leasing LLC to Debtors' Emergency*

*Motion for Entry of Interim Orders (A) Authorizing Debtors to Obtain Post-Petition Financing*

*and (B) Authorizing Debtors to Use Cash Collateral* [Docket No. 78], and (c) *Objection and*

---

[1] Capitalized terms used but otherwise defined in this Addendum shall have the meanings given in the *Debtors'*
*Motion for Entry of (I) an Order Approving Bidding Procedures, Assumption and Assignment Procedures, and the*
*Form and Manner of Notice Thereof; and (II) Order(s) (A) Approving the Sale of Substantially All of the Debtors'*
*Assets, (B) Authorizing the Sales Free and Clear of All Encumbrances, and (C) Authorizing Assumption and*
*Assignment of Executory Contracts and Unexpired Leases* [Docket No. 53].

*Reservation of Rights of IHOP Restaurants LLC, IHOP Franchisor LLC, and IHOP Leasing LLC to Debtors' Motion for Entry of (I) an Order Approving Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof; and (II) Order(s) (A) Approving the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Sales Free and Clear of All Encumbrances, and (C) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. 79] are all withdrawn, without prejudice and subject to the satisfaction of the terms of this Addendum.  Subject to the terms and requirements of this Addendum, IHOP supports entry of further interim debtor-in-possession financing and cash collateral orders and final orders with respect to *Debtors' Motion for Entry of (I) an Order Approving Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof; and (II) Order(s) (A) Approving the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Sales Free and Clear of All Encumbrances, and (C) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases* [Docket No. 53] and the Debtors' *Emergency Motion for Entry of Interim Orders (A) Authorizing Debtors to Obtain Post-Petition Financing and (B) Authorizing Debtors to Use Cash Collateral* [Docket No. 47]; provided, however, that no further cash collateral or debtor-in-possession financing orders shall alter IHOP's rights under prior debtor-in-possession financing or cash collateral orders or alter the terms of this Addendum.  Any hearing upon *IHOP Restaurants LLC, IHOP Franchisor LLC, and IHOP Leasing LLC's  Motion for Relief from the Automatic Stay*  (the "Stay Relief Motion")[Docket No. 65] shall be adjourned until after the Sale Hearing.

   2. The Sale of the Restaurants.  Subject to the terms of this Addendum, the Lenders and IHOP consent to and support the Debtors' marketing and sale of all property associated with

the forty-nine (49) restaurants identified on Exhibit 1 to this Addendum, including the franchise

agreements (the "Franchise Agreements"), franchise rights, and all real and personal property

leases between IHOP and any of the Debtors (the "IHOP Leases").  IHOP's consent to the

ultimate sale shall be subject to IHOP's further consent as to the successful bidder(s) in

accordance with the terms of the Franchise Agreements, and the Bidding Procedures shall be in a

form acceptable to IHOP.  The Lenders and IHOP shall cooperate with the sale process, and,

subject to any restrictions regarding confidentiality, IHOP shall provide Gordon Brothers with

the identity of all potential purchasers with whom IHOP has communicated.

      3.      <u>The Bidding Procedures</u>.  Notwithstanding anything else in the Bidding

Procedures Order, and, subject to the terms and conditions of this Addendum, the Bidding

Procedures and, to the extent applicable, any order approving the Sale shall require as follows:

      (a)      The Debtors, through Gordon Brothers, shall market all forty-nine (49) Restaurants for sale.  The Bidding Procedures shall require that, subject to the terms of the Bidding Procedures, to be a Qualified Bid, any such bid shall include all forty-nine (49) Restaurants.  At a minimum, any sale(s) must include, collectively, the twenty-nine (29) restaurants identified on Exhibit 2 hereto and must also include the related IHOP Leases, which include both subleases and equipment leases, associated with the restaurants shown on Exhibit 2. Notwithstanding the foregoing, IHOP, in its sole discretion, may consent to the sale of fewer of the twenty-nine (29) restaurants identified on Exhibit 2 hereto.

      (b)      Gordon Brothers shall deliver to counsel for the Debtors, the Lenders and IHOP all bids and supporting documents by electronic mail immediately after receipt.  No bidder shall be deemed a Qualifying Bidder without IHOP's consent, which consent shall be provided consistent with the terms of the Franchise Agreements and its normal business practices.  IHOP shall provide its consent to a bidder within three (3) business days of receipt of the bid and supporting documents.  IHOP shall be entitled to attend the Auction through its representative(s) and through counsel.

      (c)      At the time that IHOP consents to a bidder as a Qualified Bidder, to the extent not already provided pursuant to paragraph 3(f) below, IHOP will send to the Qualified Bidder the 2020 franchise disclosure document (the "FDD") along with the 2020 form franchisee agreement (to the extent that bidder has not

previously acknowledged the 2020 FDD).  The Qualified Bidder must then return the acknowledgments to the FDD no later than fifteen (15) days (eight (8) days for existing franchisees) prior to the closing of the Sale.  In connection with this process, IHOP will (i) offer new 20 year franchise agreements, in the form currently used by  IHOP, to potential buyers that are satisfactory to IHOP in accordance with IHOP's right of consent to assignee in pursuant to the terms of the Franchise Agreements, in lieu of selling, transferring, or assuming and assigning the Debtors' prior Franchise Agreements or franchise rights and (ii) execute said new agreements with the approved buyers, with any prior IHOP franchise agreements with the Debtors deemed terminated; provided, however, that the DIP Loan and pre-petition indebtedness to Lenders shall be secured by a first lien on the Sale proceeds attributable to the new franchise agreements issued by IHOP to buyers, with such lien to attach to the proceeds only and not the franchise agreements themselves; further provided that in no event shall the foregoing liens frustrate or alter (and shall be subject to) the disposition of proceeds of the Sale set forth in Paragraph 4 of this Addendum; further provided that in no event shall the foregoing prejudice—or be claimed by any Party to prejudice—IHOP's position that the Lenders' asserted prepetition liens upon Franchise Agreements and/or IHOP Leases were invalid or prejudice—or be claimed by any Party to prejudice—the Debtors' or the Lenders' positions with respect to such liens.

(d)      Subject to payment of the amounts provided for hereunder and IHOP's consent to the approved purchaser, IHOP shall permit and authorize assignment of the Debtors' real property subleases and equipment leases with IHOP to the approved purchaser(s) upon current terms, which must be taken "as is" by the approved purchaser.  Notwithstanding the foregoing, IHOP agrees that, if the approved purchaser negotiates a reduction in the go-forward rent for the property subject to a real property sublease that reduces IHOP's obligation to the landlord, IHOP will provide a dollar for dollar reduction on the go-forward sublease rent to the buyer.

(e)      Approved purchaser(s) shall be entitled to pursue and negotiate rent reductions, abatements, and/or deferrals from master landlords for the IHOP subleased real properties, and IHOP will provide a dollar for dollar reduction on the go-forward sublease rent to the buyer in the event such terms are obtained by the purchaser(s).

(f)      Potential bidders are subject to prequalification by IHOP, which prequalification shall be consistent with and not materially differ from the criteria for obtaining IHOP's consent to the transfer of a Franchise Agreement as set forth in the Franchise Agreements.  Upon any such prequalification, IHOP will send to the prequalified bidder the 2020 FDD (to the extent that bidder has not previously acknowledged the 2020 FDD) along with the 2020 form franchise agreement as set forth in paragraph 3(c) above.

(g)    Cure costs of all real and personal property leases, other than the IHOP Leases, shall be quantified by the Debtors via Court Order and satisfied by purchaser(s) at closing(s).

(h)    Closing(s) of all Restaurant sales shall occur prior to the end of June 2020, unless otherwise extended by joint consent of all the Parties or order of the Court; provided, however, that in no event shall the closing be extended beyond the end of June 2020 without the consent of IHOP.

(i)    To be deemed a Qualified Bid a bid, such bid (or bids if joined collectively), and exclusive of any other payments hereunder, shall provide for the direct payment to IHOP at closing $2,450,000.00 on account of the issuance of the new franchise agreements to the purchaser(s) and shall specifically set forth this payment as a separate portion of the bid. Instructions to bidders shall emphasize this requirement.

(j)    The Bidding Procedures shall not be further modified without the consent of IHOP.

4.    <u>Allocation and Disbursement of Sale Proceeds</u>. Subject to the terms and conditions of this Addendum, proceeds from the sale of the Restaurants shall be allocated and distributed as follows:

(a)    First, to Gordon Brothers from the proceeds of sale for each Restaurant sold as commission for said sale, pursuant to the terms of the order retaining Gordon Brothers and any order awarding compensation to Gordon Brothers that may be entered by the Court.

(b)    Second, to IHOP in the amount of $1,394,000 from the proceeds of sale for each Restaurant, inclusive of $1,234,000 as cure for outstanding pre-petition and post-petition rent under the IHOP Leases through June 30, 2020, and $160,000 in real property taxes due under the IHOP subleases through June 30, 2020.

(c)    Third, to repay the full outstanding amounts due under the DIP Loan as of the date of the closing(s), which repayment shall be capped at $1,000,000 or such additional amount of authorized DIP Financing as may be authorized by Court Order upon notice to all parties; provided, however, that in no event shall the $1,000,000 cap be exceeded without the consent of IHOP.

(d)    Fourth, subject to further Court Order upon notice to all parties, up to $245,325 to Smartvision Construction LLC ("<u>Smartvision</u>") from the sale proceeds of the following Restaurants: (i) 747 E. Rochambeau Drive, Williamsburg, Virginia 23185 (IHOP Store 2028) - $72,025 mechanics' lien claim; (ii) 1540 General Booth Blvd., Virginia Beach, Virginia 23454 (IHOP Store 585) - $80,950 mechanics lien claim; and (iii) 3214 Peoples Street, Johnson City, Tennessee 37604 (IHOP Store 4440) - $92,350 mechanics' lien claim. Such payment(s) shall be limited to the sale proceeds of the

aforementioned Restaurants and be subject to all rights, claims, and defenses of all parties in interest - including surcharge rights/claims. Absent entry of Court Order prior to Closing resolving the mechanics' lien claims of Smartvision, proceeds of sale attributable to the foregoing three (3) locations shall be set aside, up to the amount of the mechanics' lien claims on each location, and held in escrow by Debtors pending further Court Order. If a Court Order is entered before closing, proceeds that would otherwise have been reserved for the mechanics lien claims will be disbursed in accordance with such order upon Closing.

        (e)      Fifth, to IHOP in the amount of $756,000. The payments to IHOP in 4(b), (e), and (g), when indefeasibly made and subject to entry of an order approving the Sale, shall satisfy all of IHOP's claims against the Debtors, and IHOP shall be entitled to no further distribution from the Sale proceeds or to any application, transfer, or similar fees from the purchaser(s) in connection with the assignment of the IHOP Franchise Agreements, the IHOP Leases, or otherwise. Moreover, when all payments have been received by IHOP in accordance with the terms of this Addendum, IHOP shall withdraw the Stay Relief Motion.

        (f)      Sixth, to the Lenders on account of the Prepetition Indebtedness and their duly allowed secured claim as set forth in the Interim and Final DIP Financing Orders and Interim and Final Cash Collateral Orders, subject to (i) payment of any secured claim of greater priority under the Bankruptcy Code as may be as may be determined on consent of the Lenders and/or Court Order, and/or *pari passu* payment of any secured claim of equal priority as may be determined on consent of the Lenders and/or by Court Order; and (ii) any carve-out from the amounts due on account of the Prepetition Indebtedness due to Lenders, as may be agreed to by Lenders and approved by Court Order.

        (g)      Independent of the foregoing, a total of $2,450,000 to be paid directly to IHOP by the buyer(s) in accordance with paragraph 3.i. of this Addendum and without commission thereon payable to Gordon Brothers. For the avoidance of doubt, such direct payment shall be an express requirement of any Sale. The $2,450,000 provided for herein shall not be part of the purchase price payable to Debtors and shall not be included in the calculation of the commission payable to Gordon Brothers.

        (h)      Any remaining proceeds shall be distributed pursuant to further Court Order.

        (i)      The distributions under (a) - (c) and (e) - (g) shall occur at closing(s).

        (j)      The foregoing terms 4.a. through 4.i. shall be included in each Sale Order.

     5.    <u>Waiver of Claims</u>. Upon indefeasible payment to IHOP of the sums set forth above (which requirement shall be a condition of the order approving the Sale), IHOP shall be deemed paid in full as to any obligations of the Debtors, and IHOP waives, releases, and agrees that it shall neither assert nor possess any further or additional claims against the Debtors or the

Debtors' estates, arising prior to the date of the Closing, or against the proceeds from the sale of the Restaurants.  Effective upon the foregoing waiver, the Debtors on behalf of themselves and their estates and any party authorized to assert claims on behalf of their estate waive, release, and agree that they shall neither assert nor possess any further or additional claims against IHOP, arising prior to the date of the Closing.  The foregoing release of IHOP shall be expressly contained in each Sale Order.

6.     <u>Survival and No Modifications</u>.  The foregoing terms shall not be modified by any other or further order of the Court, and the provisions of this Addendum and any actions taken pursuant hereto shall survive entry of any order that may be entered: (a) confirming any plan of reorganization or liquidation in any of the Debtors' cases; (b) converting any of the Debtors' cases to a case under Chapter 7 of the Bankruptcy Code (and such terms shall be binding against any Chapter 7 trustee); (c) dismissing any of the Debtors' cases or any successor cases; or (d) pursuant to which the Court abstains from hearing any of the Debtors' cases or successor cases.

7.     The foregoing provisions and terms of this Addendum shall be included in the Bid Procedures Order as if set forth fully within.

**Exhibit 1—All Restaurants**

|   | Rest. # | Address | City | State | Zip Code |
|---|---------|---------|------|-------|----------|
| 1 | 470 | 4098 Nolensville Pike, Harding Mall | Nashville | TN | 37211 |
| 2 | 476 | 2219 Gallatin Pike N | Madison | TN | 37115 |
| 3 | 477 | 9940 Pineville-Matthews Rd | Pineville | NC | 28134 |
| 4 | 491 | 1101 Lanada Rd | Greensboro | NC | 27407 |
| 5 | 492 | 9253 East Independence Blvd | Matthews | NC | 28105 |
| 6 | 498 | 900 Longpine Rd | Burlington | NC | 27215 |
| 7 | 574 | 65 Peppers Ferry Rd NW | Christiansburg | VA | 24073 |
| 8 | 585 | 1540 General Booth Blvd | Virginia Beach | VA | 23454 |
| 9 | 587 | 109 University Blvd | Harrisonburg | VA | 22801 |
| 10 | 589 | 3179 Linden Dr | Bristol | VA | 24202 |
| 11 | 595 | 1740 Rio Hill Center Rd | Charlottesville | VA | 22901 |
| 12 | 4403 | 1295 Silas Creek Parkway | Winston-Salem | NC | 27127 |
| 13 | 4405 | 504 Cox Rd | Gastonia | NC | 28054 |
| 14 | 4407 | 110 E Parris Ave | High Point | NC | 27262 |
| 15 | 4408 | 3009 Capital Blvd | Raleigh | NC | 27604 |
| 16 | 4414 | 2415 US HWY 70 SE | Hickory | NC | 28602 |
| 17 | 4416 | 3191 N. Main St | Anderson | SC | 29621 |
| 18 | 4417 | 800 Cloverleaf Plaza | Kannapolis | NC | 28083 |
| 19 | 4423 | 105 Faith Rd | Salisbury | NC | 28146 |
| 20 | 4424 | 817 First Colonial Rd | Virginia Beach | VA | 23451 |
| 21 | 4431 | 134 W Woodlawn Rd | Charlotte | NC | 28217 |
| 22 | 4435 | 1201 East Stone Dr | Kingsport | TN | 37660 |
| 23 | 4440 | 3214 Peoples St | Johnson City | TN | 37604 |
| 24 | 4442 | 5016 Old Hickory Blvd | Hermitage | TN | 37076 |
| 25 | 4448 | 8135 Warren H. Abernathy Hwy | Spartanburg | SC | 29301 |
| 26 | 4451 | 5420 Target Dr | Antioch | TN | 37013 |
| 27 | 4458 | 1106 East Dixie Dr | Asheboro | NC | 27203 |
| 28 | 4505 | 1821 North Pointe Dr | Durham | NC | 27705 |
| 29 | 4506 | 8146 South Tryon St | Charlotte | NC | 28273 |
| 30 | 419 | 1031 Assembly St | Columbia | SC | 29201 |
| 31 | 494 | 1661 E Broad St | Statesville | NC | 28625 |
| 32 | 530 | 1412 Richmond Rd | Williamsburg | VA | 23185 |
| 33 | 597 | 170 Front Royal Pike | Winchester | VA | 22602 |
| 34 | 2027 | 747 E Rochambeau Dr | Williamsburg | VA | 23188 |
| 35 | 3105 | 700 E Dixon Blvd. | Shelby | NC | 28152 |
| 36 | 3139 | 16815 Caldwell Creek Drive | Huntersville | NC | 28078 |
| 37 | 3218 | 779 Team Blvd. | Smyrna | TN | 37167 |

| | Rest. # | Address | City | State | Zip Code |
|---|---|---|---|---|---|
| 38 | 3326 | 6800 Charlotte Pike, Ste 117 | Nashville | TN | 37209 |
| 39 | 3327 | 336 South Sharon Amity Road | Charlotte | NC | 28211 |
| 40 | 3367 | 478 River Highway | Mooresville | NC | 28117 |
| 41 | 3383 | 1203 Murfreesboro Road, Ste 190 | Franklin | TN | 37064 |
| 42 | 3423 | 16015-A Lancaster Highway | Charlotte | NC | 28277 |
| 43 | 3427 | 2214 Elliston Place, Suite 102 | Nashville | TN | 37203 |
| 44 | 3450 | 825 Nashville Pike, Suite D | Gallatin | TN | 37066 |
| 45 | 3453 | 5335 Ballantyne Commons Parkway, Suite 200 | Charlotte | NC | 28277 |
| 46 | 3472 | 702 Blowing Rock Road | Boone | NC | 28607 |
| 47 | 3487 | 3001 Hillsborough St. Ste. 116 | Raleigh | NC | 27607 |
| 48 | 3488 | 5815 Highland Shoppes Drive, Suite 100 | Charlotte | NC | 28269 |
| 49 | 3502 | 1602 Haynes Street | Clarksville | TN | 37043 |

**Exhibit 2—29 Franchise Locations with Real Property & Equipment Leases**

|  | Rest. # | Address | City | State | Zip Code |
|---|---|---|---|---|---|
| 1 | 470 | 4098 Nolensville Rd | Nashville | TN | 37211 |
| 2 | 476 | 2219 Gallatin Pike N | Madison | TN | 37115 |
| 3 | 477 | 9940 Pineville Matthews Rd | Pineville | NC | 28134 |
| 4 | 491 | 1101 Lanada Rd | Greensboro | NC | 27407 |
| 5 | 492 | 9253 East Independence Rd | Matthews | NC | 28105 |
| 6 | 498 | 900 Long Pine Rd | Burlington | NC | 27215 |
| 7 | 574 | 65 Peppers Ferry Rd NW | Christiansburg | VA | 24073 |
| 8 | 585 | 1540 General Booth Blvd | Virginia Beach | VA | 23454 |
| 9 | 587 | 109 University Blvd | Harrisonburg | VA | 22801 |
| 10 | 589 | 3179 Linden Dr | Bristol | VA | 24202 |
| 11 | 595 | 1740 Rio Hill Center Rd | Charlottesville | VA | 22901 |
| 12 | 4403 | 1295 Silas Creek Parkway | Winston-Salem | NC | 27127 |
| 13 | 4405 | 504 Cox Rd | Gastonia | NC | 28054 |
| 14 | 4407 | 110 E Parris Ave | High Point | NC | 27262 |
| 15 | 4408 | 3009 Capital Blvd | Raleigh | NC | 27604 |
| 16 | 4414 | 2415 US HWY 70 SE | Hickory | NC | 28602 |
| 17 | 4416 | 3191 N. Main St | Anderson | SC | 29621 |
| 18 | 4417 | 800 Cloverleaf Plaza | Kannapolis | NC | 28083 |
| 19 | 4423 | 105 Faith Rd | Salisbury | NC | 28146 |
| 20 | 4424 | 817 First Colonial Rd | Virginia Beach | VA | 23451 |
| 21 | 4431 | 134 W Woodlawn Rd | Charlotte | NC | 28217 |
| 22 | 4435 | 1201 East Stone Dr | Kingsport | TN | 37660 |
| 23 | 4440 | 3214 Peoples St | Johnson City | TN | 37604 |
| 24 | 4442 | 5016 Old Hickory Blvd | Hermitage | TN | 37076 |
| 25 | 4448 | 8135 Warren H. Abernathy Hwy | Spartanburg | SC | 29301 |
| 26 | 4451 | 5420 Target Dr | Antioch | TN | 37013 |
| 27 | 4458 | 1106 East Dixie Dr | Ashboro | NC | 27203 |
| 28 | 4505 | 1821 North Pointe Dr | Durham | NC | 27705 |
| 29 | 4506 | 8146 South Tryon St | Charlotte | NC | 28273 |