ORDERED.

**Dated:  June 19, 2020**

_[signature: Catherine M. Ewen]_

Catherine Peek McEwen
United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION
www.flmb.uscourts.gov

In re:
CFRA HOLDINGS, LLC

Case No. 8:20-bk-03608-CPM
Chapter 11

*Jointly Administered with:*
CFRA, LLC                                    Case No. 8:20-bk-03609-CPM
CFRA TRI-CITIES, LLC              Case No. 8:20-bk-03610-CPM

     Debtors.

_____/

**FINAL ORDER
(I) AUTHORIZING THE DEBTORS TO
OBTAIN POST-PETITION FINANCING
FROM PRE-PETITION LENDERS PURSUANT
TO 11 U.S.C. § 364; (II) GRANTING LIENS AND
SUPERPRIORITY CLAIMS PURSUANT TO 11 U.S.C. § 364;
(III) GRANTING ADEQUATE PROTECTION PURSUANT
TO 11 U.S.C. §§ 361, 362, AND 363; AND (IV) GRANTING SUCH
OTHER AND FURTHER RELIEF THAT THIS COURT FINDS EQUITABLE**

**THIS MATTER** came on for hearing on June 5, 2020,  June 8, 2020 and June 19, 2020,

on the Motion (the "DIP Financing Motion") [Docket No. 47] of CFRA Holdings, LLC ("CFRA

Holdings"), CFRA, LLC ("CFRA"), and CFRA Tri-Cities, LLC ("CFRA Tri-Cities") in the

above-captioned chapter 11 cases (the "Cases") pursuant to Sections 105, 362, 363, 364, and 507

of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules

2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2018-1(g)(2) of the Local Rules of the United States Bankruptcy Court for the Middle District of Florida (the "Local Rules"), for entry of this final order (the "Final DIP Financing Order") seeking, among other things:

(i)     authorization for the Debtors to obtain a secured post-petition loan (the "DIP Loan") in the aggregate principal amount of up to One Million Dollars ($1,000,000), together with interest, costs, fees and other expenses and amounts pursuant to the terms and conditions set forth in that certain Debtor-in-Possession Loan Agreement (the "DIP Loan Agreement"), attached as Exhibit A to the First Interim Order, and  the notes, agreements and loan documents identified and referenced therein (collectively, the "DIP Loan Documents") by and between the Debtors, as borrowers, and Valley National Bank ("VNB") and Raymond James Bank, N.A. ("RJB," and collectively with VNB, the "Lenders") as lenders;

(ii)     authorization for the Debtors to execute and deliver the DIP Loan Documents to the Lenders and to perform such other and further acts as may be required in furtherance of the DIP Loan and the DIP Loan Documents;

(iii)     authorization for the Debtors to draw on the DIP Loan, subject to the terms and conditions precedent as set forth in the DIP Loan Documents, and to use proceeds of the DIP Loan only in accordance with (a) this Final DIP Financing Order, any prior interim orders granted by the Court with respect to the DIP Financing Motion; (b) the then-applicable Approved DIP Budget (as defined in the DIP Loan Documents), the Final Approved DIP Budget as attached hereto as **Exhibit A** (the "Final Approved DIP Budget"); and (c) any interim and/or final order authorizing the Debtors' use of Lenders' cash collateral (the "Cash Collateral Order(s)");

(iv)     subject to the Carve-Out (defined below), the granting of allowed superpriority administrative expense claim status to Lenders in each of the Debtors' jointly administered cases

herein for all amounts which become due and outstanding to Lenders under the DIP Loan and DIP Loan Documents (collectively, the "DIP Obligations");

(v)    subject to the Carve-out (as defined below) and exclusive of Avoidance Actions (as defined below) and commercial tort claims and actions, the granting to Lenders automatically perfected first-priority security interests in and liens on all of the property, assets or interests in property of each Debtor and each Debtor's "estate" (as defined in the Bankruptcy Code), in each case of any kind or nature whatsoever, real or personal, tangible or intangible, and now existing or hereafter acquired or created, including, without limitation, all accounts, inventory, goods, contract rights, instruments, documents, chattel paper, real property leases, personal property leases, intellectual property, patents, trademarks, copyrights and licenses therefor, general intangibles, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, letter-of-credit rights, supporting obligations, machinery and equipment, real property, fixtures, all proceeds of leases of real property, all of the issued and outstanding capital stock of each subsidiary of such Debtor, money, investment property, deposit accounts, causes of action, all cash and cash equivalents of the Debtors and all cash and non-cash proceeds, rents, products, substitutions, accessions and profits of any of the collateral described above (collectively, with respect to all such entities, the "DIP Loan Collateral") to secure all DIP Obligations;

(vi)    subject to and effective upon the entry of this Final DIP Financing Order, the waiver by the Debtors, the Official Committee of Unsecured Creditors (the "Committee") and any other party herein of any right to surcharge against the Collateral pursuant to 11 U.S.C. § 506(c) or otherwise; and

(vii)    modification of the automatic stay imposed by 11 U.S.C. § 362 to the extent necessary to provide Lenders with the relief necessary to implement and effectuate the terms and provisions of the DIP Loan Documents;

**NOW THEREFORE**, the Court having considered the DIP Financing Motion, the DIP Loan Documents, and the evidence proffered at the hearing held on May 21, 2020 and the further hearings held on June 5, 2020, June 8, 2020 and June 19, 2020 (collectively, the "Hearings"); and due and appropriate notice of the DIP Financing Motion, the relief requested therein, and the Hearings having been given in accordance with Bankruptcy Rules 2002, 4001 and 9014; and the Court having entered a first interim order with respect to the relief requested through the DIP Financing Motion on May 27, 2020 (the "First Interim Order") [Docket No. 81] and having entered a second interim order with respect to the relief requested through the DIP Financing Motion on June 10, 2020 (the "Second Interim Order") [Docket No. 133]; and the Court having considered the Objection filed by the Committee (the "Committee Objection") [Docket No. 120] and the Lenders' Response to the Committee Objection (the "Lenders' Response") [Docket No. 126]; and hearings to consider the relief requested in the DIP Financing Motion and granted through this Final DIP Financing Order having been held and concluded; and all objections to the relief requested in the DIP Financing Motion having been withdrawn, resolved, addressed or overruled by the Court; and it appearing to the Court that granting the relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, their creditors and equity holders; and it further appearing, that the Debtors' estates are unable to obtain unsecured credit for money borrowed allowable as an administrative expense under Bankruptcy Code Section 503(b)(1); and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

    **THE COURT FINDS AS FOLLOWS:**

A.    *Petition Date*.  On May 6, 2020, (the "Petition Date") each of the Debtors filed a separate voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida (the "Court").

B.    *Debtors-in-Possession*.  The Debtors continue to maintain dominion and control over their assets and business operations as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

C.    *Jurisdiction and Venue*.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over the Debtors' chapter 11 cases, and over the persons and property affected hereby.  Consideration of the DIP Financing Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for these Cases is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    *Official Committees*.  The Office of the United States Trustee for Region 21 appointed an Official Committee of Unsecured Creditors in the Cases on May 27, 2020.

E.    *Notice.* The notice given by the Debtors of the DIP Financing Motion, the relief requested therein and the Hearings constitutes appropriate, due and sufficient notice thereof and complies with the Bankruptcy Rules and Local Rules, and no further notice of the relief sought through the DIP Financing Motion and the relief granted herein is necessary or required.

F.    *Debtors' Stipulations*.  The Debtors admit, stipulate, and agree that:

    a.    *The Pre-Petition Loan*.

        i.    Prior to the Petition Date, Lenders, as lenders, extended certain loans to the Operating Company Debtors, as borrowers, which loans are guaranteed by CFRA Holdings and are secured by property of the Operating Company Debtors as set forth below. These loans are evidenced by various agreements and documents that are collectively referred to as the "Bank Credit Agreements."

ii.     Pursuant to the terms of the Bank Credit Agreements, the Lenders made available to the Operating Company Debtors a revolving line of credit in the principal amount of up to Twenty-Six Million ($26,000,000) (the "Prior Loan").

iii.     The Prior Loan comprises (i) a Revolving Line of Credit Promissory Note dated September 8, 2016 (the "VNB Note") made by the Operating Company Debtors and held by VNB in the principal amount of $11,000,000; and (ii) a Revolving Line of Credit Promissory Note dated September 8, 2016 (the "RJB Note," and collectively with the VNB Note, the "Prepetition Notes") made by the Operating Company Debtors and held by RJB in the principal amount of $15,000,000. CFRA Holdings guaranteed payment and performance of the Operating Company Debtors under the Bank Credit Agreements, including the Prepetition Notes, pursuant to a Guaranty of Payment and Performance dated September 8, 2016 (the "Guaranty").

iv.     As of the Petition Date, the Debtors were jointly and severally indebted (i) to VNB in the amount of at least $8,269,315.85, exclusive of legal fees and costs due under the Bank Credit Agreements prior to the Petition Date and exclusive of amounts which accrue under the Bank Credit Agreements after the Petition Date; (ii) to RJB in the amount of at least $11,276,339.75, exclusive of legal fees and costs due under the Bank Credit Agreements prior to the Petition Date and exclusive of amounts which accrue under the Bank Credit Agreements after the Petition Date; (together, the "Prepetition Indebtedness").

v.     On June 8, 2020, each of the Lenders filed proofs of claim in each of the Debtors' three (3) related cases. Specifically, RJB filed proofs of claim in the amount of $11,276,339.75 in the cases of CFRA LLC (Claim No. 6)  CFRA Tri-Cities, LLC (Claim No. 4) and CFRA Holdings, LLC (Claim No. 16). VNB filed proofs of claim in the amount of $8,269.315.85 in the cases of CFRA LLC (Claim No. 7)  CFRA Tri-Cities, LLC (Claim No. 5) and CFRA Holdings, LLC (Claim No. 17) (collectively, the "Lender POCs"). Each of the Lender

POCs attached the applicable Bank Credit Agreements and other documentation establishing the bona fides of the claims in terms of amount as well as the nature, validity and extent of the perfected liens possessed by the Lenders with respect to said obligations. The Debtors acknowledge the Prepetition Indebtedness in full and waive any and all claims for reduction, modification and set off of any kind, and further acknowledge the lack of any affirmative claim(s) against Lenders and waive all rights to assert any such claims on behalf of themselves and their bankruptcy estates.

b.      *The Prepetition Collateral*.

i.      The Operating Company Debtors' payment of the Prepetition Indebtedness and performance under the Bank Credit Agreements, including the Prepetition Notes, are secured by the property identified in that certain Security Agreement dated September 9, 2016 (the "Prepetition Security Agreement"), wherein the Operating Company Debtors granted Lenders valid, binding, perfected security interests and liens (the "Prepetition Liens") in certain of their property (the "Prepetition Collateral").

ii.      The Prepetition Indebtedness constitutes the legal, valid and binding obligations of the Debtors, enforceable against them in accordance with the terms of the Bank Credit Agreements and/or the Guaranty (other than in respect of the stay of enforcement pursuant to 11 U.S.C. § 362), and no portion of the Prepetition Indebtedness is subject to avoidance, re-characterization, reduction, setoff, offset, counterclaim, cross-claim, recoupment, defenses, disallowance, impairment, recovery, subordination or any challenges pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity. The Debtors are jointly and severally liable to the respective Lenders in the amount of the Prepetition Indebtedness as identified herein.

iii.      The Prepetition Liens constitute legal, valid, binding, enforceable

(other than in respect of the stay of enforcement pursuant to 11 U.S.C. § 362) and perfected security interests and liens on the Prepetition Collateral, were granted to, or for the benefit of, the Lenders, as applicable, for fair consideration and reasonably equivalent value, and are not subject to defense, counterclaim, re-characterization, subordination or avoidance pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity.

   G. *Findings Regarding the Post-Petition Financing and Use of Cash Collateral*.

    a. *Cause*.  Good cause has been shown for entry of this Final DIP Financing Order.

    b. *Need for Post-Petition Financing and Use of Cash Collateral*.  The Debtors have an immediate and critical need to obtain the DIP Loan to preserve property of the estates and maximize the distribution to creditors of the estates. The Debtors require immediate authority to use cash collateral of Lenders and obtain the DIP Loan from Lenders in order to pursue and consummate a sale of all or substantially all of the property of the estates and the Debtors do not have sufficient unencumbered cash or other assets to fund the necessary activities to be performed during the marketing period.  The DIP Financing Motion also incorporates the Debtors' request for authority to use cash collateral of Lenders in these Cases (the "Cash Collateral Motion") and the Debtors also filed a separate motion to approve bidding procedures and the sale of property of the estates (the "Sale Motion"), including property and property interests utilized in connection with operation of the Debtors' forty-nine (49) restaurants (the "Restaurants") as specifically identified in the Sale Motion.  On June 10, 2020, the Court entered an Order granting the Sale Motion as to bidding procedures and approved the protocols and procedures for the sale of the Restaurants (the "Bidding Procedures Order") [Docket No. 134]. The Sale Motion, DIP Financing Motion and the Cash Collateral Motion are inextricably intertwined. Lenders' agreement to provide the DIP Loan as set forth herein is contingent upon the Debtors' prosecution and the

Court's approval of the Cash Collateral Motion and the Sale Motion.

c.      *No Credit Available on More Favorable Terms*.  The Debtors are unable to obtain financing on terms more favorable than those offered by the Lenders under the DIP Loan and are unable to obtain unsecured credit allowable under 11 U.S.C. § 503(b)(1) as an administrative expense.  The Debtors are also unable to obtain secured credit under 11 U.S.C. § 364(c) on equal or more favorable terms than those offered by the Lenders under the DIP Loan.

d.      *Use of Proceeds of the DIP Loan*.  The Debtors have agreed that the proceeds of the DIP Loan and any Advance shall be used only in accordance with then current approved budget(s) approved by Lenders (the "Approved DIP Budgets") and each advance shall be used solely in a manner consistent with the terms of the DIP Loan, the DIP Loan Documents, this Final DIP Financing and any order granting the Cash Collateral Motion (a "Cash Collateral Order").  Lenders' consent and approval of any budget for use of proceeds of the DIP Loan and any Advance shall be in the sole and absolute discretion of Lenders.

i.      *Use(s)*: Per this Final DIP Financing Order, the Debtors shall be authorized to use the proceeds of the DIP Loan for the designated expenditures and miscellaneous expense line items set forth in the Final Approved DIP Budget. Lenders' agreement to fund the DIP Loan is contingent upon the entry of this Final DIP Financing Order, and entry of a final order approving the Cash Collateral Motion, in their entirety and without amendment, and pursuant to Approved DIP Budgets, as may be approved by Lenders in their sole discretion.

H.      *Good Faith of the Lenders*.

a.      *Willingness to Provide Financing*.  The Lenders have indicated a willingness to provide financing to the Debtors subject to: (i) the entry of this Final DIP Financing Order, including the grant to Lenders of the liens herein; (ii) the approval of the terms

and conditions of the DIP Loan and the DIP Loan Documents; (iii) the entry of a Final Order granting the Cash Collateral Motion; and (iv) entry of an order approving bidding procedures in connection with the Sale Motion.

b.      *Good Faith Pursuant to 11 U.S.C. § 364(e)*.   Lenders are extending credit to the Debtors in good faith and, therefore, the security interests, liens, DIP Superpriority Claims (defined below) and other protections granted pursuant to this Final DIP Financing Order and the DIP Loan Documents to the Lenders will have the protections provided in 11 U.S.C. § 364(e) and will not be affected by any subsequent reversal, modification, vacatur, amendment, re-argument or reconsideration of this Final DIP Financing Order or any other order.

Based upon the foregoing findings and conclusions, the DIP Financing Motion, and the record before the Court with respect to the DIP Financing Motion, and good and sufficient cause appearing therefor, **IT IS HEREBY ORDERED that**:

1.      *Financing Approved*.   The DIP Financing Motion is granted on a final basis in accordance with the terms of this Final DIP Financing Order and is further conditioned upon the Court's entry of a final order granting the Cash Collateral Motion, in its entirety and without amendment.

2.      *Objections Overruled or Withdrawn*.   All objections to entry of this Final DIP Financing Order, to the extent not withdrawn or resolved, and all reservations of rights included therein, are hereby overruled.   The objection to the DIP Financing Motion [Docket No. 62] and the further objection and reservation of rights [Docket No. 78] filed by IHOP Restaurants LLC, IHOP Franchisor LLC, and IHOP Leasing LLC (collectively, the "IHOP Entities") have been withdrawn pursuant to the settlement among the Debtors, Lenders and the IHOP Entities as documented in the Bidding Procedures Order, the terms and conditions of which are incorporated herein by reference.   The Committee Objection has been withdrawn pursuant to the settlement

among the Committee, the Debtors and the Lenders, the terms of which settlement are set forth in the Final Cash Collateral Order and incorporated herein by reference.

3.      _Authorization of the DIP Loan_.    The Debtors are expressly and immediately authorized to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Final DIP Financing Order, the DIP Loan Documents, which are expressly approved and incorporated herein by reference, the Final Approved DIP Budget, and the Final Cash Collateral Order.

4.      _Authorization to Execute Documentation_.   The Debtors are hereby authorized to execute any additional documents and instruments as may be reasonably required by the Lenders to implement the terms or effectuate the purposes of this Final DIP Financing Order.

5.      _Authorization to Borrow_.   The Debtors are hereby authorized to request one or more Advances under the DIP Loan, subject to the terms, conditions, limitations on availability set forth in this Final DIP Financing Order, the DIP Loan Documents, Final Approved DIP Budget and the Final Cash Collateral Order.

6.      _No Obligation to Extend Credit_.  The Lenders shall have no obligation to make any loan or Advance under the DIP Loan Documents, unless all of the conditions precedent to the making of such extension of credit under the DIP Loan Documents, the Final Cash Collateral Order and this Final DIP Financing Order have been satisfied in full or waived by the Lenders in their sole discretion.

7.      _Budget; Use of DIP Loan Proceeds_.   From and after the entry of this Final DIP Financing Order, the Debtors shall use advances under the DIP Loan only for the purposes specifically set forth in this Final DIP Financing Order, the DIP Loan Documents, and/or the Final Cash Collateral Order, and solely for expenses included in the Final Approved DIP Budget.

8.      *Superpriority Claims*.      Pursuant to 11 U.S.C. § 364(c)(1), all of the DIP

Obligations shall collectively constitute an allowed superpriority administrative expense claim

against the Debtors (the "DIP Superpriority Claims") in each of these Cases with priority over

any and all administrative expense claims, adequate protection claims, diminution claims, and all

other claims against the Debtors or their estates, at any time existing or arising, of any kind or

nature whatsoever, including without limitation, administrative expenses of the kinds specified in

or ordered pursuant to 11 U.S.C. §§ 105, 326, 328, 330, 331, 364(c), 365, 503(a), 503(b), 506(c),

507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114, and any

other provision of the Bankruptcy Code, as provided under 11 U.S.C. § 364(c)(1); and which

shall at all times be senior to the rights of the Debtors and their estates and any creditor or other

party in interest to the extent permitted by law.

9.      *DIP Liens*.

a.      As security for the DIP Obligations, effective and perfected upon the date

of this Final DIP Financing Order and without the necessity of the execution or recordation of

filings by the Lenders of mortgages, security agreements, control agreements, pledge agreements,

financing statements or other similar documents, or the possession or control by the Lenders over

any collateral, the following security interests and liens are hereby granted by the Debtors to the

Lenders (the "DIP Liens"):

i.      a first priority, perfected security interest in, and lien, under 11

U.S.C. § 364(c)(2) upon: (A) all DIP Loan Collateral to the extent same is not subject to valid,

perfected and non-avoidable liens which are entitled to priority over the DIP Liens; and (B) the

Prepetition Collateral; and

ii.        a junior lien, under 11 U.S.C. § 364(c)(3), upon all of the DIP Loan

Collateral to the extent same is not subject to valid, perfected and non-avoidable liens (other than

the Prepetition Liens) in favor of third parties which are entitled to priority over the DIP Liens.

b.        The DIP Liens shall be senior priming liens on all Prepetition Collateral

senior to all Prepetition Liens thereon and any Adequate Protection Liens (as defined below)

thereon, but subject only to (i) the Carve-Outs, and (ii) liens that are valid, binding, perfected and

unavoidable as of the Petition Date (other than the Prepetition Liens) and which are entitled to

priority over the DIP Liens.

c.        The DIP Loan Collateral shall not include any claims or causes of action

arising under 11 U.S.C. §§ 542, 544, 545, 547, 548, 550, 551, 553(b) or 724(a) (collectively,

"Avoidance Actions") or commercial tort claims or causes of action, if any, and shall not apply

to any proceeds of Avoidance Actions or commercial tort claims or causes of action.

d.        For the avoidance of doubt and notwithstanding anything to the contrary

contained herein, unless otherwise expressly permitted by the terms of the applicable lease and

subject to the rights of all landlords and sublessors therein, any liens granted under this Order

shall not include the Debtors' real property leases (including, for the avoidance of doubt, any

ground leases), but shall include the proceeds from the disposition of all such leases.

e.        For the avoidance of doubt, and notwithstanding anything to the contrary

contained herein, the DIP Loan Collateral shall not include the franchise agreements and

development agreements by and between any of the Debtors, as franchisee, and IHOP

Franchising, LLC, a Delaware limited liability company, and its successors and assigns, as

franchisor ("IHOP") (the "Franchise Agreements"), or the equipment, machinery, furniture,

fixtures and other personal property leased by any of the Debtors from IHOP or any affiliate of

IHOP (the "IHOP Leases"), but the DIP Loan Collateral shall include the proceeds from the

disposition of any or all of the Franchise Agreements and IHOP Leases, inclusive of any new franchise agreements or leases given by any of the IHOP Entities in connection with the sale of any of the Restaurants, as provided in paragraph 3(c) of Addendum A to the Bidding Procedures Order, which terms and parameters as to the validity, scope and perfection of the Lenders' security interests in the sale proceeds (inclusive of new franchise agreements) is specifically adopted and incorporated by reference herein.

10.     *Pre-Petition Secured Parties' Adequate Protection*.

a.     The Lenders are entitled, pursuant to 11 U.S.C.§§ 361, 363(e) and 364(d)(1), to adequate protection to the extent and priority of their liens in the Prepetition Collateral, including cash collateral, for any diminution in the value of their interests in the Prepetition Collateral, including, without limitation, any such diminution that may result from the sale, lease or use by the Debtors (or other actual consumption) of cash collateral and any other Prepetition Collateral, and the imposition of the automatic stay pursuant to 11 U.S.C. § 362 (each, a "Diminution Claim").  As adequate protection for such Diminution Claims, the Lenders are granted, *nunc pro tunc* to the Petition Date, the following adequate protection (collectively, the "Adequate Protection Provisions"):

b.     *Adequate Protection Liens*. Subject to paragraph 9.e.n.4, the Lenders are hereby granted valid and perfected replacement security interests in and liens on any of the DIP Loan Collateral in which the Lenders did not have valid, perfected liens and security interests as of the Petition Date, including but not limited to all proceeds from the sale of the Restaurants, inclusive of proceeds attributable to new franchise agreements and leases as described in paragraph 9(e) *supra*, and as set forth in paragraph 3(c) of Addendum A to the Bidding Procedures Order (the "Adequate Protection Liens"); provided, that the Adequate Protection Liens shall not attach to the Avoidance Actions or commercial tort claims or causes of action

against parties other than Lenders, or the proceeds of the Avoidance Actions or commercial tort claims or causes of action against parties other than Lenders.

11.     *Repayment of DIP Loan*.  All DIP Obligations shall be due and payable in full, as set forth in the DIP Loan Documents.  Unless otherwise agreed in writing by Lenders, or as set forth in any Order entered by this Court, inclusive of addenda thereto, the first proceeds from any sale, assignment, or disposition of DIP Loan Collateral shall be disbursed to Lenders up to the outstanding amounts due under the DIP Loan Documents at the time of each such sale, assignment, or disposition of DIP Loan Collateral.  Moreover, the DIP Loan shall be paid from the sale proceeds as and in the priority set forth in the Bidding Procedures Order, including the Addendum A thereto, the terms of which are incorporated herein.

12.     *Reservation of Rights of Lenders*. Notwithstanding any other provision hereof, the grant of adequate protection to the Lenders in the form of the Adequate Protection Provisions is without prejudice to the right of any Lender to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection, upon proper notice and without prejudice to the right of the Debtors or any other party to contest such modification.

13.     *Perfection of DIP Liens and Adequate Protection Liens*. The DIP Liens and the Adequate Protection Liens shall be and hereby are fully perfected liens and security interests, effective and perfected upon the date of this Final DIP Financing Order.  This Final DIP Financing Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other

action to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens.

14.    _Payment of Professionals - Carve Out_.

a.    Advances under the DIP Loan shall be used for payment of allowed fees and expenses of: (i) Debtors' counsel, Saul Ewing Arnstein & Lehr LLP ("Debtors' Counsel"); (ii) any chief restructuring officer, and his/her firm, that may be retained in the Cases (collectively the "CRO,"); and (iii) counsel for the Committee, Squire Patton Boggs (US) LLP ("Committee Counsel" and, collectively with the Debtors' Counsel and the CRO, the "Retained Professionals"), in the amounts set forth on the Final Approved DIP Budget (collectively, the "Final Professional Fee Payments" and, collectively with all amounts set forth in any prior Interim Approved DIP Budgets, the "Professional Fee Payments").

b.    The Final Professional Fee Payments have and/or shall be funded from Lenders' Cash Collateral (as defined in the Cash Collateral Motion) and/or the proceeds of the DIP Loan as, when, and to the extent set forth in the Final Approved DIP Budget and subject to the terms and conditions of the DIP Loan Documents, this Final DIP Financing Order and the Final DIP Financing Cash Collateral Order.  The Debtors shall wire transfer funds to the Saul Ewing Arnstein & Lehr LLP Client Trust Account (to the extent of such funds actually deposited, the "Carve-Out Reserve Account") in the amounts equal to, but not to exceed, the amounts budgeted for the Retained Professionals set forth in the Final Approved DIP Budget for each such week (or for any prior week for which such funds have not already been disbursed). Debtors' Counsel shall release to itself, the CRO or the Committee's Counsel, as the case may be, such amounts as are payable pursuant to an applicable Order of this Court, including, without limitation, the Order approving the Retention of the CRO (the "CRO Retention Order") [Docket No. 71], any order approving interim compensation procedures in the Cases and any order

granting interim or final fee applications in the Cases.  In making payments from the Carve-Out Reserve Account, Debtors' Counsel shall be entitled to rely on written certifications from the CRO and/or the Committee's Counsel, as appropriate, as to the amount due and owing from the Carve-Out Reserve Account and in no circumstance shall Debtors' Counsel be obligated to pay any party other than from the funds held, from time to time, in the Carve-Out Reserve Account.

c.      The entitlement of Debtors' Counsel and the Committee's Counsel to retain their portion of the Final Professional Fee Payments is contingent upon entry of an Order by the Bankruptcy Court allowing and approving compensation and/or reimbursement to said professional pursuant to 11 U.S.C. §§ 330 and 331, and shall be further limited to the amount(s) allowed and approved pursuant to such Order(s) (an "Allowed Fee Order").

d.      The entitlement of the CRO and his/her firm to retain their portion of the Initial Professional Fee Payments and Second Interim Professional Fee Payments is contingent upon compliance with the terms and conditions of  the CRO Retention Order .

e.      Pursuant to 11 U.S.C. § 364(c)(1), the Final Professional Fee Payments are and shall be included in the allowed DIP super priority claims awarded to Lenders under this Final DIP Financing Order; provided that each of the liens and claims, including the DIP super priority claims granted to the Lenders in connection with the DIP Loan, shall be subject only to a "Carve-Out" from the Lenders' Collateral for: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to Section 1930(a)(6) of title 28 of the United States Code and (ii) any unpaid portion of the Professional Fee Payments, awarded by entry of an Allowed Fee Order, or pursuant to the terms and conditions set forth in the CRO Retention Order, which fees and charges have not been otherwise paid with unencumbered estate funds. To the extent that the Debtors' estates may, at some point, recover funds that are not Lenders' Collateral or proceeds of Lenders' Collateral (other than the

proceeds of Avoidance Actions or commercial tort claims) and which funds are otherwise unencumbered, Lenders reserve any right they may have to seek reimbursement from such funds up to the amount actually paid by Lenders as Professional Fee Payments, subject to any rights and objections of parties in interest. For the avoidance of doubt, Lenders waive the right to seek reimbursement of the Professional Fee Carve-Out from the proceeds of Avoidance Actions or commercial tort claims. No part of the Carve Out shall be available to pay professional fees incurred by any other party in the Cases.

f.     Nothing herein shall constitute a cap on the amount of professional fees and expenses that may be incurred or allowed in the Cases; provided that no payments of such fees and expenses shall be made from Lenders' Cash Collateral, Lenders Collateral and/or the DIP Loan proceeds except as, when, and to the extent set forth in Approved DIP Budgets, and subject to the terms and conditions of the DIP Loan Documents, this Final DIP Financing Order and the Final Cash Collateral Order.  Moreover, nothing herein shall be construed as consent to the allowance of any fees or expenses of the Retained Professionals or shall affect the rights of Lenders to object to such amount.

g.     In exchange for the consideration afforded by Lenders under this Final DIP Financing Order, none of the Lenders' respective interests in property of the Debtors' estates shall be, with respect to any fees, expenses or charges incurred by the Retained Professionals or any other professional retained by any of the Debtors, subject to the surcharge provisions of Section 506(c) of the Bankruptcy Code, the enhancement of collateral provisions of Section 552 of the Bankruptcy Code, or any other legal or equitable doctrine (including unjust enrichment).

h.     No portion of the Lenders' Cash Collateral, Lenders' Collateral, the DIP Loan proceeds or Carve Out may be used to pay any fees or expenses incurred by any entity in connection with any claim, actions or services adverse to Lenders, Agent or their affiliates (direct

or indirect), or any of their respective directors, officers, members (direct or indirect), partner, equity owner, agent, servant, employees, counsel, consultants or other representative (collectively, the "Lender Parties"), including (i) preventing, hindering or delaying Agent's or Lenders' enforcement or realization upon any collateral upon the occurrence of the Termination Date, (ii) using or seeking to use Cash Collateral or selling other Collateral without Lenders' consent, (iii) incurring indebtedness with a priority equal or senior to Lenders' interest in property of the estates, (iv) objecting to or contesting in any manner, or raising any defense to, the validity, extent, amount, perfection, priority or enforceability of Lenders' claims or security interests, or (v) commencing and continuing any adversary proceeding against any of the Lender Parties, provided, however, that the Lender Parties agree that that Committee Counsel was authorized to incur up to $7,500 in fees and expenses in order to investigate the validity, extent, amount, perfection, priority and/or enforceability of Lender' claims and security interests.

i.    Upon the Termination Date, and with the exception of the accrued but unfunded portion of the Carve Out incurred in accordance with any Approved DIP Budget prior to the Termination Date, Lenders shall have no obligation to fund any Carve Out for amounts incurred in excess of the aggregate of the weekly line items for the period prior to the Termination Date.

15.    _Termination_.  As and when set forth in the DIP Loan Agreement, Lenders may terminate the Debtors' ability to draw upon the DIP Loan or receive Advances, including at any time, for any reason or no reason, in the sole and absolute discretion of Lenders. As of the Termination Date, Debtors shall no longer have any ability to access or draw upon the DIP Loan, except that the Termination Event shall not impact draws and disbursements already made or in process under the DIP Loan, nor shall it impact the Lenders' obligations with respect to the Carve-Out and the Post-Termination Carve-Out (defined below), subject to the condition for payment

thereof as set forth herein. For purposes herein, "Post-Termination Carve-Out" shall mean reasonably necessary fees and expenses incurred by Debtors' Counsel, the CRO and the Committee's Counsel following the Termination Date in order to conclude the Cases, including with respect to seeking dismissal and/or conversion of the Cases, up to a cap of $35,000. With the exception of the $35,000 limit on the Post-Termination Carve Out, the Post-Termination Carve Out shall be subject to the same terms and conditions as the Carve Out. In addition, the Debtors may draw upon the DIP Loan after the Termination Date for the sole express purpose of paying for essential Utility Services incurred after the Petition Date and through the Termination Date, which amounts shall be included on subsequent Approved DIP Budgets, subject to the approval of the Lenders.

16.    _Good Faith Under 11 U.S.C. § 364(e); No Modification or Stay of this Final DIP Financing Order_.  Lenders are extending credit to the Debtors pursuant to the DIP Loan Documents and  in good faith and, therefore, the security interests, liens, DIP Superpriority Claims, and other protections granted pursuant to this Final DIP Financing Order and the DIP Loan Documents to the Lenders will have the protections provided in 11 U.S.C. § 364(e) and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Final DIP Financing Order or any other order.

17.    _Proofs of Claim_.  Lenders shall not be required to file proofs of claim in the Cases for any claim in relation to the DIP Loan or the Prepetition Indebtedness allowed herein, in the Final Cash Collateral Order or pursuant to any other Order.  The Lenders are hereby authorized and entitled, in their sole discretion, but not required, to file (and amend and/or supplement, as it sees fit)  proofs of claim in these cases for any claim allowed herein in relation to the DIP Loan or the Prepetition Indebtedness.

18.     _Limitations on the DIP Loan and the DIP Loan Collateral_.  The DIP Loan and the DIP Loan Collateral may not be used in connection with: (a) preventing, hindering, or delaying any of the Lenders' enforcement or realization upon any of the DIP Loan Collateral or Prepetition Collateral; (b) objecting to or challenging in any way any claims or, liens of the Lenders; (c) the pursuit of any affirmative claims of recovery against either of the Lenders; or (d) prosecuting an objection to, or contesting in any manner, or raising any defenses to the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Liens, the Prepetition Indebtedness, the DIP Obligations, the DIP Liens, or any other rights or interests of the Lenders.

19.     _Prohibition on Liens/Subordination_.  Except as otherwise provided in the DIP Loan Documents or this Final DIP Financing Order, the Debtors shall not seek to have the DIP Liens be: (i) made subject or subordinated to, or made _pari passu_ with, any other lien, security interest or claim existing as of the Petition Date, or created under 11 U.S.C. §§ 363 or 364(d) or otherwise; or (ii) made subject to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estates under 11 U.S.C. § 551.

20.     _Modification of the Automatic Stay_.  The automatic stay imposed under 11 U.S.C. § 362(a) is hereby modified to the extent necessary (i) to authorize the Debtors to pay, and Lenders to retain and apply, payments made in accordance with the terms of this Second Interim Order and consistent with the DIP Loan Documents including, without limitation, payments of accrued interest and payments of principal amounts outstanding under the DIP Loan; and (ii) upon the occurrence of a Termination Event as defined in the DIP Loan Documents, to authorize Lenders to pursue any and all rights under the DIP Liens and as to the DIP Collateral without further court order.  Notwithstanding anything to the contrary contained herein, upon the occurrence and continuance of an event of default, the Lenders may enter upon leased premises

only as provided by (i) any separate agreement by and between the applicable landlord and the Lenders (the terms of which shall be reasonably acceptable to the parties thereto), (ii) applicable non-bankruptcy law, or (iii) an order from the Bankruptcy Court on no less than five (5) days' notice to the applicable landlord.

21.     _Limitation on Charging Expenses Against Collateral._  Except to the extent of the Carve-Out, the Debtors hereby waive any rights they may have to charge against or to recover from the DIP Loan Collateral expenses of administration of these Cases or any future proceeding that may result therefrom, including a case under chapter 7 of the Bankruptcy Code, pursuant to 11 U.S.C. § 506(c), the enhancement of collateral provisions of 11 U.S.C. § 552, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) or any similar principle of law, without the prior written consent of the Lenders.  In no event shall the Lenders be subject to the "equities of the case" exception contained in 11 U.S.C. § 552(b) or any other similar doctrine with respect to the DIP Loan Collateral.

22.     _No Waiver by Failure to Seek Relief_. The failure of the Lenders to seek relief or otherwise exercise their rights and remedies under this Final DIP Financing Order, the DIP Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise.

23.     _Binding Effect of Final DIP Financing Order_. Immediately upon execution by this Court, the terms and provisions of this Final DIP Financing Order shall become valid and binding upon and inure to the benefit of the Debtors, the Lenders, the Committee and all other creditors of the Debtors, and all other parties in interest and their respective successors and assigns, including upon dismissal of the Cases.

24.     _Priority of Terms_.  To the extent of any specific conflict between or among (a) the DIP Financing Motion, the DIP Loan Documents, or any other agreements, on the one hand, and

(b) the terms and provisions of this Final DIP Financing Order, on the other hand, the terms and provisions of this Final DIP Financing Order shall govern.

25.    *No Modification of Final DIP Financing Order*. The Debtors irrevocably waive the right to seek and shall not, without the Lenders' prior written consent, seek or consent to, directly or indirectly: (a) any modification, stay, vacatur or amendment to this Final DIP Financing Order; or (b) the granting of any lien on any of the DIP Loan Collateral with priority equal or superior to the DIP Liens, except as specifically provided herein or in the DIP Loan Documents.

26.    *Modifications of DIP Loan Documents, and Approved DIP Budget*.  The Debtors are hereby authorized, without further order of this Court, to enter into agreements with the Lenders providing for any non-material modifications to the DIP Loan Documents or the Final Approved DIP Budget necessary to conform the terms of this Final DIP Financing Order.

27.    *Headings*. Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final DIP Financing Order.

28.    *Survival*.  The terms and provisions of this Final DIP Financing Order, including the claims, liens, security interests and other protections granted to the Lenders pursuant to this Final DIP Financing Order and/or the DIP Loan Documents, notwithstanding the entry of any such order, shall continue in the Cases, or following dismissal of the Cases, and shall maintain their priority as provided by this Final DIP Financing Order until all the DIP Obligations, pursuant to the DIP Loan Documents and this Final DIP Financing Order, have been indefeasibly paid in full (such payment being without prejudice to any terms or provisions contained in the DIP Loan which survive such discharge by their terms), and all commitments to extend credit under the DIP Loan are terminated.

29.    *Bankruptcy Rule 7052*. This Final DIP Financing Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  Any finding of fact shall constitute a finding of fact even if it is stated as a conclusion of law, and any conclusion of law shall constitute a conclusion of law even if it is stated as a finding of fact.

30.    *Condition of Effectiveness*.   The agreement of the parties to the terms and conditions of this Final DIP Order, including any waivers of rights, as manifested by their execution hereof is conditioned, and shall become effective, only upon the Court's entry of this Order.

31.    *Retention of Jurisdiction*. The Court has and will retain jurisdiction to enforce this Final DIP Financing Order and DIP Loan Documents according to their terms.

[REMAINDER OF PAGE INTENTIONALLY BLANK – SIGNATURES ON NEXT PAGE]

AGREED AS TO FORM, ENTRY AND CONTENT:

**SAUL EWING ARNSTEIN & LEHR LLP**      **K&L GATES LLP**


By: */s/  Aaron S. Applebaum*_____      By: */s/ Daniel M. Eliades*_____
    Carmen Contreras-Martinez                  Daniel M. Eliades, Esq.
    Florida Bar No. 093475                     David S. Catuogno, Esq.
    701 Brickell Avenue, 17th Floor          One Newark Center, 10th Floor
    Miami, FL 33131                        Newark, New Jersey 07102
    Telephone: (305) 428-4500               Tel: (973) 848-4000
    Facsimile: (305) 374-4744               Facsimile: (973) 848-4001
    Carmen.Contreras-Martinez@saul.com   Email: daniel.eliades@klgates.com
                                     Email: david.catuogno@klgates.com
    -and-

                                   *Counsel to Valley National Bank and*
    Stephen B. Ravin                      *Raymond James Bank, N.A,*
    Florida Bar No. 293768 (*inactive status*)
    Aaron S. Applebaum
    1037 Raymond Boulevard
    Suite 1520                           **SQUIRE PATTON BOGGS (US) LLP**
    Newark, NJ 07102
    Telephone: (973) 286-6700             By: */s/ Norman N. Kinel*_____
    Facsimile:  (973) 286-6800               Norman N. Kinel, Esq.
    Stephen.Ravin@saul.com                Mark A. Salzberg, Esq.
    Aaron.Applebaum@saul.com            1211 Avenue of the Americas, 26th Floor
                                       New York, NY  10036
*Counsel for Debtors and   Debtors-in-*     Telephone: (212) 407 0130
*Possession*                          norman.kinel@squirepb.com
                                    mark.salzberg@squirepb.com

                                   *Counsel for the Official Committee of*
                                   *Unsecured Creditors*

# # #

(*Carmen Contreras-Martinez, Esq. is directed to serve a copy of this Order on interested parties who are non-CM/ECF users and to file a proof of service within three days of entry of this Order.*)

## <u>EXHIBIT A</u>
## FINAL APPROVED DIP BUDGET

**CFRA, LLC; CFRA Holdings, LLC; CFRA Tri-Cities, LLC**
**4-Week DIP Budget Commencing Week of 6/13/20**

| ($ thousands)<br>Week Ending Date | | 1<br>Projected<br>6/13/2020 | | 2<br>Projected<br>6/20/2020 | | 3<br>Projected<br>6/27/2020 | | 4<br>Projected<br>7/4/2020 | | Weeks<br>1 - 4<br>Total |
|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Receipts** | | | | | | | | | | |
| DIP Draws | $ | 128 | $ | 153 | $ | 153 | $ | 205 | $ | 639 |
| A/R Collections (Gross) | | - | | - | | - | | - | | - |
| Less Discount | | - | | - | | - | | - | | - |
| A/R Collections (Net) | $ | - | $ | - | $ | - | $ | - | $ | - |
| Equipment Sales | | - | | - | | - | | - | | - |
| Franchise Sales | | - | | - | | - | | - | | - |
| Total Cash Receipts | $ | 128 | $ | 153 | $ | 153 | $ | 205 | $ | 639 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| **Cash Disbursements** | | | | | | | | | | |
| Rents (1) | $ | - | $ | - | $ | - | $ | - | $ | - |
| Utilities (2) | | - | | 25 | | 25 | | 25 | | 75 |
| Insurance (3) | | - | | - | | - | | - | | - |
| Debtors Counsel | | 48 | | 48 | | 48 | | 25 | | 169 |
| Debtors CRO | | 20 | | 20 | | 20 | | 20 | | 80 |
| Miscellaneous | | 5 | | 5 | | 5 | | 5 | | 20 |
| US Trustee Fees | | - | | - | | - | | 100 | | 100 |
| Chapter 7 Trustee | | | | | | | | 25 | | 25 |
| Contingency | | | | | | | | 5 | | 5 |
| Creditors Committee Counsel | | 5 | | 5 | | 5 | | | | 20 |
| Creditors Committee Counsel | | 50 | | 50 | | 50 | | - | | 150 |
| Secured Lender Fees and Interest | | - | | - | | - | | - | | - |
| Total Cash Disbursements | $ | 128 | $ | 153 | $ | 153 | $ | 205 | $ | 639 |
| | | | | | | | | | | |
| **Net Weekly Cash Flow** | $ | - | $ | - | $ | - | $ | - | $ | - |

**Notes:**

1. Assumes rent paid out of sale proceeds.
2. May utilities payments paid in weeks 2 and 3.  June utilities paid in week 4.
3. Property and Liability insurance is maintained at current rates under current policies.  Assumes divesting of assets as of 6/30/20.