**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| **In re:** | |
| **CFRA HOLDINGS, LLC,** | **Case No. 8:20-bk-03608-CPM** |
| | *Jointly Administered with* |
| **CFRA, LLC** | **Case No. 8:20-bk-03609-CPM** |
| **CFRA TRI-CITIES, LLC** | **Case No. 8:20-bk-03610-CPM** |
| **Debtors.** | **Chapter 11** |

### ALCIMEDES, INC.'S OBJECTION TO CURE AMOUNT IN NOTICE OF ASSUMPTION, ASSIGNMENT AND CURE AMOUNT WITH RESPECT TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTORS

Alcimedes, Inc. ("Alcimedes"), by counsel, hereby submits its Objection (the "Objection") to the proposed cure amount stated for Alcimedes in the Debtors' Notice of Assumption, Assignment and Cure Amount with Respect to Executory Contracts and Unexpired Leases of the Debtors [ECF 145] (the "Cure Notice"), and in support thereof, states as follows:

### Introduction

1.     On May 6, 2020, the above captioned debtors (the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, commencing these Chapter 11 Cases.

2.     Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors continue to remain in possession of their business assets and manage their financial affairs as Debtors-in-possession. No trustee or examiner has been appointed in these Chapter 11 Cases.

3.     Alcimedes is the owner of a commercial building located at 747 East Rochambeau Drive, Williamsburg, Virginia (Store #2027) in which the Debtor, CFRA. LLC ("CFRA"), as

lessee, operates an IHOP restaurant pursuant to a Commercial Lease (the "Lease") with Alcimedes.

A copy of the Lease is attached as **Exhibit 1**.

4.      Pursuant to the Cure Notice the Debtors may seek, *inter alia*, to assume and assign

the Lease.

5.      This Objection is filed to protect Alcimedes's rights under the Lease which may be

assumed and assigned pursuant to the Bidding Procedures Order.

**Objections**

**The Cure Amounts, Including Taxes and Attorneys' Fees Must be Paid, and Indemnity Obligations Must be Assumed**

6.      As a condition to any assumption and assignment of the Lease, all defaults must be

cured upon assumption.  11 U.S.C. § 365(b)(1)(A).

7.      The Cure Notice correctly states the amount of base rent of $46,305 due Alcimedes,

which equates to the monthly rent of $15,305 for each of the months of April, May and June.

However, the Cure Notice does not include real estate taxes due for the period of January 1st

through June 30th of 2020 in the amount of $5,758.59.  A copy of the County of York real estate

tax statement is attached hereto as **Exhibit 2**.

8.      The amount stated for Alcimedes in the Cure Notice also does not include

attorneys' fees due Alcimedes pursuant to the Lease in the requested amount of $4,000, as of the

date of this Objection.

9.      The Debtors are obligated to cure all defaults under the Lease, and compensate

Alcimedes for its actual pecuniary loss as a result of defaults under the Lease.  *See* 11 U.S.C. §

365(b)(1)(A) and (B). "To assume an executory contract that is in default, a debtor must prove that

it can promptly cure the default and provide adequate assurance of future performance." *In re*

*Bayou Shores SNF, LLC*, 525 B.R. 160, 169 (Bankr. M.D. Fla. 2014). The principle is well-

recognized. *In re Flying Cow Ranch HC, LLC*, No. 18-12681-BKC-MAM, 2018 WL 7500475, at *2 (Bankr. S.D. Fla. June 22, 2018), *leave to appeal denied sub nom. Flying Cow Ranch HC, LLC v. McCarthy*, No. 19-CV-80230, 2019 WL 1258780 (S.D. Fla. Mar. 19, 2019); *In re Chira*, 343 B.R. 361, 366 (Bankr. S.D. Fla. 2006); *In Re LCO Enterprises,* 12 F.3d 938, 941 (9th Cir. 1993); *Elkton Associates v. Shelco Inc. (Matter of Shelco)*, 107 B.R. 483, 487 (Bankr. D. Del. 1989).

10.    Pursuant to the terms of the Lease and 11 U.S.C. § 365(b), the Cure Amount must include a reasonable amount for attorneys' fees actually incurred as a result of the Debtors' bankruptcy case in the approximate amount of $4,000. *See, e.g.*, *In re Senior Care Centers, LLC*, 607 B.R. 580, 596 (Bankr. N.D. Tex. 2019); *In re Pelican Pool,* 2009 Bankr. LEXIS 4623 (Bankr. D.N.J. July 27, 2009); *In Westview 74th Street Drug Corp.,* 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986) (payment of attorneys' fees required as condition to lease assumption), *Travelers Cas. & Su. Co. Co. of A. v. Pacific Gas and El. Co.*, 127 S. Ct. 1199, 1203 (2007) (holding that a party is entitled to be reimbursed for its attorneys' fees when there exists an "enforceable contract allocating attorneys' fees"); *In re East 44th Realty, LLC*, No. 07 Civ 8799, 2008 U.S. Dist. LEXIS 7337 (S.D.N.Y. 2008) affirming bankruptcy court's finding that a $1.7 million settlement of attorneys' fees to a landlord was reasonable.); *In re Beltway Medical, Inc.*, 358 B.R. 448, 453 (Bankr. S.D. Fla. 2006) ("Where the trustee or debtor-in-possession fails to perform the primary obligation under the lease (i.e. to pay rent), and the landlord incurs legal fees seeking to obtain payment, it follows that the attorneys' fees, if authorized under the lease and linked to enforcement of the payment obligation, are entitled to the same administrative priority as the rent obligation"); *In re Entertainment, Inc.*, 223 B.R. 141, 152-154 (Bankr. E.D. Ill. 1998) (attorneys' fees must be paid as provided for in the assumed lease). The Debtors are obligated to cure all defaults under the Lease, and compensate Alcimedes for its actual pecuniary losses as a result of defaults under

the Lease.  *See* 11 U. S. C. § 365(b)(1)(A) and (B).

11.     The Debtor continues to be responsible for any and all accruing charges under the Lease, and must pay such charges as and when they come due under the Lease.  Any proposed assignee must take the assignment of any Lease subject to its terms.  Any final sale order should clearly state that the assignee will assume the Lease obligations and pay them when due that relate to the period after the closing of any sale and assignment.

### Indemnity Obligations

12.     In addition to current monetary obligations that Debtors must satisfy under Section 365 of the Bankruptcy Code, the Lease also provides that Debtors must indemnify and hold Alcimedes harmless with regard to existing claims as well as with regard to events which may have occurred pre-assumption but which are not made known to the Alcimedes or CFRA until some period post-assumption. Accordingly, the assignee must assume any such indemnification liabilities and provide adequate insurance in order to guaranty that any indemnity responsibilities will be met. Claims for indemnity may include, but are not limited to, claims for personal injuries which occur at the leasehold, where either Alcimedes is joined as a party defendant, damage, and destruction to the property by Debtors or their agents, claims for environmental damage or environmental clean-up etc.

13.     Alcimedes objects to the proposed assumption and assignment of its Lease by a proposed assignee unless CFRS and/or the proposed assignees comply with all of the requirements of Sections 365(b) of the Bankruptcy Code.  Absent the ability, or willingness, of the Debtors and the proposed assignee to satisfy the Code's requirements any proposed assumption and assignment should be denied.

**Reservation of Rights and Joinder**

14.    Alcimedes reserves the right to increase or further reconcile the cure claims set forth herein for items such as, but not limited to, claims for rent, taxes, costs, fees, and any additional cure amounts due under the Lease, as CFRA is still in possession of the property and expenses and/or damage may be occurring.

15.    Alcimedes reserves the right to amend or supplement this Objection in the event that a proposed assignee is selected.

16.    To the extent not inconsistent herewith, Alcimedes hereby joins in objections that have been or are subsequently raised by other landlords.

WHEREFORE, Alcimedes, Inc. respectfully requests that this Objection be sustained, that Debtors' request to assume and assign the Lease be denied unless the Debtors and any proposed assignee meet all requirements under the Bankruptcy Code in accordance with this Objection, and that it be granted such other and further relief as is just and proper.

Dated: June 22, 2020                     **BURR FORMAN, LLP**

                                         */s/ J. Ellsworth Summers, Jr.*
                                         J. Ellsworth Summers, Jr., Esq.
                                         Florida Bar No. 0015769
                                         50 North Laura Street, Suite 3000
                                         Jacksonville, Florida 32202
                                         Phone: (904) 232-7200
                                         Fax: (904) 232-7201
                                         E-mail: ESummers@burr.com

                                         Dennis T. Lewandowski, Esq.
                                         Virginia State Bar No. 22232
                                         Kaufman & Canoles, P.C.
                                         150 W. Main Street, Suite 2100
                                         Norfolk, VA  23510
                                         Phone: (757) 624-3252
                                         Fax: (888) 360-9092
                                         E-mail: dtlewand@kaufcan.com
                                         *Counsel for Alcimedes, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 22, 2020, I electronically filed the foregoing with the Clerk of Court by using the Case Management/Electronic Case Filing ("CM/ECF") system which will send notice of electronic filing to all parties indicated on the electronic filing receipt.

*/s/ J. Ellsworth Summers, Jr.*
Attorney

**EXHIBIT 1**

## COMMERCIAL LEASE

THIS COMMERCIAL LEASE ("**Lease**") is made and entered into as of this ____21____ day of February, 2007 (the "**Commencement Date**") by and between ALCIMEDES, INC. ("**Landlord**"), a Virginia corporation, and CFRA, INC. ("**Tenant**"), a Delaware corporation.

Landlord and Tenant wish to enter an agreement to lease the real property located at 747 East Rochambeau Drive, Williamsburg, Virginia, 23188-2187 ("**Premises**").

NOW, THEREFORE, in consideration of the mutual covenants contained within this Lease and for other good and valuable consideration, the receipt and sufficiency of which are acknowledged by the parties, the Landlord and the Tenant agree as follows:

1. TERM OF LEASE. Tenant agrees to lease the above-described premises for a period of twenty (20) years commencing on the Commencement Date and ending on February 28, 2007 (the "**Term**"). Tenant has the option to renew (the "**Renewal Option**") the Lease for four (4) additional terms of five (5) years each (each such additional term being known as a "**Renewal Period**"). Tenant shall exercise its renewal Option for each Renewal Period by written notice to Landlord of its intention to renew this Lease given at least one hundred eighty (180) days before the end of the original Term or any Renewal Period of this Lease. If Tenant does not timely exercise its Renewal Option, this Lease will automatically terminate upon the expiration of the original Term or the Renewal Period, as applicable. All other terms, provisions and conditions herein contained shall remain in  full force and affect.

2. PERMITTED USES. Unless otherwise approved in writing by the Landlord, the Tenant's sole and exclusive use of the Premises shall be limited to use as an IHOP restaurant. Tenant, in its use of the Premises, covenants and agrees that it shall comply with all laws, orders, rules, regulations and ordinances of federal, state and municipal authorities and with any direction of any public officer, pursuant to law which shall impose any duty upon the Tenant with respect to their use of the Premises. The Tenant, at its sole expense, shall obtain all licenses or permits pertaining to the Premises that may be required for the conduct of its business within the terms of this Lease.

3. RENT. As initial rent Tenant agrees to pay to the Landlord as annual base rental for the Premises, without notice or demand, the sum of ONE HUNDRED SIXTY-EIGHT THOUSAND AND 00/100 DOLLARS ($168,000.00) ("**Base Rent**") payable in equal monthly installments in the amount of FOURTEEN THOUSAND AND 00/100 DOLLARS ($14,000.00) each due on the 1st day of each calendar month of the Term commencing as of the first (1st) day of the month following the Commencement Date and continuing on a monthly basis. If the Commencement Date falls on a day other than the first (1st) day of the month following the Commencement Date, Base Rent shall be prorated for such first (1st) partial month and Tenant shall pay such partial month's Base Rent on the first (1st) day of the month following the Commencement Date. The Base Rent shall increase by five percent

(5%) at the conclusion of every five (5) year period: February 28, 2012; February 28, 2017; and February 28, 2022. In the event that the parties exercise the option for one or more Renewal Periods as defined in Paragraph 1, the fixed rent which Tenant shall pay during each Renewal Period shall be the Base Rent for the immediately preceding term plus an increase of five (5%) percent, payable in equal monthly installments. The Base Rent schedule for each period and each Renewal Period is attached and incorporated as <u>Exhibit A</u>. If Tenant fails to pay any installment of Base Rent or any other payment due hereunder within ten (10) days after the date which due, any and all such unpaid installments shall bear interest at the rate of one percent (1%) per month beginning on the due date and continuing until paid. In addition to the interest which Tenant is required to pay pursuant to the preceding sentence, Tenant agrees to immediately pay Landlord a late charge (the "Late Charge") equal to five percent (5%) of the amount of the installment of rent which was not paid when due. Acceptance by Landlord of the Late Charge shall not constitute a waiver of any rights or remedies of Landlord.

4. TRIPLE NET LEASE. This Lease is what is commonly called a "Triple Net Lease." In addition to the Base Rent, Tenant shall pay as Additional Rent, all taxes, all utilities, common area maintenance, assessments, fees, insurance premiums, operating charges, maintenance, repair and replacement costs and expenses and any other charges, costs and expenses (including appropriate reserves therefor) which are contemplated or which may arise under any provision of this Lease during the Lease Term and Landlord shall be responsible for all such amounts accruing prior to the Commencement Date. With respect to any taxes assessed against any personal property, Tenant shall pay all personal property taxes levied upon the personal property located in or on the Premises. With respect to any taxes assessed against the real property, Landlord shall provide Tenant with copies of all property tax assessments and property tax statements promptly upon, but in no event more than fifteen (15) days after, Landlord's receipt of the same, and Tenant shall pay the taxing body directly. If for any reason the payment is not made by Tenant by the due date, Landlord may make the payment, and bill the amount of such payment (including any penalty assessed by the taxing authority) to Tenant. All such sums shall then be due to Landlord within five (5) days following Tenant's receipt of Landlord's invoice. All of such charges, costs, expenses, and all other amounts payable by Tenant hereunder, shall constitute Additional Rent, and upon the failure of Tenant to pay any of such charges, costs or expenses, Landlord shall have the same rights and remedies as otherwise provided in this Lease for the failure of Tenant to pay Base Rent. The Landlord shall not be responsible during the Term for any costs, charges, expenses, and outlays of any nature whatsoever arising from or relating to the Premises, or the use and occupancy thereof by Tenant, or the contents thereof, or the business carried on therein; and the Tenant shall pay all charges, expenses, costs and outlays of every nature and kind relating to the Premises except as expressly set out in this Lease. Notwithstanding anything to the contrary in this Paragraph, after paying the full amount due for any taxes assessed against any personal property of the Tenant or any taxes assessed against the real property of the Premises, Tenant shall have the right to contest or appeal any such taxes at Tenant's sole cost and expense.

Lease
Alcimedes, Inc., Landlord - CFRA, Inc., Tenant
Page 2

5. SECURITY DEPOSIT. Landlord shall not require a security deposit.

6. CONDITION OF PREMISES. Tenant hereby accepts the leased Premises in the physical condition in which the same are now in, and acknowledges that the Landlord shall be under no obligation, except as otherwise provided within this Lease, to make any repairs or replacements to said Premises during the term of this Lease. Landlord makes no warranties or representations of any kind concerning the condition of the Premises.

7. OWNERSHIP OF IMPROVEMENTS. Landlord and Tenant agree that as of the Commencement Date, Tenant has purchased the business operations of the IHOP restaurant presently operated on the Premises and any and all fixtures, equipment, supplies and personal property located in, on or about the Premises (the "Existing Property"). Accordingly, any and all Existing Property used in connection with the operation of said restaurant or otherwise shall be the property of the Tenant and shall not be deemed a part of the Premises leased to Tenant. Landlord and Tenant agree, however that any and all structural additions and structural improvements installed in the Premises by Tenant, including, without limitation, all electric wiring, electric fixtures, air conditioning systems, show window reflectors, screens, screen doors, awnings, awning frames and floor coverings (including carpeting but excepting rugs) shall immediately become the property of Landlord, and shall not be removed by Tenant at the expiration or earlier termination of this Lease, unless Tenant is requested to do so by Landlord and Tenant agrees to do so, in which event Tenant agrees to do so and to repair promptly any damage caused by any such removal. Any and all other trade fixtures, equipment and personal property of Tenant including, but not limited to, all signs, ice machines, soda fountains, fryers, grills, toasters, freezers, walk in coolers, tables, chairs, carpeting, lighting fixtures, fans, hoods and other kitchen and dining room equipment, and any other items purchased by Tenant during the Term of this Lease shall remain and continue to be the sole and absolute property of Tenant and may be removed at the expiration or termination of this Lease by Tenant in its sole discretion.

8. REPAIRS. Tenant covenants and agrees as follows, all of the following being subject to reasonable undertaking and material compliance, and subject to reasonable wear and tear, casualty and condemnation:

   a. To maintain in good condition and repair the Premises, including gutters and downspouts, foundations and exterior;

   b. To maintain the electrical, mechanical and plumbing systems in good repair and working condition, and to make any repairs or replacements necessary to keep the electrical, mechanical and plumbing systems in good repair and working condition, including, but not limited to repairing and/or replacing frozen and/or leaking pipes and repairing any damages resulting therefrom, and annual maintenance on the heating and air conditioning systems;

   c. To keep the Premises and all equipment in good repair and proper sanitary condition, including but not limited to janitorial services, window washing on the inside and out, replacement of broken and/or cracked fixtures, windows or glass, and light bulbs;

Lease<br>
Alcimedes, Inc., Landlord - CFRA, Inc., Tenant<br>
Page 3

d.  To take such steps as shall be necessary to keep the Premises free of termites, wood destroying organisms, roaches, rodents, insects and other pests and that Tenant shall indemnify and save Landlord harmless from any damage caused thereby;

e.  To keep the Premises in good order and conditions, reasonable wear and tear excepted, and make all repairs and to do all acts or maintenance becoming necessary in, upon or about the Premises, and to make, at Tenant's expense, all repairs and all acts or maintenance becoming necessary during the term of this Lease and to replace all worn out and broken parts of the heating, exterior plumbing and electrical systems and equipment as well as the air conditions and sprinkler system and equipment

f.  To not make any substantial alterations, additions, modifications, or improvements to the Premises without the prior written consent of the Landlord, which consent will not be unreasonably withheld. Upon the expiration of the term of this Lease or earlier termination of this Lease, the building shall become the sole property of Landlord. Notwithstanding anything to the contrary in this Paragraph 8(f), Tenant shall not be required to obtain Landlord's consent to construct any alterations, additions, modifications or improvements necessary to bring the Premises into compliance with any standards or requirements of International House of Pancakes, Inc., a Delaware corporation, and its successors and assigns

g.  To take care not to intentionally or negligently destroy, damage or remove any part of the Premises, and that they will not permit any employee, agent or representative acting within the scope of his/her employment, agency or relationship only, to do so;

h.  To properly and promptly comply with and execute all laws, ordinances, rules, regulations and requirements, as the same now exist or as the same may hereafter be enacted, amended or promulgated by any federal, state or municipal authority, and/or any department or agency thereof, and of the Board of Fire Underwriters, or any similar organizations, relating to the Tenant's use of the Premises or of the operation of the Tenant's business therein; and

i.  To comply with any and all restrictive covenants, easements and eases relating to the Premises.

9.  INSPECTION OF PREMISES BY LANDLORD. Landlord may enter the Premises during regular business hours upon prior notice, to make inspections, repairs, improvements and alterations as may be permitted of Landlord under this Lease and Landlord may show the Premises to prospective tenants, purchasers, mortgagees, workers and contractors, and shall have the right to erect or place "For Sale" or "For Rent" signs thereon during the last year of the Term of this Lease. The Landlord and its agents may enter upon the Premises to examine the condition of the Premises, during regular business hours, so long as that right is exercised in a manner that does not interfere with the Tenant in the conduct of its business on the Premises. If the Premises are damaged by fire, windstorm, or other casualty that causes them to be exposed to the elements and the Tenant fails to comply with the terms of this Lease with respect to Tenant's obligation to make such repairs in such event, the Landlord may enter upon them to make

Lease
Alcimedes, Inc., Landlord - CFRA, Inc., Tenant
Page 4

emergency repairs. However, this act by the Landlord shall not be deemed to excuse the Tenant from its obligation to keep the Premises in repair, and the Tenant shall, upon the Landlord's demand, immediately reimburse the Landlord for the cost of the emergency repairs. Nothing within this section shall imply any duty by the Landlord to do any such work.

10. RISK OF LOSS.

    a.  The Landlord shall not be held responsible for, and is relieved from, all liability by reason of any injury or damage to any person, persons, or property in the Premises, or in any part or portion of the building of which the Premises are a part, unless such injury or damage is caused by or results from the negligence or misconduct of the Landlord or its agents. The Tenant, in consideration of the Premises releases Landlord from all such responsibility and liability.

    b.  Tenant shall maintain the Premises in a hazard-free condition, reasonable wear and tear, casualty and condemnation excepted. Tenant shall be responsible for insuring its personal property and it shall be responsible for liability within the Premises as set forth in this Lease.

11. INSURANCE. Tenant agrees to indemnify and hold harmless the Landlord from any and all claims for damages to person or property resulting out of Tenant's use of the Premises.

    a.  To this end, Tenant covenants and agrees to carry Comprehensive General Liability and fire/ hazard coverage, to at least 80% of the replacement cost, including fixtures and equipment, with an A or better carrier as set forth in A.M. Best Rating Guide in at least the amount of $2,000,000.00 for personal injury and $1,500,000.00 for personal property damage and to cause Landlord to be named insured and/or loss payee in such policies.

    b.  Tenant further covenants and agrees to furnish Landlord from time to time when requested by Landlord written evidence that such policies are in full force and effect and have been prepaid and are written in accordance with the terms of this Paragraph. Tenant shall send to Landlord a 30-day notice of cancellation or non-renewal of any insurance policy required under this Lease.

    c.  Tenant shall not do or suffer to be done, any act, matter, or thing objectionable to the fire insurance companies or any other insurance now in force and that shall result in any such insurance to become void or suspended or rated as a more hazardous risk than at the date of the execution of this Lease.

    d.  Tenant shall at all times during this Lease maintain property insurance covering the full replacement cost of the Premises. Each such policy shall name Landlord as an additional insured or loss payee.

    e.  . Tenant shall carry all other insurance on the signs and contents of the building, including, but not limited to, fire, theft, breaking and entering, vandalism, malicious mischief, act of God or nature, and public liability, and shall indemnify and save the Landlord harmless against any and all liabilities, claims, demands, actions, costs, and expenses of any kind and nature whatsoever, which may be sustained by Landlord by reason of Tenant's occupancy of the Premises unless caused by Landlord's negligence or misconduct, and Tenant shall carry

Landlord as a co-insured under his insurance policies as referred to herein and provide Landlord with a copy of same at each renewal period.

f.   Notwithstanding anything in this Lease to the contrary, Landlord and Tenant hereby waive and release each other of and from any and all right of recovery, claim, action or cause of action, against each other, their agents, officers and employees for any loss or damage that may occur to the Premises, the improvements or the building or personal property within the building, by reason of fire or the elements, regardless of cause or origin, including negligence of Landlord or Tenant and their agents, officers and employees, to the extent covered by insurance. Landlord and Tenant agree immediately to give their respective insurance companies which have issued policies of insurance covering all risk of direct physical loss, written notice of the terms of the mutual waivers contained in this Paragraph and shall require their insurers to include such waivers of subrogation in their respective insurance policies.

12. SUBORDINATION. This Lease is and shall be subject and subordinate to any and all ground leases and leases, to any and all easements, whether recorded or not, to any and all licenses, to any and all first mortgages or first deeds of trust which may now affect the Premises, the land on which the Premises are situated, and to all renewals, modifications and extensions thereof. The foregoing provisions shall be self-operative as to existing ground leases and leases, easements, licenses and first mortgages and first deeds of trust, and shall, upon the election of Landlord, be self-operative as to future ground leases and leases, easements, licenses, and first mortgages and first deeds of trust, and no further instrument of subordination shall be required for the purpose; provided, however, that in confirmation of such subordination, Tenant shall, upon request of the Landlord, execute and deliver, in recordable form, any instrument of subordination requested by Landlord. Tenant hereby constitutes and appoints Landlord as Tenant's Attorney In-Fact to execute any such subordination instrument on behalf of Tenant. Tenant further agrees to execute an agreement subordinating this Lease to junior mortgages and deeds of trust, upon the request of Landlord and upon the written consent of the beneficiaries of all mortgages or deeds of trust senior thereto. Anything in the foregoing to the contrary notwithstanding, Tenant's agreement to subordinate is on the express condition that Tenant shall not be disturbed in its possession of the Premises. All subordination agreements to be entered into by Tenant shall include Tenant's nondisturbance rights.

13. ESTOPPEL CERTIFICATE. Within ten (10) days after written request of Landlord, Tenant shall certify by a duly executed and acknowledged written instrument to any mortgagee or purchaser, or proposed mortgagee or proposed purchaser, or any other person, firm or corporation specified by Landlord, as to the validity and force and effect of this Lease, as to the existence of any default on the part of any party thereunder, as to the existence of any offsets, counterclaims, or defenses thereto on the part of Tenant, and as to any other matters as may be reasonably requested by Landlord, all without charge and as frequently as Landlord deems necessary. Tenant's failure or refusal to deliver such statement within such time shall be conclusive upon Tenant (i) that this Lease is in full force and

effect, without modification except as may be represented by Landlord, (ii) that there are no uncuredefaults in Landlord's performance or obligations hereunder, and (iii) that not more than one month's installment of minimum rent has been paid in advance of the due date. If Tenant fails to respond within ten (10) days of receipt by Tenant of a written request by Landlord as herein provided, Tenant hereby automatically consents and appoints the Landlord as the Tenant's Attorney In-Fact to execute any such instrument the Landlord deems necessary pursuant to this Paragraph.

14. FIRE OR OTHER CASUALTY. If during the term of this Agreement, the Premises are damaged by fire, flood, windstorm, strikes, riots, acts of public enemy, or any other casualty so that the same are rendered unusable for the purposes for which the Premises was leased, and if the Premises cannot be repaired within one hundred twenty (120) days from the time of the damage, then Tenant shall have the right to terminate the Lease as of the date of such damage. In such case, Tenant shall pay the rent apportioned to the time of damage and shall surrender the Premises within thirty (30) days after giving written notice to Landlord of its intent to terminate. If any damage by any of the above casualties, rendering the Premises unusable for the purposes for which the Premises was leased, can be repaired within one hundred twenty (120) days, Landlord agrees to repair such damage promptly and this Lease shall not be effected in any manner except that the rent shall be suspended and shall not accrue from the date of such damage until such repairs have been completed. If the Premises are partially damaged by any of the aforementioned casualties as to be partially unusable for the purposes for which the Premises was leased, Landlord shall repair the Premises promptly and during the period from the date of such damage until the repairs are completed, the Base Rent and Additional Rent shall be apportioned so that Tenant shall pay as Base Rent and Additional Rent an amount which bears the same ratio to the entire monthly Base Rent and Additional Rent as the portion of the Premises which Tenant is able to use, without disturbance or interference, during such period bears to the entire leased Premises. If the damage by any of the aforementioned casualties is so slight that Tenant is not disturbed in its possession, use and enjoyment of the Premises, then Landlord shall repair the same promptly and in that case the rent accrued or accruing shall not abate, provided that Landlord completes the repairs within thirty (30) days.

Notwithstanding anything to the contrary in this Paragraph, if a fire or other casualty occurs during the last two (2) years of the term of this Lease (as the same may have been extended) and the reasonable time to restore the relevant portion of the Premises is expected to require more than sixty (60) days to complete, then Tenant shall have the right to terminate this Lease within thirty (30) days of Tenant's receipt of a notice from Landlord setting forth Landlord's good faith estimate that restoration is expected to exceed sixty (60) days.

15. CONDEMNATION. If during the term of the Lease any portion of the Premises is taken by condemnation or sale under threat of condemnation, the parties shall have the following rights:

a.  **Rights of Tenant**. If, during the term of the Lease, any portion of the Premises is condemned by an authority

with powers of eminent domain, or transferred under threat of condemnation, Tenant shall have the right to terminate this Lease by giving written notice to Landlord within thirty (30) days after receipt of written notice of such condemnation or transfer under threat of condemnation, in which event the termination shall be effective as of a date mutually agreed upon by the parties, and in the absence of an agreement, on the date of the vesting of title in such condemning authority, or when possession is given to the condemning authority. If deemed necessary by Tenant to protect its interest in any condemnation proceedings, Tenant shall have the right to postpone the effective date of termination of this Lease (whether such termination is effected by Landlord or Tenant) until after Tenant receives its compensation from the condemning authority; provided, however, that Tenant's obligations to pay rent and Tenant's other obligations under this Lease shall terminate as of the earlier of the date of the vesting of title in the condemning authority or a date mutually agreed upon by Landlord and Tenant.

b. **Rights of Landlord.** If more than fifty percent (50%) of the Premises is condemned by an authority having condemnation powers, or transferred under threat of condemnation, then Landlord shall have the right to terminate this Lease by giving written notice to Tenant within thirty (30) days after receipt of written notice of such condemnation or the closing of a transfer made under threat of condemnation, in which event the termination shall be effective as of a date mutually agreed upon by the parties, and in the absence of an agreement, on the date of the vesting of title in such condemning authority, or when possession is given to the condemning authority.

c. Should neither Landlord or Tenant terminate the Lease upon such a taking, the Base Rent and all other payment obligations of Tenant under this Lease shall be equitably adjusted based upon the square footage of the Premises remaining after such taking.

d. Except as set forth above in Paragraph 15(a), if this Lease is terminated by Landlord or Tenant under this Paragraph, the Base Rent and Additional Rent shall be pro-rated as of the effective date of termination and any prepaid Base Rent and Additional Rent shall be returned to Tenant.

e. Each party shall be entitled to pursue its separate award from the condemning authority.

16. <u>PARKING RIGHTS</u>. Landlord grants Tenant, its employees, agents, customers and invitees the exclusive right to use all of the parking spaces located on the Premises. Landlord represents and warrants that such right includes all of the parking spaces existing on the Premises as of December 1, 2006, that such parking is and shall be sufficient for Tenant's intended use of the Premises and that all of the parking spaces utilized by the IHOP restaurant on the Premises are located on the Premises.

17. <u>SOLICITATION EASEMENT TERMINATION</u>. Landlord and Tenant acknowledge that Landlord has entered into an Easement Agreement dated July 1, 2005 granting certain solicitation rights on the Premises in favor of Vacation Reservation Center, LLC (the "Easement Holder") which has been amended by that certain Amendment To Agreement dated December 22, 2006 executed by Landlord and Easement Holder (collectively, the "Easement"). Notwithstanding anything to the contrary in the Easement, Landlord covenants, warrants and agrees that it will timely and properly exercise its right to terminate the Easement effective June 30, 2010, as provided in the Easement, and will record proper documentation of the Easement termination in all applicable filing or recording offices. Additionally, if the Easement Holder unreasonably exercises any of its rights pursuant to the Easement and thereby interferes unreasonably with Tenant's use of the Premises or the operation of the IHOP restaurant located thereon, Landlord covenants and agrees to take all actions reasonably required to cease such unreasonable interference or to remedy such situation, including, if necessary, terminating the rights of Easement Holder under the Easement. Landlord shall indemnify, defend and hold Tenant and Tenant's officers, directors, partners, employees or agents, harmless from and against all claims, costs, expenses, damages or liabilities (including reasonable attorney's fees and costs) arising or resulting from Landlord's failure to timely and properly exercise said Easement termination rights. Landlord and Tenant agree that this Lease prohibits Tenant from subletting any part of the Premises without Landlord's consent and that prohibition applies to the creation any solicitation arrangement similar to that described in the Easement.

18. <u>SUCCESSORS AND ASSIGNS</u>. This Lease shall be binding upon, inure to the benefit of and be enforceable by the parties and their respective successors and assigns.

19. <u>ASSIGNMENT AND SUBLEASE</u>. This Lease may not be assigned or transferred, and Tenant may not sublet the Premises, either in whole or in part, without the Landlord's prior written consent, which consent will not be withheld unreasonably. In the event of any assignment or transfer, Tenant shall remain liable for performance of all terms and conditions of this Lease. The Landlord is hereby given the right to assign its rights, duties and obligations under this Agreement at the Landlord's sole discretion.

Notwithstanding anything to the contrary in this Paragraph, Tenant may assign its interest in the Lease or sublease the Premises, in whole or in part, without the Landlord's consent (a) as security or otherwise to a national or state chartered bank or any other financial institution or national bank or investment bank providing financing to Tenant; (b) to an entity controlled by, controlling or under common control with Tenant; (c) to any surviving entity

Lease<br>
Alcimedes, Inc., Landlord - CFRA, Inc., Tenant<br>
Page 9

resulting from a merger or consolidation of Tenant with any other entity; and (d) to any individual or entity that continues to operate an International House of Pancakes restaurant on the Premises. In the event of an assignment by Tenant under the conditions noted in subparagraph (d) herein, Tenant shall be released from all of its obligations under the terms of this Lease upon such transfer.

20. AGENTS AND REPRESENTATIVES. The term Landlord and Tenant shall include the respective agents, employees and representatives of both parties.

21. NO WAIVER. No covenant hereof, nor its strict performance, nor any remedy provided for its breach shall be waived or lost due to prior indulgence of the Landlord in such breach. No provision of this Lease may be modified, altered or waived except by writing executed by both Tenant and Landlord.

22. TENANT'S FAILURE TO PERFORM. If Tenant fails to perform under any of the provisions under this Lease imposing a duty on the Tenant after thirty (30) days written notice by the Landlord of Tenant's default, the Landlord may make such repairs, replacements and/or perform such acts as the Landlord deems necessary. All costs and expenses incidental thereto shall be assessed to the Tenant and shall be considered additional rent hereunder. Such additional rent shall be due and payable by Tenant within thirty (30) days of written notification by Landlord.

23. DEFAULT. If within thirty (30) days after Landlord's written notice to Tenant and opportunity to cure (i) Tenant shall fail to make any payment of rent; (ii) Tenant defaults in complying with any other term, condition, or provision of this Lease and fails to cure said default; (iii) Tenant denies Landlord's exercise of any rights arising under this Lease or by law and Tenant fails to cure said default; (iv) legal proceedings are begun by or against the Tenant to levy upon or dispose of Tenant's leasehold interest in the Premises and Tenant fails to cure said default; or (v) the Premises are used by the Tenant or others for any illegal purpose and Tenant fails to cure said default, Landlord may: (i) declare this Lease terminated and cancelled, (ii) re-enter the Premises and take immediate possession, (iii) file a lawsuit to collect any rent and/or damages due to Landlord, (iv) pursue any other remedies available to Landlord. In the event that Landlord pursues any of its available remedies, the Tenant shall be responsible for all past due rent and other charges; for all additional rent installments that would have accrued until the expiration of the term of occupancy under this Lease (less any rent collected by Landlord upon re-leasing of the Premises); for all costs and expenses resulting from the Tenant's breach of any of the terms and provisions of this Lease; and for all costs and reasonable attorney fees incurred by the Landlord in collecting rent or other charges or damages, and in obtaining possession of the Premises. Landlord shall take possession of said Premises without prejudice to any other legal remedy he may have on account of such default. Said notice may be given to the person at such time in charge of said Premises or sent by registered mail to Tenant at the Premises. Notwithstanding anything to the contrary in this Paragraph, Landlord shall be obligated to use reasonable efforts to mitigate damages.

24. LANDLORD DEFAULT. If Landlord fails to comply with any material term, covenant, condition, or provision of this Lease or should Landlord materially breach any of its representations, covenants and warranties under this Lease, and Landlord shall fail to cure the same within thirty (30) days after written notice from Tenant, Tenant shall be entitled to all remedies available under law or equity, including without limitation the right to setoff against its rent obligations hereunder the costs and damages incurred by Tenant as a result of such default by Landlord.

25. SEVERABILITY. Any provision of this Lease that is found to be unenforceable or void shall not invalidate the remaining provisions of this Lease.

26. CHOICE OF GOVERNING LAW. This Lease shall be construed using the statutory and common law of Virginia. The Landlord and Tenant agree that any proceeding brought pursuant to or in any way related to this Lease shall be brought within the circuit court jurisdiction of the City of Williamsburg, County of James City, Virginia.

27. SHORT FORM LEASE. The Tenant and the Landlord agree to execute a Short Form of Lease for the purposes of recordation. It is understood that such Short Form of Lease is for the purpose of recordation only and is not intended and shall not in any way modify, amend, supersede or otherwise affect this Lease. The cost of such recording, together with any documentary stamps and transfer taxes, shall he paid by the party electing to record the Short Form of Lease.

28. ENTIRE AGREEMENT. This instrument contains the entire agreement between the parties as of this date

29. QUIET ENJOYMENT. Landlord covenants and agrees that if Tenant timely pays the rent due hereunder and performs the other covenants herein, Tenant may peaceably and quietly occupy and use the Premises.

30. RIGHT OF FIRST REFUSAL. As additional consideration for this transaction, Tenant shall acquire, upon execution of this Lease, a right of first refusal (the "**Right of First Refusal**") that will grant Tenant the right, but not the obligation, under certain conditions, to match the terms of any proposed bona fide sale or transfer of all or part of the Premises. Pursuant to the Right of First Refusal, the Landlord shall provide Tenant with a copy of any purchase agreement or offer to purchase all or any portion of the Premises (the "**Purchase Offer**") and Tenant, upon receipt of the Purchase Offer, shall have thirty (30) days to notify Landlord of its election to purchase the parcel described in the Purchase Offer (the "**Election Period**") and shall thereafter submit a purchase agreement to Landlord containing the same terms and conditions set forth in the Purchase Offer. Should the Tenant reject or waive its Right of First Refusal pursuant to this Paragraph, Tenant agrees to execute a release of its Right of First Refusal as requested by the Landlord. If Tenant fails to respond within ten (10) days of receipt by Tenant of a written request by Landlord as herein provided, Tenant hereby automatically consents and appoints the Landlord as the Tenant's Attorney In-Fact to execute any such instrument the Landlord deems necessary pursuant to this Paragraph. If Tenant does not elect to so purchase, Landlord shall have ninety (90) days after the passing of the Election Period to close the sale of the relevant portion of the Premises pursuant to such Purchase Offer. If Landlord does not close on the Purchase Offer within said ninety (90) day time period, then all terms and

provisions of this Paragraph shall be reinstated in full force and effect with respect to the Premises. Any transfer or attempted transfer of all or any part of the Premises in violation of this Paragraph shall be void, except as set forth elsewhere in this Paragraph. Tenant shall not acquire this Right of First Refusal if the Landlord receives an offer to purchase or transfer all or part of the Premises to any entity in which Demetrios Florakis or Nicholas Florakis is a majority shareholder or to any family member of Demetrios Florakis or Nicholas Florakis, but this Lease and the Right of First Refusal shall remain in effect following such purchase or transfer.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Landlord and Tenant have executed this Lease as of the Commencement Date.

**LANDLORD:**                                          **TENANT:**

ALCIMEDES, INC.                                       CFRA, INC.

By: _____                           By: _____

Title: _____ $P_{1}$ ____                            Title: ____ Vice President ____

Date: ____ 2-21-07 ____                                Date: ____ 2-21-07 ____

ADDENDUM TO LEASE

THIS ADDENDUM TO LEASE ("Addendum") forms a part of that certain Lease by and between Alcimedes, Inc. ("Landlord"), a Virginia corporation, and CFRA, Inc. ("Tenant"), a Delaware corporation, demising those certain premises located at 747 East Rochambeau Drive, Williamsburg, Virginia 23188-2187 ("Premises").

RECITALS:

WHEREAS, Landlord and Tenant acknowledge that the use of the Premises is the conduct of an International House of Pancakes® Restaurant thereon, pursuant to the terms of a certain Franchise Agreement (the "Franchise Agreement") entered into between International House of Pancakes, Inc., a Delaware corporation ("IHOP"), as Franchisor, and CFRA, Inc., as Franchisee, and that by reason of such use certain benefits will inure to Landlord and Tenant; and

WHEREAS, Landlord and Tenant further acknowledge that in the event the Lease or Franchise Agreement, or both, are terminated by reason of the default of Tenant and the business of an International House of Pancakes® Restaurant upon the Premises ceases or is otherwise interrupted, certain damages to IHOP and/or its service mark will result; therefore, IHOP has required, as a condition to the Franchise Agreement, the Landlord and Tenant enter into this Addendum for the purpose of granting certain succession rights to IHOP in the event of a default by Tenant under the Lease or in the event of a termination of the Franchise Agreement, or both, so that the business of an International House of Pancakes® Restaurant, at IHOP's election, may continue to be conducted upon the Premises, as hereinafter provided.

NOW, THEREFORE, in consideration of the above premises and as an inducement to IHOP to enter into the Franchise Agreement with Tenant, the parties hereto hereby agree as follows:

Notwithstanding anything contained in the Lease to the contrary:

A.    In the event Landlord shall declare a default under the Lease due to Tenant's failure to perform any obligation of Tenant under the terms of the Lease, and in the event Tenant shall fail to cure such default within the period provided in the Lease or at law for such cure, before Landlord shall take any action to terminate the Lease or Tenant's right to possession of the Premises, Landlord shall give written notice to IHOP of its intention to so terminate the Lease or Tenant's right to possession of the Premises, whereupon IHOP shall have a period of ten (10) days after its receipt of said notice to notify Landlord in writing that IHOP has elected to cure such default and to succeed to Tenant's rights under the Lease. IHOP's right to so succeed to Tenant's interest under the Lease shall be conditioned upon IHOP tendering to Landlord an amount sufficient to cure any monetary defaults of Tenant then existing under the Lease, within ten (10) days after the date of IHOP's giving of such notice, and curing any non-monetary defaults within a reasonable period of time after IHOP shall obtain possession of the Premises.

**Addendum to Lease**
Alcimedes, Inc., Landlord - CFRA, Inc., Tenant
Page 1 of 2

Notwithstanding the foregoing, in the event Tenant has obtained a leasehold mortgage, so long as Tenant's mortgagee has any cure rights with regard to the Lease, IHOP'S notice and cure period described in this Addendum shall not commence until the expiration of the rights of Tenant's mortgagee under the Lease.

B.      If for any reason the Lease is terminated before IHOP shall have the right to exercise its election to succeed to Tenant's interest under the Lease, as contemplated above, Landlord shall promptly notify IHOP in writing of such termination, and, provided IHOP notifies Landlord in writing of its desire to obtain possession of the Premises within ten (10) days after the date that IHOP shall receive written notice from Landlord that said Lease has been terminated, then Landlord shall enter into a new lease with IHOP for the remainder of the term and any option terms that would have been available under the Lease, but for such termination, within ten (10) days after the date that IHOP shall give such notice, provided IHOP pays Landlord an amount sufficient to cure any monetary defaults of Tenant then existing under the Lease and within a reasonable period of time after IHOP obtains possession of the Demised Premises, cures any non-monetary defaults under the Lease.

C.      In the event of the termination of the Franchise Agreement as a result of Tenant's breach thereof, IHOP shall also have the right to succeed to the interest of Tenant under the Lease by giving written notice to Landlord of its election to so succeed to Tenant's interest under the Lease, within ten (10) days after the date of the termination of the Franchise Agreement.

D.      In the event IHOP elects to succeed to Tenant's interest under the Lease pursuant to paragraphs A, B or C above, IHOP shall attorn to Landlord and shall assume all of the obligations thereafter to be performed by Tenant under the Lease, including all amendments, addenda and supplements thereto.

E       In the event IHOP elects to succeed to Tenant's interest under the Lease pursuant to paragraph A, B or C above, IHOP shall have the unqualified right to sublease the Premises to a franchisee or prospective franchisee of IHOP meeting IHOP's minimum standard qualifications, without the written consent of Landlord, and in so doing Tenant shall have no obligation to pay to Landlord any consideration or portion thereof derived by Tenant in connection therewith.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**Addendum to Lease**
Alcimedes, Inc., Landlord - CFRA, Inc., Tenant
Page 2 of 2

Landlord and Tenant have executed this Addendum as of the Commencement Date of the Lease

**LANDLORD:**

ALCIMEDES, INC.

By: _____

Title: _____

Date: _____2-21-07_____

**TENANT:**

CFRA, INC.

By: _____

Title: ___Vice President___

Date: _____2-21-07_____

## Exhibit A

### Base Rent Schedule

| | |
|---|---|
| February ___, 2007 through February 28, 2012 | $14,000.00 |
| March 1, 2012 through February 28, 2017 | $14,700.00 |
| March 1, 2017 through February 28, 2022 | $15,435.00 |
| March 1, 2022 through February 28, 2027 | $16,206.75 |

### Renewal Period Schedule

| | |
|---|---|
| March 1, 2027 through February 28, 2032 | $17,017.09 |
| March 1, 2032 through February 28, 2037 | $17,867.94 |
| March 1, 2037 through February 28, 2042 | $18,761.34 |
| March 1, 2042 through February 28, 2047 | $19,699.41 |

1088454.3



**COUNTY OF YORK**
**CANDICE D. KELLEY TREASURER**
PO BOX 251
YORKTOWN VA 23690-0251

**RETURN SERVICE REQUESTED**

## COUNTY OF YORK
## 2020 REAL ESTATE TAX

TAX RELIEF PROGRAM: ELDERLY AGE 65 OR OVER OR DISABLED
(PERMANENTLY AND TOTALLY DISABLED) MAY BE ELIGIBLE FOR AN
EXEMPTION OR PARTIAL EXEMPTION IF CERTAIN FINANCIAL
CRITERIA ARE MET. VETERANS WHO ARE 100% PERMANENTLY AND
TOTALLY DISABLED DUE TO SERVICE RELATED DISABILITY MAY BE
EXEMPT. NO INCOME LIMITATIONS APPLY.
PLEASE SEE REVERSE SIDE FOR ADDITIONAL INFORMATION.
FOR FURTHER INFORMATION CONTACT THE COMMISSIONER OF
THE REVENUE.
THE TREASURER ONLY COLLECTS TAXES, DOES NOT ASSESS
PROPERTY, FIX VALUATIONS, SET RATES OR GRANT
EXEMPTIONS AND HAS NO AUTHORITY TO MAKE CHANGES TO
THE TAX ROLL.

**014604/1--S 45--B 1



ALCIMEDES INC
1220 RICHMOND RD
WILLIAMSBURG VA 23185-2862

### INFORMATION / INQUIRIES

| | |
|---|---|
| Real Estate Assessments | 757-890-3720 |
| Treasurer - Payment Information | 757-890-3420 |
| Commissioner of the Revenue - Elderly Relief | 757-890-3382 |

2.00 % PEN. AFTER 6/25/2020
2.00 % INT. BEGINNING 6/26/2020

| Tax Code Explanation | Tax Rate per $100.00 of Assessed Value |
|---|---|
| 01, 02 - REAL ESTATE | .795 |

| DUE DATE | DEPARTMENT NUMBER | ACCOUNT NUMBER |
|---|---|---|
| 6/25/2020 | RE2020 | 345 |

SUPPLEMENT#    00

| DESCRIPTION | GPIN | LAND VALUE | BUILDING VALUE | TOTAL ASSESSED VALUE | TOTAL TAX CHARGES |
|---|---|---|---|---|---|
| SUBDIVISION OF OUT PARCEL A PARCEL A1 | B19B-4456-3970 | 715000 | 733700 | 1448700 | 5758.59 |

| ** IF YOU HAVE A MORTGAGE OR ESCROW ACCOUNT, PLEASE SEE BACK FOR MORE INFO ** Any payments or adjustments made during the year are listed as "current year credits" | TOTAL DUE | 5758.59 |
|---|---|---|

DETACH AND RETAIN THIS PORTION FOR YOUR RECORDS

---

| 224 | **RETURN THIS PORTION WITH YOUR PAYMENT** | | |
|---|---|---|---|
| DUE DATE | DEPARTMENT NUMBER | ACCOUNT NUMBER | TOTAL DUE |
| 06/25/2020 | RE2020 | 345 | 5758.59 |

TO **CHANGE** YOUR MAILING ADDRESS, PLEASE FILL IN
YOUR NEW ADDRESS BELOW AND CHECK BOX AT RIGHT.
NAME:_____
ADDRESS: _____
CITY: _____ STATE:____ ZIP: ___
EFFECTIVE DATE:_____

- **PAY YOUR TAXES ONLINE at** yorkcounty.gov/treasurer
    eCheck - no additional cost
    credit card - no additional cost

- Make checks payable to: Treasurer, County of York

**York County Treasurer**
**PO Box 79172**
**Baltimore, MD 21279-0172**

7420200000224    3450625202000057585 94