UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                          Chapter 11

CFRA Holdings, LLC,                             8:20-bk-03608-CPM

                                                Jointly administered with:

CFRA, LLC,                                      8:20-bk-03609-CPM
CFRA Tri-Cities, LLC,                           8:20-bk-03610-CPM

        Debtors.
_____/

**OBJECTION OF SMARTVISION CONSTRUCTION, LLC TO DEBTORS'
NOTICE OF ASSUMPTION, ASSIGNMENT AND CURE AMOUNT WITH RESPECT
TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF DEBTORS (DE 145)**

        Smartvision Construction, LLC ("Smartvision"), by and through their attorneys, the

Iurillo Law Group, P.A., hereby submits its objection to the Debtor's Notice of Assumption,

Assignment and Cure Amount with Respect to Executory Contracts and Unexpired Leases of

Debtors (the "Assumption/Cure Notice", DE 145) filed by CFRA Holdings, LLC and its debtor

affiliates CFRA, LLC and CFRA Tri-Cities, LLC  (collectively, the "Debtors") in the above-

captioned chapter 11 cases (the "Chapter 11 Cases").  In support of this Objection, Smartvision

respectfully states as follows:

        1.      On May 6, 2020, (the Petition Date"), the Debtors filed their voluntary petitions

for relief under chapter 11 of title 11 of the Bankruptcy Code.  The Debtor's cases are jointly

administered under case no 8:20-bk-03608-CPM.

        2.      Smartvision is a construction company that specializes in renovating IHOP

restaurants in conformity with the standard plans, specifications and strict time completion

requirements specified by IHOP Restaurants LLC, IHOP Franchisor LLC, IHOP Leasing LLC and/or IHOP Properties, Inc. (collectively, "IHOP") pursuant to its standard franchise agreement.

3.      Smartvision furnished labor, materials, equipment and related services necessary to perform interior construction and renovations in three IHOP restaurants that are owned and operated by the Debtors at the following locations, for which the following amounts remain due and unpaid:

> a.   747 E. Rochambeau Drive, Williamsburg, VA 23185, (IHOP Store 2027)
> - **Amount Due:  $72,025.00**
>
> b.  1540 General Booth Blvd., Virginia Beach, VA 23454 (IHOP Store 585) – **Amount Due:  $80,950.00**, and
>
> c.  3214 Peoples Street, Johnson City, TN 37604 (IHOP Store 4440) – **Amount Due:  $92,350.00**.

Copies of the Construction Contracts are attached as Exhibits "1" through "3".    Each of the Construction Contracts included provisions that obligated Smartvision 1) to conduct renovations in accordance with IHOP's plans and specifications, and 2) to complete work pursuant to a construction schedule resulting in substantial completion of the project(s) in substantially less than the 30 day maximum provided under IHOP's standard franchise agreement(s).    With regards to its work on each of the Renovated Properties, Smartvision timely completed all work in full compliance with its contractual obligations.

4.      With regards to each of the Renovated Properties, Smartvision asserts perfected mechanic's liens on each of the Renovated Properties that attach to and encumber, among other things, 1) the Debtors' interests in any and all leasehold and/or sub-leasehold interest(s) in the Renovated Properties, as well as the Debtors' interests in any and all franchise agreements

2

between the Debtors and IHOP relating to the Renovated Properties. Smartvision's liens as described above are referred to collectively as the "Mechanic's Liens", and the Debtors' assets attached and encumbered by the Mechanic's Liens are referred to collectively, the "Mechanic's Lien Collateral").

5.      With regards to IHOP Stores 2027 and 585 (which are located in Virginia), under Virginia law, a mechanic's lien is an "inchoate" lien that exists from the time that work or material is provided or supplied to the property, and the filing of the lien constitutes perfection of that inchoate lien that relates back to the time of performance, i.e. the lien attaches when the work, subject to being perfected by proper filing. Leesburg Bldg. Partners, LLC v. Mike Berger, Inc. 2018 Va.Cir. LEXIS 2476, citing Hadrup v. Sale, 201 Va. 421, 424-25 (1959);  Richard Talbott, Inc. v. Swango, 18 Va.Cir. 5, 5-6 (Cir. Ct. 1988); Harrison & Bates, Inc. v. Featherstone Assocs., Ltd. Pshp., 253 Va. 364 (1997).

6.      With regards to IHOP Store 2027, Smartvision commenced work on or about March 1, 2020 and completed work on or about March 5, 2020.  With regards to IHOP Store 585, Smartvision commenced work on or about February 16, 2020 and completed work on or about February 21, 2020.  Accordingly, Smartvision's mechanics liens with regards to these properties attached prior to the Petition Date, and were perfected pursuant to the Memoranda of Mechanics liens that were recorded on May 26, 2020 (IHOP Store 585) and June 4, 2020 (IHOP Store 2027), respectively, copies of which are attached as Exhibits "4" and "5", respectively.

7.      With regards to IHOP Store 4440 (which is located in Tennessee), Tennessee Code §66-11-104(a) provides:  "The lien provided by this chapter shall attach and take effect from the time of the visible commencement of operations, excluding, however, demolition, surveying, excavating, clearing, filling or grading, placement of sewer or drainage lines, or other

3

utility lines or work preparatory therefor, erection of temporary security fencing and the delivery

of materials therefor." Smartvision commenced work on IHOP Store on or about March 17, 2020

and completed work on or about March 23, 2020. Accordingly, Smartvision's mechanics lien

attached prior to the Petition Date and was perfected pursuant to the Notice of Lien that was sent

to the Debtors on or about April 24, 2020 and was recorded on May 22, 2020, copies of which are

attached as Exhibit "6".

8.     On June 6, 2020, the Court entered its Order Approving Bidding Procedures,

Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof (the

"Bidding Procedures Order", DE 134) pursuant to which the Court approved various bidding and

sale procedures associated with the prospective sale of the Debtors' assets, as well as certain

procedures for the assumption and assignment of executory contracts and unexpired leases of the

Debtors.

9.     Among the procedures approved pursuant to the Bidding Procedures Order are the

following:

    a.  Paragraph 7 of the Bidding Procedures provides as follows:

> "In connection with this process, IHOP will (i) offer 20 year
> franchise agreements, in the form currently used by IHOP, to
> potential buyers that are satisfactory to IHOP in accordance with
> IHOP's right of consent to assignee in pursuant to the terms of the
> Franchise Agreements, in lieu of selling, transferring, or assuming
> and assigning the Debtors' prior Franchise Agreements or
> franchise rights and (ii) execute said new agreements with the
> approved buyers, with any prior IHOP franchise agreements with
> the Debtors deemed terminated." [1]

    b.  Paragraph 3(g) of the Addendum provides as follows:

---

[1] Bidding Procedures, Exhibit "1", DE 134, Page 26 of 52.

"Cure costs of all real and personal property leases, other than the IHOP Leases, shall be quantified by the Debtors via Court Order and satisfied by purchaser(s) at closing(s)."[2]

c.   Paragraph 4(b) of the Addendum provides as follows:

"Second, to IHOP in the amount of $1,394,000 from the proceeds of sale for each Restaurant, inclusive of $1,234,000 as cure for outstanding pre-petition and post-petition rent under the IHOP Leases through June 30, 2020, and $160,000 in real property taxes due under the IHOP subleases through June 30, 2020."[3]

10.     On June 11, 2020, the Debtors filed the Assumption/Cure Notice.  Attached as Exhibit A to the Assumption/Cure Notice (the "Assumption/Cure Exhibit") is an exhibit that indicates that the Debtors intend to assume a lease with regards to IHOP Store 2027, and disclosing a cure amount of $46,305.00 as the amount to be cured by the Debtors in association with the assumption and assignment of said lease.  The Assumption/Cure Exhibit does not list any executory contracts to be assumed and assigned and no cure costs to be paid to Smartvision with regards to IHOP Store 2027.   Furthermore, the Assumption/Cure Exhibit does not list any executory contracts or unexpired leases to be assumed and assigned with regards to IHOP Stores 585 or 4440 and does not list any cure costs to be paid to Smartvision with regards to those properties.

11.     Accordingly, neither the Assumption/Cure Notice nor any other pleading, notice or order entered by the Court makes any provision for payment of Smartvision's mechanics lien claims as cure costs associated with the assumption and assignment of any of the applicable franchise agreements and/or subleases relating to the Renovated Properties.

---

[2] Addendum, Exhibit "4", DE 134, Page 47 of 52.
[3] Addendum, Exhibit "4", DE 134, Page 47 of 52.

12.    Smartvision objects to the Assumption/Cure Notice, (as well as any and all other applicable and related provisions of the Bidding Procedures Order and underlying Sale Motion (DE 53), on the grounds that the  1) legal or equitable obligations arose on the part of the Debtors under the terms of the subject IHOP franchise agreements, leases and/or subleases with regards to the Renovated Properties in connection with the Construction Contracts, 2) the Debtor's failure to pay the amounts due under the Construction Contracts, combined with attachment of the involuntary Mechanics Liens constitute one or more defaults under the applicable leases/subleases and/or IHOP franchise agreements within the meaning of 11 U.S.C. §365(b)(1), 3) that those defaults must be cured before the Debtors can assume and assign the Debtor's interests in the subject leases and/or franchise agreements and otherwise consummate the sale transaction pursuant to the Bidding Procedures Order and the Sale.

13.    Smartvision asserts that several provisions of the standard IHOP Franchise Agreement and Sublease have been breached by the Debtors as result of the attachment of the Mechanics Liens and the Debtor's failure to satisfy or release those liens.  For example, Section 12.02(h) of the standard IHOP Franchise Agreement provides that the following occurrence constitutes a default and a breach of the agreement:

> (i)    If Franchisee is a party to a sublease with Franchisor or its Leasing Affiliate, the attachment of an involuntary lien in the sum of $10,000 or more upon any of the business assets or property of Franchisee which lien is not removed, or for which Franchisee does not post bond sufficient to satisfy such lien within 30 days after notification of such lien."[4]

Furthermore, Paragraph 3.2 of the standard IHOP sublease provides that the following occurrence constitutes a default under the terms of the sublease:

---

[4] Standard Franchise Agreement, Exhibit "3", DE 65-5, Page 18 of 33.

> 3.2 <u>Liens</u>. If, at any time during the Term, the Premises becomes subject to a lien for labor or materials furnished to Subtenant, within twenty (20) days after Subtenant's receipt of written notice informing Subtenant of the lien, Subtenant shall cause the lien to be bonded or discharged, and shall otherwise save Sublandlord and Landlord on account thereof.[5]

14.     With regard to IHOP 4440, Smartvision asserts that the pre-petition attachment of its mechanics lien and the Debtors' failure to timely remove the lien is a breach of Paragraph 12.02(h) of the Franchise Agreement, as well as a breach of Paragraph 3.2 of the Sublease.

15.     With regard to IHOP 585, counsel to IHOP has confirmed to Smartvision that the applicable Franchise Agreement does not contain Paragraph 12.02(h) or any equivalent provision, but has confirmed that the applicable sublease contains Paragraph 3.2. Accordingly, Smartvision asserts that the pre-petition attachment of its mechanics lien with regards to IHOP 585 and the Debtors' failure to timely discharge the lien constitutes a breach of Paragraph 3.2 of the sublease.

16.     With regards to each of these breaches, Smartvision asserts that such breaches constitute defaults within the meaning of 11 U.S.C. section 365(b)(1) which must be paid in full as "cure costs" as a condition precedent to the assumption and assignment of the applicable Franchise Agreement and Subleases and/or the entry of a final order approving the proposed sale transaction. Furthermore, Smartvision objects to the Assumption/Cure Notice because it fails to acknowledge or provide for the payment of Smartvision's mechanics lien claims as "cure costs" to be paid pursuant to the applicable bidding and sale procedures.

17.     Section 365(b)(1)(A) of the Bankruptcy Code provides as follows:

> "If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease,

---

[5] Standard Sublease, DE 65-6, Page 5 of 12.

> the trustee …cures, or provides adequate assurance that the trustee
> will promptly cure, such default…"

18.     Section 365(b)(1)(B) also provides that the trustee must compensate "or provide

adequate assurance that the trustee will promptly compensate, a party other than the debtor to

such contract or lease, for any actual pecuniary loss to such party resulting from such default."[6]

19.     With regards to both IHOP 585 and IHOP 4440, counsel for IHOP has confirmed

to counsel for Smartvision that the applicable subleases for these locations contain the language

set forth in Paragraph 3.2 of the standard IHOP Sublease.  With regards to each of these

locations, Smartvision has provided the Debtors with written notice of its liens, and the Debtors

have failed to cause the lien to be bonded or discharged within the 20-day period specified by

Paragraph 3.2.  Furthermore, there is no provision in the Assumption/Cure Notice, the Bidding

Procedures Order or the Addendum providing for the payment of Smartvision's Mechanics Lien

claims relating to IHOP 585 and IHOP 4440, notwithstanding the Debtors' clear intention to

assume and assign the applicable subleases as part of the sale transaction.  Accordingly,

Smartvision objects to the Assumption/Cure Notice and all related applicable provisions of the

Bidding Procedures Order and Sale Motion on the grounds that the Debtors have failed to

include or provide for payment of Smartvision's claims in full as Cure Costs as required by

Section 365(b)(1)(A).

20.     Furthermore, with regards to IHOP 4440, Smartvision objects to the

Assumption/Cure Notice, Bidding Procedures Order and Sale Motion on the grounds that the

attachment of the Mechanics Liens and the Debtors' failure to satisfy is mechanics lien resulted

in a breach of Paragraph 12.02(h) of the Franchise Agreement which must be included as a Cure

Cost to be paid pursuant to Section 365(b)(1)(A) as a condition precedent to approval of any

---

[6] 11 U.S.C. §365(b)(1)(B).

proposed sale transaction involving this properties.  With regards to that Mechanics Liens, the liens are involuntary liens in excess of $10,000.00 which have not been bonded or released, resulting in breaches of the Franchise Agreements that must be cured.

21.     To the extent that the Debtors and/or any other parties in interest assert that cure of the breach of Paragraph 12.02(h) are not required on grounds that 1) the applicable Franchise Agreement is not being "assumed", 2) that, instead, the Franchise Agreement is being "terminated" and a new Franchise Agreement is being issued, and 3) therefore there is no "assumption" of an unexpired contract requiring compliance with Section 365(b)(1)(A),  such proposed treatment of Smartvision's claims is an impermissible circumvention of the clear language and purpose of Section 365(b)(1), which provides for payment to creditors for cure of breaches as a condition precedent to the ability of debtors to assume and assign executory contracts and unexpired leases to third parties.  The termination of these franchise agreements and the issuance of new 20-year franchise agreements (agreements which would include the same Paragraph 12.02(h) as part of the Debtor's sale transaction would, for purposes of compliance with Section 365(b)(1)(A), constitute a constructive assumption of the original franchise agreement, and Smartvision asserts that the Debtors should not be absolved of the obligation to cure the breaches of Paragraph 12.02(h) as a condition of sale.

22.     Furthermore, Smartvision notes that, pursuant to Paragraph 3(g) of the Addendum, the "cure costs" to be paid with regards to any non-IHOP lease are to be satisfied by the purchaser(s) at closing, i.e. paid outside of the distribution scheme set forth in the Allocation and Disbursement of Sale Proceeds provision set forth at Paragraph 4 of the Addendum.  Since Smartvision's mechanics lien claims are also cure costs associated with real property leases, Smartvision asserts that its Cure Costs associated with Stores 585 and 4440 should also be paid

in full by the purchaser(s) at closing as a "Cure Cost" pursuant to Paragraph 3(g) of the Addendum.

23.    Furthermore, to the extent that the Debtors and/or any other parties in interest may assert that any alleged senior lien priority of the Lenders nullifies the Debtor's obligation to pay the claims as cure costs pursuant to paragraph  3(g) of the Addendum, Smartvision asserts that Section 365(b) makes no provision for allocation or determination of lien priority as a condition precedent to the requirement for cure prior to assumption and assignment of a breached executory contract or unexpired (sub)lease, and that its claims are cure costs that are appropriately paid in full at closing pursuant to Paragraph 3(g) of the Addendum without regard to any alleged senior liens.

24.    Accordingly, irrespective of any senior lien position asserted by the Lenders, Smartvision asserts that cure of the above-describe breaches and payment of its claims directly by the purchasers pursuant to Paragraph 3(g) of the Addendum (and prior to the allocation of any remaining sale proceeds to the various Tiers set forth in the Allocation at Paragraph 4 of the Addendum) is necessary and appropriate according to Section 365(b) and the terms of the Addendum.

25.    Smartvision is presently listed in Tier 4 (Paragraph 4(d)) of the Addendum (DE 134, page 47 of 52).  However, pursuant to the Addendum, sale proceeds are only applied to the various Tiers of the Allocation specified in Paragraph 4 of the Addendum after separate direct payments are first made by the buyers to certain specified creditors and claimants at sale closing, including, but not limited to, 1) the payment of "Cure costs of all real and personal  property leases, other than the IHOP Leases", which cure costs "shall be quantified by the Debtors via Court Order and satisfied by purchasers at closing(s)"  see Addendum at DE 135 Page 57 of 52,

Paragraph 3(g), and 2) the payment of $2,450,000 to IHOP "on account of issuance of new franchise agreements to the purchasers" as a "separate portion of the bid".

26.     Notwithstanding Smartvision's designation as a Tier 4 participant in the Allocation, it also asserts that the pre-petition attachment of its mechanics liens constitutes a breach of applicable provisions of the Franchise Agreement(s) and sublease(s), and that it is therefore entitled to payment of its claims by the purchaser(s) as a Cure Cost at closing(s) in accordance with Paragraph 3(g) of the Addendum.

27.     Finally, with regards to all three of the Renovated Properties, Smartvision asserts that payment in full of the amounts claimed is necessary to avoid unjust enrichment to the buyers due to the direct and significant enhancement to the value and marketability of the properties that resulted from the labor, materials and improvements  provided by Smartvision to the Debtors. In addition to providing a direct enhancement to the value of the subject properties, the work performed by Smartvision has allowed the Debtors to avoid potential events of default under Paragraph 4.03(b) of the applicable Franchise Agreements, which provides that franchisees must, at franchisee's sole cost and expense, "refurbish, remodel and improve the Franchised Restaurant in accordance with Franchisor's then current standards", with such renovations and refurbishments to occur every 5 years, and with such refurbishment to be completed "within 30 days after commencing same."[7]  The completion of the renovations performed by Smartvision has allowed the Debtors to avoid events of default under paragraph 4.03(b) of the Franchise Agreements, and payment of Smartvision's claims as Cure Costs pursuant to Section 365(b)(1)(A) is therefore appropriate as an equitable remedy to avoid unjust enrichment to the Debtors and the prospective purchasers as a result of Smartvision's performance.

---

[7] Standard Franchise Agreement, Exhibit "3", DE 65-4, Page 15 of 25.

## Conclusion

Smartvision's mechanics liens timely and validly perfected under applicable state law, and the attachment of its Mechanics Liens are breaches that must be cured as conditions precedent to either the actual or constructive assumption and assignment of the applicable franchise agreements and subleases pursuant to Section 365(b)(1)(A). Accordingly, Smartvision's objection to the Assumption/Cure Notice (as well as any and all other applicable and related provisions of the Bidding Procedures Order and underlying Sale Motion (DE 53) should be sustained because it fails to provide for payment of its mechanics lien claims in full.


Dated: June 23, 2020                    Respectfully submitted,

                                        IURILLO LAW GROUP, P.A.

                                        */s/ Kevin L. Hing*
                                        Camille J. Iurillo, Esquire
                                        Fla. Bar No. 902225
                                        Kevin Hing, Esquire
                                        Fla. Bar No. 71976
                                        5628 Central Avenue
                                        St. Petersburg, FL 33707
                                        (727) 895-8050 telephone
                                        (727) 895-8057 facsimile
                                        ciurillo@iurillolaw.com
                                        khing@iurillolaw.com
                                        *Attorneys for Creditor,*
                                        *Smartvision Construction, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served on this 23rd day of June, 2020, via electronic mail to all parties receiving notice via CM/ECF, including Nathan A. Wheatley, Office of the United States Trustee, Timberlake Annex, Suite 1200, 501 E. Polk Street, Tampa, FL 33602; Carmen D. Contreras-Martinez, Saul Ewing Arnstein & Lehr LLP, 701 Brickell Avenue, Suite 1700, Miami, FL  33131, Counsel for the Debtor; and via U.S. Mail to the additional parties listed below.

CFRA Holdings, LLC
CFRA, LLC
CFRA Tri-Cities, LLC
1340 Hamlet Avenue
Clearwater, FL  33756

*/s/ Kevin L. Hing*
Kevin L. Hing, Esquire
Fla. Bar No. 0071976

# Exhibit 1

# CONSTRUCTION CONTRACT

This Contract ("Contract") consists of this Construction Contract and the Construction Documents (as defined below).

**Contract Date:**      02/20/2020

**Owner/Developer:**    CFRA, LLC
Address:                1340 Hamlet Ave
City, State, Zip:       Clearwater, FL 33756

**Construction**
**Manager:**            Clifford Markee

**Contractor:**         Smartvision Construction, LLC
Address:                1155 E Isle of Palms Ave
City, State Zip:        Myrtle Beach, SC 29579
Telephone:              (843) 808-8004
Fax
Vendor No.:

**Architect:**
Address:
City, State, Zip:

Site No. (unless Remodel): _____

Facility No. (for Remodel): _____

Entity No. (for all projects): _____

In consideration of the promises set forth below, Owner/Developer and Contractor agree as follows:

**1.      Contractor's Work.** Contractor shall construct or remodel on the Premises (as defined below) an __IHOP_____ restaurant (the "Restaurant") and other improvements in accordance with the, plans, specifications and other documents listed below and as otherwise described in this Contract (such construction being referred to herein as the "Work"), which documents are incorporated herein by this reference. These documents (hereinafter the "Construction Documents") are described as follows:

|                     | Prepared by:    | Date:   |
|---------------------|-----------------|---------|
| Invitation to Bid   | Owner/Developer |         |
| Bid Proposal        | Contractor      |         |
| Geotechnical Report |                 |         |
| Survey              |                 |         |
| Other:              |                 |         |
| Site Plans          |                 |         |
| Drawings            | Architect       |         |
| Specifications      | Architect       |         |

Contractor hereby acknowledges receipt of the Construction Documents in triplicate. Contractor shall initial one of such sets and deliver such initialed set to Owner/Developer upon execution of this Contract.

Contractor is responsible to ensure that the Construction Documents are complete and secure. Contractor will not release any of the contents of the Construction Documents without Owner/Developer's written approval. Contractor must notify Owner/Developer if there are any items missing from the Construction Documents.

"Remodel" includes any conversion, brand addition, re-image or other actions that do not pertain to the ground-up construction of a new facility.

**2.      Contractor.** Contractor shall supervise and direct the Work, using its best skill and attention, and shall be solely responsible for all construction means, methods, techniques, sequences and procedures. Unless otherwise noted, Contractor shall be responsible for coordinating all portions of the Work and shall provide and pay for all labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation and other facilities and services necessary for the proper execution of the Work. Contractor shall be responsible for the acts and omissions of its employees and subcontractors, their agents and employees, and for all other persons performing any of the Work under any agreement with, or otherwise on behalf of, Contractor.

**3.      The Premises.** The Restaurant shall be constructed/remodeled on the real property (the "Premises") located as follows:

**Address:**    IHOP #2027 – 747 E Rochambeau Drive_____

**City, State, Zip:**       __ Williamsburg, VA 23185 _____

**4.      Contract Sum.** For the proper performance of the Work, Owner/Developer shall pay Contractor the contract sum ("Contract Sum") in accordance with the terms hereof. The Contract Sum includes, and Contractor shall be responsible for, all federal, state and local taxes, including excise taxes, sales and use taxes, and retailers' occupational taxes. The Contract Sum is: __One Hundred Twenty-Nine Thousand, Two Hundred Fifty and XX/100 Dollars__ **($129,250.00).** The Contract Sum does not include the purchase price and shipping cost of the items specifically identified as Owner/Developer-supplied in the Construction Documents or Invitation to Bid Letter, but Contractor shall be responsible for receiving unloading, inventorying, warehousing, protecting, assembling and installing such items and all such costs are included in the Contract Price.

**5.      Construction Schedule.** Within five (5) days after award of the Contract, Contractor shall prepare and submit to Owner/Developer a construction schedule (the "Construction Schedule") for the Work indicating the starting and completion dates for the various stages of the Work and the sequence of construction. The Construction Schedule shall cover all activities, milestones and trades required for the execution of the Work with scheduling and delivery dates for long lead time materials and equipment. The Construction Schedule is subject to the approval of Owner/Developer. Contractor shall maintain a copy of the Construction Schedule at the job site, updated weekly during the course of the Work; provided, however, that the Substantial Completion date identified in the Construction Schedule may not be changed except pursuant to a written Change Order executed by Contractor and Owner/Developer. Contractor shall commence construction within five (5) calendar days after written notice to proceed from Owner/Developer. **Construction shall begin on __March 1, 2020__ (03/01/20) and Substantial Completion of the Work shall be no later than __March 5, 2020__ (03/05/20).** For purposes of this Section 5, "Substantial Completion" shall be the earlier of the date the Restaurant opens for business or the date a Certificate of Occupancy is issued. Contractor shall be responsible for obtaining the Certificate of Occupancy. By executing this Contract, the Contractor acknowledges and confirms that it can substantially complete the Work within the number of calendar days indicated above.

**6.      Performance and Payment Bonds.**    If requested by Owner/Developer, Contractor will provide Owner/Developer with payment and performance bonds in the full amount of the Contract Sum naming Contractor as obligor and Owner/Developer as obligee in such form as is approved by Owner/Developer and with a surety company approved by Owner/Developer. The cost of the premium shall be added to the

Contract Sum. Contractor shall ensure that such premium is the lowest rate available to Contractor from such surety.

At Owner/Developer's election, Contractor shall furnish Owner/Developer (within five (5) business days after Owner/Developer's requests, as same are made from time to time) with information deemed necessary by Owner/Developer to show that Contractor is financially sound and capable of fully performing under this Contract. If, in Owner/Developer's judgment, Contractor is reasonably found not financially sound or capable, then Owner/Developer may, by written notice, immediately terminate this Contract without further obligation to Contractor other than to pay Contractor for the value of the Work properly performed at the time of termination.

**7.   Permits.** Contractor shall obtain all licenses, permits, approvals and certificates (collectively, the "Permits") necessary to complete the Work in compliance with all applicable laws, ordinances, rules, and regulations. At Owner/Developer's election, Owner/Developer may obtain any of the Permits.

**8.   Insurance.** During the term of this Contract and until the Final Payment (as hereinafter defined) is made, Contractor shall at all times maintain the following insurance coverage from insurance companies that are licensed to do business in the state where the Premises are located and that have a General Rating of "A" or better as set forth in the most current issue of Best's Key Rating Insurance Guide:

a.   If the Contract Sum is less than or equal to $350,000, Commercial General Liability Insurance with a limit for each occurrence not less than $1,000,000 and a general aggregate limit not less than $1,000,000. If the Contract Sum is greater than $350,000, Commercial General Liability Insurance with a limit for each occurrence not less than $3,000,000 and a general aggregate limit not less than $3,000,000.

b.   Workers' Compensation Insurance in accordance with applicable state requirements.

c.   Employers' Liability Insurance in an amount not less than $1,000,000.

d.   Comprehensive Automobile Liability Insurance including owned, non-owned and hired coverage in an amount not less than $1,000,000 Combined Single Limit.

e.   Such other insurance required by law, ordinance, rule or regulation.

Contractor shall include Owner/Developer and each of their respective directors, owners, partners, members, employees and affiliates as additional insureds to the insurance policies described above (excluding the Workers' Compensation). The insurance coverage afforded under the policies described herein shall be primary and non-contributing with respect to any insurance carried independently by the additional insureds. All such insurance policies shall indicate that as respects the insureds (whether named or otherwise), cross-liability and severability of interests shall exist for all coverages provided thereunder. Prior to commencement of the Work, Contractor shall furnish Owner/Developer with Certificates of Insurance for each of the above insurance policies, providing, among other things, that Owner/Developer will receive at least thirty (30) days prior written notice of any material change in, or cancellation of, such insurance, and (b) identifying the additional insureds on the policies required above.

**9.   Risk of Loss.** Contractor shall purchase and maintain property insurance in the amount of the initial Contract Sum as well as subsequent modifications thereto for the entire Work at the site on a replacement cost basis without voluntary deductibles. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made. This insurance shall include interests of the Owner, the Contractor and subcontractors in the Work. Property insurance shall be on an "all-risk" policy form and shall insure against the perils of fire and extended coverage and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, falsework, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Architect's services and expenses required as a result of such insured loss. Coverage for other perils shall not be required unless otherwise provided in the Contract Documents. If the property insurance requires minimum deductibles, Contractor shall pay costs not covered because of such deductibles. Unless otherwise provided in the Contract Documents, this property insurance shall cover portions of the Work stored off the site after written approval of the Owner at the value established in the approval, and also portions of the Work in transit.

**10.   Custody of Plans.** During the performance of the Work, Contractor shall retain in its sole custody (except as required for the performance of the Work), all Construction Documents and any other drawings, plans specifications and any copies thereof furnished to Contractor by Owner/Developer. A co-signed set of such Construction Documents and other drawings, plans, and specifications shall be kept on the Premises at all times during the course of construction. All drawings, plans, specifications and copies thereof furnished by Owner/Developer shall remain the property of Owner/Developer and shall be returned to Owner/Developer at the completion of the Work.

**11.   Payment.** Throughout the course of this Contract, Contractor shall submit to Owner/Developer not more than five (5) progress payment requests when Contractor has completed Work associated with milestones specified on the payment schedule to be provided by the Owner/Developer. Contractor shall submit all progress payment requests in the form provided by the Construction Manager. Progress payments shall reflect the value of the Work in place, less amounts already paid to Contractor, less ten percent (10%) retainage or the maximum amount allowable at law (hereinafter "Retainage"), and any amounts necessary to complete the Work. The last such progress payment request shall also include a complete list of all subcontractors and material suppliers, including names, addresses, and telephone numbers, used for the Work. Upon satisfactory progress of the Work and Owner/Developer's receipt of completed and signed progress payment requests in form reasonably satisfactory to Owner/Developer and with all supporting documentation, Owner/Developer will make progress payments on this Contract within **twenty (20) days** of receipt of the request. Notwithstanding the foregoing, Owner/Developer may withhold all or a portion of a payment when in Owner/Developer' s opinion it is necessary to withhold such amount to protect Owner/Developer from loss or liability due to (a) defective Work not remedied, (b) claims made or liens filed or threatened to be filed with respect to the Work, (c) the failure of Contractor to make payment promptly to subcontractors or material suppliers for labor, materials or equipment, (d) damage to Owner/Developer or another contractor or subcontractor, (e) the probability, based on facts reasonably satisfactory to Owner/Developer, that the Work will not be completed when and as required by the Construction Schedule or (f) the persistent failure by the Contractor to carry out the Work in accordance with the Construction Documents. In addition, Owner/Developer may reduce any payments due Contractor under this Contract by amounts owed by Contractor to Owner/Developer or any Affiliate (as hereinafter defined) under any contract or other agreement between Contractor and Owner/Developer and/or such Affiliate ("Affiliate Contract") and/or Owner/Developer may reduce any payments due Contractor under any Affiliate Contract by amounts owed by Contractor to Owner/Developer under this Contract. For purposes of this Contract, an "Affiliate" with respect to any entity or person shall be any entity controlling, controlled by or under common control with, such entity or person.

Owner/Developer may make payments by joint check or other method that Owner/Developer determines is prudent.

Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at the rate of Eighteen (18)% per annum.

**FINAL PAYMENT.** Final completion shall be deemed to have occurred after the Restaurant is open or a final certificate of Occupancy has been received, all finished construction items (including all items identified on the Final Punchlist as described below) are completed, and all test reports, certifications, warranties, warranty books, permits, permitted set of Construction Documents, all final Change Orders have been approved by, and delivered to, Owner/Developer and all other requirements of this Contract have been satisfied (Final Completion"). All remaining amounts due to Contractor under this Contract (the "Final Payment") shall be paid at Final Completion.

In addition to other requirements of this Contract, as a prerequisite to Final Completion and Final Payment, the following documents must be delivered to Owner/Developer in final form, fully-completed and validly executed:

a.    A final and unconditional waiver of lien from Contractor, each subcontractor and each supplier in form and content provided by Owner/Developer, each of which shall be duly executed by Contractor, the subcontractor or the supplier, as the case may be, certifying that such party (i) has been paid in full and (ii) releases the Owner/Developer and Premises from any claims or liens (Owner/Developer shall have the right to require that said waivers be notarized);

b.    Certificate of Occupancy;

c.    As required by Owner/Developer in the bid documents, Concrete or Asphalt Paving Certification (certifying sub-base, base and surface preparation and application);

d.    As required by Owner/Developer in the bid documents, Engineer's Inspection Report certifying all concrete work, including mix, reinforcing and form work;

e.    Original permitted Construction Documents redlined with as-built information;

f.    Certification of any other item or material reasonably requested by Owner/Developer; and

g.    Contractor's certification that all Work has been finally and properly completed, including all items on the Final Punchlist.

All items required in connection with the Final Payment shall be completed and submitted by Contractor within thirty (30) days after the earlier of the date the Restaurant opens and the date it is ready to open.

If Contractor does not timely comply with any of the requirements set forth above for the Final Payment, Owner/Developer may retain any unpaid portion of the Contract Sum to protect Owner/Developer against any lien rights or claims, until all requirements for the Final Payment have been satisfied.

**12.    Mechanic's Liens and Other Claims.** Contractor shall pay all subcontractors and material suppliers in a timely manner to prevent mechanic's liens, other liens, claims or causes of action being filed against the Premises, Owner/Developer, Owner of the Premises or otherwise with respect to the Work. If Owner/Developer receives a claim, cause of action, notice of a lien to be filed, or if a lien is filed due to Contractor's nonpayment, Owner/Developer may, in its sole and absolute discretion, after five (5) days notice to Contractor, immediately pay the full amount of any such claim directly or indirectly to the claimant and deduct the same from the Contract Sum. Contractor waives any and all claims or causes of action Contractor has or may have against Owner/Developer for payments made under this Section 12. Owner/Developer may further require

Contractor to obtain a bond protecting Owner/Developer and any other parties with an interest in the Premises (such as a landlord or mortgagee) covering any such lien in an amount equal to at least one and one-half times the amount of such lien plus an amount sufficient to cover Owner/Developer's legal fees, interest and increased costs and expenses resulting therefrom. Contractor shall promptly defend to conclusion against such lien Owner/Developer and any other third parties with an interest in the Premises.

**13.    Final Construction Observation Report and Punchlist.** At the time Contractor believes it has achieved Substantial Completion and before the Restaurant is delivered to Owner/Developer's operations team, Contractor shall meet with the Construction Manager, the Architect and/or the Construction Manager's designees and complete a Final Construction Observation Report (the "FCO"). Contractor shall commence with the correction and/or completion of any item on the FCO immediately thereafter. At delivery of the Restaurant, Contractor shall again meet with the Construction Manager, the Architect and/or the Construction Manager's designees to establish a formal list of construction deficiencies (the "Final Punchlist'), which shall include any incomplete items from the FCO. If at the time the Final Punchlist is developed it is determined that less than ninety percent (90%) of the items appearing on the FCO are not complete, Contractor shall be responsible for all costs associated with Owner/Developer's time and expense in monitoring the completion of the FCO and the Final Punchlist, including the cost of an independent consultant. In addition, if the items set forth on the Final Punchlist are not corrected within ten (10) days after the Final Punchlist is developed, Owner/Developer may hire an independent contractor to complete the Work on Contractor's behalf and may deduct the costs from the Final Payment, or at Owner/Developer's option, bill Contractor for the costs of such work, including the cost of any supervision, for immediate payment. If an item cannot reasonably be corrected within such ten (10) days, the reasons therefor shall be explained in writing on the Final Punchlist to Owner/Developer's satisfaction and Owner/Developer may grant an extension of time in its discretion. The preparation of the FCO or the Final Punchlist by Owner/Developer shall in no way waive or alter the rights of Owner/Developer or the obligations of Contractor hereunder, including, without limitation, rights or obligations pursuant to representations and warranties contained herein.

**14.    Change Orders.** Owner/Developer may make any changes to the Work, without invalidating this Contract, pursuant to the change order process hereinafter described. All such changes shall be performed under the conditions of the original Contract, except that no extra work or modification shall be done or paid for without a written Change Order from Owner/Developer ("Change Order.") The Contract Sum shall be increased or decreased by an amount agreed to in writing by the parties prior to the commencement of any such changed Work using Owner/Developer's approved Construction Change Order Request Form, which amount shall not include more than a ten percent (10%) mark-up to Contractor for overhead and profit. Contractor shall provide reasonable documentation supporting the actual and reasonable costs of any Change Order Work, including without limitation subcontractor's and materials invoices.

The Contract Sum and milestone dates on the Construction Schedule (including, without limitation, the date for Substantial Completion identified on the Construction Schedule) may only be adjusted by written Change Order executed by Owner/Developer and Contractor.

**15.    Default by Contractor.** Should Contractor become insolvent, or should Contractor refuse or fail to supply enough properly skilled workers or proper materials, or should Contractor fail to make payments to subcontractors or materials suppliers for material or labor in accordance with the respective agreements between Contractor and subcontractors or materials suppliers, as the case may be, or should Contractor disregard laws, ordinances, rules, regulations or orders of a public authority having jurisdiction, or should the Contractor otherwise commit a breach of this Contract and/or fail to perform any work required by the Contract, then Owner /Developer may, in addition to any other rights or remedies it may

have at law, in equity or under this Contract, terminate this Contract after five (5) days written notice and/or complete the Work by means selected by Owner/Developer in its sole discretion. Upon termination of this Contract, Owner/Developer may take possession of the Premises and of all materials, equipment, tools, and construction equipment and machinery thereon, even if owned by Contractor. If the unpaid balance of the Contract Sum exceeds the cost of finishing the Work, such excess shall be paid to Contractor. If such costs exceed the unpaid balance, Contractor shall promptly pay the difference to Owner/Developer. Owner/Developer may, in its sole discretion, also terminate any other contracts or agreements Owner/Developer has with Contractor and/or any Affiliates of Contractor.

**16.    Owner/Developer's Inspections and Right to Stop the Work and Carry Out the Work.** The Construction Manager shall have the right to inspect the Work and reject any of the Work which does not conform to the Construction Documents. If Contractor fails to correct defective Work or fails to supply materials or equipment in accordance with this Contract, Owner/Developer may order Contractor to stop the Work until it is corrected, and Contractor shall not be entitled to an extension of time in connection therewith. Owner/Developer may also stop the Work for the purpose of performing special inspections or testing of the Work. Should any of the Work be found faulty as a result of special inspections or tests, Contractor shall correct the Work immediately and pay all costs of correcting the Work and all fees for said inspections or tests. Should the Work be satisfactory, Owner/Developer will pay the fees for said inspections or tests, and will grant an appropriate extension of time to Contractor for any delay caused by such inspections or tests.

If Contractor fails to correct defective Work as required, or fails to carry out the Work in accordance with the Construction Documents, Owner/Developer may, without prejudice to any other remedies Owner/Developer might have, correct such defective Work, and deduct the cost of same from payments then or thereafter due under this Contract. If such payments are not sufficient to cover such cost, Contractor shall promptly pay the difference to Owner/Developer upon demand.

**17.    Termination Without Cause.** Owner/Developer may terminate the Contract without cause upon ten (10) days prior written notice to Contractor. In such event, Contractor shall cease the Work and take such actions as are reasonably necessary to wind-up the Work and vacate the job site. Contactor shall be entitled to receive reimbursement for all out-of-pocket costs incurred up to the date of termination, plus a percentage of profit and overhead equal to the percentage of Work completed prior to the receipt of Owner/Developer's notice.

**18.    Owner/Developer's Construction Manager.** The Construction Manager shall supervise Contractor and the Work in accordance with this Contract and accepted industry practices on behalf of Owner/Developer. Contractor and Owner/Developer hereby acknowledge and agree that Construction Manager is authorized to approve and execute on behalf of Owner/Developer Change Orders or single expenditures, provided such Change Orders and/or expenditures total less than $25,001 in the aggregate, without obtaining the express consent of Owner/Developer. Notwithstanding anything herein to the contrary, the Construction Manager shall have no (i) obligation to Contractor, including without limitation any and all obligations of Owner/Developer hereunder and (ii) liability for the actions, omissions, negligence or misconduct of Contractor or Owner/Developer or any of their respective employees, subcontractors or suppliers. Neither the Construction Manager nor any affiliate, subsidiary or parent of Construction Manager is intended to be nor will be construed to be a party to this agreement.

**19.    Contractor's Supervision of the Work.** Contractor shall employ a competent qualified superintendent who shall be in attendance at the Premises during the performance of the Work, and who shall at all times maintain good discipline and order with Contractor's employees, subcontractors, suppliers, materialmen and laborers. Contractor's superintendent shall be approved by the Owner/Developer. The superintendent shall not be replaced or reassigned to any other project prior to the Final Completion of the Work without Owner/Developer's prior consent. Contractor shall supplement its staff with whatever additional supervisory personnel are required to assure that Substantial Completion and Final Completion shall occur when and as required by this Contract. Contractor shall review all Construction Documents and other instructions and shall immediately report to Owner/Developer any error, inconsistency or omission Contractor may discover. Contractor shall not commence the Work without the Construction Documents and any other appropriate plans, specifications or interpretations.

Contractor agrees to use only subcontractors and material suppliers approved by Owner/Developer, except in the event of an emergency, in which case Contractor may, in Contractor's good faith discretion, substitute a subcontractor or material supplier and shall notify the Construction Manager of such change in writing within three (3) days.

Contractor shall maintain two (2) separate phone lines at the job site (one (1) line for a Remodel). One line will be for voice communication and one for a fax machine. Contractor shall place a fax machine in the superintendent's job site office. A cellular phone with voice mail will satisfy the voice communication requirement.

**20.    Protection of Work and Property.** Contractor shall continuously maintain adequate protection for the Work from damage and the elements and shall protect and take all reasonable precautions to protect Owner/Developer, the Premises, any third party and the property of any third party from injury or loss during the course of the Work.

Contractor shall comply with all applicable rules and regulations of any public authority having jurisdiction for the safety of persons or property. Contractor shall erect and maintain as required by existing conditions and progress of the Work all reasonable safeguards for safety and protection, including posting danger signs, promoting safety regulations and notifying Owner/Developer and users of adjacent utilities and properties.

If the severity of the elements makes it impossible to continue operations in a safe manner in spite of all reasonable precautions, Contractor shall cease work and immediately notify Owner/Developer. All Work damaged due to Contractor's negligence shall be removed and replaced at Contractor's expense.

Contractor shall provide and maintain a water-tight storage space, secure from theft, for storage of all equipment required by the Construction Documents or otherwise needed for the performance of the Work. Contractor shall keep the Premises and surrounding area free from accumulation of debris or rubbish. At the completion of the Work, Contractor shall remove all waste materials, rubbish, tools, construction equipment, machinery and surplus materials from the Premises, except for those items owned by Owner/Developer, which shall be stored or disposed of as directed by Owner/Developer.

**21.    Indemnity.** Contractor shall indemnify, defend and hold harmless Owner/Developer, Construction Manager, Architect and each of their respective directors, owners, partners, members, employees and agents, and any subsidiaries or Affiliates, from and against any and all claims, demands, suits, liabilities, injuries (personal or bodily), property damage, causes of action, losses, expenses, damages or penalties, including, without limitation, court costs and reasonable attorneys' fees, arising or resulting from, or occasioned by or in connection with (i) the performance by Contractor of the Work and its services, duties and obligations under this Contract, (ii) the inaccuracy of any warranty or representation of Contractor contained in this Contract, (iii) any act or omission to act by Contractor, a subcontractor, a sub-subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, and/or (iv) any breach, default, violation or nonperformance by Contractor of any term, covenant, condition, duty or obligation provided in this Contract. This indemnification, defense and hold harmless obligation shall survive the termination or expiration of this Contract, whether by lapse of time or otherwise. This indemnification obligation shall not be limited (i) by

a limitation on the amount or type of damages, compensation or benefits payable by or for Contractor, a subcontractor or any other party under workers' or workmen's compensation acts, disability benefit acts or other employee benefits acts, or (ii) pursuant to any common law or case law.

**22.    Compliance with Laws.**  In its performance of the Work, Contractor shall fully comply, and shall ensure that the Work fully complies, with all applicable federal, state and local laws, ordinances, rules and regulations, including all amendments thereto (collectively, "Laws"), including but not limited to the Americans with Disabilities Act of 1990 and its implementing regulations and codes, and all other Laws relating to access for individuals with disabilities to public accommodations.  Contractor shall ensure that it and its subcontractors comply with and maintain all records required by the United States Citizenship and Immigration Services and applicable immigration Laws.  Prior to commencing the Work, Contractor shall review the Construction Documents to confirm their conformity with applicable Laws.  If Contractor then or thereafter finds the Construction Documents are at variance with Laws, then Contractor shall immediately notify the Construction Manager in writing before proceeding with the Work.  The cost of any necessary changes to comply with Laws shall be agreed to by Owner/Developer before Contractor proceeds with the Work.  If any of the Work is performed contrary to Laws, Contractor shall bear all costs required to correct the Work.

**23.    Contractor's Warranties and Guarantees.**  Contractor warrants and guarantees that all of the Work shall be done in a first class, workmanlike manner and in accordance with the Construction Documents with new, quality materials and warrants all Work and materials against defects in the material or the workmanship for a period of one (1) year from the date of Final Completion or the opening of the Restaurant (whichever is later), unless stated otherwise in the Construction Documents.  If a defect in material or workmanship or a deviation from the Construction Documents is latent, hidden or not readily observable, Contractor's warranty shall be extended for one (1) year from the date of discovery of the defect or deviation.  Within ten (10) days after written notice of a defect or deviation, Contractor shall (without expense to Owner/Developer) remedy and repair same and any damage to other work resulting therefrom.  If the deficiencies are not timely corrected, Owner/Developer may hire an independent contractor to do the work and shall be reimbursed promptly by Contractor.  If any item cannot, with reasonable diligence, be corrected within ten (10) days, Contractor agrees to set forth in writing a reasonable schedule for completion of such work.  If the schedule is not met, Owner/Developer may immediately upon notice to Contractor, complete such work and be entitled to prompt reimbursement from Contractor.

Contractor agrees, upon reasonable notice, to meet with the Construction Manager or a designated representative within three (3) months prior to the expiration of one (1) year from the date of the commencement of the foregoing one (1)-year warranty period for a warranty inspection of the Work (the "Warranty Inspection").  During the Warranty Inspection, warranty deficiencies shall be noted, and the list of deficiencies shall be given to Contractor.  Contractor agrees to correct all such deficiencies within ten (10) days after the date of the Warranty Inspection.  If the deficiencies are not timely corrected, Owner/Developer may hire an independent contractor to do the work and shall be reimbursed promptly by Contractor.  If any item cannot, with reasonable diligence, be corrected within ten (10) days, Contractor agrees to set forth in writing a reasonable schedule for completion of such work.  If the schedule is not met, Owner/Developer may immediately upon notice to Contractor, complete such work and be entitled to prompt reimbursement from Contractor.  The failure to list any warranty deficiencies during the Warranty Inspection shall in no way relieve Contractor from its warranty obligations hereunder.

In addition, but not by way of limitation, Contractor:

a.    Warrants and guarantees all stucco unconditionally for two (2) years after the date of Final Completion from and against popping, peeling, cracking, and/or defects;

b.    Warrants and guarantees the roofing work unconditionally for a period of two (2) years after the date of Final Completion, including without limitation that the roofing and flashing is water tight and free from leaks;

c.    Shall provide a ten (10) year manufacturer's guarantee (from the date of Final Completion) covering any and all repairs or replacements needed to keep the roof, including the field and flashing, water tight;

d.    Warrants and guarantees that the Work fully complies with the Americans with Disabilities Act of 1990 and its implementing regulations and codes, and all other applicable Laws relating to access for individuals with disabilities to public accommodations, for such time as the statute of limitations shall continue to apply for any alleged violations of such laws, regulations and codes;

e.    Warrants and represents that Contractor does not and will not during the course of the Work discriminate against any employee or applicant for employment based on race, color, sex, national origin, religion, age handicap, or other unlawful basis.

f.    Shall provide a five (5) year warranty from the date of Final Completion for termite treatment signed by the applicator and Contractor; and

g.    Shall provide landscape maintenance, including watering of all plant materials and replacement of dead plant materials for a period of sixty (60) days after the date of Final Completion.

No act or omission of Owner/Developer or Construction Manager, including, without limitation, the Warranty Inspection, shall relieve Contractor of Contractor's responsibility to correct deficient workmanship and materials.

Contractor shall cause the following subcontractors to execute and deliver to Owner/Developer upon completion of the Work a written warranty (in forms reasonably satisfactory to Owner/Developer) covering all Work performed by such subcontractor: electricians, plumbers, pavers, roofers, insulators, HVAC suppliers and installers.  Such warranties shall be for a period of one (1) year from the date of Final Completion or the opening of the Restaurant (whichever is later), unless a warranty for a longer period of time is required under the Construction Documents.  All warranties included in or as part of the Work and supplied to Contractor shall be assigned to Owner/Developer.

**24.    Notices.**  All notices to be delivered under this Contract shall be in writing, signed by the parties serving same and delivered personally or by registered or certified U.S. Mail postage prepaid, or by reputable private delivery service postage prepaid and providing a receipt to sender.  Each such notice shall be deemed delivered upon actual delivery or refusal.  Notices shall be addressed as follows:

| To Owner/Developer: | CFRA, LLC |
| --- | --- |
| Address: | 1340 Hamlet Ave |
| City, State, Zip: | Clearwater, FL 33756 |
| Attention: | |
| Fax No.: | |

| With copy to: | |
| --- | --- |
| Address: | |
| City, State, Zip: | |
| Attention: | |
| Fax No.: | |

| To Contractor: | Smartvision Construction, LLC |
| --- | --- |
| Address: | 1155 E Isle of Palms Ave |
| City, State, Zip: | Myrtle Beach, SC 29579 |
| Attention: | Mohamed Ali |
| Fax No.: | |

**25. Special Conditions.** The terms of this Contract are subject to Owner/Developer obtaining all rights of possession as may be required to legally perform the Work at the Premises. If Owner/Developer is unable to timely obtain such possession, Owner/Developer shall promptly notify Contractor of such inability, and this Contract shall be null and void and of no further force or effect.

**26. Time.** All time limits stated in this Contract are of the essence of the Contract, and Contractor, upon execution hereof and receipt of a written notice to proceed from Owner/Developer shall commence the Work and pursue the Work with all diligence until the completion of same within the time limits set forth in the Construction Documents.

If Contractor is delayed in the progress of the Work by a delay in the issuance of permits by the governing agency (not caused by or due to the fault of Contractor), by an act or neglect of Owner/Developer, by changes ordered in the Work by Owner/Developer (not caused by or due to the fault of Contractor), or by extreme and unusual weather conditions that could not be reasonably foreseen given the location of the Premises, then Contractor shall be entitled to submit a Claim (in the time period required by Section 27) seeking a Change Order extending the date of Substantial Completion in the Construction Schedule by the period of time by which Contractor is actually delayed in the progress of the Work by such event. Such an extension of time shall be Contractor's sole and exclusive remedy for any such delay.

**27. Claims.** A claim is a demand or assertion by Contractor seeking, as a matter of right, the payment of money, or an extension of time or other relief with respect to the terms of the Contract (hereinafter "Claim"). Written notice of any Claim must be given to Owner/Developer by Contractor within ten (10) calendar days after occurrence of the event giving rise to such Claim; otherwise, it shall be waived. Claims must be made by written notice. The responsibility to substantiate a Claim shall rest with Contractor. Pending final resolution of a Claim, unless otherwise agreed to in writing by Owner/Developer, Contractor shall proceed diligently with performance of the Contract, and Owner/Developer shall continue to make payments in accordance with the Contact.

**28. Liquidated Damages.** In addition to other damages Owner/Developer may recover from Contractor for Contractor's unexcused delay in substantially completing the Work on or before the time for Substantial Completion as provided in Section 5 above (or as extended in writing by Owner/Developer), Owner/Developer shall be entitled to recover liquidated damages from Contractor in the amount of $500.00 for each calendar day that Substantial Completion is delayed, and such amount shall be withheld from the Final Payment hereunder. The parties agree that it would be difficult to assess the actual amount of Owner/Developer's damages, and the amount of $0.00 for each calendar day of delay is a reasonable estimate of same. This sum is not to be construed as a penalty, and shall be paid to Owner/Developer as compensation for the damages incurred as a result of the delay in obtaining Substantial Completion of the Work.

**29. Code of Conduct.** All employees of Owner/Developer are obliged under a "Code of Conduct" to perform business in an ethical manner, thus prohibiting them from accepting any privileges, in fact or appearance, which might compromise their ability to execute a bona fide business transaction. Further, this prohibits them from seeking any improper advantage through contribution of funds, equipment or facilities or the provision of other gifts or benefits to public officials or political organizations. Specifically, no illegal or improper payment is to be made to any person or entity. By execution of this Contract, Contractor acknowledges awareness of Owner/Developer's Code of Conduct. Additionally Contractor acknowledges its intention to cooperate with Owner/Developer in developing only ethical business relationships. Should Contractor encounter any business activity in its efforts to establish a business relationship with any representative of Owner/Developer which suggests a violation of its Code of Conduct, Contractor shall communicate such encounter to a Senior Director or Vice President of Development of Owner/Developer.

**30. Owner/Developer's Right to Audit.** Owner/Developer shall also have the right to inspect and copy, with Contractor's assistance and cooperation, Contractor's books and financial records relating to the Work, the Project and Contractor's financial condition.

**31. Independent Contractor.** Contractor is acting as an independent contractor and has full responsibility for control, and supervision of the Work, and Owner/Developer and Construction Manager shall not in any manner be answerable or accountable for any violation of any Laws, or for any injury or damage occasioned by Contractor's actions, or the actions of any in its employ, to any person or their properties.

**32. Site Conditions.** Contractor represents that it has taken steps reasonably necessary to ascertain the nature and location of the Work, and that it has investigated and satisfied itself as to the general, local and site conditions which can affect the Work, the Premises and/or the performance of the Work. Therefore, Contractor shall not be entitled to any adjustment to the Contract Sum or Construction Schedule based on any general, local or site conditions, including, but not limited to, concealed or unknown site conditions.

**33. Hazardous Substances.** The Contractor shall not bring or store any Hazardous Substances (as defined below) to or on the Premises. If, in the course of performance of the Work, Contractor encounters on the Project site any matter which it reasonably believes is a Hazardous Substance, Contractor shall immediately suspend the Work in the area affected and shall immediately report the condition orally and in writing to the Owner, Construction Manager, and Architect. If it is determined that such condition involves a Hazardous Substance introduced to the Premises or negligently exacerbated after the date of this Contract by Contractor, its subcontractors or any party for whom they may be liable, then any required, necessary or appropriate remedial actions shall be performed by Contractor at its sole cost and expense. If it is determined that such condition involves a Hazardous Substance that existed at the Premises prior to the date of this Contract and Contractor did not bring the Hazardous Substance to the Premises, then any required remedial actions shall be performed or caused to be performed by the Owner at its sole cost and expense

"Hazardous Substance" shall mean and refer to any hazardous, toxic or dangerous waste, substance or material defined as a "hazardous waste", "hazardous material", "hazardous substance", "extremely hazardous waste", "restricted hazardous waste", "toxic substance", "industrial waste", "mill tailing", "mining waste", "solid waste" or "special waste" in (i) any provision of state or local Law; (ii) the Comprehensive Environmental Response, Compensation and Liability Act as amended (42 U.S.C. Sec. 9601 et seq.); (iii) the Emergency Planning & Community Right-to-Know Act of 1986, as amended (42 U.S.C. Sec. 11001 et seq.); (iv) the Resource Conservation and Recovery Act of 1976, as amended (42 U.S.C. Sec. 6901 et seq.); (v) the Toxic Substances Control Act, as amended (15 U.S.C. Sec. 2801 et seq.); (vi) the Federal Water Pollution Control Act of 1972, as amended (33 U.S.C. Sec. 1251 et seq.); (vii) the Federal Clean Air Act, as amended (42 U.S.C. Sec. 7401 et seq.); (viii) the Occupational Safety and Health Act, as amended (29 U.S.C. Sec. 651 et seq.); (ix) the Surface Mining Control and Reclamation Act, as amended (30 U.S.C. Sec. 1201 et seq.); (x) any so-called "Superfund" or "Superlien" law; or (xi) any other federal, state or local statute, law, ordinance, code, rule or regulation.

**34. Miscellaneous Provisions:**

a.   Contractor may not assign this Contract without the prior written consent of Owner/Developer, and Contractor shall not factor or pledge this Contract.

b.   No right or remedy conferred upon or reserved to Owner/Developer in this Contract is intended to be exclusive of any other right or remedy herein or by law provided, but each shall be cumulative and in addition to every other right or remedy given herein or now or hereafter existing at law or in equity.

c.  In the event of any conflict between this Contract and the other Construction Documents, this Contract shall govern.

d.  In the event any provision of this Contract is found to be invalid or unenforceable, the remainder of this Contract shall continue in full force and effect.

e.  This Contract shall be construed in accordance with the laws of the state in which the Premises are located.

f.  This Contract is binding upon the parties, their heirs, successors and approved assignees.

g.  Owner/Developer shall have the right to enter into contracts with separate contractors with respect to the Premises, and Contractor agrees to cooperate with such separate contractors and coordinate the Work with the work of separate contractors. Arrangements between Owner/Developer and separate contractors shall not serve to relieve Contractor of any of its obligations hereunder.

h.  This Contract shall not be construed to create a contractual relationship of any kind between the Owner/Developer and a subcontractor or supplier of Contractor or between any persons or entities other than Owner/Developer and Contractor.

i.  This Contract represents the entire agreement between the parties and supersedes all prior or contemporaneous written or oral communications.

j.  This Contract may be amended or modified only by an instrument in writing signed by the parties.

**IN WITNESS WHEREOF**, Owner/Developer and Contractor through their duly authorized signatories have executed this Contract as set forth below.

**OWNER/DEVELOPER:**

By _____

Print Name:  Chris Suh

Its*:  COO

Date:  February 25, 2020


**CONTRACTOR:**

By  Smartvision construction LLC

Print Name:  Mohamed Ali

Its:  *Mohamed Ali*

Date:  2/23/20

State Contractor's License No.: _____

# Exhibit 2

# CONSTRUCTION CONTRACT

This Contract ("Contract") consists of this Construction Contract and the Construction Documents (as defined below).

**Contract Date:**     ___02/13/2020_____

**Owner/Developer:**  ___CFRA, LLC_____
Address:              ___1340 Hamlet Ave _____
City, State, Zip:     ___Clearwater, FL 33756 _____

**Construction
Manager:**             ___Clifford Markee_____

**Contractor:**        ___Smartvision Construction, LLC _____
Address:              ___1155 E Isle of Palms Ave_____
City, State Zip:      ___Myrtle Beach, SC 29579_____
Telephone:            ___(843) 808-8004_____
Fax                   _____
Vendor No.:           _____

**Architect:**         _____
Address:              _____
City, State, Zip:     _____

Site No. (unless Remodel): _____

Facility No. (for Remodel): _____

Entity No. (for all projects): _____

In consideration of the promises set forth below, Owner/Developer and Contractor agree as follows:

**1.    Contractor's Work.**  Contractor shall construct or remodel on the Premises (as defined below) an __IHOP_____ restaurant (the "Restaurant") and other improvements in accordance with the, plans, specifications and other documents listed below and as otherwise described in this Contract (such construction being referred to herein as the "Work"), which documents are incorporated herein by this reference. These documents (hereinafter the "Construction Documents)" are described as follows:

|                       | Prepared by:        | Date:         |
|-----------------------|---------------------|---------------|
| Invitation to Bid     | Owner/Developer     | _____ _____   |
| Bid Proposal          | Contractor          | _____ _____   |
| Geotechnical Report   | _____   | _____ _____   |
| Survey                | _____   | _____ _____   |
| Other: _____       | _____   | _____ _____   |
| Site Plans            | _____   | _____ _____   |
| Drawings              | Architect           | _____ _____   |
| Specifications        | Architect           | _____ _____   |

Contractor hereby acknowledges receipt of the Construction Documents in triplicate. Contractor shall initial one of such sets and deliver such initialed set to Owner/Developer upon execution of this Contract.

Contractor is responsible to ensure that the Construction Documents are complete and secure. Contractor will not release any of the contents of the Construction Documents without Owner/Developer's written approval. Contractor must notify Owner/Developer if there are any items missing from the Construction Documents.

"Remodel" includes any conversion, brand addition, re-image or other actions that do not pertain to the ground-up construction of a new facility.

**2.    Contractor.**  Contractor shall supervise and direct the Work, using its best skill and attention, and shall be solely responsible for all construction means, methods, techniques, sequences and procedures. Unless otherwise noted, Contractor shall be responsible for coordinating all portions of the Work and shall provide and pay for all labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation and other facilities and services necessary for the proper execution of the Work. Contractor shall be responsible for the acts and omissions of its employees and subcontractors, their agents and employees, and for all other persons performing any of the Work under any agreement with, or otherwise on behalf of, Contractor.

**3.    The Premises.**  The Restaurant shall be constructed/remodeled on the real property (the "Premises") located as follows:

**Address:**  IHOP #585 – 1540 General Booth Blvd_____

**City, State, Zip:**  __ Virginia Beach, VA 23454 _____

**4.    Contract Sum.**  For the proper performance of the Work, Owner/Developer shall pay Contractor the contract sum ("Contract Sum") in accordance with the terms hereof. The Contract Sum includes, and Contractor shall be responsible for, all federal, state and local taxes, including excise taxes, sales and use taxes, and retailers' occupational taxes. The Contract Sum is: __One Hundred Forty Thousand, Nine Hundred Fifty and XX/100 Dollars_ ($140,950.00). The Contract Sum does not include the purchase price and shipping cost of the items specifically identified as Owner/Developer-supplied in the Construction Documents or Invitation to Bid Letter, but Contractor shall be responsible for receiving unloading, inventorying, warehousing, protecting, assembling and installing such items and all such costs are included in the Contract Price.

**5.    Construction Schedule.**  Within five (5) days after award of the Contract, Contractor shall prepare and submit to Owner/Developer a construction schedule (the "Construction Schedule") for the Work indicating the starting and completion dates for the various stages of the Work and the sequence of construction. The Construction Schedule shall cover all activities, milestones and trades required for the execution of the Work with scheduling and delivery dates for long lead time materials and equipment. The Construction Schedule is subject to the approval of Owner/Developer. Contractor shall maintain a copy of the Construction Schedule at the job site, updated weekly during the course of the Work; provided, however, that the Substantial Completion date identified in the Construction Schedule may not be changed except pursuant to a written Change Order executed by Contractor and Owner/Developer. Contractor shall commence construction within five (5) calendar days after written notice to proceed from Owner/Developer. **Construction shall begin on __February 16, 2020__ (02/16/20) and Substantial Completion of the Work shall be no later than __February 21, 2020__ (02/21/20).** For purposes of this Section 5, "Substantial Completion" shall be the earlier of the date the Restaurant opens for business or the date a Certificate of Occupancy is issued. Contractor shall be responsible for obtaining the Certificate of Occupancy. By executing this Contract, the Contractor acknowledges and confirms that it can substantially complete the Work within the number of calendar days indicated above.

**6.    Performance and Payment Bonds.**  If requested by Owner/Developer, Contractor will provide Owner/Developer with payment and performance bonds in the full amount of the Contract Sum naming Contractor as obligor and Owner/Developer as obligee in such form as is approved by Owner/Developer and with a surety company approved by Owner/Developer. The cost of the premium shall be added to the

Contract Sum. Contractor shall ensure that such premium is the lowest rate available to Contractor from such surety.

At Owner/Developer's election, Contractor shall furnish Owner/Developer (within five (5) business days after Owner/Developer's requests, as same are made from time to time) with information deemed necessary by Owner/Developer to show that Contractor is financially sound and capable of fully performing under this Contract. If, in Owner/Developer's judgment, Contractor is reasonably found not financially sound or capable, then Owner/Developer may, by written notice, immediately terminate this Contract without further obligation to Contractor other than to pay Contractor for the value of the Work properly performed at the time of termination.

**7.    Permits.** Contractor shall obtain all licenses, permits, approvals and certificates (collectively, the "Permits") necessary to complete the Work in compliance with all applicable laws, ordinances, rules, and regulations. At Owner/Developer's election, Owner/Developer may obtain any of the Permits.

**8.    Insurance.** During the term of this Contract and until the Final Payment (as hereinafter defined) is made, Contractor shall at all times maintain the following insurance coverage from insurance companies that are licensed to do business in the state where the Premises are located and that have a General Rating of "A" or better as set forth in the most current issue of Best's Key Rating Insurance Guide:

a.    If the Contract Sum is less than or equal to $350,000, Commercial General Liability Insurance with a limit for each occurrence not less than $1,000,000 and a general aggregate limit not less than $1,000,000.    If the Contract Sum is greater than $350,000, Commercial General Liability Insurance with a limit for each occurrence not less than $3,000,000 and a general aggregate limit not less than $3,000,000.

b.    Workers' Compensation Insurance in accordance with applicable state requirements.

c.    Employers' Liability Insurance in an amount not less than $1,000,000.

d.    Comprehensive Automobile Liability Insurance including owned, non-owned and hired coverage in an amount not less than $1,000,000 Combined Single Limit.

e.    Such other insurance required by law, ordinance, rule or regulation.

Contractor shall include Owner/Developer and each of their respective directors, owners, partners, members, employees and affiliates as additional insureds to the insurance policies described above (excluding the Workers' Compensation). The insurance coverage afforded under the policies described herein shall be primary and non-contributing with respect to any insurance carried independently by the additional insureds. All such insurance policies shall indicate that as respects the insureds (whether named or otherwise), cross-liability and severability of interests shall exist for all coverages provided thereunder. Prior to commencement of the Work, Contractor shall furnish Owner/Developer with Certificates of Insurance for each of the above insurance policies, providing, among other things, that Owner/Developer will receive at least thirty (30) days prior written notice of any material change in, or cancellation of, such insurance, and (b) identifying the additional insureds on the policies required above.

**9.    Risk of Loss.** Contractor shall purchase and maintain property insurance in the amount of the initial Contract Sum as well as subsequent modifications thereto for the entire Work at the site on a replacement cost basis without voluntary deductibles. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made. This

insurance shall include interests of the Owner, the Contractor and subcontractors in the Work. Property insurance shall be on an "all-risk" policy form and shall insure against the perils of fire and extended coverage and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, falsework, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Architect's services and expenses required as a result of such insured loss.  Coverage for other perils shall not be required unless otherwise provided in the Contract Documents.  If the property insurance requires minimum deductibles, Contractor shall pay costs not covered because of such deductibles.  Unless otherwise provided in the Contract Documents, this property insurance shall cover portions of the Work stored off the site after written approval of the Owner at the value established in the approval, and also portions of the Work in transit.

**10.    Custody of Plans.** During the performance of the Work, Contractor shall retain in its sole custody (except as required for the performance of the Work), all Construction Documents and any other drawings, plans specifications and any copies thereof furnished to Contractor by Owner/Developer. A co-signed set of such Construction Documents and other drawings, plans, and specifications shall be kept on the Premises at all times during the course of construction. All drawings, plans, specifications and copies thereof furnished by Owner/Developer shall remain the property of Owner/Developer and shall be returned to Owner/Developer at the completion of the Work.

**11.    Payment.** Throughout the course of this Contract, Contractor shall submit to Owner/Developer not more than five (5) progress payment requests when Contractor has completed Work associated with milestones specified on the payment schedule to be provided by the Owner/Developer.  Contractor shall submit all progress payment requests in the form provided by the Construction Manager. Progress payments shall reflect the value of the Work in place, less amounts already paid to Contractor, less ten percent (10%) retainage or the maximum amount allowable at law (hereinafter "Retainage"), and any amounts necessary to complete the Work. The last such progress payment request shall also include a complete list of all subcontractors and material suppliers, including names, addresses, and telephone numbers, used for the Work. Upon satisfactory progress of the Work and Owner/Developer's receipt of completed and signed progress payment requests in form reasonably satisfactory to Owner/Developer and with all supporting documentation, Owner/Developer will make progress payments on this Contract within **twenty (20) days** of receipt of the request. Notwithstanding the foregoing, Owner/Developer may withhold all or a portion of a payment when in Owner/Developer's opinion it is necessary to withhold such amount to protect Owner/Developer from loss or liability due to (a) defective Work not remedied, (b) claims made or liens filed or threatened to be filed with respect to the Work, (c) the failure of Contractor to make payment promptly to subcontractors or material suppliers for labor, materials or equipment, (d) damage to Owner/Developer or another contractor or subcontractor, (e) the probability, based on facts reasonably satisfactory to Owner/Developer, that the Work will not be completed when and as required by the Construction Schedule or (f) the persistent failure by the Contractor to carry out the Work in accordance with the Construction Documents. In addition, Owner/Developer may reduce any payments due Contractor under this Contract by amounts owed by Contractor to Owner/Developer or any Affiliate (as hereinafter defined) under any contract or other agreement between Contractor and Owner/Developer and/or such Affiliate ("Affiliate Contract") and/or Owner/Developer may reduce any payments due Contractor under any Affiliate Contract by amounts owed by Contractor to Owner/Developer under this Contract. For purposes of this Contract, an "Affiliate" with respect to any entity or person shall be any entity controlling, controlled by or under common control with, such entity or person.

Owner/Developer may make payments by joint check or other method that Owner/Developer determines is prudent.

Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at the rate of Eighteen (18)% per annum.

**FINAL PAYMENT.** Final completion shall be deemed to have occurred after the Restaurant is open or a final certificate of Occupancy has been received, all finished construction items (including all items identified on the Final Punchlist as described below) are completed, and all test reports, certifications, warranties, warranty books, permits, permitted set of Construction Documents, all final Change Orders have been approved by, and delivered to, Owner/Developer and all other requirements of this Contract have been satisfied (Final Completion"). All remaining amounts due to Contractor under this Contract (the "Final Payment") shall be paid at Final Completion.

In addition to other requirements of this Contract, as a prerequisite to Final Completion and Final Payment, the following documents must be delivered to Owner/Developer in final form, fully-completed and validly executed:

a.  A final and unconditional waiver of lien from Contractor, each subcontractor and each supplier in form and content provided by Owner/Developer, each of which shall be duly executed by Contractor, the subcontractor or the supplier, as the case may be, certifying that such party (i) has been paid in full and (ii) releases the Owner/Developer and Premises from any claims or liens (Owner/Developer shall have the right to require that said waivers be notarized);

b.  Certificate of Occupancy;

c.  As required by Owner/Developer in the bid documents, Concrete or Asphalt Paving Certification (certifying sub-base, base and surface preparation and application);

d.  As required by Owner/Developer in the bid documents, Engineer's Inspection Report certifying all concrete work, including mix, reinforcing and form work;

e.  Original permitted Construction Documents redlined with as-built information;

f.  Certification of any other item or material reasonably requested by Owner/Developer; and

g.  Contractor's certification that all Work has been finally and properly completed, including all items on the Final Punchlist.

All items required in connection with the Final Payment shall be completed and submitted by Contractor within thirty (30) days after the earlier of the date the Restaurant opens and the date it is ready to open.

If Contractor does not timely comply with any of the requirements set forth above for the Final Payment, Owner/Developer may retain any unpaid portion of the Contract Sum to protect Owner/Developer against any lien rights or claims, until all requirements for the Final Payment have been satisfied.

**12.  Mechanic's Liens and Other Claims.**  Contractor shall pay all subcontractors and material suppliers in a timely manner to prevent mechanic's liens, other liens, claims or causes of action being filed against the Premises, Owner/Developer, Owner of the Premises or otherwise with respect to the Work.  If Owner/Developer receives a claim, cause of action, notice of a lien to be filed, or if a lien is filed due to Contractor's nonpayment, Owner/Developer may, in its sole and absolute discretion, after five (5) days notice to Contractor, immediately pay the full amount of any such claim directly or indirectly to the claimant and deduct the same from the Contract Sum.  Contractor waives any and all claims or causes of action Contractor has or may have against Owner/Developer for payments made under this Section 12.  Owner/Developer may further require

Contractor to obtain a bond protecting Owner/Developer and any other parties with an interest in the Premises (such as a landlord or mortgagee) covering any such lien in an amount equal to at least one and one-half times the amount of such lien plus an amount sufficient to cover Owner/Developer's legal fees, interest and increased costs and expenses resulting therefrom.  Contractor shall promptly defend to conclusion against such lien Owner/Developer and any other third parties with an interest in the Premises.

**13.  Final Construction Observation Report and Punchlist.**  At the time Contractor believes it has achieved Substantial Completion and before the Restaurant is delivered to Owner/Developer's operations team, Contractor shall meet with the Construction Manager, the Architect and/or the Construction Manager's designees and complete a Final Construction Observation Report (the "FCO").  Contractor shall commence with the correction and/or completion of any item on the FCO immediately thereafter.  At delivery of the Restaurant, Contractor shall again meet with the Construction Manager, the Architect and/or the Construction Manager's designees to establish a formal list of construction deficiencies (the "Final Punchlist"), which shall include any incomplete items from the FCO.  If at the time the Final Punchlist is developed it is determined that less than ninety percent (90%) of the items appearing on the FCO are not complete, Contractor shall be responsible for all costs associated with Owner/Developer's time and expense in monitoring the completion of the FCO and the Final Punchlist, including the cost of an independent consultant.  In addition, if the items set forth on the Final Punchlist are not corrected within ten (10) days after the Final Punchlist is developed, Owner/Developer may hire an independent contractor to complete the Work on Contractor's behalf and may deduct the costs from the Final Payment, or at Owner/Developer's option, bill Contractor for the costs of such work, including the cost of any supervision, for immediate payment. If an item cannot reasonably be corrected within such ten (10) days, the reasons therefor shall be explained in writing on the Final Punchlist to Owner/Developer's satisfaction and Owner/Developer may grant an extension of time in its discretion.  The preparation of the FCO or the Final Punchlist by Owner/Developer shall in no way waive or alter the rights of Owner/Developer or the obligations of Contractor hereunder, including, without limitation, rights or obligations pursuant to representations and warranties contained herein.

**14.  Change Orders.**  Owner/Developer may make any changes to the Work, without invalidating this Contract, pursuant to the change order process hereinafter described.  All such changes shall be performed under the conditions of the original Contract, except that no extra work or modification shall be done or paid for without a written Change Order from Owner/Developer ("Change Order.")   The Contract Sum shall be increased or decreased by an amount agreed to in writing by the parties prior to the commencement of any such changed Work using Owner/Developer's approved Construction Change Order Request Form, which amount shall not include more than a ten percent (10%) mark-up to Contractor for overhead and profit.  Contractor shall provide reasonable documentation supporting the actual and reasonable costs of any Change Order Work, including without limitation subcontractor's and materials invoices.

The Contract Sum and milestone dates on the Construction Schedule (including, without limitation, the date for Substantial Completion identified on the Construction Schedule) may only be adjusted by written Change Order executed by Owner/Developer and Contractor.

**15.  Default by Contractor.**  Should Contractor become insolvent, or should Contractor refuse or fail to supply enough properly skilled workers or proper materials, or should Contractor fail to make payments to subcontractors or materials suppliers for material or labor in accordance with the respective agreements between Contractor and subcontractors or materials suppliers, as the case may be, or should Contractor disregard laws, ordinances, rules, regulations or orders of a public authority having jurisdiction, or should the Contractor otherwise commit a breach of this Contract and/or fail to perform any work required by the Contract, then Owner /Developer may, in addition to any other rights or remedies it may

have at law, in equity or under this Contract, terminate this Contract after five (5) days written notice and/or complete the Work by means selected by Owner/Developer in its sole discretion. Upon termination of this Contract, Owner/Developer may take possession of the Premises and of all materials, equipment, tools, and construction equipment and machinery thereon, even if owned by Contractor. If the unpaid balance of the Contract Sum exceeds the cost of finishing the Work, such excess shall be paid to Contractor. If such costs exceed the unpaid balance, Contractor shall promptly pay the difference to Owner/Developer. Owner/Developer may, in its sole discretion, also terminate any other contracts or agreements Owner/Developer has with Contractor and/or any Affiliates of Contractor.

**16.    Owner/Developer's Inspections and Right to Stop the Work and Carry Out the Work.** The Construction Manager shall have the right to inspect the Work and reject any of the Work which does not conform to the Construction Documents. If Contractor fails to correct defective Work or fails to supply materials or equipment in accordance with this Contract, Owner/Developer may order Contractor to stop the Work until it is corrected, and Contractor shall not be entitled to an extension of time in connection therewith. Owner/Developer may also stop the Work for the purpose of performing special inspections or testing of the Work. Should any of the Work be found faulty as a result of special inspections or tests, Contractor shall correct the Work immediately and pay all costs of correcting the Work and all fees for said inspections or tests. Should the Work be satisfactory, Owner/Developer will pay the fees for said inspections or tests, and will grant an appropriate extension of time to Contractor for any delay caused by such inspections or tests.

If Contractor fails to correct defective Work as required, or fails to carry out the Work in accordance with the Construction Documents, Owner/Developer may, without prejudice to any other remedies Owner/Developer might have, correct such defective Work, and deduct the cost of same from payments then or thereafter due under this Contract. If such payments are not sufficient to cover such cost, Contractor shall promptly pay the difference to Owner/Developer upon demand.

**17.    Termination Without Cause.** Owner/Developer may terminate the Contract without cause upon ten (10) days prior written notice to Contractor. In such event, Contractor shall cease the Work and take such actions as are reasonably necessary to wind-up the Work and vacate the job site. Contactor shall be entitled to receive reimbursement for all out-of-pocket costs incurred up to the date of termination, plus a percentage of profit and overhead equal to the percentage of Work completed prior to the receipt of Owner/Developer's notice.

**18.    Owner/Developer's Construction Manager.** The Construction Manager shall supervise Contractor and the Work in accordance with this Contract and accepted industry practices on behalf of Owner/Developer. Contractor and Owner/Developer hereby acknowledge and agree that Construction Manager is authorized to approve and execute on behalf of Owner/Developer Change Orders or single expenditures, provided such Change Orders and/or expenditures total less than $25,001 in the aggregate, without obtaining the express consent of Owner/Developer. Notwithstanding anything herein to the contrary, the Construction Manager shall have no (i) obligation to Contractor, including without limitation any and all obligations of Owner/Developer hereunder and (ii) liability for the actions, omissions, negligence or misconduct of Contractor or Owner/Developer or any of their respective employees, subcontractors or suppliers. Neither the Construction Manager nor any affiliate, subsidiary or parent of Construction Manager is intended to be nor will be construed to be a party to this agreement.

**19.    Contractor's Supervision of the Work.** Contractor shall employ a competent qualified superintendent who shall be in attendance at the Premises during the performance of the Work, and who shall at all times maintain good discipline and order with Contractor's employees, subcontractors, suppliers, materialmen and laborers. Contractor's superintendent shall be approved by the Owner/Developer. The superintendent shall not be replaced or reassigned to any other project prior to the Final Completion of the Work without Owner/Developer's prior consent. Contractor shall supplement its staff with whatever additional supervisory personnel are required to assure that Substantial Completion and Final Completion shall occur when and as required by this Contract. Contractor shall review all Construction Documents and other instructions and shall immediately report to Owner/Developer any error, inconsistency or omission Contractor may discover. Contractor shall not commence the Work without the Construction Documents and any other appropriate plans, specifications or interpretations.

Contractor agrees to use only subcontractors and material suppliers approved by Owner/Developer, except in the event of an emergency, in which case Contractor may, in Contractor's good faith discretion, substitute a subcontractor or material supplier and shall notify the Construction Manager of such change in writing within three (3) days.

Contractor shall maintain two (2) separate phone lines at the job site (one (1) line for a Remodel). One line will be for voice communication and one for a fax machine. Contractor shall place a fax machine in the superintendent's job site office. A cellular phone with voice mail will satisfy the voice communication requirement.

**20.    Protection of Work and Property.** Contractor shall continuously maintain adequate protection for the Work from damage and the elements and shall protect and take all reasonable precautions to protect Owner/Developer, the Premises, any third party and the property of any third party from injury or loss during the course of the Work.

Contractor shall comply with all applicable rules and regulations of any public authority having jurisdiction for the safety of persons or property. Contractor shall erect and maintain as required by existing conditions and progress of the Work all reasonable safeguards for safety and protection, including posting danger signs, promoting safety regulations and notifying Owner/Developer and users of adjacent utilities and properties.

If the severity of the elements makes it impossible to continue operations in a safe manner in spite of all reasonable precautions, Contractor shall cease work and immediately notify Owner/Developer. All Work damaged due to Contractor's negligence shall be removed and replaced at Contractor's expense.

Contractor shall provide and maintain a water-tight storage space, secure from theft, for storage of all equipment required by the Construction Documents or otherwise needed for the performance of the Work. Contractor shall keep the Premises and surrounding area free from accumulation of debris or rubbish. At the completion of the Work, Contractor shall remove all waste materials, rubbish, tools, construction equipment, machinery and surplus materials from the Premises, except for those items owned by Owner/Developer, which shall be stored or disposed of as directed by Owner/Developer.

**21.    Indemnity.** Contractor shall indemnify, defend and hold harmless Owner/Developer, Construction Manager, Architect and each of their respective directors, owners, partners, members, employees and agents, and any subsidiaries or Affiliates, from and against any and all claims, demands, suits, liabilities, injuries (personal or bodily), property damage, causes of action, losses, expenses, damages or penalties, including, without limitation, court costs and reasonable attorneys' fees, arising or resulting from, or occasioned by or in connection with (i) the performance by Contractor of the Work and its services, duties and obligations under this Contract, (ii) the inaccuracy of any warranty or representation of Contractor contained in this Contract, (iii) any act or omission to act by Contractor, a subcontractor, a sub-subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, and/or (iv) any breach, default, violation or nonperformance by Contractor of any term, covenant, condition, duty or obligation provided in this Contract. This indemnification, defense and hold harmless obligation shall survive the termination or expiration of this Contract, whether by lapse of time or otherwise. This indemnification obligation shall not be limited (i) by

a limitation on the amount or type of damages, compensation or benefits payable by or for Contractor, a subcontractor or any other party under workers' or workmen's compensation acts, disability benefit acts or other employee benefits acts, or (ii) pursuant to any common law or case law.

**22.    Compliance with Laws.**    In its performance of the Work, Contractor shall fully comply, and shall ensure that the Work fully complies, with all applicable federal, state and local laws, ordinances, rules and regulations, including all amendments thereto (collectively, "Laws"), including but not limited to the Americans with Disabilities Act of 1990 and its implementing regulations and codes, and all other Laws relating to access for individuals with disabilities to public accommodations.  Contractor shall ensure that it and its subcontractors comply with and maintain all records required by the United States Citizenship and Immigration Services and applicable immigration Laws.  Prior to commencing the Work, Contractor shall review the Construction Documents to confirm their conformity with applicable Laws.  If Contractor then or thereafter finds the Construction Documents are at variance with Laws, then Contractor shall immediately notify the Construction Manager in writing before proceeding with the Work.  The cost of any necessary changes to comply with Laws shall be agreed to by Owner/Developer before Contractor proceeds with the Work.  If any of the Work is performed contrary to Laws, Contractor shall bear all costs required to correct the Work.

**23.    Contractor's Warranties and Guarantees.**    Contractor warrants and guarantees that all of the Work shall be done in a first class, workmanlike manner and in accordance with the Construction Documents with new, quality materials and warrants all Work and materials against defects in the material or the workmanship for a period of one (1) year from the date of Final Completion or the opening of the Restaurant (whichever is later), unless stated otherwise in the Construction Documents.  If a defect in material or workmanship or a deviation from the Construction Documents is latent, hidden or not readily observable, Contractor's warranty shall be extended for one (1) year from the date of discovery of the defect or deviation.  Within ten (10) days after written notice of a defect or deviation, Contractor shall (without expense to Owner/Developer) remedy and repair same and any damage to other work resulting therefrom.  If the deficiencies are not timely corrected, Owner/Developer may hire an independent contractor to do the work and shall be reimbursed promptly by Contractor.  If any item cannot, with reasonable diligence, be corrected within ten (10) days, Contractor agrees to set forth in writing a reasonable schedule for completion of such work.  If the schedule is not met, Owner/Developer may immediately upon notice to Contractor, complete such work and be entitled to prompt reimbursement from Contractor.

Contractor agrees, upon reasonable notice, to meet with the Construction Manager or a designated representative within three (3) months prior to the expiration of one (1) year from the date of the commencement of the foregoing one (1)-year warranty period for a warranty inspection of the Work (the "Warranty Inspection").  During the Warranty Inspection, warranty deficiencies shall be noted, and the list of deficiencies shall be given to Contractor.  Contractor agrees to correct all such deficiencies within ten (10) days after the date of the Warranty Inspection.  If the deficiencies are not timely corrected, Owner/Developer may hire an independent contractor to do the work and shall be reimbursed promptly by Contractor.  If any item cannot, with reasonable diligence, be corrected within ten (10) days, Contractor agrees to set forth in writing a reasonable schedule for completion of such work.  If the schedule is not met, Owner/Developer may immediately upon notice to Contractor, complete such work and be entitled to prompt reimbursement from Contractor.  The failure to list any warranty deficiencies during the Warranty Inspection shall in no way relieve Contractor from its warranty obligations hereunder.

In addition, but not by way of limitation, Contractor:

a.    Warrants and guarantees all stucco unconditionally for two (2) years after the date of Final Completion from and against popping, peeling, cracking, and/or defects;

b.    Warrants and guarantees the roofing work unconditionally for a period of two (2) years after the date of Final Completion, including without limitation that the roofing and flashing is water tight and free from leaks;

c.    Shall provide a ten (10) year manufacturer's guarantee (from the date of Final Completion) covering any and all repairs or replacements needed to keep the roof, including the field and flashing, water tight;

d.    Warrants and guarantees that the Work fully complies with the Americans with Disabilities Act of 1990 and its implementing regulations and codes, and all other applicable Laws relating to access for individuals with disabilities to public accommodations, for such time as the statute of limitations shall continue to apply for any alleged violations of such laws, regulations and codes;

e.    Warrants and represents that Contractor does not and will not during the course of the Work discriminate against any employee or applicant for employment based on race, color, sex, national origin, religion, age handicap, or other unlawful basis.

f.    Shall provide a five (5) year warranty from the date of Final Completion for termite treatment signed by the applicator and Contractor; and

g.    Shall provide landscape maintenance, including watering of all plant materials and replacement of dead plant materials for a period of sixty (60) days after the date of Final Completion.

No act or omission of Owner/Developer or Construction Manager, including, without limitation, the Warranty Inspection, shall relieve Contractor of Contractor's responsibility to correct deficient workmanship and materials.

Contractor shall cause the following subcontractors to execute and deliver to Owner/Developer upon completion of the Work a written warranty (in forms reasonably satisfactory to Owner/Developer) covering all Work performed by such subcontractor: electricians, plumbers, pavers, roofers, insulators, HVAC suppliers and installers.  Such warranties shall be for a period of one (1) year from the date of Final Completion or the opening of the Restaurant (whichever is later), unless a warranty for a longer period of time is required under the Construction Documents.  All warranties included in or as part of the Work and supplied to Contractor shall be assigned to Owner/Developer.

**24.    Notices.**    All notices to be delivered under this Contract shall be in writing, signed by the parties serving same and delivered personally or by registered or certified U.S. Mail postage prepaid, or by reputable private delivery service postage prepaid and providing a receipt to sender.  Each such notice shall be deemed delivered upon actual delivery or refusal.  Notices shall be addressed as follows:

To Owner/Developer:    CFRA, LLC
Address:    1340 Hamlet Ave
City, State, Zip:    Clearwater, FL 33756
Attention:
Fax No.:

With copy to:
Address:
City, State, Zip:
Attention:
Fax No.:

To Contractor:    Smartvision Construction, LLC
Address:    1155 E Isle of Palms Ave
City, State, Zip:    Myrtle Beach, SC 29579
Attention:    Mohamed Ali
Fax No.:

**25.    Special Conditions.**  The terms of this Contract are subject to Owner/Developer obtaining all rights of possession as may be required to legally perform the Work at the Premises.  If Owner/Developer is unable to timely obtain such possession, Owner/Developer shall promptly notify Contractor of such inability, and this Contract shall be null and void and of no further force or effect.

**26.    Time.**  All time limits stated in this Contract are of the essence of the Contract, and Contractor, upon execution hereof and receipt of a written notice to proceed from Owner/Developer shall commence the Work and pursue the Work with all diligence until the completion of same within the time limits set forth in the Construction Documents.

If Contractor is delayed in the progress of the Work by a delay in the issuance of permits by the governing agency (not caused by or due to the fault of Contractor), by an act or neglect of Owner/Developer, by changes ordered in the Work by Owner/Developer (not caused by or due to the fault of Contractor), or by extreme and unusual weather conditions that could not be reasonably foreseen given the location of the Premises, then Contractor shall be entitled to submit a Claim (in the time period required by Section 27) seeking a Change Order extending the date of Substantial Completion in the Construction Schedule by the period of time by which Contractor is actually delayed in the progress of the Work by such event. Such an extension of time shall be Contractor's sole and exclusive remedy for any such delay.

**27.    Claims.**  A claim is a demand or assertion by Contractor seeking, as a matter of right, the payment of money, or an extension of time or other relief with respect to the terms of the Contract (hereinafter "Claim"). Written notice of any Claim must be given to Owner/Developer by Contractor within ten (10) calendar days after occurrence of the event giving rise to such Claim; otherwise, it shall be waived.  Claims must be made by written notice.  The responsibility to substantiate a Claim shall rest with Contractor.  Pending final resolution of a Claim, unless otherwise agreed to in writing by Owner/Developer, Contractor shall proceed diligently with performance of the Contract, and Owner/Developer shall continue to make payments in accordance with the Contact.

**28.    Liquidated Damages.**  In addition to other damages Owner/Developer may recover from Contractor for Contractor's unexcused delay in substantially completing the Work on or before the time for Substantial Completion as provided in Section 5 above (or as extended in writing by Owner/Developer), Owner/Developer shall be entitled to recover liquidated damages from Contractor in the amount of $500.00 for each calendar day that Substantial Completion is delayed, and such amount shall be withheld from the Final Payment hereunder. The parties agree that it would be difficult to assess the actual amount of Owner/Developer's damages, and the amount of $0.00 for each calendar day of delay is a reasonable estimate of same.  This sum is not to be construed as a penalty, and shall be paid to Owner/Developer as compensation for the damages incurred as a result of the delay in obtaining Substantial Completion of the Work.

**29.    Code of Conduct.**  All employees of Owner/Developer are obliged under a "Code of Conduct" to perform business in an ethical manner, thus prohibiting them from accepting any privileges, in fact or appearance, which might compromise their ability to execute a bona fide business transaction.  Further, this prohibits them from seeking any improper advantage through contribution of funds, equipment or facilities or the provision of other gifts or benefits to public officials or political organizations.  Specifically, no illegal or improper payment is to be made to any person or entity.  By execution of this Contract, Contractor acknowledges awareness of Owner/Developer's Code of Conduct. Additionally Contractor acknowledges its intention to cooperate with Owner/Developer in developing only ethical business relationships. Should Contractor encounter any business activity in its efforts to establish a business relationship with any representative of Owner/Developer which suggests a violation  of its Code of Conduct, Contractor shall communicate such encounter to a Senior Director or Vice President of Development of Owner/Developer.

**30.    Owner/Developer's Right to Audit.**  Owner/Developer shall also have the right to inspect and copy, with Contractor's assistance and cooperation, Contractor's books and financial records relating to the Work, the Project and Contractor's financial condition.

**31.    Independent Contractor.**  Contractor is acting as an independent contractor and has full responsibility for control, and supervision of the Work, and Owner/Developer and Construction Manager shall not in any manner be answerable or accountable for any violation of any Laws, or for any injury or damage occasioned by Contractor's actions, or the actions of any in its employ, to any person or their properties.

**32.    Site Conditions.**  Contractor represents that it has taken steps reasonably necessary to ascertain the nature and location of the Work, and that it has investigated and satisfied itself as to the general, local and site conditions which can affect the Work, the Premises and/or the performance of the Work.  Therefore, Contractor shall not be entitled to any adjustment to the Contract Sum or Construction Schedule based on any general, local or site conditions, including, but not limited to, concealed or unknown site conditions.

**33. Hazardous Substances.**  The Contractor shall not bring or store any Hazardous Substances (as defined below) to or on the Premises.  If, in the course of performance of the Work, Contractor encounters on the Project site any matter which it reasonably believes is a Hazardous Substance, Contractor shall immediately suspend the Work in the area affected and shall immediately report the condition orally and in writing to the Owner, Construction Manager, and Architect.  If it is determined that such condition involves a Hazardous Substance introduced to the Premises or negligently exacerbated after the date of this Contract by Contractor, its subcontractors or any party for whom they may be liable, then any required, necessary or appropriate remedial actions shall be performed by Contractor at its sole cost and expense.  If it is determined that such condition involves a Hazardous Substance that existed at the Premises prior to the date of this Contract and Contractor did not bring the Hazardous Substance to the Premises, then any required remedial actions shall be performed or caused to be performed by the Owner at its sole cost and expense

"Hazardous Substance" shall mean and refer to any hazardous, toxic or dangerous waste, substance or material defined as a "hazardous waste", "hazardous material", "hazardous substance", "extremely hazardous waste", "restricted hazardous waste", "toxic substance", "industrial waste", "mill tailing", "mining waste", "solid waste" or "special waste" in (i) any provision of state or local Law; (ii) the Comprehensive Environmental Response, Compensation and Liability Act as amended (42 U.S.C. Sec. 9601 et seq.); (iii) the Emergency Planning & Community Right-to-Know Act of 1986, as amended (42 U.S.C. Sec. 11001 et seq.); (iv) the Resource Conservation and Recovery Act of 1976, as amended (42 U.S.C. Sec. 6901 et seq.); (v) the Toxic Substances Control Act, as amended (15 U.S.C. Sec. 2601 et seq.); (vi) the Federal Water Pollution Control Act of 1972, as amended (33 U.S.C. Sec. 1251 et seq.); (vii) the Federal Clean Air Act, as amended (42 U.S.C. Sec. 7401 et seq.); (viii) the Occupational Safety and Health Act, as amended (29 U.S.C. Sec. 651 et seq.); (ix) the Surface Mining Control and Reclamation Act, as amended (30 U.S.C. Sec.  1201 et seq.); (x) any so-called "Superfund" or "Superlien" law; or (xi) any other federal, state or local statute, law, ordinance, code, rule or regulation.

**34.    Miscellaneous Provisions:**

**a.**    Contractor may not assign this Contract without the prior written consent of Owner/Developer, and Contractor shall not factor or pledge this Contract.

**b.**    No right or remedy conferred upon or reserved to Owner/Developer in this Contract is intended to be exclusive of any other right or remedy herein or by law provided, but each shall be cumulative and in addition to every other right or remedy given herein or now or hereafter existing at law or in equity.

c.   In the event of any conflict between this Contract and the other Construction Documents, this Contract shall govern.

d.   In the event any provision of this Contract is found to be invalid or unenforceable, the remainder of this Contract shall continue in full force and effect.

e.   This Contract shall be construed in accordance with the laws of the state in which the Premises are located.

f.   This Contract is binding upon the parties, their heirs, successors and approved assignees.

g.   Owner/Developer shall have the right to enter into contracts with separate contractors with respect to the Premises, and Contractor agrees to cooperate with such separate contractors and coordinate the Work with the work of separate contractors. Arrangements between Owner/Developer and separate contractors shall not serve to relieve Contractor of any of its obligations hereunder.

h.   This Contract shall not be construed to create a contractual relationship of any kind between the Owner/Developer and a subcontractor or supplier of Contractor or between any persons or entities other than Owner/Developer and Contractor.

i.   This Contract represents the entire agreement between the parties and supersedes all prior or contemporaneous written or oral communications.

j.   This Contract may be amended or modified only by an instrument in writing signed by the parties.

**IN WITNESS WHEREOF,** Owner/Developer and Contractor through their duly authorized signatories have executed this Contract as set forth below.

OWNER/DEVELOPER:

By ~~Mohamed Ali~~

Print Name: _CHRIS SUKI_

Its*: _Mohamed Ali  COO/ EVP_

Date: _2/21/2020_


CONTRACTOR:

By _Mohamed Ali_

Print Name: _Mohamed Ali_

Its: _____

Date: _2/12/20_

State Contractor's License No.: _____

# Exhibit 3

# CONSTRUCTION CONTRACT

This Contract ("Contract") consists of this Construction Contract and the Construction Documents (as defined below).

**Contract Date:**    ___02/27/2020_____

**Owner/Developer:**    ___CFRA. LLC_____
Address:            ___1340 Hamlet Ave _____
City, State, Zip:    ___Clearwater, FL 33756_____

**Construction**
**Manager:**        ___Clifford Markee_____

**Contractor:**        ___Smartvision Construction, LLC _____
Address:            ___1155 E Isle of Palms Ave _____
City, State Zip:    ___Myrtle Beach, SC 29579_____
Telephone:          ___(843) 808-8004_____
Fax                 _____
Vendor No.:         _____

**Architect:**        _____
Address:            _____
City, State, Zip:    _____

Site No. (unless Remodel): _____

Facility No. (for Remodel): _____

Entity No. (for all projects): _____

In consideration of the promises set forth below, Owner/Developer and Contractor agree as follows:

**1.    Contractor's Work.** Contractor shall construct or remodel on the Premises (as defined below) an __IHOP_____ restaurant (the "Restaurant") and other improvements in accordance with the, plans, specifications and other documents listed below and as otherwise described in this Contract (such construction being referred to herein as the "Work"), which documents are incorporated herein by this reference. These documents (hereinafter the "Construction Documents") are described as follows:

|                        | Prepared by:      | Date:         |
|------------------------|-------------------|---------------|
| Invitation to Bid      | Owner/Developer   | _____ _____ |
| Bid Proposal           | Contractor        | _____ _____ |
| Geotechnical Report    |                   | _____ _____ |
| Survey                 |                   | _____ _____ |
| Other: _____        |                   | _____ _____ |
| Site Plans             |                   | _____ _____ |
| Drawings               | Architect         | _____ _____ |
| Specifications         | Architect         | _____ _____ |

Contractor hereby acknowledges receipt of the Construction Documents in triplicate. Contractor shall initial one of such sets and deliver such initialed set to Owner/Developer upon execution of this Contract.

Contractor is responsible to ensure that the Construction Documents are complete and secure. Contractor will not release any of the contents of the Construction Documents without Owner/Developer's written approval. Contractor must notify Owner/Developer if there are any items missing from the Construction Documents.

"Remodel" includes any conversion, brand addition, re-image or other actions that do not pertain to the ground-up construction of a new facility.

**2.    Contractor**. Contractor shall supervise and direct the Work, using its best skill and attention, and shall be solely responsible for all construction means, methods, techniques, sequences and procedures. Unless otherwise noted, Contractor shall be responsible for coordinating all portions of the Work and shall provide and pay for all labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation and other facilities and services necessary for the proper execution of the Work. Contractor shall be responsible for the acts and omissions of its employees and subcontractors, their agents and employees, and for all other persons performing any of the Work under any agreement with, or otherwise on behalf of, Contractor.

**3.    The Premises.** The Restaurant shall be constructed/remodeled on the real property (the "Premises") located as follows:

**Address:    IHOP #4440 – 3214 Peoples Street _____**

**City, State, Zip:        __ Johnson City, TN _____**

**4.    Contract Sum.**  For the proper performance of the Work, Owner/Developer shall pay Contractor the contract sum ("Contract Sum") in accordance with the terms hereof. The Contract Sum includes, and Contractor shall be responsible for, all federal, state and local taxes, including excise taxes, sales and use taxes, and retailers' occupational taxes. The Contract Sum is: __One Hundred Eighty-Three Thousand, Eight Hundred Fifty and XX/100 Dollars_ ($183,850.00). The Contract Sum does not include the purchase price and shipping cost of the items specifically identified as Owner/Developer-supplied in the Construction Documents or Invitation to Bid Letter, but Contractor shall be responsible for receiving unloading, inventorying, warehousing, protecting, assembling and installing such items and all such costs are included in the Contract Price.

**5.    Construction Schedule.** Within five (5) days after award of the Contract, Contractor shall prepare and submit to Owner/Developer a construction schedule (the "Construction Schedule") for the Work indicating the starting and completion dates for the various stages of the Work and the sequence of construction. The Construction Schedule shall cover all activities, milestones and trades required for the execution of the Work with scheduling and delivery dates for long lead time materials and equipment. The Construction Schedule is subject to the approval of Owner/Developer. Contractor shall maintain a copy of the Construction Schedule at the job site, updated weekly during the course of the Work; provided, however, that the Substantial Completion date identified in the Construction Schedule may not be changed except pursuant to a written Change Order executed by Contractor and Owner/Developer. Contractor shall commence construction within five (5) calendar days after written notice to proceed from Owner/Developer. **Construction shall begin on __March 15, 2020__ (03/15/20) and Substantial Completion of the Work shall be no later than __March 20, 2020__ (03/20/20).** For purposes of this Section 5, "Substantial Completion" shall be the earlier of the date the Restaurant opens for business or the date a Certificate of Occupancy is issued. Contractor shall be responsible for obtaining the Certificate of Occupancy. By executing this Contract, the Contractor acknowledges and confirms that it can substantially complete the Work within the number of calendar days indicated above.

**6.    Performance and Payment Bonds.** If requested by Owner/Developer, Contractor will provide Owner/Developer with payment and performance bonds in the full amount of the Contract Sum naming Contractor as obligor and Owner/Developer as obligee in such form as is approved by Owner/Developer and with a surety company approved by Owner/Developer. The cost of the premium shall be added to the

Contract Sum. Contractor shall ensure that such premium is the lowest rate available to Contractor from such surety.

At Owner/Developer's election, Contractor shall furnish Owner/Developer (within five (5) business days after Owner/Developer's requests, as same are made from time to time) with information deemed necessary by Owner/Developer to show that Contractor is financially sound and capable of fully performing under this Contract. If, in Owner/Developer's judgment, Contractor is reasonably found not financially sound or capable, then Owner/Developer may, by written notice, immediately terminate this Contract without further obligation to Contractor other than to pay Contractor for the value of the Work properly performed at the time of termination.

**7.    Permits.** Contractor shall obtain all licenses, permits, approvals and certificates (collectively, the "Permits") necessary to complete the Work in compliance with all applicable laws, ordinances, rules, and regulations. At Owner/Developer's election, Owner/Developer may obtain any of the Permits.

**8.    Insurance.** During the term of this Contract and until the Final Payment (as hereinafter defined) is made, Contractor shall at all times maintain the following insurance coverage from insurance companies that are licensed to do business in the state where the Premises are located and that have a General Rating of "A" or better as set forth in the most current issue of Best's Key Rating Insurance Guide:

**a.**    If the Contract Sum is less than or equal to $350,000, Commercial General Liability Insurance with a limit for each occurrence not less than $1,000,000 and a general aggregate limit not less than $1,000,000. If the Contract Sum is greater than $350,000, Commercial General Liability Insurance with a limit for each occurrence not less than $3,000,000 and a general aggregate limit not less than $3,000,000.

**b.**    Workers' Compensation Insurance in accordance with applicable state requirements.

**c.**    Employers' Liability Insurance in an amount not less than $1,000,000.

**d.**    Comprehensive Automobile Liability Insurance including owned, non-owned and hired coverage in an amount not less than $1,000,000 Combined Single Limit.

**e.**    Such other insurance required by law, ordinance, rule or regulation.

Contractor shall include Owner/Developer and each of their respective directors, owners, partners, members, employees and affiliates as additional insureds to the insurance policies described above (excluding the Workers' Compensation). The insurance coverage afforded under the policies described herein shall be primary and non-contributing with respect to any insurance carried independently by the additional insureds. All such insurance policies shall indicate that as respects the insureds (whether named or otherwise), cross-liability and severability of interests shall exist for all coverages provided thereunder. Prior to commencement of the Work, Contractor shall furnish Owner/Developer with Certificates of Insurance for each of the above insurance policies, providing, among other things, that Owner/Developer will receive at least thirty (30) days prior written notice of any material change in, or cancellation of, such insurance, and (b) identifying the additional insureds on the policies required above.

**9.    Risk of Loss.** Contractor shall purchase and maintain property insurance in the amount of the initial Contract Sum as well as subsequent modifications thereto for the entire Work at the site on a replacement cost basis without voluntary deductibles. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made. This insurance shall include interests of the Owner, the Contractor and subcontractors in the Work. Property insurance shall be on an "all-risk" policy form and shall insure against the perils of fire and extended coverage and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, falsework, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Architect's services and expenses required as a result of such insured loss. Coverage for other perils shall not be required unless otherwise provided in the Contract Documents. If the property insurance requires minimum deductibles, Contractor shall pay costs not covered because of such deductibles. Unless otherwise provided in the Contract Documents, this property insurance shall cover portions of the Work stored off the site after written approval of the Owner at the value established in the approval, and also portions of the Work in transit.

**10.    Custody of Plans.** During the performance of the Work, Contractor shall retain in its sole custody (except as required for the performance of the Work), all Construction Documents and any other drawings, plans specifications and any copies thereof furnished to Contractor by Owner/Developer. A co-signed set of such Construction Documents and other drawings, plans, and specifications shall be kept on the Premises at all times during the course of construction. All drawings, plans, specifications and copies thereof furnished by Owner/Developer shall remain the property of Owner/Developer and shall be returned to Owner/Developer at the completion of the Work.

**11.    Payment.** Throughout the course of this Contract, Contractor shall submit to Owner/Developer not more than five (5) progress payment requests when Contractor has completed Work associated with milestones specified on the payment schedule to be provided by the Owner/Developer. Contractor shall submit all progress payment requests in the form provided by the Construction Manager. Progress payments shall reflect the value of the Work in place, less amounts already paid to Contractor, less ten percent (10%) retainage or the maximum amount allowable at law (hereinafter "Retainage"), and any amounts necessary to complete the Work. The last such progress payment request shall also include a complete list of all subcontractors and material suppliers, including names, addresses, and telephone numbers, used for the Work. Upon satisfactory progress of the Work and Owner/Developer's receipt of completed and signed progress payment requests in form reasonably satisfactory to Owner/Developer and with all supporting documentation, Owner/Developer will make progress payments on this Contract within **twenty (20) days** of receipt of the request. Notwithstanding the foregoing, Owner/Developer may withhold all or a portion of a payment when in Owner/Developer' s opinion it is necessary to withhold such amount to protect Owner/Developer from loss or liability due to (a) defective Work not remedied, (b) claims made or liens filed or threatened to be filed with respect to the Work, (c) the failure of Contractor to make payment promptly to subcontractors or material suppliers for labor, materials or equipment, (d) damage to Owner/Developer or another contractor or subcontractor, (e) the probability, based on facts reasonably satisfactory to Owner/Developer, that the Work will not be completed when and as required by the Construction Schedule or (f) the persistent failure by the Contractor to carry out the Work in accordance with the Construction Documents. In addition, Owner/Developer may reduce any payments due Contractor under this Contract by amounts owed by Contractor to Owner/Developer or any Affiliate (as hereinafter defined) under any contract or other agreement between Contractor and Owner/Developer and/or such Affiliate ("Affiliate Contract") and/or Owner/Developer may reduce any payments due Contractor under any Affiliate Contract by amounts owed by Contractor to Owner/Developer under this Contract. For purposes of this Contract, an "Affiliate" with respect to any entity or person shall be any entity controlling, controlled by or under common control with, such entity or person.

Owner/Developer may make payments by joint check or other method that Owner/Developer determines is prudent.

Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at the rate of Eighteen (18)% per annum.

**FINAL PAYMENT.** Final completion shall be deemed to have occurred after the Restaurant is open or a final certificate of Occupancy has been received, all finished construction items (including all items identified on the Final Punchlist as described below) are completed, and all test reports, certifications, warranties, warranty books, permits, permitted set of Construction Documents, all final Change Orders have been approved by, and delivered to, Owner/Developer and all other requirements of this Contract have been satisfied (Final Completion"). All remaining amounts due to Contractor under this Contract (the "Final Payment") shall be paid at Final Completion.

In addition to other requirements of this Contract, as a prerequisite to Final Completion and Final Payment, the following documents must be delivered to Owner/Developer in final form, fully-completed and validly executed:

**a.** A final and unconditional waiver of lien from Contractor, each subcontractor and each supplier in form and content provided by Owner/Developer, each of which shall be duly executed by Contractor, the subcontractor or the supplier, as the case may be, certifying that such party (i) has been paid in full and (ii) releases the Owner/Developer and Premises from any claims or liens (Owner/Developer shall have the right to require that said waivers be notarized);

**b.** Certificate of Occupancy;

**c.** As required by Owner/Developer in the bid documents, Concrete or Asphalt Paving Certification (certifying sub-base, base and surface preparation and application);

**d.** As required by Owner/Developer in the bid documents, Engineer's Inspection Report certifying all concrete work, including mix, reinforcing and form work;

**e.** Original permitted Construction Documents redlined with as-built information;

**f.** Certification of any other item or material reasonably requested by Owner/Developer; and

**g.** Contractor's certification that all Work has been finally and properly completed, including all items on the Final Punchlist.

All items required in connection with the Final Payment shall be completed and submitted by Contractor within thirty (30) days after the earlier of the date the Restaurant opens and the date it is ready to open.

If Contractor does not timely comply with any of the requirements set forth above for the Final Payment, Owner/Developer may retain any unpaid portion of the Contract Sum to protect Owner/Developer against any lien rights or claims, until all requirements for the Final Payment have been satisfied.

**12. Mechanic's Liens and Other Claims.** Contractor shall pay all subcontractors and material suppliers in a timely manner to prevent mechanic's liens, other liens, claims or causes of action being filed against the Premises, Owner/Developer, Owner of the Premises or otherwise with respect to the Work. If Owner/Developer receives a claim, cause of action, notice of a lien to be filed, or if a lien is filed due to Contractor's nonpayment, Owner/Developer may, in its sole and absolute discretion, after five (5) days notice to Contractor, immediately pay the full amount of any such claim directly or indirectly to the claimant and deduct the same from the Contract Sum. Contractor waives any and all claims or causes of action Contractor has or may have against Owner/Developer for payments made under this Section 12. Owner/Developer may further require

Contractor to obtain a bond protecting Owner/Developer and any other parties with an interest in the Premises (such as a landlord or mortgagee) covering any such lien in an amount equal to at least one and one-half times the amount of such lien plus an amount sufficient to cover Owner/Developer's legal fees, interest and increased costs and expenses resulting therefrom. Contractor shall promptly defend to conclusion against such lien Owner/Developer and any other third parties with an interest in the Premises.

**13. Final Construction Observation Report and Punchlist.** At the time Contractor believes it has achieved Substantial Completion and before the Restaurant is delivered to Owner/Developer's operations team, Contractor shall meet with the Construction Manager, the Architect and/or the Construction Manager's designees and complete a Final Construction Observation Report (the "FCO"). Contractor shall commence with the correction and/or completion of any item on the FCO immediately thereafter. At delivery of the Restaurant, Contractor shall again meet with the Construction Manager, the Architect and/or the Construction Manager's designees to establish a formal list of construction deficiencies (the "Final Punchlist"), which shall include any incomplete items from the FCO. If at the time the Final Punchlist is developed it is determined that less than ninety percent (90%) of the items appearing on the FCO are not complete, Contractor shall be responsible for all costs associated with Owner/Developer's time and expense in monitoring the completion of the FCO and the Final Punchlist, including the cost of an independent consultant. In addition, if the items set forth on the Final Punchlist are not corrected within ten (10) days after the Final Punchlist is developed, Owner/Developer may hire an independent contractor to complete the Work on Contractor's behalf and may deduct the costs from the Final Payment, or at Owner/Developer's option, bill Contractor for the costs of such work, including the cost of any supervision, for immediate payment. If an item cannot reasonably be corrected within such ten (10) days, the reasons therefor shall be explained in writing on the Final Punchlist to Owner/Developer's satisfaction and Owner/Developer may grant an extension of time in its discretion. The preparation of the FCO or the Final Punchlist by Owner/Developer's designees shall in no way waive or alter the rights of Owner/Developer or the obligations of Contractor hereunder, including, without limitation, rights or obligations pursuant to representations and warranties contained herein.

**14. Change Orders.** Owner/Developer may make any changes to the Work, without invalidating this Contract, pursuant to the change order process hereinafter described. All such changes shall be performed under the conditions of the original Contract, except that no extra work or modification shall be done or paid for without a written Change Order from Owner/Developer ("Change Order.") The Contract Sum shall be increased or decreased by an amount agreed to in writing by the parties prior to the commencement of any such changed Work using Owner/Developer's approved Construction Change Order Request Form, which amount shall not include more than a ten percent (10%) mark-up to Contractor for overhead and profit. Contractor shall provide reasonable documentation supporting the actual and reasonable costs of any Change Order Work, including without limitation subcontractor's and materials invoices.

The Contract Sum and milestone dates on the Construction Schedule (including, without limitation, the date for Substantial Completion identified on the Construction Schedule) may only be adjusted by written Change Order executed by Owner/Developer and Contractor.

**15. Default by Contractor.** Should Contractor become insolvent, or should Contractor refuse or fail to supply enough properly skilled workers or proper materials, or should Contractor fail to make payments to subcontractors or materials suppliers for material or labor in accordance with the respective agreements between Contractor and subcontractors or materials suppliers, as the case may be, or should Contractor disregard laws, ordinances, rules, regulations or orders of a public authority having jurisdiction, or should the Contractor otherwise commit a breach of this Contract and/or fail to perform any work required by the Contract, then Owner /Developer may, in addition to any other rights or remedies it may

have at law, in equity or under this Contract, terminate this Contract after five (5) days written notice and/or complete the Work by means selected by Owner/Developer in its sole discretion. Upon termination of this Contract, Owner/Developer may take possession of the Premises and of all materials, equipment, tools, and construction equipment and machinery thereon, even if owned by Contractor. If the unpaid balance of the Contract Sum exceeds the cost of finishing the Work, such excess shall be paid to Contractor. If such costs exceed the unpaid balance, Contractor shall promptly pay the difference to Owner/Developer. Owner/Developer may, in its sole discretion, also terminate any other contracts or agreements Owner/Developer has with Contractor and/or any Affiliates of Contractor.

**16.   Owner/Developer's Inspections and Right to Stop the Work and Carry Out the Work.** The Construction Manager shall have the right to inspect the Work and reject any of the Work which does not conform to the Construction Documents. If Contractor fails to correct defective Work or fails to supply materials or equipment in accordance with this Contract, Owner/Developer may order Contractor to stop the Work until it is corrected, and Contractor shall not be entitled to an extension of time in connection therewith. Owner/Developer may also stop the Work for the purpose of performing special inspections or testing of the Work. Should any of the Work be found faulty as a result of special inspections or tests, Contractor shall correct the Work immediately and pay all costs of correcting the Work and all fees for said inspections or tests. Should the Work be satisfactory, Owner/Developer will pay the fees for said inspections or tests, and will grant an appropriate extension of time to Contractor for any delay caused by such inspections or tests.

If Contractor fails to correct defective Work as required, or fails to carry out the Work in accordance with the Construction Documents, Owner/Developer may, without prejudice to any other remedies Owner/Developer might have, correct such defective Work, and deduct the cost of same from payments then or thereafter due under this Contract. If such payments are not sufficient to cover such cost, Contractor shall promptly pay the difference to Owner/Developer upon demand.

**17.   Termination Without Cause.** Owner/Developer may terminate the Contract without cause upon ten (10) days prior written notice to Contractor. In such event, Contractor shall cease the Work and take such actions as are reasonably necessary to wind-up the Work and vacate the job site. Contactor shall be entitled to receive reimbursement for all out-of-pocket costs incurred up to the date of termination, plus a percentage of profit and overhead equal to the percentage of Work completed prior to the receipt of Owner/Developer's notice.

**18.   Owner/Developer's Construction Manager.** The Construction Manager shall supervise Contractor and the Work in accordance with this Contract and accepted industry practices on behalf of Owner/Developer. Contractor and Owner/Developer hereby acknowledge and agree that Construction Manager is authorized to approve and execute on behalf of Owner/Developer Change Orders or single expenditures, provided such Change Orders and/or expenditures total less than $25,001 in the aggregate, without obtaining the express consent of Owner/Developer. Notwithstanding anything herein to the contrary, the Construction Manager shall have no (i) obligation to Contractor, including without limitation any and all obligations of Owner/Developer hereunder and (ii) liability for the actions, omissions, negligence or misconduct of Contractor or Owner/Developer or any of their respective employees, subcontractors or suppliers. Neither the Construction Manager nor any affiliate, subsidiary or parent of Construction Manager is intended to be nor will be construed to be a party to this agreement.

**19.   Contractor's Supervision of the Work.** Contractor shall employ a competent qualified superintendent who shall be in attendance at the Premises during the performance of the Work, and who shall at all times maintain good discipline and order with Contractor's employees, subcontractors, suppliers, materialmen and laborers. Contractor's superintendent shall be approved by the Owner/Developer. The

superintendent shall not be replaced or reassigned to any other project prior to the Final Completion of the Work without Owner/Developer's prior consent. Contractor shall supplement its staff with whatever additional supervisory personnel are required to assure that Substantial Completion and Final Completion shall occur when and as required by this Contract. Contractor shall review all Construction Documents and other instructions and shall immediately report to Owner/Developer any error, inconsistency or omission Contractor may discover. Contractor shall not commence the Work without the Construction Documents and any other appropriate plans, specifications or interpretations.

Contractor agrees to use only subcontractors and material suppliers approved by Owner/Developer, except in the event of an emergency, in which case Contractor may, in Contractor's good faith discretion, substitute a subcontractor or material supplier and shall notify the Construction Manager of such change in writing within three (3) days.

Contractor shall maintain two (2) separate phone lines at the job site (one (1) line for a Remodel). One line will be for voice communication and one for a fax machine. Contractor shall place a fax machine in the superintendent's job site office. A cellular phone with voice mail will satisfy the voice communication requirement.

**20.   Protection of Work and Property.** Contractor shall continuously maintain adequate protection for the Work from damage and the elements and shall protect and take all reasonable precautions to protect Owner/Developer, the Premises, any third party and the property of any third party from injury or loss during the course of Work.

Contractor shall comply with all applicable rules and regulations of any public authority having jurisdiction for the safety of persons or property. Contractor shall erect and maintain as required by existing conditions and progress of the Work all reasonable safeguards for safety and protection, including posting danger signs, promoting safety regulations and notifying Owner/Developer and users of adjacent utilities and properties.

If the severity of the elements makes it impossible to continue operations in a safe manner in spite of all reasonable precautions, Contractor shall cease work and immediately notify Owner/Developer. All Work damaged due to Contractor's negligence shall be removed and replaced at Contractor's expense.

Contractor shall provide and maintain a water-tight storage space, secure from theft, for storage of all equipment required by the Construction Documents or otherwise needed for the performance of the Work. Contractor shall keep the Premises and surrounding area free from accumulation of debris or rubbish. At the completion of the Work, Contractor shall remove all waste materials, rubbish, tools, construction equipment, machinery and surplus materials from the Premises, except for those items owned by Owner/Developer, which shall be stored or disposed of as directed by Owner/Developer.

**21.   Indemnity.** Contractor shall indemnify, defend and hold harmless Owner/Developer, Construction Manager, Architect and each of their respective directors, owners, partners, members, employees and agents, and any subsidiaries or Affiliates, from and against any and all claims, demands, suits, liabilities, injuries (personal or bodily), property damage, causes of action, losses, expenses, damages or penalties, including, without limitation, court costs and reasonable attorneys' fees, arising or resulting from, or occasioned by or in connection with (i) the performance by Contractor of the Work and its services, duties and obligations under this Contract, (ii) the inaccuracy of any warranty or representation of Contractor contained in this Contract, (iii) any act or omission to act by Contractor, a subcontractor, a sub-subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, and/or (iv) any breach, default, violation or nonperformance by Contractor of any term, covenant, condition, duty or obligation provided in this Contract. This indemnification, defense and hold harmless obligation shall survive the termination or expiration of this Contract, whether by lapse of time or otherwise. This indemnification obligation shall not be limited (i) by

a limitation on the amount or type of damages, compensation or benefits payable by or for Contractor, a subcontractor or any other party under workers' or workmen's compensation acts, disability benefit acts or other employee benefits acts, or (ii) pursuant to any common law or case law.

**22.    Compliance with Laws.**    In its performance of the Work, Contractor shall fully comply, and shall ensure that the Work fully complies, with all applicable federal, state and local laws, ordinances, rules and regulations, including all amendments thereto (collectively, "Laws"), including but not limited to the Americans with Disabilities Act of 1990 and its implementing regulations and codes, and all other Laws relating to access for individuals with disabilities to public accommodations.  Contractor shall ensure that it and its subcontractors comply with and maintain all records required by the United States Citizenship and Immigration Services and applicable immigration Laws.  Prior to commencing the Work, Contractor shall review the Construction Documents to confirm their conformity with applicable Laws.  If Contractor then or thereafter finds the Construction Documents are at variance with Laws, then Contractor shall immediately notify the Construction Manager in writing before proceeding with the Work.  The cost of any necessary changes to comply with Laws shall be agreed to by Owner/Developer before Contractor proceeds with the Work.  If any of the Work is performed contrary to Laws, Contractor shall bear all costs required to correct the Work.

**23.    Contractor's Warranties and Guarantees.**  Contractor warrants and guarantees that all of the Work shall be done in a first class, workmanlike manner and in accordance with the Construction Documents with new, quality materials and warrants all Work and materials against defects in the material or the workmanship for a period of one (1) year from the date of Final Completion or the opening of the Restaurant (whichever is later), unless stated otherwise in the Construction Documents.  If a defect in material or workmanship or a deviation from the Construction Documents is latent, hidden or not readily observable, Contractor's warranty shall be extended for one (1) year from the date of discovery of the defect or deviation.  Within ten (10) days after written notice of a defect or deviation, Contractor shall (without expense to Owner/Developer) remedy and repair same and any damage to other work resulting therefrom.  If the deficiencies are not timely corrected, Owner/Developer may hire an independent contractor to do the work and shall be reimbursed promptly by Contractor.  If any item cannot, with reasonable diligence, be corrected within ten (10) days, Contractor agrees to set forth in writing a reasonable schedule for completion of such work.  If the schedule is not met, Owner/Developer may immediately upon notice to Contractor, complete such work and be entitled to prompt reimbursement from Contractor.

Contractor agrees, upon reasonable notice, to meet with the Construction Manager or a designated representative within three (3) months prior to the expiration of one (1) year from the date of the commencement of the foregoing one (1)-year warranty period for a warranty inspection of the Work (the "Warranty Inspection").  During the Warranty Inspection, warranty deficiencies shall be noted, and the list of deficiencies shall be given to Contractor.  Contractor agrees to correct all such deficiencies within ten (10) days after the date of the Warranty Inspection.  If the deficiencies are not timely corrected, Owner/Developer may hire an independent contractor to do the work and shall be reimbursed promptly by Contractor.  If any item cannot, with reasonable diligence, be corrected within ten (10) days, Contractor agrees to set forth in writing a reasonable schedule for completion of such work.  If the schedule is not met, Owner/Developer may immediately upon notice to Contractor, complete such work and be entitled to prompt reimbursement from Contractor.  The failure to list any warranty deficiencies during the Warranty Inspection shall in no way relieve Contractor from its warranty obligations hereunder.

In addition, but not by way of limitation, Contractor:

**a.**    Warrants and guarantees all stucco unconditionally for two (2) years after the date of Final Completion from and against popping, peeling, cracking, and/or defects;

**b.**    Warrants and guarantees the roofing work unconditionally for a period of two (2) years after the date of Final Completion, including without limitation that the roofing and flashing is water tight and free from leaks;

**c.**    Shall provide a ten (10) year manufacturer's guarantee (from the date of Final Completion) covering any and all repairs or replacements needed to keep the roof, including the field and flashing, water tight;

**d.**    Warrants and guarantees that the Work fully complies with the Americans with Disabilities Act of 1990 and its implementing regulations and codes, and all other applicable Laws relating to access for individuals with disabilities to public accommodations, for such time as the statute of limitations shall continue to apply for any alleged violations of such laws, regulations and codes;

**e.**    Warrants and represents that Contractor does not and will not during the course of the Work discriminate against any employee or applicant for employment based on race, color, sex, national origin, religion, age handicap, or other unlawful basis.

**f.**    Shall provide a five (5) year warranty from the date of Final Completion for termite treatment signed by the applicator and Contractor; and

**g.**    Shall provide landscape maintenance, including watering of all plant materials and replacement of dead plant materials for a period of sixty (60) days after the date of Final Completion.

No act or omission of Owner/Developer or Construction Manager, including, without limitation, the Warranty Inspection, shall relieve Contractor of Contractor's responsibility to correct deficient workmanship and materials.

Contractor shall cause the following subcontractors to execute and deliver to Owner/Developer upon completion of the Work a written warranty (in forms reasonably satisfactory to Owner/Developer) covering all Work performed by such subcontractor:  electricians, plumbers, pavers, roofers, insulators, HVAC suppliers and installers.  Such warranties shall be for a period of one (1) year from the date of Final Completion or the opening of the Restaurant (whichever is later), unless a warranty for a longer period of time is required under the Construction Documents.  All warranties included in or as part of the Work and supplied to Contractor shall be assigned to Owner/Developer.

**24.    Notices.**  All notices to be delivered under this Contract shall be in writing, signed by the parties serving same and delivered personally or by registered or certified U.S. Mail postage prepaid, or by reputable private delivery service postage prepaid and providing a receipt to sender.  Each such notice shall be deemed delivered upon actual delivery or refusal.  Notices shall be addressed as follows:

To Owner/Developer:    CFRA, LLC
Address:    1340 Hamlet Ave
City, State, Zip:  Clearwater, FL 33756
Attention:
Fax No.:

With copy to:
Address:
City, State, Zip:
Attention:
Fax No.:

To Contractor:    Smartvision Construction, LLC
Address:    1155 E Isle of Palms Ave
City, State, Zip:  Myrtle Beach, SC 29579
Attention:    Mohamed Ali
Fax No.:

**25.    Special Conditions.**  The terms of this Contract are subject to Owner/Developer obtaining all rights of possession as may be required to legally perform the Work at the Premises.  If Owner/Developer is unable to timely obtain such possession, Owner/Developer shall promptly notify Contractor of such inability, and this Contract shall be null and void and of no further force or effect.

**26.    Time.**  All time limits stated in this Contract are of the essence of the Contract, and Contractor, upon execution hereof and receipt of a written notice to proceed from Owner/Developer shall commence the Work and pursue the Work with all diligence until the completion of same within the time limits set forth in the Construction Documents.

If Contractor is delayed in the progress of the Work by a delay in the issuance of permits by the governing agency (not caused by or due to the fault of Contractor), by an act or neglect of Owner/Developer, by changes ordered in the Work by Owner/Developer (not caused by or due to the fault of Contractor), or by extreme and unusual weather conditions that could not be reasonably foreseen given the location of the Premises, then Contractor shall be entitled to submit a Claim (in the time period required by Section 27) seeking a Change Order extending the date of Substantial Completion in the Construction Schedule by the period of time by which Contractor is actually delayed in the progress of the Work by such event. Such an extension of time shall be Contractor's sole and exclusive remedy for any such delay.

**27.    Claims.**  A claim is a demand or assertion by Contractor seeking, as a matter of right, the payment of money, or an extension of time or other relief with respect to the terms of the Contract (hereinafter "Claim"). Written notice of any Claim must be given to Owner/Developer by Contractor within ten (10) calendar days after occurrence of the event giving rise to such Claim; otherwise, it shall be waived.  Claims must be made by written notice.  The responsibility to substantiate a Claim shall rest with Contractor.  Pending final resolution of a Claim, unless otherwise agreed to in writing by Owner/Developer, Contractor shall proceed diligently with performance of the Contract, and Owner/Developer shall continue to make payments in accordance with the Contact.

**28.    Liquidated Damages.**  In addition to other damages Owner/Developer may recover from Contractor for Contractor's unexcused delay in substantially completing the Work on or before the time for Substantial Completion as provided in Section 5 above (or as extended in writing by Owner/Developer), Owner/Developer shall be entitled to recover liquidated damages from Contractor in the amount of $500.00 for each calendar day that Substantial Completion is delayed, and such amount shall be withheld from the Final Payment hereunder. The parties agree that it would be difficult to assess the actual amount of Owner/Developer's damages, and the amount of $0.00 for each calendar day of delay is a reasonable estimate of same. This sum is not to be construed as a penalty, and shall be paid to Owner/Developer as compensation for the damages incurred as a result of the delay in obtaining Substantial Completion of the Work.

**29.    Code of Conduct.**  All employees of Owner/Developer are obliged under a "Code of Conduct" to perform business in an ethical manner, thus prohibiting them from accepting any privileges, in fact or appearance, which might compromise their ability to execute a bona fide business transaction.  Further, this prohibits them from seeking any improper advantage through contribution of funds, equipment or facilities or the provision of other gifts or benefits to public officials or political organizations. Specifically, no illegal or improper payment is to be made to any person or entity.  By execution of this Contract, Contractor acknowledges awareness of Owner/Developer's Code of Conduct. Additionally Contractor acknowledges its intention to cooperate with Owner/Developer in developing only ethical business relationships. Should Contractor encounter any business activity in its efforts to establish a business relationship with any representative of Owner/Developer which suggests a violation of its Code of Conduct, Contractor shall communicate such encounter to a Senior Director or Vice President of Development of Owner/Developer.

**30.    Owner/Developer's Right to Audit.**  Owner/Developer shall also have the right to inspect and copy, with Contractor's assistance and cooperation, Contractor's books and financial records relating to the Work, the Project and Contractor's financial condition.

**31.    Independent Contractor.**  Contractor is acting as an independent contractor and has full responsibility for control, and supervision of the Work, and Owner/Developer and Construction Manager shall not in any manner be answerable or accountable for any violation of any Laws, or for any injury or damage occasioned by Contractor's actions, or the actions of any in its employ, to any person or their properties.

**32.    Site Conditions**.  Contractor represents that it has taken steps reasonably necessary to ascertain the nature and location of the Work, and that it has investigated and satisfied itself as to the general, local and site conditions which can affect the Work, the Premises and/or the performance of the Work.  Therefore, Contractor shall not be entitled to any adjustment to the Contract Sum or Construction Schedule based on any general, local or site conditions, including, but not limited to, concealed or unknown site conditions.

**33. Hazardous Substances.**  The Contractor shall not bring or store any Hazardous Substances (as defined below) to or on the Premises.  If, in the course of performance of the Work, Contractor encounters on the Project site any matter which it reasonably believes is a Hazardous Substance, Contractor shall immediately suspend the Work in the area affected and shall immediately report the condition orally and in writing to the Owner, Construction Manager, and Architect.  If it is determined that such condition involves a Hazardous Substance introduced to the Premises or negligently exacerbated after the date of this Contract by Contractor, its subcontractors or any party for whom they may be liable, then any required, necessary or appropriate remedial actions shall be performed by Contractor at its sole cost and expense.  If it is determined that such condition involves a Hazardous Substance that existed at the Premises prior to the date of this Contract and Contractor did not bring the Hazardous Substance to the Premises, then any required remedial actions shall be performed or caused to be performed by the Owner at its sole cost and expense

"Hazardous Substance" shall mean and refer to any hazardous, toxic or dangerous waste, substance or material defined as a "hazardous waste", "hazardous material", "hazardous substance", "extremely hazardous waste", "restricted hazardous waste", "toxic substance", "industrial waste", "mill tailing", "mining waste", "solid waste" or "special waste" in (i) any provision of state or local Law; (ii) the Comprehensive Environmental Response, Compensation and Liability Act as amended (42 U.S.C. Sec. 9601 et seq.); (iii) the Emergency Planning & Community Right-to-Know Act of 1986, as amended (42 U.S.C. Sec. 11001 et seq.); (iv) the Resource Conservation and Recovery Act of 1976, as amended (42 U.S.C. Sec. 6901 et seq.); (v) the Toxic Substances Control Act, as amended (15 U.S.C. Sec. 2601 et seq.); (vi) the Federal Water Pollution Control Act of 1972, as amended (33 U.S.C. Sec. 1251 et seq.); (vii) the Federal Clean Air Act, as amended (42 U.S.C. Sec. 7401 et seq.); (viii) the Occupational Safety and Health Act, as amended (29 U.S.C. Sec. 651 et seq.); (ix) the Surface Mining Control and Reclamation Act, as amended (30 U.S.C. Sec.  1201 et seq.); (x) any so-called "Superfund" or "Superlien" law; or (xi) any other federal, state or local statute, law, ordinance, code, rule or regulation:

**34.    Miscellaneous Provisions:**

**a.**     Contractor may not assign this Contract without the prior written consent of Owner/Developer, and Contractor shall not factor or pledge this Contract.

**b.**     No right or remedy conferred upon or reserved to Owner/Developer in this Contract is intended to be exclusive of any other right or remedy herein or by law provided, but each shall be cumulative and in addition to every other right or remedy given herein or now or hereafter existing at law or in equity.

c.  In the event of any conflict between this Contract and the other Construction Documents, this Contract shall govern.

d.  In the event any provision of this Contract is found to be invalid or unenforceable, the remainder of this Contract shall continue in full force and effect.

e.  This Contract shall be construed in accordance with the laws of the state in which the Premises are located.

f.  This Contract is binding upon the parties, their heirs, successors and approved assignees.

g.  Owner/Developer shall have the right to enter into contracts with separate contractors with respect to the Premises, and Contractor agrees to cooperate with such separate contractors and coordinate the Work with the work of separate contractors. Arrangements between Owner/Developer and separate contractors shall not serve to relieve Contractor of any of its obligations hereunder.

h.  This Contract shall not be construed to create a contractual relationship of any kind between the Owner/Developer and a subcontractor or supplier of Contractor or between any persons or entities other than Owner/Developer and Contractor.

i.  This Contract represents the entire agreement between the parties and supersedes all prior or contemporaneous written or oral communications.

j.  This Contract may be amended or modified only by an instrument in writing signed by the parties.

**IN WITNESS WHEREOF**, Owner/Developer and Contractor through their duly authorized signatories have executed this Contract as set forth below.

**OWNER/DEVELOPER:**

By _____

Print Name: _Chris Suh_____

Its*: _COO_____

Date: _March 4, 2020_____

**CONTRACTOR:**

By _Smartvision construction LLC_____

Print Name: _Mohamed Ali_____

Its: _Mohamed Ali_____

Date: _3/1/20_____

State Contractor's License No.: _____

# Exhibit 4

# PATTEN, WORNOM, HATTEN & DIAMONSTEIN, L.C.

DONALD N. PATTEN
ROBERT R. HATTEN
HENRY DUNCAN GARNETT, JR.
SOUTH T. PATTERSON
JAMES H. SHOEMAKER, JR.
HUGH B. McCORMICK, III
STEVEN A. MEADE
TODD M. LYNN
WILLIAM W. C. HARTY
JENNIFER W. STEVENS
SCOTT L. REICHLE[1]
DUNCAN G. BYERS[1]
LINDSEY A. CARNEY
ERIN E. JEWELL
JASON E. MESSERSMITH
F. ALEX COLETRANE

ATTORNEYS AND COUNSELORS AT LAW
SUITE 300
12350 JEFFERSON AVENUE
NEWPORT NEWS, VIRGINIA 23602

———————

(757) 223-4500

FAX (757) 249-1627

WRITER'S DIRECT DIAL: (757) 223-4502
WRITER'S E-MAIL: adean@pwhd.com
WEBSITE: http://www.pwhd.com

KEVIN M. DIAMONSTEIN[2]
KRISTOF G. KOLETAR
ANDREW J. DEAN[4]
JEANNETTE M. DODSON-O'CONNELL[3]
SAMANTHA P. GRAHAM

OF COUNSEL
H. SEWARD LAWLOR

———————

NEAL J. PATTEN (1917-2009)
I. LEAKE WORNOM, JR. (1926-2008)
THOMAS R. WATKINS (1925-1995)
STANLEY W. DRUCKER (1931-2010)
ALAN A. DIAMONSTEIN (1931-2019)

[1] Admitted in VA and USPTO

[2] Admitted in VA, DC, PA and NY
[3] Admitted in VA and DC
[4] Admitted in VA and FL

May 18, 2020

York County Circuit Court
Attn:  Office of Hon. Kristen N. Nelson, Clerk
300 Ballard Street
York County, VA 23690

**Via Hand Delivery**

> Re:  **Memorandum of Mechanic's Lien Filing for and on behalf of Smartvision Construction, LLC**

Dear Sir or Madam:

Please find enclosed an original <u>Memorandum for Mechanic's Lien</u>, which I ask that you please record as soon as possible.  I have also enclosed a check in the amount of $28.00 to cover the cost in this regard.  After recordation, please return the original recorded copy of the Mechanic's Lien in the envelope that I have enclosed for your convenience.

Thank you for your assistance with this matter.  Of course, please do not hesitate to give me a call with any questions or concerns.

Very truly yours,

PATTEN, WORNOM, HATTEN & DIAMONSTEIN, L.C.

Andrew J. Dean

AJD/gmb

Enclosures

**VIRGINIA: IN THE CIRCUIT COURT FOR THE COUNTY OF YORK AND CITY OF POQUOSON**

MEMORANDUM FOR MECHANIC'S LIEN
CLAIMED BY GENERAL CONTRACTOR

Pursuant to the provisions of VA. CODE ANN. § 43-5, a mechanic's lien is claimed as follows:

Name and Address of Owner:

**ALCIMEDES, INC.**
c/o Nicholas Florakis
Registered Agent
12800 The Glebe Lane
Charles City, Virginia 23030

Name and Address of Leasehold Owner:

**CFRA, LLC (f/k/a CFRA, INC.)**
c/o CT Corporation System
Registered Agent
4701 Cox Rd., Ste. 285
Glen Allen, Virginia 23060-6808

Name and Address of General Contractor:

**SMARTVISION CONSTRUCTION, LLC**
c/o Andrew Dean,
Registered Agent
12350 Jefferson Ave., Ste. 300
Newport News, Virginia 23602

1.  <u>Type of Materials or Services Furnished</u>: labor, materials, equipment and related services necessary to perform interior construction and renovations in IHOP # 2027 located at 747 E Rochambeau Drive, Williamsburg, Virginia 23185 per the contract with CFRA, LLC dated February 20, 2020, in accordance with plans of IHOP Franchisor LLC and IHOP Restaurants LLC and its parents, subsidiaries, affiliates and assigns, which included removal of signage, installation of wood on front gable, removal of carpet, leveling of floor slab, installation of LVT tile, install graphics and décor package, construction of booths, recladding cashiers stand and hostess stand fixtures, recovering affixed benches, seat cushions and seat backs, replacing oak trim on booths and low walls with maple caps, replacing glass dividers and glass with globes with wood slat dividers, installation of short stack sheet rock and led lights fixtures in bathroom, plumbing in bathroom, installation of restroom sinks and faucets, installation of restroom partitions and floor tile, installation of windows, installation of affixed roller shades, installation of new lights throughout building, construction and installation of new cabinets, installation of hard tile floors and wall base in server area, prepare and paint exterior roof, prepare and paint exterior building, prepare and paint pavers, prepare and paint interior, build affixed benches, install table tops, replace damaged wall tile and clear grout, replace ceiling tile, replace LED light fixture.

Prepared by and Return to:
Andrew J. Dean, Esq.
Patten, Wornom, Hatten, & Diamonstein, L.C.
12350 Jefferson Ave., Ste. 300
Newport News, VA 23602

2.    Amount Claimed:  $72,025.00

3.    Type of Structure on which work done or Materials Furnished: commercial building –
      IHOP Restaurant

4.    Brief Description and Location of Real Property:  747  E  Rochambeau  Drive,
      Williamsburg, Virginia 23185, with the following legal description:

> All that certain lot, piece or parcel of land situate in the Bruton Magisterial District, York County,
> Virginia, shown and designated as Parcel A-1, containing 1.018 acres, on a certain plat entitled
> "SUBDIVISION OF OUTPARCEL A PLAT OF BOUNDARY LINE ADJUSTMENT &
> PROPERTY LINE VACATION FOR FOUR PARCELS OF LAND CONTAINING 27.081 ACRES
> STANDING IN THE NAME OF KAHN PROPERTIES EAST, LLC, BRUTON MAGISTERIAL
> DISTRICT, YORK COUNTY, VIRGINIA" dated May 25, 2004 and made by Burgess & Niple,
> Engineers, Surveyors, Planners, Landscape Architects recorded in the Clerk's Office of the Circuit
> Court of the County of York as Instrument No. 050004523.  Said plat is incorporated herein by
> reference.
>
> Together with an easement for pedestrian and vehicular traffic on the Access Roads as defined in the
> Amended and Restated Declaration of Easements, Covenants, Conditions and Restrictions dated
> March 5, 2002 and recorded as Instrument No. 020006193 in the Clerk's Office for the Circuit Court
> of York County, Virginia and as shown Site Plan attached thereon as Exhibit "A".

It is the intent of the Claimant to claim the benefit of a mechanic's lien. The undersigned hereby
certifies to having mailed a copy of this memorandum of lien to the owner of the property on
May 18, 2020.

                                        SMARTVISION CONSTRUCTION, LLC

Date: May 18, 2020                      By: _____
                                             Andrew J. Dean, Esq.
                                             Authorized Agent and Attorney


                              **AFFIDAVIT**

COMMONWEALTH OF VIRGINIA,
CITY OF NEWPORT NEWS, to-wit:

I, Natalie McNabb , Notary Public for the Commonwealth At Large, do certify that Andrew J.
Dean, Esq., Authorized Agent and Attorney for Smartvision Construction, LLC this day made
oath before me in the City and State aforesaid that CFRA, LLC is justly indebted to Smartvision
Construction, LLC in the sum of Seventy Two Thousand Twenty Five and 00/100 Dollars
($72,025.00) for work done and materials furnished in the interior renovations to the leased
premises of CFRA, LLC in the commercial building – IHOP Restaurant, which it was contracted
to perform on the property owned by you in York County, VA, and that I have duly recorded a
mechanic's lien for the same. Given under my hand this 18th day of May 2020.

                            _____
                                 Notary Public

                                        Natalie Hill McNabb
                                        Notary Public for the
                                        Commonwealth of Virginia
Registration No.: 7767246               Commission No. 7767246
My commission expires: 9/30/22          My Commission Expires September 30, 2022

## NOTICE

TO:        **ALCIMEDES, INC.**
               c/o Nicholas Florakis
               Registered Agent
               12800 The Glebe Lane
               Charles City, Virginia 23030

               **CFRA, LLC (f/k/a CFRA INC.)**
               c/o CT Corporation System
               Registered Agent
               4701 Cox Rd., Ste. 285
               Glen Allen, Virginia 23060-6808

You are hereby notified that CFRA, LLC (f/k/a CFRA, INC.) is justly indebted to Smartvision Construction, LLC in the in the sum of Seventy Two Thousand Twenty Five and 00/100 Dollars ($72,025.00) for labor, materials and equipment furnished and services provided in connection with the interior renovation of the commercial building - IHOP restaurant located at 747 E Rochambeau Drive, Williamsburg, Virginia 23185, described more fully in said Memorandum of Mechanic's Lien by General Contractor which is attached hereto, which property is in the County of York, Virginia which work was contracted for and/or authorized to be done by you and/or on your behalf, and that Smartvision Construction, LLC has duly recorded a mechanic's lien for the same.

Given under my hand this <u>18th</u> day of May 2020.

                              **SMARTVISION CONSTRUCTION, LLC**

                             By:    _____
                                  Andrew J. Dean, Esq.
                                  Authorized Agent and Attorney

---

This instrument was admitted to record _____ at _____
                                     (Date)                    (Time)

_____ , Clerk by _____ , Deputy Clerk

PATTEN, WORNOM, HATTEN, &
DIAMONSTEIN, L.C.
12350 JEFFERSON AVENUE, SUITE 300
NEWPORT NEWS, VA 23602
PH. 757-223-4500  OPERATING ACCOUNT

**TOWNE BANK**
5716 High Street West
Portsmouth, VA 23703
68-894/514

**143876**

| CHECK NO. | CHECK DATE | VENDOR NO. |
|---|---|---|
| 143876 | 5/18/2020 | CLECOU |

**PAY**

Twenty-eight and NO/100

**CHECK AMOUNT**

DOLLARS*********  $******    28.00

**TO THE ORDER OF**    CLERK OF COURT



VOID AFTER 180 DAYS

AUTHORIZED SIGNATURE

---

### PATTEN, WORNOM, HATTEN, & DIAMONSTEIN, L.C.

**OPERATING ACCOUNT**

| | | |
|---|---|---|
| CHECK NO: | 143876 | |
| CHECK DATE | 5/18/2020 | |
| CHECK AMOUNT | 28.00 | |

VENDOR   CLECOU     CLERK OF COURT

| YOUR INV. NO. | INV. DATE | INV. AMT | AMT. PAID | DISC. TAKEN |
|---|---|---|---|---|
| 063014.01 | 5/18/2020 | 28.00 | 28.00 | 0.00 |

RE:   Filing of Mechanic's Lien in York County - Mohamed Ali/AJD

---

### PATTEN, WORNOM, HATTEN, & DIAMONSTEIN, L.C.

**OPERATING ACCOUNT**

| | | |
|---|---|---|
| CHECK NO: | 143876 | |
| CHECK DATE | 5/18/2020 | |
| CHECK AMOUNT | 28.00 | |

VENDOR   CLECOU     CLERK OF COURT

| YOUR INV. NO. | INV. DATE | INV. AMT | AMT. PAID | DISC. TAKEN |
|---|---|---|---|---|
| 063014.01 | 5/18/2020 | 28.00 | 28.00 | 0.00 |

RE:   Filing of Mechanic's Lien in York County - Mohamed Ali/AJD

GPIN: B19b-4456-3970

**VIRGINIA:  IN THE CIRCUIT COURT FOR THE COUNTY OF YORK AND CITY OF POQUOSON**

MEMORANDUM FOR MECHANIC'S LIEN
CLAIMED BY GENERAL CONTRACTOR

Pursuant to the provisions of VA. CODE ANN. § 43-5, a mechanic's lien is claimed as follows:

Name and Address of Owner:

**ALCIMEDES, INC.**
c/o Nicholas Florakis
Registered Agent
12800 The Glebe Lane
Charles City, Virginia 23030

Name and Address of Leasehold Owner:

**CFRA, LLC (f/k/a CFRA, INC.)**
c/o CT Corporation System
Registered Agent
4701 Cox Rd., Ste. 285
Glen Allen, Virginia 23060-6808

Name and Address of General Contractor:

**SMARTVISION CONSTRUCTION, LLC**
c/o Andrew Dean,
Registered Agent
12350 Jefferson Ave., Ste. 300
Newport News, Virginia 23602

1.    <u>Type of Materials or Services Furnished</u>: labor, materials, equipment and related services necessary to perform interior construction and renovations in IHOP # 2027 located at 747 E Rochambeau Drive, Williamsburg, Virginia 23185 per the contract with CFRA, LLC dated February 20, 2020, in accordance with plans of IHOP Franchisor LLC and IHOP Restaurants LLC and its parents, subsidiaries, affiliates and assigns, which included removal of signage, installation of wood on front gable, removal of carpet, leveling of floor slab, installation of LVT tile, install graphics and décor package, construction of booths, recladding cashiers stand and hostess stand fixtures, recovering affixed benches, seat cushions and seat backs, replacing oak trim on booths and low walls with maple caps, replacing glass dividers and glass with globes with wood slat dividers, installation of short stack sheet rock and led lights fixtures in bathroom, plumbing in bathroom, installation of restroom sinks and faucets, installation of restroom partitions and floor tile, installation of windows, installation of affixed roller shades, installation of new lights throughout building, construction and installation of new cabinets, installation of hard tile floors and wall base in server area, prepare and paint exterior roof, prepare and paint exterior building, prepare and paint pavers, prepare and paint interior, build affixed

Prepared by and Return to:
Andrew J. Dean, Esq.
Patten, Wornom, Hatten, & Diamonstein, L.C.
12350 Jefferson Ave., Ste. 300
Newport News, VA 23602

2.    <u>Amount Claimed</u>: $72,025.00

3.    <u>Type of Structure on which work done or Materials Furnished</u>: commercial building –
IHOP Restaurant

4.    <u>Brief Description and Location of Real Property</u>: 747 E Rochambeau Drive,
Williamsburg, Virginia 23185, with the following legal description:

> All that certain lot, piece or parcel of land situate in the Bruton Magisterial District, York County,
> Virginia, shown and designated as Parcel A-1, containing 1.018 acres, on a certain plat entitled
> "SUBDIVISION OF OUTPARCEL A PLAT OF BOUNDARY LINE ADJUSTMENT &
> PROPERTY LINE VACATION FOR FOUR PARCELS OF LAND CONTAINING 27.081 ACRES
> STANDING IN THE NAME OF KAHN PROPERTIES EAST, LLC, BRUTON MAGISTERIAL
> DISTRICT, YORK COUNTY, VIRGINIA" dated May 25, 2004 and made by Burgess & Niple,
> Engineers, Surveyors, Planners, Landscape Architects recorded in the Clerk's Office of the Circuit
> Court of the County of York as Instrument No. 050004523.  Said plat is incorporated herein by
> reference.
>
> Together with an easement for pedestrian and vehicular traffic on the Access Roads as defined in the
> Amended and Restated Declaration of Easements, Covenants, Conditions and Restrictions dated
> March 5, 2002 and recorded as Instrument No. 020006193 in the Clerk's Office for the Circuit Court
> of York County, Virginia and as shown Site Plan attached thereon as Exhibit "A".

It is the intent of the Claimant to claim the benefit of a mechanic's lien. The undersigned hereby
certifies to having mailed a copy of this memorandum of lien to the owner of the property on
May 18, 2020.

                                        SMARTVISION CONSTRUCTION, LLC

Date: May 18, 2020                      By: _____
                                             Andrew J. Dean, Esq.
                                             Authorized Agent and Attorney


## AFFIDAVIT

COMMONWEALTH OF VIRGINIA,
CITY OF NEWPORT NEWS, to-wit:

I, Natalie McNabb , Notary Public for the Commonwealth At Large, do certify that Andrew J.
Dean, Esq., Authorized Agent and Attorney for Smartvision Construction, LLC this day made
oath before me in the City and State aforesaid that CFRA, LLC is justly indebted to Smartvision
Construction, LLC in the sum of Seventy Two Thousand Twenty Five and 00/100 Dollars
($72,025.00) for work done and materials furnished in the interior renovations to the leased
premises of CFRA, LLC in the commercial building – IHOP Restaurant, which it was contracted
to perform on the property owned by you in York County, VA, and that I have duly recorded a
mechanic's lien for the same. Given under my hand this 18th day of May 2020.

                         _____          Natalie Hill McNabb
                              Notary Public                Notary Public for the
                                                           Commonwealth of Virginia
                                                           Commission No. 7767246
Registration No.: 7767246                                  My Commission Expires September 30, 2022
My commission expires: 9/30/22

## NOTICE

TO:    **ALCIMEDES, INC.**
c/o Nicholas Florakis
Registered Agent
12800 The Glebe Lane
Charles City, Virginia 23030

**CFRA, LLC (f/k/a CFRA INC.)**
c/o CT Corporation System
Registered Agent
4701 Cox Rd., Ste. 285
Glen Allen, Virginia 23060-6808

You are hereby notified that CFRA, LLC (f/k/a CFRA, INC.) is justly indebted to Smartvision Construction, LLC in the in the sum of Seventy Two Thousand Twenty Five and 00/100 Dollars ($72,025.00) for labor, materials and equipment furnished and services provided in connection with the interior renovation of the commercial building - IHOP restaurant located at 747 E Rochambeau Drive, Williamsburg, Virginia 23185, described more fully in said Memorandum of Mechanic's Lien by General Contractor which is attached hereto, which property is in the County of York, Virginia which work was contracted for and/or authorized to be done by you and/or on your behalf, and that Smartvision Construction, LLC has duly recorded a mechanic's lien for the same.

Given under my hand this 18th day of May 2020.

SMARTVISION CONSTRUCTION, LLC

By: _____
Andrew J. Dean, Esq.
Authorized Agent and Attorney

_____

This instrument was admitted to record _____ at _____
                                        (Date)                           (Time)

_____, Clerk by _____, Deputy Clerk

INSTRUMENT 200008463
RECORDED IN THE CLERK'S OFFICE OF
YORK COUNTY - POQUOSON CIRCUIT COURT ON
MAY 26, 2020 AT 01:45 PM
KRISTEN N. NELSON, CLERK
RECORDED BY: MAB

# Exhibit 5

GPIN: 24155569250000

## VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF VIRGINIA BEACH

### MEMORANDUM FOR MECHANIC'S LIEN
### CLAIMED BY GENERAL CONTRACTOR

Pursuant to the provisions of VA. CODE ANN. § 43-5, a mechanic's lien is claimed as follows:

Name and Address of Owner:

**CPM PROPERTIES LLC**
c/o Barry Duval, Trustee of Trust that is a
Member or Manager of the Limited Liability
Company, Registered Agent
136 Randolphs Grn
Williamsburg, Virginia 23185

Name and Address of Ground Leaseholder:

**IHOP PROPERTIES, INC.**
c/o CT Corporation System
Registered Agent
818 West Seventh Street, Suite 930
Los Angeles, California 90017

Name and Address of Leasehold Owner:

**CFRA, LLC (f/k/a CFRA, INC.)**
c/o CT Corporation System
Registered Agent
4701 Cox Rd., Ste. 285
Glen Allen, Virginia 23060-6808

Name and Address of General Contractor:

**SMARTVISION CONSTRUCTION, LLC**
c/o Andrew Dean,
Registered Agent
12350 Jefferson Ave., Ste. 300
Newport News, Virginia 23602

1. Claimant certifies that a valid contractors license or certificate is not required by law for the work done for which the benefit of this lien is claimed.

2. <u>Type of Materials or Services Furnished</u>: labor, materials, equipment and related services necessary to perform interior construction and renovations in IHOP # 585 located at 1540 General Booth Blvd., Virginia Beach, Virginia 23454 per the contract with CFRA, LLC dated February 13, 2020, in accordance with plans of IHOP Franchisor LLC and IHOP Restaurants LLC and its parents, subsidiaries, affiliates and assigns, which included removal of signage, installation of wood on front gable, removal of carpet, leveling of floor slab, installation of LVT tile, install graphics and décor package, construction of booths, recladding cashiers stand and hostess stand fixtures, recovering affixed benches,

20200604000478910  1/4
City of Virginia Beach
06/04/2020
01:02:56 PM LIEN
Tina E. Sinnen, Clerk

RECEIVED
VIRGINIA BEACH CIRCUIT CT

20 JUN -4 PM 1: 08

NA E. SINNEN, CLERK

seat cushions and seat backs, replacing oak trim on booths and low walls with maple caps, replacing glass dividers and glass with globes with wood slat dividers, installation of short stack sheet rock and led lights fixtures in bathroom, plumbing in bathroom, installation of restroom sinks and faucets, installation of restroom partitions and floor tile, installation of windows, installation of affixed roller shades, installation of new lights throughout building, construction and installation of new cabinets, installation of hard tile floors and wall base in server area, prepare and paint exterior roof, prepare and paint exterior building, prepare and paint pavers, prepare and paint interior, build affixed benches, install table tops, replace damaged wall tile and clear grout, replace ceiling tile, replace LED light fixture.

3.   <u>Amount Claimed</u>: $80,950.00

4.   <u>Type of Structure on which work done or Materials Furnished</u>: commercial building – IHOP Restaurant

5.   <u>Brief Description and Location of Real Property</u>: 1540 General Booth Blvd., Virginia Beach, VA 23454, with the following legal description:

THAT certain parcel of real property consisting of approximately forty-three thousand one hundred twenty-four (43,124) square feet of land located on the east side of General Booth Boulevard approximately four hundred twenty (420) feet north of the intersection Dam Neck Road and General Booth Boulevard in the City of Virginia Beach, Virginia, identified as Parcel 4A as shown on survey entitled "SUBDIVISON OF PROPERTY OF BEL-AIRE, INCORPORATED (D.B.2420 P. 460) AND KING'S WAY CORPORATION (D.B. 2420, P. 577), VIRGINIA BEACH, VIRGINIA", prepared by Patton Harris Rust & Associates, P.C., dated July 27, 2004, recorded in the Clerk's Office, Circuit Court, City of Virginia Beach, Virginia, as Instrument No. 200408170129717.

TOGETHER WITH (a) a non-exclusive easement for access, ingress and egress on, over, across and through the Access Road or, alternatively, if the Access Road is replaced with a parking lot on Parcel 9A, through he drive aisles in the parking lot to be developed on Parcel 9A, providing vehicular and pedestrian access from Dam Neck Station Road and Dam Neck Road through the eastern boundary of the Premises; (b) a non-exclusive easement to connect to and use the 8" sanitary sewer installed on Parcel 9A; (c) a non-exclusive easement to connect to and use the storm water management facilities, including, without limitation, the retention pond, installed on Parcel 9A; (d) a non-exclusive easement for pedestrian and vehicular access, ingress and egress on, over, across, and through the driveways, drive aisles, access ways, and sidewalks on Parcels 3A and 5A, as the same may exist from time to time; and (e) a non-exclusive twenty foot (20') easement for the installation, use, maintenance, repair, and replacement of privately owned water line (if approved by the City) which Tenant shall cause to be installed, running from the Premises to Dam Neck Station Road as contained in Short Form Ground Lease by and between Bel-Aire, Incorporated, a Virginia general corporation, and IHOP Properties, Inc., a California corporation, dated September 29, 1999, recorded October 7, 1999, in Deed Book 4154, page 1300, in the Clerk's Office, Circuit Court, City of Virginia Beach, Virginia.

It is the intent of the Claimant to claim the benefit of a mechanic's lien. The undersigned hereby certifies to having mailed a copy of this memorandum of lien to the owner of the property on May 18, 2020.

SMARTVISION CONSTRUCTION, LLC

Date: 6/3/2020                    By: _Mohamed Ali_
                                        Mohamed Ali
                                        Authorized Agent, Sole Member and
                                        Manager

## AFFIDAVIT

STATE OF SOUTH CAROLINA,
CITY/COUNTY OF _Horry_ , to-wit:

I, _Brian Shaun D Arm,_ Notary Public for the Commonwealth At Large, do certify that Mohamed Ali, Authorized Agent, Sole Member and Manager for Smartvision Construction, LLC this day made oath before me in the City/County and State aforesaid that CFRA, LLC is justly indebted to Smartvision Construction, LLC in the sum of Eighty Thousand, Nine Hundred fifty and 00/100 Dollars ($80,950.00) for work done and materials furnished in the interior renovations to the leased premises of CFRA, LLC in the commercial building – IHOP Restaurant, which it was contracted to perform on the property owned by you in the City of Virginia Beach, VA, and that I have duly recorded a mechanic's lien for the same. Given under my hand this 1st day of June 2020.



Notary Public

Registration No.: _____
My commission expires: _7/24/29_

## NOTICE

TO:      **CPM PROPERTIES LLC**
c/o Barry Duval, Trustee of Trust that is a Member or Manager of the LLC
Registered Agent
136 Randolphs Grn
Williamsburg, Virginia 23185

**IHOP PROPERTIES, INC.**
c/o CT Corporation System
Registered Agent
818 West Seventh Street, Suite 930
Los Angeles, California 90017

**CFRA, LLC (f/k/a CFRA INC.)**
c/o CT Corporation System
Registered Agent
4701 Cox Rd., Ste. 285
Glen Allen, Virginia 23060-6808

You are hereby notified that CFRA, LLC (f/k/a CFRA, INC.) is justly indebted to Smartvision Construction, LLC in the in the sum of Eighty Thousand, Nine Hundred fifty and 00/100 Dollars ($80,950.00) for labor, materials and equipment furnished and services provided in connection with the interior renovation of the commercial building - IHOP restaurant located at 1540 General Booth Blvd., Virginia Beach, VA 23454, described more fully in said Memorandum of Mechanic's Lien by General Contractor which is attached hereto, which property is in the City of Virginia Beach, which work was contracted for and/or authorized to be done by you and/or on your behalf, and that Smartvision Construction, LLC has duly recorded a mechanic's lien for the same.

Given under my hand this 1st day of June 2020.

                    **SMARTVISION CONSTRUCTION, LLC**

                    By: _Mohamed Ali_
                        Mohamed Ali
                        Authorized Agent, Sole Member and
                        Manager

CERTIFIED TO BE A TRUE COPY
OF RECORD IN MY CUSTODY
TINA E. SINNEN, CLERK
CIRCUIT COURT, VIRGINIA BEACH, VA

                    DY CLERK

This instrument was admitted to record _____ at _____
                              (Date)                 (Time)

_____, Clerk by _____, Deputy Clerk

**CLERK OF THE CIRCUIT COURT**
Virginia Beach, VA 23456
2425 Nimmo Parkway, Judicial Center Building 10B
Phone: 757-385-8425



Receipt for Services

| | |
|---|---|
| **TINA E. SINNEN** | **TRACEY B. ENTWISLE** |
| **CLERK** | **CHIEF DEPUTY CLERK** |

| Cashier | LPAYNE | | Batch # 1814964 |
|---|---|---|---|
| | | **Date:** 06/04/2020 | **Time:** 01:02:56PM |

| Date | Instrument No | Document Type | Transaction Type | Grantor Cons. | Grantee Cons. | Assum. Val. | Pg/Amt |
|---|---|---|---|---|---|---|---|
| 6/4/2020 1:02:56PM | 20200604000478910 | LIEN | | 0.00 | 0.00 | 0.00 | 4 |

Party 1:   **CPM PROPERTIES LLC**      Party 2:   **SMARTVISION CONSTRUCTION LLC**

| | |
|---|---|
| Equipment Fund Fee | 5.00 |
| State Library | 1.50 |
| Pages 1 to 10 | 14.50 |
| Open-Space - ALL | 1.00 |
| Filing Fee | 5.00 |

LIEN                    **Total:**               27.00

**Fee Total:**          27.00

| CHECK | 143873 | PATTEN WORNOM HATTEN & DIAMONSTEIN | 27.00 |
|---|---|---|---|

**Payment Total:**          27.00

# Exhibit 6



Charles J. London
Attorney
charles@londonlawtn.com
Ph: 423.913.2700
Fax: 423.913.2710

London Law Office
132 Boone Street
Suite 5
Jonesborough, TN
37659

### LONDON LAW

April 24, 2020
Certified Mail

CFRA, LLC
1340 Hamlet Ave
Clearwater, FL 33756

CFRA Tri-Cities, LLC
520 D Street, Suite C
Clearwater, FL 33756-3362

Edward H. Jordan, John Q. Jordan and Carol J. Jordan
all care of
Edward H. Jordan
7814 Wood Park Drive
High Point, NC 27265

        Re:    The IHOP at Peoples Street, Johnson City, TN
                   Notice of Nonpayment
                   Notice of Lien

Greetings All:

Please be advised that the firm of London Law was retained by Smartvision Construction, LLC, in regards to materials provided and work performed at the IHOP located on Peoples Street in Johnson City, Tennessee. It appears that the property is owned by Edward, John, and Carol Jordan, and CFRA, LLC, retained the services of Smartvision Construction. Smartvision Construction, LLC, provided extremely quick and quality workmanship in a value of 183,850.00. It is currently owed $92,350.00. Please find enclosed with this letter, a Notice of Lien for the work and materials provided on this project. Please be advised that failure to satisfy this Lien will result in litigation within ten (10) days of your receipt of this letter. Please feel free to contact me using the information listed above.

Thank you for your prompt attention to this matter and I remain,

Very truly yours,

Charles J. London
**LONDON LAW**

This Instrument Prepared by:
Charles J. London, Esq
132 Boone Street, Suite 5
Jonesborough, TN 37659

## NOTICE OF LIEN

Muhammad K. Ali, acting in his capacity as Manager first being first duly sworn, says that Smart Vision Construction, LLC, the Lien Claimant, furnished certain material in furtherance of improvements to the real property hereinafter described, in pursuance of a certain contract, with CFRA, LLC (also known as CFRA Tri-Cities, LLC), on behalf of the owners Edward H. Jordan, John Q. Jordan, and Carol J. Green. The first of the material was furnished on the 17th day of March, 2020. The last day the material was furnished on the 23rd day of March, 2020, and there is justly and truly due Lien Claimant therefor from CFRA, LLC (also known as CFRA Tri-Cities, LLC) and owners Edward H. Jordan, John Q. Jordan, and Carol J. Green, over and above all legal setoffs, the sum of $92,350.00 dollars, for which Lien Claimant claims a lien under T.C.A. §§ 66-11-101 et seq. on the real property, which is described as existing at 3214 Peoples Street, Johnson City, TN 37604, and recorded on Roll 201, Images 87-91 in the Washington County Register of Deeds Office.

Lienor
Smartvision Construction, LLC
1155 E. Isle of Palms Ave.
Myrtle Beach, SC 29576

By:

_____
*Muhammad K. Ali*
Manager, Smartvision Construction, LLC

STATE OF TENNESSEE
COUNTY OF WASHINGTON

That the undersigned, *Muhammed Ali*, being first duly sworn, states that he is the *Manager of Smartvision Construction, LLC*, and that he is duly authorized to sign and that the foregoing statements of the Notice of Lien Claim are true and correct, and that the amount owed by for material, supplies, and labor is *$92,350.00*.

SWORN TO AND SUBSCRIBED before me this 24th day of April, 2020.

                                                    My commission expires:

_____

Notary Public                              _____

# CONSTRUCTION CONTRACT

This Contract ("Contract") consists of this Construction Contract and the Construction Documents (as defined below).

**Contract Date:**    ___02/27/2020_____

**Owner/Developer:**    ___CFRA. LLC_____
**Address:**    ___1340 Hamlet Ave _____
**City, State, Zip:**    ___Clearwater, FL 33756 _____

**Construction Manager:**    ___Clifford Markee_____

**Contractor:**    ___Smartvision Construction, LLC _____
**Address:**    ___1155 E Isle of Palms Ave_____
**City, State Zip:**    ___Myrtle Beach, SC 29579_____
**Telephone:**    ___(843) 808-8004_____
**Fax**    _____
**Vendor No.:**    _____

**Architect:**    _____
**Address:**    _____
**City, State, Zip:**    _____

**Site No. (unless Remodel):** _____

**Facility No. (for Remodel):** _____

**Entity No. (for all projects):** _____

In consideration of the promises set forth below, Owner/Developer and Contractor agree as follows:

**1.    Contractor's Work.** Contractor shall construct or remodel on the Premises (as defined below) an ___IHOP_____ restaurant (the "Restaurant") and other improvements in accordance with the plans, specifications and other documents listed below and as otherwise described in this Contract (such construction being referred to herein as the "Work"), which documents are incorporated herein by this reference. These documents (hereinafter the "Construction Documents") are described as follows:

| | Prepared by: | Date: |
|---|---|---|
| Invitation to Bid | Owner/Developer | _____ _____ |
| Bid Proposal | Contractor | _____ _____ |
| Geotechnical Report | | _____ _____ |
| Survey | | _____ _____ |
| Other: _____ | | _____ _____ |
| Site Plans | | _____ _____ |
| Drawings | Architect | _____ _____ |
| Specifications | Architect | _____ _____ |

Contractor hereby acknowledges receipt of the Construction Documents in triplicate. Contractor shall initial one of such sets and deliver such initialed set to Owner/Developer upon execution of this Contract.

Contractor is responsible to ensure that the Construction Documents are complete and secure. Contractor will not release any of the contents of the Construction Documents without Owner/Developer's written approval. Contractor must notify Owner/Developer if there are any items missing from the Construction Documents.

"Remodel" includes any conversion, brand addition, re-image or other actions that do not pertain to the ground-up construction of a new facility.

**2.    Contractor.** Contractor shall supervise and direct the Work, using its best skill and attention, and shall be solely responsible for all construction means, methods, techniques, sequences and procedures. Unless otherwise noted, Contractor shall be responsible for coordinating all portions of the Work and shall provide and pay for all labor, materials, equipment, tools, construction equipment and machinery, water, heat, utilities, transportation and other facilities and services necessary for the proper execution of the Work. Contractor shall be responsible for the acts and omissions of its employees and subcontractors, their agents and employees, and for all other persons performing any of the Work under any agreement with, or otherwise on behalf of, Contractor.

**3.    The Premises.** The Restaurant shall be constructed/remodeled on the real property (the "Premises") located as follows:

**Address:**   IHOP #4440 – 3214 Peoples Street _____

**City, State, Zip:**   __ Johnson City, TN _____

**4.    Contract Sum.** For the proper performance of the Work, Owner/Developer shall pay Contractor the contract sum ("Contract Sum") in accordance with the terms hereof. The Contract Sum includes, and Contractor shall be responsible for, all federal, state and local taxes, including excise taxes, sales and use taxes, and retailers' occupational taxes. The Contract Sum is:   __One Hundred Eighty-Three Thousand, Eight Hundred Fifty and XX/100 Dollars_ ($183,850.00). The Contract Sum does not include the purchase price and shipping cost of the items specifically identified as Owner/Developer-supplied in the Construction Documents or Invitation to Bid Letter, but Contractor shall be responsible for receiving unloading, inventorying, warehousing, protecting, assembling and installing such items and all such costs are included in the Contract Price.

**5.    Construction Schedule.** Within five (5) days after award of the Contract, Contractor shall prepare and submit to Owner/Developer a construction schedule (the "Construction Schedule") for the Work indicating the starting and completion dates for the various stages of the Work and the sequence of construction. The Construction Schedule shall cover all activities, milestones and trades required for the execution of the Work with scheduling and delivery dates for long lead time materials and equipment.  The Construction Schedule is subject to the approval of Owner/Developer.  Contractor shall maintain a copy of the Construction Schedule at the job site, updated weekly during the course of the Work; provided, however, that the Substantial Completion date identified in the Construction Schedule may not be changed except pursuant to a written Change Order executed by Contractor and Owner/Developer.  Contractor shall commence construction within five (5) calendar days after written notice to proceed from Owner/Developer. **Construction shall begin on __March 15, 2020__ (03/15/20) and Substantial Completion of the Work shall be no later than __March 20, 2020__ (03/20/20).** For purposes of this Section 5, "Substantial Completion" shall be the earlier of the date the Restaurant opens for business or the date a Certificate of Occupancy is issued.  Contractor shall be responsible for obtaining the Certificate of Occupancy.  By executing this Contract, the Contractor acknowledges and confirms that it can substantially complete the Work within the number of calendar days indicated above.

**6.    Performance and Payment Bonds.**    If requested by Owner/Developer, Contractor will provide Owner/Developer with payment and performance bonds in the full amount of the Contract Sum naming Contractor as obligor and Owner/Developer as obligee in such form as is approved by Owner/Developer and with a surety company approved by Owner/Developer.  The cost of the premium shall be added to the

Contract Sum. Contractor shall ensure that such premium is the lowest rate available to Contractor from such surety.

At Owner/Developer's election, Contractor shall furnish Owner/Developer (within five (5) business days after Owner/Developer's requests, as same are made from time to time) with information deemed necessary by Owner/Developer to show that Contractor is financially sound and capable of fully performing under this Contract. If, in Owner/Developer's judgment, Contractor is reasonably found not financially sound or capable, then Owner/Developer may, by written notice, immediately terminate this Contract without further obligation to Contractor other than to pay Contractor for the value of the Work properly performed at the time of termination.

**7. Permits.** Contractor shall obtain all licenses, permits, approvals and certificates (collectively, the "Permits") necessary to complete the Work in compliance with all applicable laws, ordinances, rules, and regulations. At Owner/Developer's election, Owner/Developer may obtain any of the Permits.

**8. Insurance.** During the term of this Contract and until the Final Payment (as hereinafter defined) is made, Contractor shall at all times maintain the following insurance coverage from insurance companies that are licensed to do business in the state where the Premises are located and that have a General Rating of "A" or better as set forth in the most current issue of Best's Key Rating Insurance Guide:

a. If the Contract Sum is less than or equal to $350,000, Commercial General Liability Insurance with a limit for each occurrence not less than $1,000,000 and a general aggregate limit not less than $1,000,000. If the Contract Sum is greater than $350,000, Commercial General Liability Insurance with a limit for each occurrence not less than $3,000,000 and a general aggregate limit not less than $3,000,000.

b. Workers' Compensation Insurance in accordance with applicable state requirements.

c. Employers' Liability Insurance in an amount not less than $1,000,000.

d. Comprehensive Automobile Liability Insurance including owned, non-owned and hired coverage in an amount not less than $1,000,000 Combined Single Limit.

e. Such other insurance required by law, ordinance, rule or regulation.

Contractor shall include Owner/Developer and each of their respective directors, owners, partners, members, employees and affiliates as additional insureds to the insurance policies described above (excluding the Workers' Compensation). The insurance coverage afforded under the policies described herein shall be primary and non-contributing with respect to any insurance carried independently by the additional insureds. All such insurance policies shall indicate that as respects the insureds (whether named or otherwise), cross-liability and severability of interests shall exist for all coverages provided thereunder. Prior to commencement of the Work, Contractor shall furnish Owner/Developer with Certificates of Insurance for each of the above insurance policies, providing, among other things, that Owner/Developer will receive at least thirty (30) days prior written notice of any material change in, or cancellation of, such insurance, and (b) identifying the additional insureds on the policies required above.

**9. Risk of Loss.** Contractor shall purchase and maintain property insurance in the amount of the initial Contract Sum as well as subsequent modifications thereto for the entire Work at the site on a replacement cost basis without voluntary deductibles. Such property insurance shall be maintained, unless otherwise provided in the Contract Documents or otherwise agreed in writing by all persons and entities who are beneficiaries of such insurance, until final payment has been made. This

insurance shall include interests of the Owner, the Contractor and subcontractors in the Work. Property insurance shall be on an "all-risk" policy form and shall insure against the perils of fire and extended coverage and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, falsework, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for Architect's services and expenses required as a result of such insured loss. Coverage for other perils shall not be required unless otherwise provided in the Contract Documents. If the property insurance requires minimum deductibles, Contractor shall pay costs not covered because of such deductibles. Unless otherwise provided in the Contract Documents, this property insurance shall cover portions of the Work stored off the site after written approval of the Owner at the value established in the approval, and also portions of the Work in transit.

**10. Custody of Plans.** During the performance of the Work, Contractor shall retain in its sole custody (except as required for the performance of the Work), all Construction Documents and any other drawings, plans specifications and any copies thereof furnished to Contractor by Owner/Developer. A co-signed set of such Construction Documents and other drawings, plans, and specifications shall be kept on the Premises at all times during the course of construction. All drawings, plans, specifications and copies thereof furnished by Owner/Developer shall remain the property of Owner/Developer and shall be returned to Owner/Developer at the completion of the Work.

**11. Payment.** Throughout the course of this Contract, Contractor shall submit to Owner/Developer not more than five (5) progress payment requests when Contractor has completed Work associated with milestones specified on the payment schedule to be provided by the Owner/Developer. Contractor shall submit all progress payment requests in the form provided by the Construction Manager. Progress payments shall reflect the value of the Work in place, less amounts already paid to Contractor, less ten percent (10%) retainage or the maximum amount allowable at law (hereinafter "Retainage"), and any amounts necessary to complete the Work. The last such progress payment request shall also include a complete list of all subcontractors and material suppliers, including names, addresses, and telephone numbers, used for the Work. Upon satisfactory progress of the Work and Owner/Developer's receipt of completed and signed progress payment requests in form reasonably satisfactory to Owner/Developer and with all supporting documentation, Owner/Developer will make progress payments on this Contract within **twenty (20) days** of receipt of the request. Notwithstanding the foregoing, Owner/Developer may withhold all or a portion of a payment when in Owner/Developer's opinion it is necessary to withhold such amount to protect Owner/Developer from loss or liability due to (a) defective Work not remedied, (b) claims made or liens filed or threatened to be filed with respect to the Work, (c) the failure of Contractor to make payment promptly to subcontractors or material suppliers for labor, materials or equipment, (d) damage to Owner/Developer or another contractor or subcontractor, (e) the probability, based on facts reasonably satisfactory to Owner/Developer, that the Work will not be completed when and as required by the Construction Schedule or (f) the persistent failure by the Contractor to carry out the Work in accordance with the Construction Documents. In addition, Owner/Developer may reduce any payments due Contractor under this Contract by amounts owed by Contractor to Owner/Developer or any Affiliate (as hereinafter defined) under any contract or other agreement between Contractor and Owner/Developer and/or such Affiliate ("Affiliate Contract") and/or Owner/Developer may reduce any payments due Contractor under any Affiliate Contract by amounts owed by Contractor to Owner/Developer under this Contract. For purposes of this Contract, an "Affiliate" with respect to any entity or person shall be any entity controlling, controlled by or under common control with, such entity or person.

Owner/Developer may make payments by joint check or other method that Owner/Developer determines is prudent.

Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at the rate of Eighteen (18)% per annum.

**FINAL PAYMENT.** Final completion shall be deemed to have occurred after the Restaurant is open or a final certificate of Occupancy has been received, all finished construction items (including all items identified on the Final Punchlist as described below) are completed, and all test reports, certifications, warranties, warranty books, permits, permitted set of Construction Documents, all final Change Orders have been approved by, and delivered to, Owner/Developer and all other requirements of this Contract have been satisfied (Final Completion"). All remaining amounts due to Contractor under this Contract (the "Final Payment") shall be paid at Final Completion.

In addition to other requirements of this Contract, as a prerequisite to Final Completion and Final Payment, the following documents must be delivered to Owner/Developer in final form, fully-completed and validly executed:

a. A final and unconditional waiver of lien from Contractor, each subcontractor and each supplier in form and content provided by Owner/Developer, each of which shall be duly executed by Contractor, the subcontractor or the supplier, as the case may be, certifying that such party (i) has been paid in full and (ii) releases the Owner/Developer and Premises from any claims or liens (Owner/Developer shall have the right to require that said waivers be notarized);

b. Certificate of Occupancy;

c. As required by Owner/Developer in the bid documents, Concrete or Asphalt Paving Certification (certifying sub-base, base and surface preparation and application);

d. As required by Owner/Developer in the bid documents, Engineer's Inspection Report certifying all concrete work, including mix, reinforcing and form work;

e. Original permitted Construction Documents redlined with as-built information;

f. Certification of any other item or material reasonably requested by Owner/Developer; and

g. Contractor's certification that all Work has been finally and properly completed, including all items on the Final Punchlist.

All items required in connection with the Final Payment shall be completed and submitted by Contractor within thirty (30) days after the earlier of the date the Restaurant opens and the date it is ready to open.

If Contractor does not timely comply with any of the requirements set forth above for the Final Payment, Owner/Developer may retain any unpaid portion of the Contract Sum to protect Owner/Developer against any lien rights or claims, until all requirements for the Final Payment have been satisfied.

**12. Mechanic's Liens and Other Claims.** Contractor shall pay all subcontractors and material suppliers in a timely manner to prevent mechanic's liens, other liens, claims or causes of action being filed against the Premises, Owner/Developer, Owner of the Premises or otherwise with respect to the Work. If Owner/Developer receives a claim, cause of action, notice of a lien to be filed, or if a lien is filed due to Contractor's nonpayment, Owner/Developer may, in its sole and absolute discretion, after five (5) days notice to Contractor, immediately pay the full amount of any such claim directly or indirectly to the claimant and deduct the same from the Contract Sum. Contractor waives any and all claims or causes of action Contractor has or may have against Owner/Developer for payments made under this Section 12. Owner/Developer may further require

Contractor to obtain a bond protecting Owner/Developer and any other parties with an interest in the Premises (such as a landlord or mortgagee) covering any such lien in an amount equal to at least one and one-half times the amount of such lien plus an amount sufficient to cover Owner/Developer's legal fees, interest and increased costs and expenses resulting therefrom. Contractor shall promptly defend to conclusion against such lien Owner/Developer and any and third parties with an interest in the Premises.

**13. Final Construction Observation Report and Punchlist.** At the time Contractor believes it has achieved Substantial Completion and before the Restaurant is delivered to Owner/Developer's operations team, Contractor shall meet with the Construction Manager, the Architect and/or the Construction Manager's designees and complete a Final Construction Observation Report (the "FCO"). Contractor shall commence with the correction and/or completion of any item on the FCO immediately thereafter. At delivery of the Restaurant, Contractor shall again meet with the Construction Manager, the Architect and/or the Construction Manager's designees to establish a formal list of construction deficiencies (the "Final Punchlist"), which shall include any incomplete items from the FCO. If at the time the Final Punchlist is developed it is determined that less than ninety percent (90%) of the items appearing on the FCO are not complete, Contractor shall be responsible for all costs associated with Owner/Developer's time and expense in monitoring the completion of the FCO and the Final Punchlist, including the cost of an independent consultant. In addition, if the items set forth on the Final Punchlist are not corrected within ten (10) days after the Final Punchlist is developed, Owner/Developer may hire an independent contractor to complete the Work on Contractor's behalf and may deduct the costs from the Final Payment, or at Owner/Developer's option, bill Contractor for the costs of such work, including the cost of any supervision, for immediate payment. If an item cannot reasonably be corrected within such ten (10) days, the reasons therefor shall be explained in writing on the Final Punchlist to Owner/Developer's satisfaction and Owner/Developer may grant an extension of time in its discretion. The preparation of the FCO or the Final Punchlist by Owner/Developer shall in no way waive or alter the rights of Owner/Developer or the obligations of Contractor hereunder, including, without limitation, rights or obligations pursuant to representations and warranties contained herein.

**14. Change Orders.** Owner/Developer may make any changes to the Work, without invalidating this Contract, pursuant to the change order process hereinafter described. All such changes shall be performed under the conditions of the original Contract, except that no extra work or modification shall be done or paid for without a written Change Order from Owner/Developer ("Change Order.") The Contract Sum shall be increased or decreased by an amount agreed to in writing by the parties prior to the commencement of any such changed Work using Owner/Developer's approved Construction Change Order Request Form, which amount shall not include more than a ten percent (10%) mark-up to Contractor for overhead and profit. Contractor shall provide reasonable documentation supporting the actual and reasonable costs of any Change Order Work, including without limitation subcontractor's and materials invoices.

The Contract Sum and milestone dates on the Construction Schedule (including, without limitation, the date for Substantial Completion identified on the Construction Schedule) may only be adjusted by written Change Order executed by Owner/Developer and Contractor.

**15. Default by Contractor.** Should Contractor become insolvent, or should Contractor refuse or fail to supply enough properly skilled workers or proper materials, or should Contractor fail to make payments to subcontractors or materials suppliers for material or labor in accordance with the respective agreements between Contractor and subcontractors or materials suppliers, as the case may be, or should Contractor disregard laws, ordinances, rules, regulations or orders of a public authority having jurisdiction, or should the Contractor otherwise commit a breach of this Contract and/or fail to perform any work required by the Contract, then Owner /Developer may, in addition to any other rights or remedies it may

have at law, in equity or under this Contract, terminate this Contract after five (5) days written notice and/or complete the Work by means selected by Owner/Developer in its sole discretion. Upon termination of this Contract, Owner/Developer may take possession of the Premises and of all materials, equipment, tools, and construction equipment and machinery thereon, even if owned by Contractor. If the unpaid balance of the Contract Sum exceeds the cost of finishing the Work, such excess shall be paid to Contractor. If such costs exceed the unpaid balance, Contractor shall promptly pay the difference to Owner/Developer. Owner/Developer may, in its sole discretion, also terminate any other contracts or agreements Owner/Developer has with Contractor and/or any Affiliates of Contractor.

**16.    Owner/Developer's Inspections and Right to Stop the Work and Carry Out the Work.** The Construction Manager shall have the right to inspect the Work and reject any of the Work which does not conform to the Construction Documents. If Contractor fails to correct defective Work or fails to supply materials or equipment in accordance with this Contract, Owner/Developer may order Contractor to stop the Work until it is corrected, and Contractor shall not be entitled to an extension of time in connection therewith. Owner/Developer may also stop the Work for the purpose of performing special inspections or testing of the Work. Should any of the Work be found faulty as a result of special inspections or tests, Contractor shall correct the Work immediately and pay all costs of correcting the Work and all fees for said inspections or tests. Should the Work be satisfactory, Owner/Developer will pay the fees for said inspections or tests, and will grant an appropriate extension of time to Contractor for any delay caused by such inspections or tests.

If Contractor fails to correct defective Work as required, or fails to carry out the Work in accordance with the Construction Documents, Owner/Developer may, without prejudice to any other remedies Owner/Developer might have, correct such defective Work, and deduct the cost of same from payments then or thereafter due under this Contract. If such payments are not sufficient to cover such cost, Contractor shall promptly pay the difference to Owner/Developer upon demand.

**17.    Termination Without Cause.** Owner/Developer may terminate the Contract without cause upon ten (10) days prior written notice to Contractor. In such event, Contractor shall cease the Work and take such actions as are reasonably necessary to wind-up the Work and vacate the job site. Contactor shall be entitled to receive reimbursement for all out-of-pocket costs incurred up to the date of termination, plus a percentage of profit and overhead equal to the percentage of Work completed prior to the receipt of Owner/Developer's notice.

**18.    Owner/Developer's Construction Manager.** The Construction Manager shall supervise Contractor and the Work in accordance with this Contract and accepted industry practices on behalf of Owner/Developer. Contractor and Owner/Developer hereby acknowledge and agree that Construction Manager is authorized to approve and execute on behalf of Owner/Developer Change Orders or single expenditures, provided such Change Orders or expenditures total less than $25,001 in the aggregate, without obtaining the express consent of Owner/Developer. Notwithstanding anything herein to the contrary, the Construction Manager shall have no (i) obligation to Contractor, including without limitation any and all obligations of Owner/Developer hereunder and (ii) liability for the actions, omissions, negligence or misconduct of Contractor or Owner/Developer or any of their respective employees, subcontractors or suppliers. Neither the Construction Manager nor any affiliate, subsidiary or parent of Construction Manager is intended to be nor will be construed to be a party to this agreement.

**19.    Contractor's Supervision of the Work.** Contractor shall employ a competent qualified superintendent who shall be in attendance at the Premises during the performance of the Work, and who shall at all times maintain good discipline and order with Contractor's employees, subcontractors, suppliers, materialmen and laborers. Contractor's superintendent shall be approved by the Owner/Developer. The

superintendent shall not be replaced or reassigned to any other project prior to the Final Completion of the Work without Owner/Developer's prior consent. Contractor shall supplement its staff with whatever additional supervisory personnel are required to assure that Substantial Completion and Final Completion shall occur when and as required by this Contract. Contractor shall review all Construction Documents and other instructions and shall immediately report to Owner/Developer any error, inconsistency or omission Contractor may discover. Contractor shall not commence the Work without the Construction Documents and any other appropriate plans, specifications or interpretations.

Contractor agrees to use only subcontractors and material suppliers approved by Owner/Developer, except in the event of an emergency, in which case Contractor may, in Contractor's good faith discretion, substitute a subcontractor or material supplier and shall notify the Construction Manager of such change in writing within three (3) days.

Contractor shall maintain two (2) separate phone lines at the job site (one (1) line for a Remodel). One line will be for voice communication and one for a fax machine. Contractor shall place a fax machine in the superintendent's job site office. A cellular phone with voice mail will satisfy the voice communication requirement.

**20.    Protection of Work and Property.** Contractor shall continuously maintain adequate protection for the Work from damage and the elements and shall protect and take all reasonable precautions to protect Owner/Developer, the Premises, any third party and the property of any third party from injury or loss during the course of the Work.

Contractor shall comply with all applicable rules and regulations of any public authority having jurisdiction for the safety of persons or property. Contractor shall erect and maintain as required by existing conditions and progress of the Work all reasonable safeguards for safety and protection, including posting danger signs, promoting safety regulations and notifying Owner/Developer and users of adjacent utilities and properties.

If the severity of the elements makes it impossible to continue operations in a safe manner in spite of all reasonable precautions, Contractor shall cease work and immediately notify Owner/Developer. All Work damaged due to Contractor's negligence shall be removed and replaced at Contractor's expense.

Contractor shall provide and maintain a water-tight storage space, secure from theft, for storage of all equipment required by the Construction Documents or otherwise needed for the performance of the Work. Contractor shall keep the Premises and surrounding area free from accumulation of debris or rubbish. At the completion of the Work, Contractor shall remove all waste materials, rubbish, tools, construction equipment, machinery and surplus materials from the Premises, except for those items owned by Owner/Developer, which shall be stored or disposed of as directed by Owner/Developer.

**21.    Indemnity.** Contractor shall indemnify, defend and hold harmless Owner/Developer, Construction Manager, Architect and each of their respective directors, owners, partners, members, employees and agents, and any subsidiaries or Affiliates, from and against any and all claims, demands, suits, liabilities, injuries (personal or bodily), property damage, causes of action, losses, expenses, damages or penalties, including, without limitation, court costs and reasonable attorneys' fees, arising or resulting from, or occasioned by or in connection with (i) the performance by Contractor of the Work and its services, duties and obligations under this Contract, (ii) the inaccuracy of any warranty or representation of Contractor contained in this Contract, (iii) any act or omission to act by Contractor, a subcontractor, a sub-subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, and/or (iv) any breach, default, violation or nonperformance by Contractor of any term, covenant, condition, duty or obligation provided in this Contract. This indemnification, defense and hold harmless obligation shall survive the termination or expiration of this Contract, whether by lapse of time or otherwise. This indemnification obligation shall not be limited (i) by

a limitation on the amount or type of damages, compensation or benefits payable by or for Contractor, a subcontractor or any other party under workers' or workmen's compensation acts, disability benefit acts or other employee benefits acts, or (ii) pursuant to any common law or case law.

**22. Compliance with Laws.** In its performance of the Work, Contractor shall fully comply, and shall ensure that the Work fully complies, with all applicable federal, state and local laws, ordinances, rules and regulations, including all amendments thereto (collectively, "Laws"), including but not limited to the Americans with Disabilities Act of 1990 and its implementing regulations and codes, and all other Laws relating to access for individuals with disabilities to public accommodations. Contractor shall ensure that it and its subcontractors comply with and maintain all records required by the United States Citizenship and Immigration Services and applicable immigration Laws. Prior to commencing the Work, Contractor shall review the Construction Documents to confirm their conformity with applicable Laws. If Contractor then or thereafter finds the Construction Documents are at variance with Laws, then Contractor shall immediately notify the Construction Manager in writing before proceeding with the Work. The cost of any necessary changes to comply with Laws shall be agreed to by Owner/Developer before Contractor proceeds with the Work. If any of the Work is performed contrary to Laws, Contractor shall bear all costs required to correct the Work.

**23. Contractor's Warranties and Guarantees.** Contractor warrants and guarantees that all of the Work shall be done in a first class, workmanlike manner and in accordance with the Construction Documents with new, quality materials and warrants all Work and materials against defects in the material or the workmanship for a period of one (1) year from the date of Final Completion or the opening of the Restaurant (whichever is later), unless stated otherwise in the Construction Documents. If a defect in material or workmanship or a deviation from the Construction Documents is latent, hidden or not readily observable, Contractor's warranty shall be extended for one (1) year from the date of discovery of the defect or deviation. Within ten (10) days after written notice of a defect or deviation, Contractor shall (without expense to Owner/Developer) remedy and repair same and any damage to other work resulting therefrom. If the deficiencies are not timely corrected, Owner/Developer may hire an independent contractor to do the work and shall be reimbursed promptly by Contractor. If any item cannot, with reasonable diligence, be corrected within ten (10) days, Contractor agrees to set forth in writing a reasonable schedule for completion of such work. If the schedule is not met, Owner/Developer may immediately upon notice to Contractor, complete such work and be entitled to prompt reimbursement from Contractor.

Contractor agrees, upon reasonable notice, to meet with the Construction Manager or a designated representative within three (3) months prior to the expiration of one (1) year from the date of the commencement of the foregoing one (1)-year warranty period for a warranty inspection of the Work (the "Warranty Inspection"). During the Warranty Inspection, warranty deficiencies shall be noted, and the list of deficiencies shall be given to Contractor. Contractor agrees to correct all such deficiencies within ten (10) days after the date of the Warranty Inspection. If the deficiencies are not timely corrected, Owner/Developer may hire an independent contractor to do the work and shall be reimbursed promptly by Contractor. If any item cannot, with reasonable diligence, be corrected within ten (10) days, Contractor agrees to set forth in writing a reasonable schedule for completion of such work. If the schedule is not met, Owner/Developer may immediately upon notice to Contractor, complete such work and be entitled to prompt reimbursement from Contractor. The failure to list any warranty deficiencies during the Warranty Inspection shall in no way relieve Contractor from its warranty obligations hereunder.

In addition, but not by way of limitation, Contractor:

a. Warrants and guarantees all stucco unconditionally for two (2) years after the date of Final Completion from and against popping, peeling, cracking, and/or defects;

b. Warrants and guarantees the roofing work unconditionally for a period of two (2) years after the date of Final Completion, including without limitation that the roofing and flashing is water tight and free from leaks;

c. Shall provide a ten (10) year manufacturer's guarantee (from the date of Final Completion) covering any and all repairs or replacements needed to keep the roof, including the field and flashing, water tight;

d. Warrants and guarantees that the Work fully complies with the Americans with Disabilities Act of 1990 and its implementing regulations and codes, and all other applicable Laws relating to access for individuals with disabilities to public accommodations, for such time as the statute of limitations shall continue to apply for any alleged violations of such laws, regulations and codes;

e. Warrants and represents that Contractor does not and will not during the course of the Work discriminate against any employee or applicant for employment based on race, color, sex, national origin, religion, age handicap, or other unlawful basis.

f. Shall provide a five (5) year warranty from the date of Final Completion for termite treatment signed by the applicator and Contractor; and

g. Shall provide landscape maintenance, including watering of all plant materials and replacement of dead plant materials for a period of sixty (60) days after the date of Final Completion.

No act or omission of Owner/Developer or Construction Manager, including, without limitation, the Warranty Inspection, shall relieve Contractor of Contractor's responsibility to correct deficient workmanship and materials.

Contractor shall cause the following subcontractors to execute and deliver to Owner/Developer upon completion of the Work a written warranty (in forms reasonably satisfactory to Owner/Developer) covering all Work performed by such subcontractor: electricians, plumbers, pavers, roofers, insulators, HVAC suppliers and installers. Such warranties shall be for a period of one (1) year from the date of Final Completion or the opening of the Restaurant (whichever is later), unless a warranty for a longer period of time is required under the Construction Documents. All warranties included in or as part of the Work and supplied to Contractor shall be assigned to Owner/Developer.

**24. Notices.** All notices to be delivered under this Contract shall be in writing, signed by the parties serving same and delivered personally or by registered or certified U.S. Mail postage prepaid, or by reputable private delivery service postage prepaid and providing a receipt to sender. Each such notice shall be deemed delivered upon actual delivery or refusal. Notices shall be addressed as follows:

| | |
|---|---|
| To Owner/Developer: | CFRA, LLC |
| Address: | 1340 Hamlet Ave |
| City, State, Zip: | Clearwater, FL 33756 |
| Attention: | |
| Fax No.: | |

| | |
|---|---|
| With copy to: | |
| Address: | |
| City, State, Zip: | |
| Attention: | |
| Fax No.: | |

| | |
|---|---|
| To Contractor: | Smartvision Construction, LLC |
| Address: | 1155 E Isle of Palms Ave |
| City, State, Zip: | Myrtle Beach, SC 29579 |
| Attention: | Mohamed Ali |
| Fax No.: | |

**25. Special Conditions.** The terms of this Contract are subject to Owner/Developer obtaining all rights of possession as may be required to legally perform the Work at the Premises. If Owner/Developer is unable to timely obtain such possession, Owner/Developer shall promptly notify Contractor of such inability, and this Contract shall be null and void and of no further force or effect.

**26. Time.** All time limits stated in this Contract are of the essence of the Contract, and Contractor, upon execution hereof and receipt of a written notice to proceed from Owner/Developer shall commence the Work and pursue the Work with all diligence until the completion of same within the time limits set forth in the Construction Documents.

If Contractor is delayed in the progress of the Work by a delay in the issuance of permits by the governing agency (not caused by or due to the fault of Contractor), by an act or neglect of Owner/Developer, by changes ordered in the Work by Owner/Developer (not caused by or due to the fault of Contractor), or by extreme and unusual weather conditions that could not be reasonably foreseen given the location of the Premises, then Contractor shall be entitled to submit a Claim (in the time period required by Section 27) seeking a Change Order extending the date of Substantial Completion in the Construction Schedule by the period of time by which Contractor is actually delayed in the progress of the Work by such event. Such an extension of time shall be Contractor's sole and exclusive remedy for any such delay.

**27. Claims.** A claim is a demand or assertion by Contractor seeking, as a matter of right, the payment of money, or an extension of time or other relief with respect to the terms of the Contract (hereinafter "Claim"). Written notice of any Claim must be given to Owner/Developer by Contractor within ten (10) calendar days after occurrence of the event giving rise to such Claim; otherwise, it shall be waived. Claims must be made by written notice. The responsibility to substantiate a Claim shall rest with Contractor. Pending final resolution of a Claim, unless otherwise agreed to in writing by Owner/Developer, Contractor shall proceed diligently with performance of the Contract, and Owner/Developer shall continue to make payments in accordance with the Contact.

**28. Liquidated Damages.** In addition to other damages Owner/Developer may recover from Contractor for Contractor's unexcused delay in substantially completing the Work on or before the time for Substantial Completion as provided in Section 5 above (or as extended in writing by Owner/Developer), Owner/Developer shall be entitled to recover liquidated damages from Contractor in the amount of $500.00 for each calendar day that Substantial Completion is delayed, and such amount shall be withheld from the Final Payment hereunder. The parties agree that it would be difficult to assess the actual amount of Owner/Developer's damages, and the amount of $0.00 for each calendar day of delay is a reasonable estimate of same. This sum is not to be construed as a penalty, and shall be paid to Owner/Developer as compensation for the damages incurred as a result of the delay in obtaining Substantial Completion of the Work.

**29. Code of Conduct.** All employees of Owner/Developer are obliged under a "Code of Conduct" to perform business in an ethical manner, thus prohibiting them from accepting any privileges, in fact or appearance, which might compromise their ability to execute a bona fide business transaction. Further, this prohibits them from seeking any improper advantage through contribution of funds, equipment or facilities or the provision of other gifts or benefits to public officials or political organizations. Specifically, no illegal or improper payment is to be made to any person or entity. By execution of this Contract, Contractor acknowledges awareness of Owner/Developer's Code of Conduct. Additionally Contractor acknowledges its intention to cooperate with Owner/Developer in developing only ethical business relationships. Should Contractor encounter any business activity in its efforts to establish a business relationship with any representative of Owner/Developer which suggests a violation of its Code of Conduct, Contractor shall communicate such encounter to a Senior Director or Vice President of Development of Owner/Developer.

**30. Owner/Developer's Right to Audit.** Owner/Developer shall also have the right to inspect and copy, with Contractor's assistance and cooperation, Contractor's books and financial records relating to the Work, the Project and Contractor's financial condition.

**31. Independent Contractor.** Contractor is acting as an independent contractor and has full responsibility for control, and supervision of the Work, and Owner/Developer and Construction Manager shall not in any manner be answerable or accountable for any violation of any Laws, or for any injury or damage occasioned by Contractor's actions, or the actions of any in its employ, to any person or their properties.

**32. Site Conditions.** Contractor represents that it has taken steps reasonably necessary to ascertain the nature and location of the Work, and that it has investigated and satisfied itself as to the general, local and site conditions which can affect the Work, the Premises and/or the performance of the Work. Therefore, Contractor shall not be entitled to any adjustment to the Contract Sum or Construction Schedule based on any general, local or site conditions, including, but not limited to, concealed or unknown site conditions.

**33. Hazardous Substances.** The Contractor shall not bring or store any Hazardous Substances (as defined below) to or on the Premises. If, in the course of performance of the Work, Contractor encounters on the Project site any matter which it reasonably believes is a Hazardous Substance, Contractor shall immediately suspend the Work in the area affected and shall immediately report the condition orally and in writing to the Owner, Construction Manager, and Architect. If it is determined that such condition involves a Hazardous Substance introduced to the Premises or negligently exacerbated after the date of this Contract by Contractor, its subcontractors or any party for whom they may be liable, then any required, necessary or appropriate remedial actions shall be performed by Contractor at its sole cost and expense. If it is determined that such condition involves a Hazardous Substance that existed at the Premises prior to the date of this Contract and Contractor did not bring the Hazardous Substance to the Premises, then any required remedial actions shall be performed or caused to be performed by the Owner at its sole cost and expense

"Hazardous Substance" shall mean and refer to any hazardous, toxic or dangerous waste, substance or material defined as a "hazardous waste", "hazardous material", "hazardous substance", "extremely hazardous waste", "restricted hazardous waste", "toxic substance", "industrial waste", "mill tailing", "mining waste", "solid waste" or "special waste" in (i) any provision of state or local Law; (ii) the Comprehensive Environmental Response, Compensation and Liability Act as amended (42 U.S.C. Sec. 9601 et seq.); (iii) the Emergency Planning & Community Right-to-Know Act of 1986, as amended (42 U.S.C. Sec. 11001 et seq.); (iv) the Resource Conservation and Recovery Act of 1976, as amended (42 U.S.C. Sec. 6901 et seq.); (v) the Toxic Substances Control Act, as amended (15 U.S.C. Sec. 2601 et seq.); (vi) the Federal Water Pollution Control Act of 1972, as amended (33 U.S.C. Sec. 1251 et seq.); (vii) the Federal Clean Air Act, as amended (42 U.S.C. Sec. 7401 et seq.); (viii) the Occupational Safety and Health Act, as amended (29 U.S.C. Sec. 651 et seq.); (ix) the Surface Mining Control and Reclamation Act, as amended (30 U.S.C. Sec. 1201 et seq.); (x) any so-called "Superfund" or "Superlien" law; or (xi) any other federal, state or local statute, law, ordinance, code, rule or regulation.

**34. Miscellaneous Provisions:**

a.    Contractor may not assign this Contract without the prior written consent of Owner/Developer, and Contractor shall not factor or pledge this Contract.

b.    No right or remedy conferred upon or reserved to Owner/Developer in this Contract is intended to be exclusive of any other right or remedy herein or by law provided, but each shall be cumulative and in addition to every other right or remedy given herein or now or hereafter existing at law or in equity.

c.   In the event of any conflict between this Contract and the other Construction Documents, this Contract shall govern.

d.   In the event any provision of this Contract is found to be invalid or unenforceable, the remainder of this Contract shall continue in full force and effect.

e.   This Contract shall be construed in accordance with the laws of the state in which the Premises are located.

f.   This Contract is binding upon the parties, their heirs, successors and approved assignees.

g.   Owner/Developer shall have the right to enter into contracts with separate contractors with respect to the Premises, and Contractor agrees to cooperate with such separate contractors and coordinate the Work with the work of separate contractors.  Arrangements between Owner/Developer and separate contractors shall not serve to relieve Contractor of any of its obligations hereunder.

h.   This Contract shall not be construed to create a contractual relationship of any kind between the Owner/Developer and a subcontractor or supplier of Contractor or between any persons or entities other than Owner/Developer and Contractor.

i.   This Contract represents the entire agreement between the parties and supersedes all prior or contemporaneous written or oral communications.

j.   This Contract may be amended or modified only by an instrument in writing signed by the parties.

IN WITNESS WHEREOF, Owner/Developer and Contractor through their duly authorized signatories have executed this Contract as set forth below.

OWNER/DEVELOPER:

By _____

Print Name: __Chris Suh_____

Its*: _____COO_____

Date: _____March 4, 2020_____

CONTRACTOR:

By __Smartvision construction LLC_____

Print Name: __Mohamed Ali_____

Its: _____Mohamed Ali_____

Date: ____3/1/20_____

State Contractor's License No.: _____

**Smartvision Construction, LLC.**
1155 E isle of palms ave
myrtle beach, SC  29579
mali@smartvisionconstruction.com



S M A R T  V I S I O N
Construction

# INVOICE

**BILL TO**
ihop  Johnson City Tennesse
#4440

**INVOICE #** 1200
**DATE** 03/01/2020
**DUE DATE** 03/01/2020

| DESCRIPTION | AMOUNT |
| --- | --- |
| Remaining balance | 90,850.00 |
| A change order | 1,500.00 |
| New LED light | |

| | BALANCE DUE | **$92,350.00** |
| --- | --- | --- |

**ROLL/IMG: 1016/3098-3098**

**20008118**

| 1 PGS:AL-NOTICE OF LIEN | |
|---|---|
| HEIDI BATCH: 223227 | 05/22/2020 - 02:28 PM |
| VALUE | 0.00 |
| MORTGAGE TAX | 0.00 |
| TRANSFER TAX | 0.00 |
| RECORDING FEE | 10.00 |
| ARCHIVE FEE | 0.00 |
| DP FEE | 2.00 |
| REGISTER'S FEE | 0.00 |
| TOTAL AMOUNT | 12.00 |

STATE OF TENNESSEE, WASHINGTON COUNTY
**TERESA H. BOWMAN**
REGISTER OF DEEDS

This Instrument Prepared by:
Charles J. London, Esq
132 Boone Street, Suite 5
Jonesborough, TN 37659

## NOTICE OF LIEN

Muhammad K. Ali, acting in his capacity as Manager first being first duly sworn, says that Smart Vision Construction, LLC, the Lien Claimant, furnished certain material in furtherance of improvements to the real property hereinafter described, in pursuance of a certain contract, with CFRA, LLC (also known as CFRA Tri-Cities, LLC), on behalf of the owners Edward H. Jordan, John Q. Jordan, and Carol J. Green. The first of the material was furnished on the 17th day of March, 2020. The last day the material was furnished on the 23rd day of March, 2020, and there is justly and truly due Lien Claimant therefor from CFRA, LLC (also known as CFRA Tri-Cities, LLC) and owners Edward H. Jordan, John Q. Jordan, and Carol J. Green, over and above all legal setoffs, the sum of $92,350.00 dollars, for which Lien Claimant claims a lien under T.C.A. §§ 66-11-101 et seq, on the real property, which is described as existing at 3214 Peoples Street, Johnson City, TN 37604, and recorded on Roll 201, Images 87-91 in the Washington County Register of Deeds Office.

Lienor
Smartvision Construction, LLC
1155 E. Isle of Palms Ave.
Myrtle Beach, SC 29576

By:

_Mohamed Ali_
Muhammad K. Ali
Manager, Smartvision Construction, LLC

STATE OF TENNESSEE
COUNTY OF WASHINGTON

That the undersigned, *Muhammed Ali*, being first duly sworn, states that he is the *Manager of Smartvision Construction, LLC*, and that he is duly authorized to sign and that the foregoing statements of the Notice of Lien Claim are true and correct, and that the amount owed by for material, supplies, and labor is *$92,350.00*.

SWORN TO AND SUBSCRIBED before me this ~~24th day of April,~~ 7th day of May, 2020.

Notary Public

My commission expires: 09-05-21

[Notary seal: BRYEANNE STORK, STATE OF TENNESSEE, NOTARY PUBLIC, WASHINGTON COUNTY, My Commission Expires 09-05-2021]

1