# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| In re:<br><br>CFRA HOLDINGS, LLC.,<br><br><br>CFRA, LLC<br>CFRA TRI-CITIES, LLC<br><br>　　　　　　　Debtors. | Case No. 20-03608-CPM<br><br>*Jointly Administered with*<br><br>20-03609-CPM<br>20-03610-CPM<br><br>Chapter 11 |

**LIMITED OBJECTION OF SITE CENTERS CORP. TO THE PROPOSED ASSUMPTION AND ASSIGNMENT OF ITS LEASE**

SITE Centers Corp. (the "<u>Landlord</u>") submits this limited objection (the "<u>Objection</u>") to the potential assumption and assignment of its Lease (as defined below) by the above-captioned debtors (the "<u>Debtors</u>"). In support of this Objection, the Landlord respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Landlord does not object to the assumption and assignment of its Lease to a qualified operator *per se*, but the cure amount must include all amounts due and owing under the Lease, and the Debtors must provide the Landlord with sufficient adequate assurance information.

2. In connection with the potential assumption and assignment of the Lease, the Debtors or the proposed assignee must be required to (i) pay the cure amount set forth in the column "Total Cure Amount" on <u>Exhibit A</u>, attached hereto, plus any additional pecuniary losses suffered by the Landlord, including reasonable attorneys' fees.

3. The Debtors must also furnish the Landlord with sufficient adequate assurance information that will (a) enable the Landlord to determine if the proposed assignee could be a viable operator of the business and (b) satisfy the Debtors' burdens under sections 363 and 365 of the Bankruptcy Code.

4. As part of adequate assurance of future performance, the Debtors or the proposed assignee must satisfy any Adjustment Amounts (as defined below) which have not yet been billed or have not yet become due under the terms of the Lease.

5. The Debtors or the proposed assignee must also be required to comply with all contractual obligations to indemnify and hold the Landlord harmless with regard to events which occurred before assumption and assignment, but which were not known to the Landlord as of the date of the assumption and assignment.

6. The Landlord hopes to resolve some, if not all, of the issues raised herein with the Debtors consensually, but reserves its rights to argue these issues at the hearing.

## BACKGROUND

7. The Landlord is the owner, affiliate, or managing agent for the owner of certain non-residential real estate premises at the Cotswold Village shopping center in Charlotte, North Carolina (the "Leased Premises"), which the Debtors lease pursuant to a written lease (the "Lease"). The Leased Premises are located in a shopping center as that term is used in section 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990).

8. On May 6, 2020 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

9. To date, the Debtors continue to manage their businesses as debtors and debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

10. On May 18, 2020, the Debtors filed the *Debtors' Motion for Entry of (I) an Order Approving Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof; and (II) Order(s) (A) Approving the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Sales Free and Clear of All Encumbrances, and (C) Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases* (the "Bidding Procedures Motion").[1] The Bidding Procedures Motion sought to establish, among other things, bidding procedures (the "Bidding Procedures") for the sale of the Debtors' assets, including leases, procedures for the assumption and assignment (the "Assignment Procedures") of leases to a potential assignee, procedures for the cure of defaults under leases (the "Cure Procedures"), and a timeline for the sale process.

11. On June 10, 2020, the Court entered the *Order Approving Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof* which granted certain relief requested in the Bidding Procedures Motion and approved the Bidding Procedures, Assignment Procedures, and Cure Procedures, as modified.[2]

12. On June 11, 2020, the Debtors filed the Notice of *Assumption, Assignment and Cure Amount with Respect to Executory Contracts and Unexpired Leases of the Debtors* (the "Cure Notice").[3] The Cure Notice listed the proposed cure amounts for unexpired leases of non-residential real property, including the Lease. The cure amount listed in the Cure Notice is included on Exhibit A, attached hereto, in the column titled "Debtors' Cure Amount."

---

[1] Docket No. 53.
[2] Docket No. 134.
[3] Docket No. 145.

**OBJECTION**

I. **THE DEBTORS MUST PROVIDE EVIDENCE OF ADEQUATE ASSURANCE OF FUTURE PERFORMANCE UNDER THE LEASE**

*(A)   Adequate Assurance of Future Performance for Shopping Center Leases*

13.   In connection with the assumption and assignment of leases, shopping center landlords are afforded special statutory protections under the Bankruptcy Code in the form of adequate assurance of future performance. *In re Joshua Slocum*, 922 F.2d 1086; *In re Trak Auto Corp.*, 277 B.R. 655 (Bankr. E.D. Va. 2002). Section 365(f)(2) provides:

> The trustee may assign an executory contract or unexpired lease of the debtor only if–
>
> (A)   the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B)   adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default under such contract or lease.

11 U.S.C. § 365(f)(2).

14.   Section 365(b)(1) of the Bankruptcy Code further provides:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of the assumption of such contract or lease, the trustee–
>
> (A)   cures, or provides adequate assurance that the trustee will promptly cure, such default…;
>
> (B)   compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease for any actual pecuniary loss to such party resulting from such default; and
>
> (C)   provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

4

15.    In connection with a shopping center lease, adequate assurance of future performance includes adequate assurance:

    (A)    of the source of rent… due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee… shall be similar to the financial condition and operating performance of the debtor…;

    (B)    that any percentage rent due under such lease will not decline substantially;

    (C)    that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as radius, location, use, or exclusivity, … and

    (D)    that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3).

16.    The Debtors bear the burden of proving adequate assurance of future performance in connection with the potential assumption and assignment of the Lease. *In re F.W. Restaurant Assoc.,* Inc., 190 B.R. 143 (Bankr. D. Conn. 1995); *In re Rachels Indus. Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1981).

17.    To determine whether the requirements of adequate assurance of future performance will be satisfied, at a minimum, the Landlord and its attorneys must receive the following information from the exact proposed assignee of the Lease:

    (i)    The exact name of the entity which is going to be designated as the proposed assignee;

    (ii)    The proposed assignee's and any guarantor's tax returns and audited financial statements (or un-audited, if audited financials are not available) and any supplemental schedules for the calendar or fiscal years ending 2017, 2018, and 2019;

(iii) The number of restaurants the proposed assignee operates and all trade names that the proposed assignee uses;

(iv) A statement setting forth the proposed assignee's intended use of the Leased Premises;

(v) The proposed assignee's experience operating restaurants in shopping centers;

(vi) The proposed assignee's 2020 and 2021 business plans, including sales and cash flow projections; and

(vii) Any financial projections, calculations, and/or financial *pro-formas* prepared in contemplation of purchasing the Lease.

18. Unless and until the Landlord receives all of this information, the Debtors have not satisfied their burden pursuant to 11 U.S.C. § 365(b)(3).

### *(B)   The Lease Must Be Assumed and Assigned Cum Onere*

19. Section 365(b)(3)(C) of the Bankruptcy Code provides that the assumption or assumption and assignment of a shopping center lease "is subject to all the provisions thereof . . .". 11 U.S.C. § 365(b)(3)(C).  Bankruptcy courts have described the assumption of an unexpired lease (a prerequisite to assignment under § 365(f)(2)(A)) as "an all-or-nothing proposition – either the whole contract [or lease] is assumed or the entire contract [or lease] is rejected." *See, e.g.*, *In re CellNet Data Systems, Inc.*, 327 F.3d 242, 249 (3d Cir. 2003).

20. As the court noted in *In re Washington Capital Aviation & Leasing*, 156 B.R. at 167, 175 n. 3 (Bankr. E.D. Va. 1993):

> Adequate assurance of future performance by the assignee is important because 11 U.S.C. § 365(k) "relieves the ... estate from any liability for any breach of such ... lease occurring after such assignment."  A party subject to a contractually created obligation ordinarily cannot divest itself of liability by substituting another in its place without the consent of the party owed the duty. *See* Douglas G. Baird and Thomas H. Jackson, Bankruptcy 285 (2d ed.

> 1990) (citing Restatement (Second) of Contracts § 318(3) (1981) ("delegation of performance ... does not discharge any duty or liability of the delegating obligor")). While the assignee may be entitled to perform for the original obligor, the original obligor remains ultimately liable until discharged by performance or otherwise. Section 365(k) changes this common law rule and relieves the estate from all liability under the lease following assignment.

*See also In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) (Adequate assurance is "necessary to protect the rights of the non-debtor party to the contract or lease, because assignment relieves the trustee and the estate from liability arising from a post-assignment breach."). The Debtors are not entitled to the benefits and protections of section 365(k) if they do not assume and assign a lease *cum onere* – with all benefits and burdens. *See, e.g., American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999).

21. The Debtors or the proposed assignee must be required to comply with all contractual obligations to indemnify and hold the Landlord harmless with regard to events which occurred before assumption and assignment, but which were not known to the Landlord as of the date of the assumption and assignment. This includes, but is not limited to, (i) claims for personal injury that occurred at the Leased Premises, (ii) damage and destruction to the Leased Premises or property by the Debtors or their agents, and (iii) environmental damage or clean-up. To cure possible pre-assignment, non-monetary defaults and provide adequate assurance of future performance with respect to the indemnification obligations under the Lease, either (a) the Debtors or the proposed assignee must be required to satisfy any and all such claims, notwithstanding anything to the contrary contained in a plan or any court order, or (b) the Debtors must be required to demonstrate or obtain adequate insurance (by purchase of "tail" coverage or otherwise) in order to satisfy potential indemnification obligations based on events or occurrences that occurred prior to the effective date of an assignment. Such claims for indemnity

could include claims for personal injury occurring at the Leased Premises where the Landlord is joined as a party to a lawsuit or for damage and destruction of property by the Debtors or their agents or employees.

22. Finally, the Landlord asserts that if the Debtors assume and assign the Lease, the proposed assignee should be required to execute a short-form assumption and assignment agreement with the Landlord in connection with the assignment of the Lease so that the Landlord will be in privity with its new tenant.

## II.  THE PROPOSED CURE AMOUNT IS INCORRECT

23. The Landlord disputes the cure amount proposed by the Debtors in the Cure Notice. The correct cure amount for the Lease is set forth on Exhibit A, attached hereto, in the "Total Cure Amount" column, which includes an estimate of attorneys' fees incurred to date. The Landlord reserves the right to amend the cure amount to include additional amounts that continue to accrue and any other obligations that arise and/or become known to the Landlord prior to assumption and assignment of the Lease.

24. Pursuant to the Lease, the Debtors are obligated to pay regular installments of fixed monthly rent, percentage rent, and/or gross rent, as well as a share of common area maintenance costs, real estate taxes, and insurance. In addition, prior to *pro rata* assumption and assignment of the Lease, the Debtors are required by section 365(b)(1) of the Bankruptcy Code to cure all outstanding defaults under the Lease and compensate the Landlord for any actual pecuniary loss, including the payment of related attorneys' fees. *See* 11 U.S.C. §365(b)(1)(B). Attorneys' fees due under the Lease are compensable. *See LJC Corp. v. Boyle*, 768 F.2d 1489, 1494-96 (D.C. Cir. 1985); *In re Bullock*, 17 B.R. 438, 439 (B.A.P. 9th Cir. 1982); *In re Crown Books Corp.*, 269 B.R. 12, 14-15 (Bankr. D. Del. 2001); *In re BAB Enterprises, Inc.*, 100 B.R. 982, 984 (Bankr.

W.D. Tenn. 1989); *In re Westview 74th St. Drug Corp.*, 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986); *In re Ribs of Greenwich Vill., Inc.*, 57 B.R. 319, 322 (Bankr. S.D.N.Y. 1986). Accordingly, as part of its pecuniary losses, the Landlord is entitled to attorneys' fees in connection with the Debtors' obligation to cure all monetary defaults under the Lease.

### III.  THE DEBTORS OR THE PROPOSED ASSIGNEE MUST BE RESPONSIBLE FOR PAYMENT OF ADJUSTMENT AMOUNTS WHEN THEY COME DUE IN THE ORDINARY COURSE OF BUSINESS AND SATISFACTION OF INDEMNIFICATION OBLIGATIONS

25. To the extent that rent, attorneys' fees, interest, and/or other charges continue to accrue, and/or the Landlord suffers other pecuniary losses with respect to the Lease, the Landlord hereby reserves its right to amend the Total Cure Amount to reflect such additional amounts or to account for year-end adjustments, including, without limitation, adjustments for 2018, 2019, and 2020, which have not yet been billed or have not yet become due under the terms of the Lease (the "Adjustment Amounts"). The Debtors and/or the proposed assignee must be responsible to satisfy the Adjustment Amounts, if any, when due in accordance with the terms of the Lease, regardless of when such Adjustment Amounts were incurred.

26. In addition, any assignee of the Lease must be required to comply with all contractual obligations to indemnify and hold the Landlord harmless with regard to events which may have occurred before assumption and assignment but which were not known to the Landlord as of the date of the assumption and assignment, including, but not limited to, claims for personal injury that occurred at the Leased Premises, damage and destruction to the Leased Premises or property by the Debtors or their agents, and environmental damage or clean-up.

### IV.  DEMAND FOR SECURITY

27. Section 365(l) of the Bankruptcy provides, in the pertinent part:

> If an unexpired lease under which the debtor is lessee is assigned pursuant to this section, the lessor of the property may require a

deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

11 U.S.C. § 365(l).

28. In the ordinary course of its business, the Landlord requires security deposits, letters of credit, or guaranties when leasing (or assessing an assignment of a lease) to certain companies based on their financial information and history. In connection with the proposed assumption and assignment of the Lease, the Landlord hereby demands such security in one of those forms as required by section 365(l) of the Bankruptcy Code. Until the exact financials of the proposed assignee are known to the Landlord, the Landlord reserves its right to specify the exact form and amount of such security; however, the Landlord would typically require a parent or personal guaranty in connection with leasing to a new tenant.

## V. THE DEBTORS ARE RESPONSIBLE FOR TIMELY PAYMENT OF ALL POST-PETITION RENT AND ADDITIONAL AMOUNTS DUE UNDER THE LEASE UNTIL IT IS ASSUMED, ASSUMED AND ASSIGNED, OR REJECTED

29. Section 365(d)(3) of the Bankruptcy provides, in pertinent part:

The [debtor] shall timely perform all the obligations of the debtor, except those…arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of [the Bankruptcy Code].

11 U.S.C. § 365(d)(3).

30. The Landlord explicitly reserves its rights under section 365(d)(3) of the Bankruptcy Code to assert that the Debtors must timely perform all obligations arising under the Lease before the Lease is assumed, assumed and assigned, or rejected, including, without limitation, the full payment of rent on the first day of each month.

**RESERVATION OF RIGHTS**

31. The Landlord reserves the right to amend and/or supplement this Objection on any basis, including, without limitation, by adding and supplementing objections to the Debtors' proposed cure amounts and by adding or supplementing objections to the adequate assurance of future performance provided by any proposed assignee.

**CONCLUSION**

**WHEREFORE**, the Landlord requests that the Court enter an order: (i) conditioning the assumption and assignment of the Lease on (a) the Debtors and the proposed assignee providing adequate assurance of future performance in accordance with section 365(b) of the Bankruptcy Code; and (b) the Debtors and/or the proposed assignee promptly paying the cure amounts set forth in the column titled "Total Cure Amount" on Exhibit A attached hereto, plus any additional pecuniary losses suffered by the Landlord, including reasonable attorneys' fees; (ii) requiring the Debtors and/or the proposed assignee to comply with all obligations under the Lease, including payment of the Adjustment Amounts and satisfaction of any indemnification obligations in the regular course of business; (iii) requiring the proposed assignee to enter into a short-form assumption and assignment agreement with the Landlord; (iv) requiring the proposed assignee to provide security to the Landlord pursuant to section 365(l) of the Bankruptcy Code; (v) granting such other and further relief as the Court deems just and proper.

Dated: June 23, 2020          Respectfully submitted,

*/s/ Steven R. Wirth*
Steven R. Wirth, Esq. (FL Bar No. 170380)
**AKERMAN LLP**
401 East Jackson Street, Suite 1700
Tampa, FL 33602
Telephone: (813) 223-7333
Facsimile: (813) 223-2837
steven.wirth@akerman.com

       -and-

       Robert L. LeHane, Esq.
       Jennifer D. Raviele, Esq.
       Michael W. Reining, Esq. (*admitted pro hac vice*)
       **KELLEY DRYE & WARREN LLP**
       101 Park Avenue
       New York, New York 10178
       Tel: (212) 808-7800
       Fax: (212) 808-7897
       rlehane@kelleydrye.com
       jraviele@kelleydrye.com
       mreining@kelleydrye.com

       *Attorneys for SITE Centers Corp.*

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that a true and correct copy of the foregoing has been served on this 23rd day of June, 2020, via electronic mail to all parties receiving notice via CM/ECF, including Nathan A. Wheatley, Office of the United States Trustee, Timberlake Annex, Suite 1200, 501 E. Polk Street, Tampa, FL 33602; Carmen D. Contreras-Martinez, Saul Ewing Arnstein & Lehr LLP, 701 Brickell Avenue, Suite 1700, Miami, FL 33131, Counsel for the Debtor; and via U.S. Mail to the additional parties listed below.

CFRA Holdings, LLC
CFRA, LLC
CFRA Tri-Cities, LLC
1340 Hamlet Avenue
Clearwater, FL 33756

                */s/Steven R. Wirth*
                Steven R. Wirth, Esq., FL Bar No. 170380

**EXHIBIT A**

| SITE Centers Corp. | | | | | |
|---|---|---|---|---|---|
| **Store No.** | **Mall Name** | **Location** | **Landlord** | **Debtors' Cure Amounts** | **Total Cure Amounts** |
| 3327 | Cotswold Village | Charlotte, NC | DDR Cotswold LP | $63,402.00 | $63,831.55 |