**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
www.flmb.uscourts.gov

In re:
CFRA HOLDINGS, LLC                     Case No. 8:20-bk-03608-CPM
                                       Chapter 11

                                       *Jointly Administered with:*
CFRA, LLC                              Case No. 8:20-bk-03609-CPM
CFRA TRI-CITIES, LLC                   Case No. 8:20-bk-03610-CPM

      Debtors.
_____/

**MOTION OF THE DEBTORS FOR ENTRY**
**OF AN ORDER CONVERTING CASES FROM**
**CHAPTER 11 TO CHAPTER 7 OF THE BANKRUPTCY CODE**

The above-captioned debtors and debtors-in-possession (the "**Debtors**"), by and through their undersigned counsel, file this motion (the "**Motion**"), pursuant to sections 105(a) and 1112 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 1019 and 9013 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), requesting entry of an order, substantially in the form attached hereto as Exhibit A (the "**Proposed Order**") converting these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.  In support of this Motion, the Debtors respectfully state as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3. Venue is proper in before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

4. On May 6, 2020 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, commencing the above-captioned jointly administered chapter 11 cases (the "**Chapter 11 Cases**").

5. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors continue to manage their affairs as debtors-in-possession. No trustee or examiner has been appointed in the Chapter 11 Cases.

6. The Debtors are franchisees of IHOP restaurants, and, prior to the Petition Date, operated forty nine (49) IHOP restaurants in South Carolina, North Carolina, Tennessee and Virginia. All of the Debtors' restaurants were shuttered as a result of the various "safer at home" restrictions in connection with the ongoing Covid-19 pandemic. These closures resulted in an immediate liquidity crisis, leaving the Debtors unable to fund operations and debt service in the ordinary course of business.

7. On April 22, 2020, each of the Debtors executed an *Assignment for the Benefit of Creditors* pursuant to Chapter 727, Florida Statutes, designated J. Tim Pruban ("**Mr. Pruban**") of Focus Management Group USA Inc. as assignee of the Debtors' assets and empowering him to liquidate such assets and take such other actions as may be warranted to maximize value for the Debtors' creditors and stakeholders.

8. Subsequently, Mr. Pruban and the Debtors determined that it was in the best interest of the Debtors and their estates to seek relief under chapter 11 of the Bankruptcy Code, in order to gain the "breathing spell" afforded by the automatic stay of section 362 of the Bankruptcy Code and to pursue a sale of the Debtors' assets free and clear of liens, claims, encumbrances and other interests pursuant to section 363(b) of the Bankruptcy Code.

9. On May 27, 2020, the United States Trustee appointed an official committee of unsecured creditors in the Chapter 11 Cases (the "**Committee**").

A. **Significant Events During the Debtors' Chapter 11 Cases**

10. On June 10, 2020, the Court entered the *Order Approving Bidding Procedures, Assumption and Assignment Procedures, and the Form and Manner of Notice Thereof* (the "**Bidding Procedures Order**") [Docket No. 134].

11. The Bidding Procedures Order, among other things, includes a settlement between and among the Debtors, the Debtors secured lenders, and the Debtors' franchisor, IHOP, regarding the implementation of bidding procedures to facilitate the sale of the Debtors' businesses pursuant to section 363 of the Bankruptcy Code. In particular, Appendix A to the Bidding Procedures Order, attached thereto as Exhibit 4, sets forth the agreement among the parties related to the sale process, including with respect to the distribution of assets from the expected sale of the Debtors' assets.

12. Subsequently, on June 22, 2020, the Court entered the *Final Consent Order (I) Authorizing Debtors to Use Cash Collateral; (II) Acknowledging Extent, Validity and Priority of Lien; and (III) Scheduling a Final Hearing* (the "**Final Cash Collateral Order**") [Docket No. 163] and the *Final Order (I) Authorizing the Debtors to Obtain Post-Petition Financing from Pre-Petition Lenders Pursuant to 11 U.S.C. § 364; (II) Granting Liens and Superpriority Claims Pursuant to 11 U.S.C. § 364; (III) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, and 363; and (IV) Granting Such Other and Further Relief that this Court Finds Equitable* (the "**Final DIP Financing Order**") [Docket No. 164]. The Final Cash Collateral Order and the Final DIP Financing Order are referred to collectively herein as the "**Final Financing Orders**").

13. In addition to approving, on a final basis, the Debtors' use of cash collateral and post-petition debtor-in-possession financing, the Final Financing Orders include a settlement among the Debtors, their pre- and post-petition lenders and the Committee regarding the Chapter 11 Cases.

14. In particular, the Final Cash Collateral Order provides that the disbursement with respect to the lenders' pre-petition secured claims would be subject to a carve-out in favor of general unsecured creditors, excluding the lenders' potential deficiency claims and insider claims, in the amount of $125,000 to be administered in post-sale converted chapter 7 cases for the Debtors. The Final Financing Orders also provided for the funding of $25,000, through the final debtor-in-possession financing budget, to be paid to the Chapter 7 Trustee for the administration of the converted chapter 7 cases. Further, the Final Cash Collateral Order provides that the Debtors shall file a motion to convert the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code no later than five (5) days after closing of the sale(s) contemplated in the Bidding Procedures Order.

15. In addition, the Final Financing Orders required the Debtors to wire to the Saul Ewing Arnstein & Lehr LLP ("**Saul Ewing**") Client Trust Account (to the extent of such funds actually deposited, the "**Professional Fee Carve-Out Reserve Account**") in the amounts equal to, but not to exceed, the amounts budgeted for retained professionals set forth in the budgets approved by the Court in the Chapter 11 Cases. The Final Financing Orders further provide that Debtors' counsel shall release to retained professionals such amounts as are payable pursuant to applicable orders of this Court, including the CRO Retention Order (as defined in the Final Financing Orders) and any order granting interim or final fee applications in these cases.

16. On July 1, 2020, the Court held a hearing and approved, subject to entry of a consensual order (the ("**Sale Order**"), the Debtors' proposed sale of substantially all of their assets to Suncakes, LLC (the "**Purchaser**") and to assume and assign certain contracts and leases to the Purchaser. As will be set forth more fully in the Sale Order, certain contracts and leases will be assumed and assigned to the Purchaser at the closing of the sale, and certain contracts and leases will be assumed and assigned upon completion of a designation process. The Debtors anticipate that the designation process will have concluded prior to the date set for hearing on this Motion.

17. The Debtors' anticipate that closing on the sale with the Purchaser will take place within three (3) business days after entry of the Sale Order.

## RELIEF REQUESTED

18. By this Motion, the Debtors seek the entry of an order, pursuant to sections 105(a) and 1112 of the Bankruptcy Code and Bankruptcy Rules 1019 and 9013 converting their chapter 11 cases to cases under chapter 7 of the Bankruptcy Code.

19. The Debtors further request authorization for Saul Ewing to continue to maintain the Professional Fee Carve-Out Reserve Account for distributions to retained professionals in accordance with the Final Financing Orders, and any orders granting interim or final fee applications in these cases, outside of the Debtors' chapter 7 proceedings.

## BASIS FOR RELIEF

**A.    Conversion of Debtors' Chapter 11 Cases to Chapter 7 of the Bankruptcy Code**

20. Section 1112(a) of the Bankruptcy Code governs the conversion of chapter 11 cases to cases under chapter 7 of the Bankruptcy Code. Section 1112(a) provides that:

> (a) The debtor may convert a case under this chapter to a case under chapter 7 of this title unless—

5

>  (1)     the debtor is not a debtor in possession;
>
>  (2)     the case originally was commenced as an involuntary case under this chapter; or
>
>  (3)     the case was converted to a case under this chapter other than on the debtor's request.

11 U.S.C. § 1112(a).

21. The legislative history for section 1112(a) states that this subsection "gives the debtor the absolute right to convert a voluntarily commenced chapter 11 case in which the debtor remains in possession to a liquidation case." *In re Schuler*, 119 B.R. 191, 192 (Bankr. W.D. Mo. 1990) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 405 (1977); S. Rep. No. 989, 95th Cong., 2nd Sess. 117 (1978)). Other courts have also suggested that, provided the exceptions set forth in section 1112(a) do not apply, a debtor has an absolute right to convert its case from chapter 11 to chapter 7. *See*, *In re Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R. 969, 971 (Bankr. E.D. Pa. 1987) (Section 1112(a) "gives the debtor the absolute right to convert, unless the case is governed by one of the enumerated exceptions"); *see also*, *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1161 (5th Cir. 1988); *In re Marrill Alarm Systems, Inc.*, 100 B.R. 606, 607 (Bankr. S.D. Fla. 1989).

22. As a threshold matter, none of the exceptions set forth in section 1112(a) are applicable in these cases because the Debtors remain in possession, these cases were commenced by filing voluntary petitions, and there have been no prior conversions.

23. Moreover, cause exists to convert these chapter 11 cases to chapter 7. As noted above, the Debtors have obtained approval, subject to entry of the Sale Order, to sell substantially all of their assets and have no ongoing business operations. Accordingly, there is no reasonable likelihood of the Debtors' rehabilitation or reorganization.

24. In addition, the results of the Debtors' sale efforts will be modest, as less than $1 million will be disbursed to the Debtors' prepetition secured lenders, leaving a deficiency claim in excess of $19 million. When taking into account potential administrative expense claims for the Debtors' locations that the Purchaser chooses not to acquire, the Debtors would not have sufficient funds to effectuate a plan of liquidation. The Debtors' lenders have also declined to permit further borrowing in these circumstances, and, as noted above, the Final Cash Collateral Order expressly contemplates and requires conversion to chapter 7 following closing of the sale.

25. The Debtors believe that remaining tasks in these cases, such as disbursing the $125,000 carve-out to general unsecured creditors and investigating and pursuing avoidance actions can be effectively handled by a chapter 7 trustee.

26. For these reasons, the Debtors believe that timely conversion of these cases to chapter 7 of the Bankruptcy Code is warranted and in the best interests of their estates, creditors and other parties in interest.

## **NOTICE**

27. The Debtors are serving notice of the hearing on this Motion upon: (a) the Office of the United States Trustee; (b) counsel to the Debtors' pre- and post-petition secured lenders; (c) counsel to the Committee; (d) counsel to IHOP; (e) all creditors of the Debtors; and (f) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

**WHEREFORE**, the Debtors respectfully request that this Court enter the Proposed Order granting the relief sought herein and granting such other and further relief as may be just and proper.

Dated: July 8, 2020

**SAUL EWING ARNSTEIN & LEHR LLP**
*Counsel for Debtors and Debtors-in-Possession*
701 Brickell Avenue, 17th Floor
Miami, FL 33131
Telephone: (305) 428-4500
Facsimile: (305) 374-4744

*By:*   */s/ Aaron S. Applebaum*_____
Carmen Contreras-Martinez
Florida Bar No. 093475
Carmen.Contreras-Martinez@saul.com

-and-

Stephen B. Ravin (*pro hac vice*)
Florida Bar No. 293768 (*inactive status*)
Aaron S. Applebaum (*pro hac vice*)
1037 Raymond Boulevard
Suite 1520
Newark, NJ 07102
Telephone: (973) 286-6700
Facsimile:  (973) 286-6800
Stephen.Ravin@saul.com
Aaron.Applebaum@saul.com